UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

Index No. 24 Civ. 4201

                 Plaintiffs,

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

       v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
AMINA ALI; NDERIM DEMIROVIC; and
202 MARINE LLC,

               Defendants.
-----------------------------------------------------------X

   Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their

Complaint against Defendants allege as follows:

## INTRODUCTION

     1.    This case involves shocking race discrimination by Defendants Juda (a.k.a

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various property owners in connection with residential apartment rentals in

Staten Island and Brooklyn.

     2.    In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an

available rental unit owned by Defendant Amini Ali and represented by Defendant Niayzov.

Plaintiffs Delone-Felix and Felix, who work full-time and have excellent income and credit,

sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that

Defendant Amini refused to rent to Black tenants.

3.      Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.      The results of both of the tests confirm Defendants' racial animus.

5.      During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.      Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.      More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City. FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester. It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region. FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities. Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides in Staten Island, New York.

14. Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15. Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens. At all relevant times, Plaintiff Jones worked for the FHJC as a tester. Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16. Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan. During all relevant times, Plaintiff Seale worked for the FHJC as a tester. Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17. Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey. Defendant Niayzov is licensed by the State of New York to serve as a real estate broker. Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18. Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey. Defendant Ioffe is licensed by the State of New York to serve as a real estate broker. Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19. Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York. Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage. Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.     Defendant Amina Ali is a natural person who, upon information and belief, lives in Staten Island.  Defendant Ali is the owner if 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Amina, acting within the scope of their agency.

21.     Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

22.     Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is an owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

### Discrimination Against Plaintiffs Delone-Felix and Felix

23.     On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 518 West Caswell Avenue in Staten Island.

24.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

25.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

26.     Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

27.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

28.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

29.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

30.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

31.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

32.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

33.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

34.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

35. On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

36. Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

37. In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

38. Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

39. This explanation made no sense for two reasons: first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

40. Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experience renting to Black tenants in the past.

**FHJC Investigates Defendants**

41. Plaintiff Delone-Felix reported her experience to FHJC.

42. FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

43. In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

44.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

45.      At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

46.     Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

47.     The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

48.     Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

49.     The tester responded that his budget was up to $3,200.00 per month.

50.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

51.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

52.     The tester was met by a woman named Nicole, who showed him the unit.

53.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

54.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

55.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

56.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

57.     When the tester left the unit, Defendant Niayzov was outside.

58.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

59.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

60.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

61.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

62.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

63.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

64.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

65.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

66.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

67.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

68.     The tester expressed interest in both units.

69.     Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

70.     Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

71.     The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

72.     The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

73.     The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

74.     The tester responded that he was renting a different apartment.

75.     Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

76.     On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

77.     Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

78.     Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

79.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

80.     Defendant Niayzov did not call Plaintiff Jones back.

81.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

82.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

83.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

84.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

85.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

86.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

87.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

88.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

89.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

90.     Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

91.     The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

92.     Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

93.     Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

94.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

95.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

96.     At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

97.     Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

98.     The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

99. Defendant Ioffe asked the tester what she did for a living and if she had good credit.

100. The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

101. The tester asked whether there were available two-bedrooms in Brooklyn.

102. At that point, Defendant Ioffe put Defendant Niayzov on the phone.

103. Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

104. Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

105. Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

106. In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

107. During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

108. The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

109. Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

110. After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

111.     Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

112.     During the drive, Defendant Niayzov made explicitly racist comments to the tester.

113.     Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

114.     Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

115.     Defendant Niayzov complained to the tester about "criminals" in New York City.

116.     Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

117.     Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

118.     Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

119.     Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

120.     Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

121.     Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

122.     Defendant Niayzov then showed the tester 202 Marine Avenue.

123.     Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

124.     When they left, Defendant Niayzov offered to show the tester other available apartments.

125.     Defendant Niayzov then drove the tester to the subway.

126.     During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

127.     Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

128.     Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

129.     Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

130.     After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

131.     Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

132.     Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

133. Defendant Niayzov confirmed that it was and asked the tester to call him.

134. The tester responded that she would call soon.

135. Defendant Niayzov responded by asking the tester if she could come to his office.

136. At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

137. The tester responded by text that she would call him in a few minutes.

138. Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

139. At approximately 2:55 p.m., the tester called Defendant Niayzov.

140. Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

141. The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

142. Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

143. Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

144. The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

145. Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

146.     Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

147.     Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

148.     On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

149.     Defendant Niayzov arrived approximately twenty minutes late.

150.     The showing lasted approximately three and a half minutes.

151.     Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

152.     Defendant Niayzov told Plaintiff Seale to call him the following day.

153.     Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

154.     The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

155.     Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

156.     In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

157. Defendant Niayzov did not respond to any of those texts.

158. Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

159. Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

160. Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

161. By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

162. By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

163. Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

164. Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing. As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

165.     As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

166.     As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

167.     Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

168.     Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

<strong><u>FIRST SECOND CAUSE OF ACTION</u></strong><br>
<strong>Violation of the Fair Housing Act, 42 U.S.C. § 3601 <em>et seq</em>.</strong><br>
<strong>(By All Plaintiffs Against All Defendants)</strong>

169.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

170.     It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

171.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

172.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

173.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

174.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

175.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

176.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

177.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

178.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

179.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

180.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

181.     Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

182.     Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

183.     As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

184.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

185.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

186.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

187.     Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §§ 1981 and 1982
### (By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)

188.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

189.     42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

190. 42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

191. Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with their effort to rent 518 West Caswell Avenue.

192. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

193. Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

194. Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

195. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

196. Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

197. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

198. Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

199. Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

200. Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

201. Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

202. Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

203. Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Selase based on their race.

204. Defendants acted with racial animus.

205. Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

206. Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

207. Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

208. Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

209. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

210.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

211.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

212.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

213.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

214.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

215.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

216.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

217.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

218.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

219.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

220. Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

221. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

222. Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

223. Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

224. Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

225. Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

226. Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

227. As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

228. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

229. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

230. Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

231. Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

232. Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

233. It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

234. Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

235. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

236. Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

237. Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

238. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

239.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

240.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

241.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

242.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

243.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

244.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

245.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

246.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

247.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

248.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

249.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

250.     Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.     An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)     refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)     discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)     coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)     ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)     make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)     train all management, agents, and employees on fair housing laws;

(iv)     display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)     allow monitoring of their rental screening and application process and decisions;

(vi)     retain records to allow for appropriate monitoring;

(vii)     develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)     undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)  establish a system so that their agents can be tested for unlawful discriminatory practices;

d.  An order and judgment awarding monetary damages to each Plaintiff;

e.  An order and judgment awarding punitive damages to each Plaintiff;

f.  An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.  Pre- and post-judgment interest on any and all such awards; and

h.  Any further relief that may be just and proper.


Dated: New York, New York
       June 12, 2024


By:  ___/s/ Eric Hecker___
     Mariann Wang
     Eric Hecker

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
mwang@chwllp.com
ehecker@chwllp.com

*Attorneys for Plaintiffs*