# Cuti Hecker Wang llp

305 Broadway, Suite 607
New York, NY 10007

Eric Hecker
212.620.2602 tel
212.620.2612 fax

ehecker@chwllp.com

September 9, 2024

By ECF

Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.*,
             24-cv-04201

Dear Judge Hall:

    We represent the Plaintiffs in this case. We write in response to the pre-motion letter that Defendant 202 Marine LLC ("202") submitted on September 6, 2024. For the reasons that follow, 202's contemplated motion has no merit.

Background

    This case involves shocking race discrimination in connection with residential apartment rentals in Staten Island and Brooklyn. Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a civil rights organization dedicated to eliminating housing discrimination in the New York City area. After FHJC received a complaint that Defendant Juda Niayzov, a real estate broker, had engaged in race discrimination, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

    During one of the tests, Niayzov went out of his way to encourage the white tester to view a unit in Bay Ridge owned by 202. At the same time, the Black tester repeatedly asked Niayzov if any units were available in Bay Ridge, and he ghosted her. This blatant race discrimination by Niayzov with respect to 202 is consistent with a slew of disturbing allegations in the Second Amended Complaint about Niayzov's conduct more broadly – all supported by recordings, texts, and emails – including that he complained to a tester that he had been robbed by "three Black guys with the ski masks" and commented that a Staten Island neighborhood he likes has "[v]ery nice people here, Italians, nice white people."

    202 concedes that it is liable if Niayzov was its agent. But it that asserts the Second Amended Complaint does not plauaibly assert an agency relationship. 202's

letter conveniently ignores the allegations in Paragraphs 111-115 of the Second Amended Complaint, which allege that after Niayzov showed the white tester a unit in Sheepshead Bay, he spontaneously showed her 202's unit in Bay Ridge.  To do that, Niayzov called 202's principal on his cell phone, which Niayzov was able to do because he apparently had 202's principal's contact information saved on his phone.  202 and Niayzov clearly had a significant pre-existing business relationship, and 202's principal clearly had made Niayzov aware that the unit was available for rent and sought Niayzov's assistance renting it – as defense counsel admitted to us during discussions that preceded the filing of 202's pre-motion letter.  This is more than sufficient to plausibly allege an agency relationship at this early stage of this litigation.

"Claims of housing discrimination under the NYSHRL and NYCHRL are analyzed under the same standard as claims arising from the [FHA]." *FHJC v. Broadway Crescent Realty, Inc.*, No. 10 Civ. 34, 2011 WL 856095, *9 (S.D.N.Y. 2011).  However, the NYCHRL has "'uniquely broad and remedial purposes,' which go beyond those of counterpart State or federal civil rights laws," *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 66 (1st Dep't 2009), so "the decisions (whether by federal or state court) construing the Fair Housing Act and/or the State HRL merely establish 'a floor below which the City HRL cannot fall, rather than a ceiling above which the City HRL cannot rise.'" *Fair Housing Justice Center, Inc. v. Beach Haven Apartments Associates LLC*, No. 525173/22, 2024 WL 1076110, at *5 (Sup. Ct. Kings Cnty. Feb. 29, 2024); *see also Banks v. Peace of Mind Realty*, No. 160829/2014, 2019 WL 4305610, at *7 (Sup. Ct. N.Y. Cnty. Sept. 11. 2019) ("It is well settled that the provisions of the NYCHRL are to be construed more liberally than its state or federal counterparts.").  The NYSHRL likewise must be "construed liberally for the accomplishment of the remedial purposes thereof, regardless of whether federal civil rights laws . . . have been so construed", and "[e]xceptions to and exemptions from [the NYSHRL] shall be construed narrowly in order to maximize deterrence of discriminatory conduct." N.Y. Exec. Law § 300.

As the Supreme Court has explained, it is well established that an action for housing discrimination is, in effect, a tort action, and ordinary tort-related vicarious liability rules apply.  *Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("It is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment.") (citations omitted); *accord Short v. Manhattan Apts., Inc.*, 916 F. Supp. 2d 375, 399 (S.D.N.Y. 2012).  As the court in *Short* explained, "[t]hese principles provide that liability generally flows from the agent to the principal. . . . ." *Short*, 916 F. Supp. 2d 375 (citation omitted).  In other words, agents bind principals when acting within the scope of their duties, even when the principal neither authorized those acts nor knew of them. *Cleveland v. Caplaw*

*Enters*., 448 F.3d 518, 523-24 (2d Cir. 1994); *Khodeir v. Sayyed*, No. 15 CIV. 8763 (DAB), 2016 WL 5817003, at *9 (S.D.N.Y. Sept. 28, 2016).

Courts have routinely applied this principle in the context of housing discrimination. In *Cabrera v. Jakabovitz*, the leading Second Circuit case on this issue, the Court found two landlord owners liable for the discriminatory acts of their real estate agents. 24 F.3d 372, 386-88 (2d Cir. 1994) (upholding jury finding that realty company and its salespeople were agents for the owners and that owners were liable for the discriminatory practices of the real estate salespeople); *see also Cleveland*, 448 F.3d at 520 (2d Cir. 1994) (vacating lower court's dismissal of complaint because "plaintiffs have adequately pled facts that could support a finding of vicarious liability against [owner] Caplaw."); *Khodeir*, 2016 WL 5817003, at *9 (holding individual owner vicariously liable for the discriminatory acts of his agent); *Mancuso v. Douglas Elliman LLC*, 808 F. Supp. 2d 606, 630 (S.D.N.Y. 2011) (landlord could be vicariously liable for discrimination by real estate agent even when it did not authorize his actions). New York courts are no less vigilant in applying these rules. *See, e.g., Newson v. Vivaldi Real Estate Ltd.*, 2023 WL 3778574 (N.Y. Cnty. 2023) (refusing to dismiss housing discrimination complaint that alleged landlord was liable on agency theory), *reconsideration denied*, 2023 WL 8846564; *FHJC v. Beach Haven*, 2024 WL 1076110, at *6 (same) ("The questions of whether the [building owners] were aware of [the real estate agents'] discriminatory practices or whether the [building owners] specifically authorized, or even rejected such practices, are irrelevant at this early stage of litigation.").

Are there factual scenarios in which 202's principal could have had a pre-existing business relationship with Niayzov, expressly sought Niayzov's assistance in renting the unit at issue, personally spoken to Niayzov about the white tester by telephone, and nevertheless not have established an agency relationship with Niayzov? Perhaps. But 202's contention that Plaintiffs have not even plausibly alleged a claim based on an agency theory is meritless.

Respectfully submitted,

Eric Hecker

cc: All Counsel of Record (by ECF)