# Wang Hecker LLP

305 Broadway, Suite 607
New York, NY 10007

Eric Hecker
212.620.2602 tel
212.620.2612 fax

ehecker@wanghecker.com

October 28, 2024

By ECF

Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:   *Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.*, 24-cv-04201

Dear Judge Hall:

    We represent the Plaintiffs in this case.  We write in response to the pre-motion letter that counsel for Defendants Xian Jin Zhang and Remax Edge submitted on October 23, 2024.  Their contemplated motion has no merit.

Background

    This case involves shocking race discrimination by real estate brokers and property owners in Staten Island and Brooklyn.  Defense counsel's recitation of the facts that supposedly are "undisputed" is inaccurate.  The allegations are as follows.

    Plaintiffs Patricia Delone-Felix and Stanley Felix contacted Defendant Judah Niayzov about a listing for an available apartment at 581 West Caswell Avenue in Staten Island.  SAC ¶ 26.  Niayzov provided Plaintiffs with the door code so that they could see the unit unescorted, and he therefore was at first unaware that they are Black.  *Id*. ¶¶ 27-29.  Plaintiffs loved the apartment and applied for it.  *Id*. ¶¶ 30-31.  Plaintiffs are both employed and have excellent credit.  *Id*. ¶ 32.  After Plaintiffs submitted the requested documentation, they also submitted copies of their driver's licenses, revealing for the first time that they are Black.  *Id*. ¶¶ 35-36.  Niayzov subsequently told Plaintiffs that their application had been rejected and that the reason why the owners had rejected the application was that the owners had had negative experiences renting to Black tenants in the past.  *Id*. ¶ 43.

    Plaintiffs named Niayzov and the property owners as Defendants in this action.  Plaintiffs' counsel were at first unable to determine where the owners live through public records searches and therefore reached out to Niayzov's counsel to obtain that information.  On July 23, 2024, Niayzov's counsel informed Plaintiffs'

counsel in writing that Niayzov never dealt directly with the owners and that another real estate agent, Defendant Zhang, was the "intermediary who acted on behalf of the owners."  Plaintiffs therefore named Zhang and Remax Edge as Defendants, alleging that Zhang told Niayzov that Plaintiffs application was rejected because they are Black, and claiming that Zhang and Remax Edge were the owners' agents and/or had aided and abetted the owners' discrimination.  SAC ¶¶ 2, 22-23, 44, 175-76, 182-83, 195-96, 202-03, 219-20, 226-27, 238-39, 245-46.  Niayzov's counsel's written representation that Zhang "acted on behalf of the owners" in the transaction at issue certainly gave Plaintiffs a good-faith basis to assert that claim.

Attorney Asher Kest appeared for Zhang and Remax Edge.  Mr. Kest informed me that Mr. Zhang formally represented the property owners in connection with their purchase of 581 Caswell Avenue, but he denied that Mr. Zhang had acted as agent with respect to Plaintiffs' rental application.  On October 1, 2024, I asked Mr. Kest in writing whether Mr. Zhang had "engage[d] in any form of communication whatsoever, verbal or written, at any time, with Niayzov regarding 581 West Caswell."  In response, Mr. Kest represented to me that Mr. Zhang had in fact been directly involved in Plaintiffs' rental application, but that he supposedly had only provided what Mr. Kest called "translation services."  That contention is odd because Mr. Zhang is a professional real estate agent, not a professional language translator.  If Mr. Zhang really had no role whatsoever with respect to Plaintiffs' rental application other than serving as a translator, why did the owners rely on their real estate agent – as opposed to anyone else who speaks both their native language and English – to translate?

In an effort to learn more, I submitted the following written questions to Mr. Asher on October 9, 2024:

> Did your client put the new owners of the unit in touch with Niayzov?  If not, do you know how the new owners came into contact with Niayzov?  Was there only one conversation relating to the unit in which Mr. Zhang participated, or more than one?  Can you tell us the date and time of the call you allude to, how long it lasted, who was on the call, and the substance of what was said?

Mr. Asher declined to provide any of this information.  Instead, he submitted the pre-motion letter at issue.

Legal Framework

An action for housing discrimination is, in effect, a tort action, and ordinary tort-related vicarious liability rules apply.  *Meyer v. Holley*, 537 U.S. 280, 285 (2003).  "It is well established that agents will be liable for their own unlawful

conduct, even where their actions were at the behest of the principal." *Short v. Manhattan Apts., Inc.*, 916 F. Supp. 2d 375, 399 (S.D.N.Y. 2012). An agent is under no obligation to perform an unlawful act on behalf of the principal. *Hous. Rts. Initiative v. Compass, Inc.*, 2023 WL 1993696, at *19 (S.D.N.Y. Feb. 14, 2023), *reconsideration denied*, 2023 WL 2989048 (S.D.N.Y. Apr. 18, 2023); *see also* Restatement (Second) of Agency § 343 ("An agent who does an act otherwise a tort is not relieved from liability by the fact that he acted at the command of the principal or on account of the principal . . . .").

Even assuming Zhang did no more than communicate the property owners' unlawful decision to reject Plaintiffs' application because of their race, the governing statutes make that communication itself unlawful. *See* 42 U.S.C. § 3604(c); N.Y. Exec. Law § 296(5)(c)(2); NYCHRL § 8-107(5)(c)(2).

At a minimum, Mr. Zhang's active assistance to the property owners in communicating to Mr. Niayzov that they had rejected Plaintiffs' application based on their race is sufficient for Plaintiffs to proceed against him on an aiding and abetting theory. *See* N.Y. Exec. Law § 296(6); NYCHR § 8-107(19). Under these broadly remedial statutes, any significant "participation" in unlawful conduct is sufficient to confer liability. *See, e.g., Attali v. City of New York*, 2018 WL 11476391, at *4 (S.D.N.Y. Sept. 17, 2018); *Butts v. New York City Dep't of Educ.*, 2018 WL 4725263, at *16 (E.D.N.Y. Sept. 28, 2018); *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011). Indeed, even the mere failure to investigate apparent unlawful conduct can constitute sufficient "participation" to support an aiding and abetting claim. *See Delisi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014) (collecting cases).

Defendants' contemplated motion therefore has no merit. Plaintiffs' claims are well-pled, and they are entitled to conduct discovery to determine the nature and extent of Zhang's participation in the unlawful denial of their application. We respectfully request that the Court calendar this issue to be heard at the pre-motion conference already scheduled for November 1, 2024 at 3:00 p.m.

                    Respectfully submitted,

                    Eric Hecker

cc:    All Counsel of Record (by ECF)