# Wang Hecker LLP

305 Broadway, Suite 607
New York, NY 10007

Eric Hecker
212.620.2602 tel
212.620.2612 fax

ehecker@wanghecker.com

April 3, 2025

By ECF

Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.*,
      24-cv-04201

Dear Judge Hall:

  This firm represents the Plaintiffs. I write to respond to the pre-motion letter that attorney Sekas submitted on behalf of Defendant 202 Marine LLC ("202") seeking leave to move to dismiss the Third Amended Complaint ("TAC"). Attorney Sekas's spin on the facts and the law are both frivolous. He should be admonished that moving to dismiss would be futile and potentially sanctionable.

  Plaintiffs allege that on March 5, 2024, Defendant Niayzov showed a unit at 202 Marine Avenue to a white FHJC tester and then refused to show the same unit to a Black FHJC tester. TAC ¶¶ 120-145, 156-175, 180-182, 191-198. A recording confirms that Niayzov called the owner of 202 Marine LLC, Nick Sekas (who is the cousin of and has the same name as attorney Sekas) and discussed the white tester's qualifications. TAC ¶¶ 140-143. It is undisputed that Niayzov had substantial involvement in the process of renting this unit. The question presented is whether Plaintiffs have plausibly alleged that Niayzov acted as 202's agent such that 202 may be held vicariously liable for Niayzov's discrimination.

  Attorney Sekas asserts misleadingly that Sekas advertised the unit on Apartments.com and sent a "generic" email about it to "numerous" real estate agents. Attorney Sekas fails to acknowledge that Sekas did not list the unit on Apartments.com or send that email to the other brokers until March 18, 2024 – nearly two weeks *after* the discrimination alleged in the TAC. Furthermore, documents that were recently produced in this case confirm that beginning on February 20, 2024 – *nearly a month before Sekas listed the unit on Apartments.com and advertised it to other brokers* – Sekas sent a floorplan for the unit to Niayzov and began working with him *directly* and apparently *exclusively*. Ex. 1. During the extensive private text colloquy that ensued, Niayzov repeatedly requested photos of the unit, but – because Sekas apparently was giving an exclusive preview to

Niayzov only – Sekas did not yet have photos. *Id*. Sekas and Niayzov spoke by telephone about the unit numerous times, and on February 28, Niayzov presented a couple with good income and credit; Sekas repeatedly pushed Niayzov to show them the unit, but they did not apply. *Id*. On March 5, Niayzov showed the unit to the white FHJC tester, and on March 8, Niayzov told Sekas that she was not interested either. *Id*. On March 14, Sekas finally emailed Niayzov (and apparently only Niayzov) preliminary photos of the unit. *Id*. Niayzov criticized the quality of the photos, and, accepting that feedback, Sekas said he would retake them, telling Niayzov to "Just bring the right clients." *Id*. Then, *four days later*, Sekas listed the unit on Apartments.com and sent the email blast to other brokers. On April 6, moreover, Sekas sent Niayzov another text *offering to pay his broker's fee.* Ex. 1. It is disturbing that attorney Sekas's letter does not acknowledge any of these facts.

The law governing whether Niayzov was acting as 202's agent is well settled. In *Cleveland v. Caplaw Enterprises*, 448 F.3d 518 (2d Cir. 2006), the Second Circuit held that an owner is vicariously liable under the Fair Housing Act for the discriminatory acts of a real estate agent if three elements are satisfied: "(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; *and* (3) the understanding of the parties that the principal is to be in control of the undertaking." *Id*. at 522 (emphasis in original) (citations omitted). The Court emphasized that this inquiry is "highly factual" and "can turn on a number of factors, including the situation of the parties, their relations to one another, and the business in which they are engaged; the general usages of the business in question and the purported principal's business methods; the nature of the subject matters and the circumstances under which the business is done." *Id*. In *Cleveland*, the Circuit reversed the District Court's dismissal of the complaint, holding that "it is not at all clear that it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 523 (quotation omitted). "To adequately allege an actual agency relationship at a motion to dismiss stage, a plaintiff need only allege facts sufficient to support a reasonable inference of actual authority, and its pleadings may rely upon facts that would constitute circumstantial evidence of authority." *See v. Gov't Emps. Ins. Co.*, 2023 WL 2731697, at *12 (E.D.N.Y. Mar. 30, 2023), *aff'd sub nom. Milligan v. GEICO Gen. Ins. Co.*, 2025 WL 799276 (2d Cir. Mar. 13, 2025) (quotation omitted) (denying motion to dismiss). This liberal standard is consistent with the low bar set in the applicable regulations, which define "Broker or Agent" to include "any person authorized to perform an action on behalf of another person regarding any matter related to the sale or rental of dwellings." 24 C.F.R. § 100.20. The First Department recently made clear that the standard for agency liability under the New York City Human Rights Law is equally low. *See Newson v. Vivaldi Real Estate Ltd.*, 226 N.Y.S.3d 6 (1st Dep't 2025); *see also Fair Housing Justice Center, Inc. v. Beach Haven Apartments Assocs.*

*LLC*, 2024 WL 1076110, at *6 (N.Y. Sup. Ct. Feb. 29, 2024) (denying landlord's motion to dismiss where the complaint alleged that broker "managed the listing").

Plaintiffs unquestionably have plausibly alleged agency liability. With respect to the first element, Plaintiffs allege that Sekas knew Niayzov from prior transactions and authorized him to act as one of 202's agents with respect to screening applicants for and finding a tenant for the unit, TAC ¶¶ 131-135, and their text colloquy shows that Sekas repeatedly asked Niayzov to bring him a suitable tenant, well before he informed other brokers about the unit, even accepting Niayov's advice about the quality of the photos and saying to "Just bring the right clients." Ex. 1. With respect to the second element, Niayzov showed the unit to multiple prospective tenants. *Id.* And with respect to the third element, the recording of the March 5 telephone call between Niayzov and Sekas confirms that although Sekas allowed Niayzov to determine in the first instance who should see the unit, Sekas maintained ultimate control over who to rent to. TAC ¶¶ 140-143.

Ignoring both the facts and the controlling case law, attorney Sekas asserts that there can be no agency liability as a matter of law without a written agency agreement. That assertion is frivolous. The case law could not be more clear that no writing is required for the common law agency test to be met. *See Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 343 (S.D.N.Y. 2018) (holding that "the law of agency does not require an explicit agreement; rather the agreement may be merely informal, implicit, and nonspecific" and "need not be through written or spoken words but instead may be by means of other conduct" (quotation omitted); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 2014 WL 4966072, at *27 (E.D.N.Y. Oct. 3, 2014); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 486 (S.D.N.Y.2001); *99 Commercial St., Inc. v. Goldberg*, 811 F. Supp. 900, 906 (S.D.N.Y.1993). The only case attorney Sekas cites in support for his preposterous argument that a written agreement is required, *Leist v. Tugendhaft*, 64 A.D.3d 687 (2d Dept. 2009), merely held that under New York's statute of frauds, an unsigned email is insufficient *to create an obligation to convey title to real estate*. If attorney Sekas pursues this frivolous argument, Rule 11 sanctions should be imposed.

Finally, attorney Sekas's request for leave to move to dismiss should be denied on the additional basis that his pre-motion letter violates the three-page limit prescribed in Rule III.A.3 of Your Honor's Individual Practices. His willingness to flout that rule is consistent with his disregard of the facts and law.

Respectfully submitted,

Eric Hecker