# Wang Hecker llp

305 Broadway, Suite 607
New York, NY 10007

Eric Hecker
212.620.2602 tel
212.620.2612 fax
ehecker@wanghecker.com

April 23, 2025

By ECF
Hon. Taryn A. Merkl
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Fair Housing Justice Center, Inc. et al. v. Niayzov et al.*, 24-cv-04201

Dear Judge Merkl:

This firm represents the Plaintiffs.  I write jointly with defense counsel pursuant to your April 10, 2025 Order to provide an update on the status of the outstanding discovery disputes, including details regarding the outcome of the recent meet and confer sessions.  As set forth below, the in-person conference scheduled for tomorrow at 2:15 p.m. remains necessary.

Plaintiffs' Dispute with the Zheng/Weng Defendants

Mr. Luk represents Zheng and Weng, the owners of 581 Caswell.  Plaintiffs Delone and Delone-Felix applied for that unit but were told that they were turned down due to their race.

On March 21, 2025, Mr. Luk served his (overdue) responses to Plaintiffs' discovery requests and his client's production, which consisted only of leases relating to a different unit than the one in question.  Mr. Luk did not produce any emails, texts, phone records, applications, or leases relating to the process of renting the unit in question.  Mr. Luk and I met and conferred by telephone on March 21, March 25, and March 31.

On April 21, 2025, I met and conferred with Mr. Luk once again, and he promised to produce additional responsive emails by the end of that day.  He did produce additional emails as promised, but all of the additional emails except one once again relate to a unit that has nothing to do with this case.  I am grateful that Mr. Luk did produce one relevant email, which, critically, shows that Mr. Kest's client, Zhang, prepared the lease in question and sent it to Zheng to be executed, together with a letter to HRA that Zhang drafted for Zheng, Ex. A, and that Zhang therefore is being dishonest with the Court about his involvement in the transaction at issue.  It is difficult to accept that Zheng and Weng have no documents

whatsoever relating to the process of renting the unit at issue other than that one email.  For example, did Zheng not sign and return the lease?

<u>Mr. Luk responds as follows</u>:

I represent the co-defendants Zheng/Weng, the owners of 581 Caswell and denied that Delone and Delone-Felix were turned down due to their race.  I have further informed the Plaintiff's attorney that Zheng/Weng, who are out of state, with limited use of the English language, never received any application or information from Delone and Delone-Felix and needless to say has never met them as to ascertain their race. On or about March 21, 2025, we did provided plaintiff's attorney with whatever was responsive to his demand. To the extent that there were no email, text, applications or leases relating to the renting of the property, none was available as we have never receive such. In my telephone conversation with plaintiff's attorney, I told them that was all provided to me by my clients as my clients had informed me that there were only 3-4 telephone conversations transpire during this period.  Additional documents were provided to plaintiff's attorney on 4/21/2025 which showed the only emails and messages to my clients were to sign and return the lease.  While it is hard for plaintiff's attorney to believe, that is all and we cannot provide what we don't have.

<u>Plaintiffs' Dispute with the Remax/Zhang Defendants</u>

On March 21, 2025, Mr. Kest served his overdue responses to Plaintiffs' discovery requests and his clients' production.  Most of this small production consisted of documents relating to the owners' purchase of the house in 2021.  Defendants produced no communications between Zhang and the owners about the renting of the unit in question and no communications between Zhang and Niayzov.

That same day, however, Niayzov produced documents that undermine confidence in Mr. Kest's Rule 26(g) certification.  Niayzov's counsel produced an email in which Niayzov transmitted Plaintiffs' financials directly to Zhang's email box.  Niayzov also produced a text message between himself and Zhang in which Zhang asked Niayzov about the ethnicity of a prospective tenant.  Mr. Luk has represent that Zhang is the one who found prospective tenants and prepared the lease for the unit at issue, and we now have the email (Ex. A) in which Zhang sent Zheng the draft lease that he prepared, together with a draft letter to HRA that he also apparently prepared for Zheng.

I previously described the unsatisfactory meet and confer session that I had with Mr. Kest on March 24, 2025.  Mr. Kest and I met and conferred once again on April 21, 2025.  During that discussion, Mr. Kest informed me that to the extent Zhang received or sent responsive emails, he deleted them.  Mr. Kest further

informed me that Zhang has now located his texts from the relevant period, but that Mr. Kest supposedly needs three additional weeks (in addition to the month since our prior meet and confer) to review and produce responsive tests because, as he put it, he has "a million things to do." With respect to phone records, Mr. Kest informed me that he still has not attempted to download the records from the (brief) relevant period and still does not know which carrier Zhang used during that period. He said that he is "working on" that but refused to commit to a date certain for producing responsive phone records. Mr. Kest's assertion below that Zhang's text messages (even from an old phone) and telephone records are not within his control is frivolous.

<u>Mr. Kest responds as follows:</u>

Our firm represents defendants Xian Jin Zhang ("Zhang") and Womcore LLC d/b/a Remax Edge (collectively with Zhang, "Remax"). As already discussed in Remax's response to Plaintiffs' letter of April 1, 2025, Remax is working to provide all responsive documents which may exist. See ECF Dkt. No. 72. Aside from pure impatience, it is unclear what Plaintiffs' contentions even are, given that Remax has gone above and beyond the requirements for discovery, affirmatively seeking to acquire old cell phone records and text messages, despite the fact that they are not in Remax's possession. Plaintiffs' submission above appears to be more of a personal gripe against counsel than a position which requires adjudication on production of documents.

Plaintiffs have misrepresented Remax's production of emails; as Remax has already informed Plaintiffs, Zhang regularly deletes emails from his personal inbox. Plaintiffs have further misrepresented Remax's position with respect to phone records. As an initial matter, these records were not even requested in Plaintiffs' document demands. Nor are these records in Remax's possession, custody, and control. Despite these issues, Remax has nonetheless already obtained the call logs available and will provide them to Plaintiff. Had Plaintiffs waited for a single day, that information would have been available. Notably, Plaintiffs have not produced the actual email or text described above, but rather an undated screenshot of a text message and word document with a purported copy and paste from an email.

We note that Plaintiffs' counsel's unprofessional conduct has made progress in discovery extremely contentious and difficult; constantly berating all defense counsel, personal insults both on calls and in writing, and continued threats to report various counsel for imagined slights have created an extremely hostile environment. In the instant joint letter and elsewhere, Plaintiffs' counsel seems to believe that the respective attorneys themselves are the defendants, rather than the parties. Plaintiffs' counsel sends serial emails on weekends demanding that defense counsel jump at every request, and files excessive letter motions regarding

discovery. Plaintiffs' counsel's impatience with respect to document production is only one demonstration of lack of good faith. Indeed for this instant letter, Plaintiffs' counsel created artificial early deadlines based on his convenience and schedule, while refusing to provide the same courtesy for any other party.

<u>Plaintiffs' Dispute with 202 Marine LLC</u>

Plaintiffs allege that Niayzov showed an available apartment at 202 Marine Avenue to a white FHJC tester and then refused to show the same unit to a Black FHJC tester. A recording confirms that Niayzov called the owner of 202 Marine LLC, Nick Sekas (who is the cousin of and has the same name as his attorney in this case) and discussed the white tester's qualifications, and that Mr. Sekas arranged for his sister to show Niayzov and the white tester the unit. Attorney Sekas has repeatedly represented to the Court that 202 Marine did not work with Niayzov directly and that, instead, the unit was generally listed on Apartments.com.

On March 21, 2025, attorney Sekas served his (overdue) production, which shows that the Apartments.com listing *was not posted until nearly two weeks after the discriminatory acts occurred*. During that period, moreover, Sekas engaged with Niayzov extensively, repeatedly seeking Niayzov's assistance in finding a tenant, stating that Niayzov had discretion to "Just bring the right clients," and even offering to pay Niayzov's broker fee.

As shown in the attached email colloquy, Ex. B, I responded to attorney Sekas on March 23, noting my concerns about both his prior representations and the documents that were missing. Attorney Sekas responded two days later, insisting that he had "fully answered the disclosure" and asking me to be "more specific," so I wrote an even more detailed email. Attorney Sekas produced no other documents between then and our meet and confer call on April 17. When we met and conferred on April 17, Attorney continued to insist that 202 Marine LLC has no additional responsive documents whatsoever in its possession, custody, or control.

Contrary to that express representation, on April 21, 2025, attorney Sekas produced (a) additional texts between Sekas and Niayzov and (b) the lease/riders for the tenant who rented the unit in question. However, attorney Sekas did not produce any of the underlying application materials showing her qualifications, nor did he produce and documents whatsoever relating to any internal 202 Marine communications about renting this unit or any communications whatsoever with any other agents relating to renting this unit. Defendant's theory, as I understand it, is that many brokers were marketing this property, not just Niayzov. It is impossible to accept that no other documents exist.

Attached as Exhibit C is my most recent email colloquy with attorney Sekas.

I also feel compelled to address the wildly false statements about Plaintiffs' compliance with their discovery obligations that attorney Sekas made in his April 17, 2025 letter opposing the pending motion to compel (ECF 77).  Contrary to his misrepresentations to the Court, the facts are these:  Plaintiffs pro-actively produced the entire testing file, including all recordings, on March 14, 2025 – before any Defendant had served any discovery requests; 202 Marine LLC served discovery requests on March 12, 2025 with a return date of May 4, 2025; and from the getgo, I have repeatedly assured attorney Sekas that we would produce any documents (in additional to our initial pro-active voluminous production of the entire testing file) well in advance of the May 4, 2025 deadline.  Indeed, Plaintiffs have now responded to attorney Sekas's requests, more than two weeks early, and produced additional documents.  To the extent that the tenor between myself and attorney Sekas and Mr. Kest is at times charged, I ask the Court to consider the audacity of their misrepresentations to the Court – with respect to the facts (we now know that Sekas went deep with Niayzov directly long before the Apartments.com blast), the law (federal and state discrimination agency law are supplanted by the New York real property statute of frauds?), and Plaintiffs' alleged non-compliance with their discovery obligations.  Accusing opposing counsel of discovery violations is serious.  I stand by my accusations that attorney Sekas is out of compliance.  I take exception to his suggestion that I have done anything but act diligently and compliantly.

<u>Attorney Sekas responds as follows</u>:

This office represents defendant 202 Marine LLC.  I am writing this letter with Plaintiff's counsel pursuant to your April 10, 2025 Order to provide an update to the status of the outstanding discovery disputes, including details of the meet and confer sessions and subsequent submission of 202 Mariner, LLC following the session, which is scheduled for April 24, 2025, scheduled at 2:15pm.  It is important to note this matter is still in the initial disclosure stage of litigation.  Notwithstanding this, Plaintiffs are demanding a broad scope of discovery documents.  202 Marine is preparing a motion to dismiss in hopes of being dismissed from this suit as they are an improperly named party.

Due to the fact we are in the initial disclosure stages, my client and I are still assembling documents which would be responsive to discovery demands served.  Moreover, 202 Marine denies the allegations contained in the Complaint with regard to the FHJS tester with regard to its unit. At no point in time did the FHJC tester show an interest in the unit owned by Defendant 202 Marine, LLC vacant and remodeled unit offered on Apartments.com. This unit was allegedly shown

through a realtor named Jacob Niayzov ("Niayzov"). Further 202 Marine denies any discriminatory comments involving the principals or Defendant 202 Marine. No application or appointment was ever made with 202 Marine, LLC and the alleged tester. In fact, a blanket advertisement to Niayzov and multiple other local brokers, and some discussions regarding the available unit with Niayzov seem to be the basis for this extensive suit and claims by Plaintiff.

202 Marine, LLC provided extensive documents to Plaintiff in compliance with the Court's rulings to the best of its ability. Following supplemental requests and a conference at the Court's suggestion on April 17, 2025, some of which exceed the scope of the initial request, 202 Marine, LLC did in fact produce:

⦁ Bates Stamped Docs 202 Marine 0044 to 0080 of lease agreement and lease submitted by and to the successful applicant;
⦁ Bates Stamped Docs 202 Marine 0081 to 0113 of text messages between 202 Marine agent Nicholas Sekas and defendant J. Niayzov;
⦁ Bates Stamped Doc 202 Marine 0114 of the email sent by 202 Marine agent Nicholas Sekas to numerous realtors in the New York area advising of the relevant unit for rent.

(See Exhibit D to this letter)

I certify that there is no fibbing, or lack of diligence as accused by Plaintiff's counsel in. My client did not intentionally withhold any information, but continues to provide additional information which is deemed responsive. The subject property owned by 202 Marine is an investment property and not a main source of employment, and therefore, assembling documents relating to the same is time consuming. To date, all relevant documents in my client's possession has been provided. My client is uninsured and continue to proclaim its innocence in any scheme to discriminate in any way, shape or form. Despite this, Plaintiff is unnecessarily continuing litigation against 202 Marine through a barrage of false accusations for its own financial benefit to the detriment of the Defense and this Honorable Court.

We are preparing a motion to be filed to dismiss this matter on legal and procedural grounds and we hope this Court understands that we are doing our best to comply with your Honor's rulings and requirements.

Plaintiffs' Dispute with the Niayzov Defendants

Plaintiffs served the Niayzov Defendants with document demands and interrogatories in January.  The Niayzov Defendants still have not responded.

On March 21, 2025, Mr. DelCioppio belatedly served a partial document production (without responses). I met and conferred by telephone with Mr. DelCioppio on March 21 and again on March 27. During those calls, Mr. DelCioppio assured me that additional document would be produced by Monday, March 31. I then heard nothing from him for more than two weeks. On April 16, 2025, Mr. DelCioppio's firm filed a meritless motion to withdraw as counsel. On April 10, 2025, the Court ordered Mr. DelCioppio to respond to the pending motion to compel no later than April 17, 2025. Mr. DelCioppio did not comply.

I met and conferred with Mr. DelCioppio again on April 21, 2025. During that conversation, Mr. DelCioppio reported that his clients continue to insist that they have no additional responsive documents whatsoever in their possession, custody, or control. I pointed out that that is impossible, noting, to take just one example, that no documents whatsoever have been produced relating to the Blueberry Lane test. I asked Mr. DelCioppio whether any attorney affiliated with his firm had assisted his clients with their searches, and he admitted that no attorney had done so and that he was simply taking his clients' word that they supposedly have nothing else. I asked him whether his position is that, under these circumstances, it is appropriate for him to simply take his clients' word for it, and he admitted that at this point, an attorney should be involved in performing searches for responsive emails, texts, and other documents. Mr. DelCioppio further stated that he currently is constrained not to do so because of his firm's fee dispute with his clients.

Plaintiffs respectfully submit that the Court should order the Niayzov Defendants to serve responses to the outstanding discovery requests forthwith and should order Mr. DelCioppio to personally engage in appropriately diligent searches for responsive documents forthwith, including by personally searching all relevant devices and email accounts. The pending motion to withdraw is meritless, and even if it had merit, its pendency is not a valid basis for shirking basic discovery obligations.

Mr. DelCioppio responds as follows:

1. Sacco & Fillas in no way concedes that our motion to be relieved as the Niayzov's counsel is without merit. Sacco & Fillas will address the merits of its position in a formal reply to the formal opposition filed by Mr. Hecker on April 17, 2025. I am also prepared to make my reply argument orally at the April 24, 2025 conference, if the court wishes.

2. The assurances of more document production Mr. Hecker mentions were contingent on: (1) resolution of the fee dispute; and (2) the Niayzovs actually having additional documents to be produced.

a.  With respect to the fee dispute, producing the additional materials, including the attorney search suggested by Mr. Hecker, would cause Sacco & Fillas financial hardship as additional fees accrued, exacerbating an already significant balance due to this office from the Niayzovs.

b.  Further, the Niayzovs, as active realtors in New York City, absolutely rely on their phones and electronic devices to communicate with clients and other parties as part of their work.  If the Niayzovs were required to turn their phones and other electronic devices over to this office (or any attorneys) while it searched for responsive materials, the Niayzov's would essentially be unable to work.  Not only would this severely prejudice the Niayzov's financially, it would prevent them from ever resolving the fee dispute with this office.

c.  Under FRCP 45, Mr. Hecker can obtain phone records and similar materials via a third-party subpoena on Apple and the Niayzov's cellular data provider.  Mr. Hecker has made no representations that the Niayzov's are the sole source of the materials he is seeking (including other defendants in this action or other third parties).  Until Mr. Hecker has established this, he cannot reasonably expect the Niayzov's to cease their business operations as their attorneys search their phones and computers for responsive material.

d.  Lastly, Mr. Hecker relies on circumstances and speculation to assert that the Niayzov's are in possession of responsible materials that they have not produced.  The Niayzov's should not be burdened with having to prove a negative.

<u>Plaintiffs' Dispute with Defendant Demirovic</u>

Plaintiffs served Defendant Demirovic with discovery requests in January 2025.  He has not responded or produced any documents.  I met and conferred with defense counsel, Mr. Toback, on April 16, 2025.  Mr. Toback indicated that he would be producing documents soon, but to date, he still has not served responses or any documents.

<u>Mr. Toback responds as follows</u>:

I am working with my client to compile the documents responsive to the discovery requests; I expect to have response to Mr. Hecker by May 2, 2025.

Letter to Judge Merkl
April 23, 2025
Page 9 of 9

\* \* \* \* \*

On behalf of all counsel, I thank the Court for its attention to the issues presented in this letter,  We look forward to discussing them with the Court further tomorrow afternoon.

Respectfully submitted,

Eric Hecker

# EXHIBIT A



581 West Caswell Ave (西卡斯韦尔大街 581 号)

xian jin zhang <yydohcy@hotmail.com>
发送至 我 ▾
英语 → 中文 | 显示原始邮件内容

您好

请参阅附件中租约最后一页和 HRA 信函。然后回复我的邮件。

谢谢

2 个附件 · 由 Gmail 扫描 ⓘ

Lease 581 West C...    Letter for check f...

000063

# Lease Agreement

**Lease Term:** 1 Year

**581 West Caswell Ave #2FL, Staten Island NY 10314**    **Lease begins: January 1, 2024**
**Lease Ends: December 31, 2024**

Landlord: **Xue Qiang Zheng**
Tenants: Kenny Bautista, Joe Bautista, Oscar Fulcon, Belen Delagado.
**Rent: $2,700**

*The Landlord and Tenant agree to lease the apartment for the terms and at the Rent stated on these terms.*

**1. Use:** The Apartment must be used only as a private residence and should not be used for any other reason other than the primary residence of the Tenant. Only a party signing this lease may use the Apartment. This is subject to Tenant's rights under the Apartment Sharing Law and to limits on the number of people who may legally occupy an Apartment of this size.

**2. Failure to give possession:** Landlord shall not be liable for failure to give Tenant possession of the Apartment on the beginning date of the Lease Term. Rent shall be payable as of the beginning of the lease term unless Landlord is unable to give possession of the Apartment to Tenant. Rent shall then be payable as of the date possession is available. Landlord must give possession within a reasonable time, if not, Tenant may cancel and obtain a refund of money deposited. Landlord will notify Tenant as to the date possession is available.

**3. Rent, added rent:** The rent payment for each month must be paid on the **first day** of that month at the Landlord's indicated address. Landlord need not give notice to pay the rent. Rent must be paid in full without deduction. The first month's rent is to be paid when Tenant signs this Lease. **If rent is not paid in full within 5 days, a $75 late penalty will be incurred. Tenant will be charged a $50 penalty for any returned/bounced checks.** These added rent/fees will be billed and may be payable as rent, together with the next monthly rent due or may be deducted from security deposit. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent. **If tenant defaults on paying the monthly lease, the landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action. If the tenant fails to pay rent and is one month late, the landlord retains the right to initiate legal eviction proceedings.**

**4. Notices:** Any bill, statement or notice must be in writing. If addressed to Tenant, it must be delivered or mailed to the Tenant at the Apartment. If addressed to Landlord it must be mailed to Landlord's indicated address. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. A notice must be sent by certified mail. Each party must accept and claim the notice given by the other. Landlord must notify Tenant if Landlord's address is changed.

**5. Security:** Tenant has given security to Landlord in the amount stated in the last page. Tenant understands that the security will be held in a non-interest-bearing account. Therefore, deposits returned after inspecting the premises for damages will be no greater than the original amount given. Deductions will be taken from the security if the apartment was not returned at its original state.

> If Tenant does not pay rent or added rent on time, Landlord may use the security to pay for rent and added rent then due. If Tenant fails to timely perform any other term in this Lease, Landlord may use the security for payment of money Landlord may spend, or damages Landlord suffers because of Tenant's failure. If the landlord uses the security Tenant, shall, upon notice from the Landlord, send to the Landlord an amount equal to the sum used by the Landlord. That amount is due, when billed, as rent. At all times Landlord is to have the amount of security stated in the last page.

> If Tenant fully performs all terms of this Lease, pays rent on time and leaves the Apartment in good condition on the last day of the Term, then the Landlord will return the security being held.

> If Landlord sells or leases the Building, Landlord may give the security to the buyer or lessee. In that event Tenant will look only to the buyer or lessee for the return of the security and Landlord will be deemed released. The Landlord may use the security as stated in this section. Landlord may put the security in any place permitted by law. Tenant's security will bear interest only if required by law. Landlord will give Tenant the interest when Landlord is required to return the security to Tenant. Any interest returned to Tenant will be less the sum Landlord is allowed to keep for expenses. Landlord need not give Tenant interest on the security if Tenant is in default.

**6. Alteration:** Tenant must obtain Landlord's prior written consent to install any paneling, flooring, "built in" decorations, partitions, railings, or make alterations or to paint or wallpaper the Apartment. Tenant must not change the plumbing, ventilating, air conditioning, electric or heating systems. If consent is given, the alterations and installations shall become the property of the Landlord when completed and paid for. They shall remain with and as part of the Apartment at the end of the Term. Landlord has the right to demand that Tenant remove the alterations and installations before the end of the Term. The demand shall be by notice, given at least 15 days before the end of the Term. Tenant shall comply with the demand at Tenant's own cost. Landlord are not required to do or pay for any work unless stated in this Lease.

> Tenant understands that the apartment is being delivered in good condition. The apartment has Wood floors that are being delivered in good condition. Therefore, tenant will be charged for any damages beyond normal wear made to floors, walls, kitchen, bathrooms etc. For example, scratches, tears, rips, stains, urination or defecation damages. Tenant is not allowed to paint or wallpaper walls and especially moldings, unless given written consent from landlord. Tenant is not allowed to paint or wallpaper walls and especially moldings. If tenant paints apartment a $1,000 fee will be charged, unless given written consent from landlord.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant KB    Tenant JB    Tenant O.F    Tenant BD

Lease Page 1 of 5

000064

If a lien is filed on the Apartment or Building for any reason relating to Tenant's fault, Tenant must immediately pay or bond the amount stated in the Lien. Landlord may pay or bond the lien if Tenant fails to do so within 20 days after Tenant has notice about the Lien. Landlord's costs shall be added rent.

**7. Repairs:** Tenant must take good care of the Apartment and all equipment and fixtures in it. Landlord will repair the plumbing, heating and electrical systems. Tenant must, at Tenant's cost, make all repairs and replacements whenever the need results from Tenant's act or neglect. If Tenant fails to make a needed repair or replacement, Landlord may do it. Landlord's reasonable expense will be added rent, unless agreed upon in writing.

**8. Fire, accident, defects, damage: Tenant** must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Apartment cannot be used because of fire or other casualty, Tenant is not required to pay rent for the time the Apartment is unusable. If part of the Apartment cannot be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Apartment is usable. Landlord need only repair the damaged part of the Apartment. Landlord is not required to repair or replace any fixtures, furnishings or decorations but only equipment that is originally installed by Landlord. Landlord is not responsible for delay due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.

**9.** If the apartment cannot be used, Landlord has 30 days to decide whether to repair it. Landlord's decision to repair must be given by notice to Tenant with 30 days of the fire or casualty. Landlord shall have a reasonable time to repair. In determining what a reasonable time is, consideration shall be given to any delays in receipt of insurance settlements, labor trouble and causes not within Landlord's control. If Landlord fails to give Tenant notice of its decision within 30 days, Tenant may cancel the lease as of the date of the fire or casualty. The cancellation shall be effective only if it is given before Landlord begins to repair or before Landlord notifies Tenant of its decision to repair. If the fire or other casualty is caused by an act or neglect of Tenant or guest of Tenant all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be added rent.

Landlord has the right to demolish, rebuild or renovate the Building if there is substantial damage by fire or another casualty. Even if the Apartment is not damaged, Landlord may cancel this lease within 30 days after the substantial fire or casualty by giving Tenant notice of Landlord's intention to demolish, rebuild or renovate. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Apartment to Landlord on or before the cancellation date in the notice and pay all rent due to the date of the fire or casualty. If the lease is canceled, Landlord is not required to repair the Apartment or Building. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section is intended to replace the terms on New York Real Property Law Section 227.

**10. Liability:** Landlord is not liable for loss, expense, or damage to any person or property, unless due to Landlord's negligence. Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Building. Tenant must pay for damages suffered and reasonable expenses of Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord arising from Tenant's act or neglect Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice. Tenant is responsible for all acts or neglect of Tenant's family, employees, guests or invitees. Tenant understands that he/she can purchase their own renter's insurance to cover any damage, loss, expense to any person or property.

**11. Entry by Landlord:** Landlord may enter the Apartment at reasonable hours to: repair, inspect, exterminate, install or work on master antennas or other systems or equipment and perform other work that Landlord decides is necessary or desirable. The landlord is required to provide the tenant with a 24-hour notice prior to entering the apartment for any specific purpose. At reasonable hours Landlord may show the Apartment to possible buyers, lenders, or tenants of the entire  Building or land. At reasonable hours Landlord may show the Apartment to possible or new tenants during the last 4  months of the Term. Entry by Landlord must be on reasonable notice except in emergency.

**12. Assignment and sublease:** The Apartment must be used only as a private Apartment to live in as the primary residence of the Tenant and for no other reason. Only the party signing this agreement may use the Apartment. **There is absolutely no subletting.** Tenant must not assign all or part of this Lease or sublet all or part of the Apartment or permit any other person to use the Apartment. If Tenant does, Landlord has the right to cancel the Lease as stated in the Tenant 's Default section. In the event that one or more of the parties on this lease decide to leave tenant may not replace them or find a roommate on their own. If landlord wishes to continue this agreement with the remaining person(s), any replacement roommate must first be screened and approved by landlord or management.

**13. Subordination:** This Lease and Tenant's rights, are subject and subordinate to all present and future: (a) leases for the Building or the land on which it stands, (b) mortgages on the leases or the Building or land, (c) agreements securing money paid or to be paid by a lender, and (d) terms, conditions, renewals, changes of any kind and extensions of the mortgages, leases or lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant.

**14. Condemnation:** If all of the Apartment or Building is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Apartment or Building. If any part of the Apartment or Building is taken, Landlord may cancel this Lease on notice to Tenant. The notice shall set a cancellation date not less than 30 days from the date of the notice. If the Lease is canceled, Tenant must deliver the Apartment to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant assigns to Landlord any interest Tenant may have to any part of the award. Tenant shall make no claim for the value of the remaining part of the Term.

000065

*I, Tenant(s), have read and understood all of the terms above.*

Tenant _KB_ Tenant _JB_ Tenant _OF_ Tenant _BD_.

Lease  Page 2 of 5

**15. Construction or demolition:** Construction or demolition may be performed in or near the Building. Even if it interferes with Tenant's ventilation, view or enjoyment of the Apartment it shall not affect Tenant's obligations in this Lease.

**16. Tearing down the building:** If the Landlord wants to tear down the entire Building, Landlord shall have the right to end this Lease by giving 30-day notice to Tenant. If Landlord gives Tenant such notice and such notice was given to every residential tenant in the Building, then the Lease will end and Tenant must leave the Apartment at the end of the 30-day period in the notice.

**17. Liability for property left with Landlord's employees:** Landlord's employees are not permitted to drive Tenant's cars or care for Tenant's cars or personal property. Tenant must not leave a car or other personal property with any of Landlord's employees. Landlord is not responsible for (a) loss, theft or damage to the property, and (b) injury caused by the property or its use.

**18. Playground, pool, parking and recreation areas:** If there is a playground, pool, parking or recreation area, Landlord may give Tenant permission to use it. Tenant will use the area at Tenant's own risk. Landlord's permission may be canceled at any time, for good reasonable reason.

**19. Roof access:** No one is allowed on the roof, except in the event of an emergency such as a fire. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.

**20. Tenant's certificate:** Upon request by Landlord, Tenant shall sign a certificate stating the following: (1) This Lease is in full force and unchanged (or if changed, how it was changed); and (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; and (3) Tenant is fully performing all the terms of the Lease and will continue to do so; (4) rent and added rent have been paid to date; and (5) any other reasonable statement required by Landlord. The certificate will be addressed to the party Landlord chooses.

**21. Correcting Tenant's defaults:** If Tenant fails to timely correct a default after notice form Landlord, Landlord may correct it at Tenant's expense. Landlord's costs to correct the default shall be added rent.

**22. Tenant's duty to obey laws and regulations:** Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notices received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

**23. Tenant's default:** A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated:
(1) Failure to pay rent or added rent on time, 3 days.
(2) Failure to move into the Apartment within 15 days after the beginning date of the Term, 10 days.
(3) Issuance of a court order under which the Apartment may be taken by another party, 10 days.
(4) Improper conduct by Tenant annoying other tenants, 10 days.
(5) Failure to comply with any other term or Rule in the Lease, 10 days.
If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than 10 days after the date of the notice. On the cancellation date in the notice the Term of this Lease shall end. Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease. If the default cannot be cured in the time stated, Tenant must begin to cure within that time and continue diligently until cured.

A. If Tenant's application for the Apartment contains any material misstatement of fact, Landlord may cancel this Lease. Cancellation shall be by cancellation notice as stated in Section 23.A.
B. If (1) the Lease is canceled; or (2) rent or added rent is not paid on time; ur (3) Tenant vacates the Apartment, Landlord may, in addition to other remedies, take any of the following steps: (a) peacefully enter the Apartment and remove Tenant and any person or property, and (b) use eviction or other lawsuit method to take back the Apartment.
C. If this Lease is canceled, or Landlord takes back the Apartment, the following takes place: (1) Rent and added rent for the unexpired Term becomes due and payable.
(2) Landlord may re-let the Apartment and anything in it. The re-letting may be for any term. Landlord may charge any rent or no rent and five allowances to the new tenant. Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and prepare it for renting. Tenant stays liable and is not released except as provided by law.
(3) Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, broker fees, cleaning and repairing costs, decorating costs and advertising costs.
(4) From time to time Landlord may bring actions for damages. Delay or failure to bring an action shall not be a waiver of Landlord's rights. Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.
(5) If Landlord re-lets the Apartment combined with other space an adjustment will be made based on square footage. Money received by Landlord from the next tenant other than the monthly rent, shall not be considered as part of the rent paid to Landlord. Landlord is entitled to all of it. If Landlord re-lets the Apartment the fact that all or part of the next tenant's rent is not collected does not affect Tenant's liability. Landlord has no duty to collect the next tenant's rent. Tenant must continue to pay rent, damages, losses and expenses without offset.
D. If Landlord takes possession of the Apartment by Court order, or under the Lease, Tenant has no right to return to the Apartment.

000066

I, Tenant(s), have read and understood all of the terms above.
Tenant  K B    Tenant  J B    Tenant  O F    Tenant  B D                    Lease Page 3 of 5

**24. Jury trial and counterclaims:** Landlord and Tenant agree not to use their right to a Trial by Jury in any action or proceeding brought by either, against the other, for any matter concerning this Lease or the Apartment. This does not include actions for personal injury or property damage.

**25. No waiver, illegality:** Landlord's acceptance of rent or failure to enforce any term in this Lease is not a waiver of any of Landlord's rights. If a term in this Lease is illegal, the rest of this lease remains in full force.

**26. Insolvency:** If (1) Tenant assigns property for the benefit of creditors, or (2) a non-bankruptcy trustee or receiver of Tenant or Tenant's property is appointed. Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not full dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset. If Tenant files a voluntary petition in bankruptcy or an involuntary petition in bankruptcy is filed against Tenant, Landlord may not terminate this Lease.

**27. Rules:** Tenant must comply with these Rules. Notice of new Rules will be given to Tenant. Landlord need not enforce Rules against other Tenants. Landlord is not liable to Tenant if another tenant violates these Rules. Tenant receives no rights under these Rules.
**(1)** The comfort or rights of other Tenants must not be interfered with. This means that annoying sounds, smells and lights are not allowed. Tenants are expected to be considerate and courteous to both fellow tenants and neighbors.
**(2)** No one is allowed on the roof. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.
**(3) No Smoking cigarettes/vaping  in apartment or in building.**
**(4)** Bicycles are not allowed in hallways.
**(5)** Tenant must give to Landlord key to all locks. Doors must be locked at all times. Windows must be locked when Tenant is out.
**(6)** No water beds allowed in Apartments.
**(7)** Garbage disposal rules must be followed. Wash lines, vents and plumbing fixtures must be used for their intended purpose.
**(8) Washer and Dryer have hookup in the apartment.**
**(9)** Improperly parked cars may be removed without notice at Tenant's cost.
**(10)** Second hand furniture must be vermin free. If there is any type of infestation, Tenant is responsible for all incurred fees from cleaning and exterminating.
**(11)** Tenant is responsible for taking out the garbage to the street curb side on required days.
**(12)** Pets/Animals are NOT allowed in the apartment
**(13) Possession or use of illegal drugs is strictly prohibited in or around the property; such action will be a violation of the lease.**
**(14)** Tenants are expressly prohibited from subleasing the property, and any such action will be considered a violation of the lease agreement.
**(15)** Heating system must be kept at 65F in the fall and winter months to prevent heating system damage. If damage, its tenant's responsibility to fix.

**28. Representations, changes in Lease:** Tenant has read this Lease. All promises made by the Landlord are in this  Lease. There are no others. This Lease may be changed only by an agreement in writing signed by delivered to each  party.

**29. Landlord unable to perform:** If due to labor trouble, government order, lack of supply, Tenant's act or neglect, or any other cause not fully within Landlord's reasonable control, Landlord is delayed or unable to (a) carry out any of Landlord's promises or agreements, (b) supply any service required to be supplied, (c) make any required repair or change in the Apartment or Building, or (d) supply any equipment or appliances Landlord is required to supply, this Lease shall not be ended or Tenant's obligations affected.

**30. End of term:** At the end of the Term, Tenant must: leave the Apartment clean and in good condition, subject to ordinary wear and tear; remove all of Tenant's property and all Tenant's installations and decorations; repair all  damages to the Apartment and Building caused by moving; and restore the Apartment to its condition at the beginning  of the Term. Items such as bathroom fixtures, toilet, shower, sink, kitchen cabinets, ceiling fans, refrigerators must be left  clean. If the tenant fails to do so, a $200 clean up fee shall be deducted from security deposit. If the last day of the Term is on  a Saturday, Sunday or State or Federal holiday the Term shall end on the prior business day. The security deposit will be refunded if the apartment is left in its original condition. However, if the apartment is significantly damaged or destroyed, the security deposit will not be refunded and will be applied to cover the costs of repairs or restoration.

**31. Space "as is":** Tenant has inspected the Apartment and Building. Tenant states they are in good order and repair and takes the Apartment as is except for latent defects.

**32. Landlord's warranty of habitability:** Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life or safety.

**33. Landlord's consent:** If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court for a declaratory judgment to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**34. Limit of recovery against Landlord:** Tenant is limited to Landlord's interest in the Building for payment of a judgment or other court remedy against Landlord.

**35. Lease binding on:** This Lease is binding on Landlord and Tenant and their heirs, distributes, executors, administrators, successors and lawful assigns.

**36. Landlord:** Landlord means the owner (Building or Apartment), or the lessee of the Building, or a lender in possession. Landlord's obligations end when Landlord's interest in the (Building or Apartment) is transferred. Any acts Landlord may do may be performed by Landlord's agents or employees.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant **KB**    Tenant **JB**    Tenant **OF**    Tenant **BD**

000067

**37. Paragraph headings:** The paragraph headings are for convenience only.

**38. Furnishings:** If the Apartment is furnished, the furniture and other furnishings are accepted as is. If an inventory is supplied each party shall have a signed copy. At the end of the Term, Tenant shall return the furniture and other furnishings clean and in good order and repair.

**39. Services Landlord will supply:**
Landlord is not required to install air-conditioning. Stopping or reducing of service(s) this will not be a reason for Tenant to stop paying rent, to make a money claim or to claim eviction. Tenant may enforce its rights under the warranty of habitability. Damage to the equipment or appliances supplied by Landlord, caused by Tenant's acts may be repaired by Landlord at Tenant's expense. The repair cost will be added rent.

> Tenant must not use a dishwasher, washing machine, dryer, freezer, heater, ventilator, air cooling equipment or other appliance unless installed by Landlord or with Landlord's written consent. Tenant must not use more electric than the wiring or feeders to the Building can safely carry.

Landlord may stop service of the plumbing, heating, elevator, air cooling or electrical systems, because of accident, emergency, repairs, or changes until the work is complete.

> **Signatures, effective date** Tenant have signed this Lease as of the below date. It is effective when Landlord delivers to Tenant a copy signed by all parties.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant KB    Tenant JB    Tenant OF    Tenant BD

**40.** Additional occupants, other than the tenants stated on this lease are not permitted to live in the apartment. Any other persons interested in living in the apartment must be fully screened and approved by the landlord.

**41. Utilities: Landlord Pays: Cold water Tenant pays: Gas and Electric**

**42. Rent Shall be paid on the first of every month**

**43.** Any renovations to the apartment are the tenant's responsibility and must be approved by the landlord in advance of work being started

**44. Tenants are not entitled to use of backyard.**

**45.** Pets are NOT allowed in the apartment

**46. Tenants are not entitled use of parking space and garage.**

**47. Washer and dryer have hookup in the apartment.**

**48.** Tenants are responsible to observe garbage and recycling rules of the city of NY and for taking out the garbage to the street on garbage pickup days. If they fail to do so and that results in a fine by the city tenants will be responsible to pay the fine.

**49.** Tenants are responsible for maintaining sidewalk cleaning and snow removal about their property.

**50.** Tenant must give landlord a 30 days' notice when they decide to vacate the apartment after the completion of the lease term. Tenant agrees to allow the landlord and landlord's agents to show the apartment to potential tenants after giving the 30 days' notice.

**51.** Subleasing by tenant of any space in the apartment, parking or back yard is prohibited.

*52. If tenant defaults on paying the monthly lease, landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action.*

*53. The house is confined to 4 people, if additional residents will occupy the apartment, the landlord has a right to increase the monthly rent by $150 per additional person.*

*54. Tenants are prohibited from creating excessive wall damage by drilling multiple holes, and a fee of $25 will be applied for each hole that causes damage.*

*55. Tenants are responsible for replacing their own light bulbs.*

**Property Address: 581 West Caswell Ave #2FL Staten Island NY 10314**
Term: 1 Year
**Beginning: January 1, 2024**
**Ending: December 31, 2024**

**Monthly Rent: $2,700**
**First Rent Payment: $2,700**
**Security Deposit: $2,700**
**Next Payment due: February 1, 2024**

X_____
Landlord: Kirug Bautista (347-465-0164)

X_____
Tenant: Joe. Bautista

X_____
Tenant:

X_____ (Oscar F.)
Tenant:

X_____ (Belen M. D).
Tenant

000068

Tenant KB    Tenant JB    Tenant OF    Tenant BD          Lease Page 5 of 5

December 22, 2023

Dear: HRA

I am Xue Qiang Zheng  Landlord of 581 West Caswell Ave #1 Floor Staten Island NY 10314. This letter is about  I still didn't receive three check from my tenant each check amount should be $250.50 and total should be $751.50 payment period 9/7/2023 (Benefit# SP43923699 & Case# 0303996741).

If you have any questions feel free to reach at (646-264-8930) between the hours of 12pm-6pm.

Best Regards,

Landlord Signature

_____

000069

≡ M Gmail

🔍 581

# 581 West Caswell Ave

**xien jin zhang** <ydchny@hotmail.com>
发送至 我

第 8 个会话，共有会☆

2023年12月21日星期四 20:17

📄 翻译成中文

Hi Weng

Please see attached sign last page of the lease and HRA LETTER TOO, and email me back.

Thank you

2 个附件 • 已由 Gmail 扫描 ⊙

📄 Lease 581 West C...    📄 Letter for check S...

# EXHIBIT B

| | |
|---|---|
| **Subject:** | Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.) |
| **Date:** | Tuesday, March 25, 2025 at 5:31:43 PM Eastern Daylight Time |
| **From:** | Eric Hecker |
| **To:** | Nicholas Sekas |
| **CC:** | Mayda Haroutunian, Christopher P DelCioppio, Asher Kest Esq., Spencer A. Richards Esq., Sarah Igarashi, Mariann Wang, Luk Luk PLLC, Jeff Toback |
| **Attachments:** | image001.png, image002.png |

Nick, I am confused by a few things.  Please clarify:

1. Are you refusing to meet and confer with me tomorrow at 11am as previously agreed?

2. What do you mean when you say you have "answered the Rule 26f disclosures to the best of [your] ability"?  As I have observed previously, a party <u>makes</u> Rule 26(a) disclosures; a party does not <u>respond</u> to them.  You are required to respond to our <u>document demands</u>, which were made pursuant to <u>Rule 34</u>, not Rule 26.  Assuming you are refusing to meet and confer by telephone, could you please explain why each of the categories of documents I list below is not discoverable under Rule 34?

3. Third, do you understand the relevance of Sekas's instruction to Niayzov to "Just bring the right clients" to the agency issue?  If Sekas meant that as a racist dog whistle, you have one problem.  But even if he didn't, that text, especially coupled with the offer to pay the broker's fee, is devastating to your agency defense.  I honestly don't think you get it.  They say "you get what you pay for."  Your cousin would be wise to bring someone in who understands the law of agency and the rules of civil procedure.

Are we speaking at 11:00 a.m. tomorrow as agreed, or not?  If you are flatly refusing to produce the categories of documents I identified, then just say so, and I will move to compel.

Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel:  (212) 620-2600
Dir:  (212) 620-2602
Email:  ehecker@wanghecker.com

---

**From:** Nicholas Sekas <nsekas@sekaslaw.com>
**Date:** Tuesday, March 25, 2025 at 5:15 PM
**To:** Eric Hecker <ehecker@wanghecker.com>
**Cc:** Mayda Haroutunian <mharoutunian@sekaslaw.com>, Christopher P DelCioppio <cpdelcioppio@saccofillas.com>, "Asher Kest Esq." <akest@fkblaw.com>, "Spencer A. Richards Esq." <srichards@fkblaw.com>, Sarah Igarashi <sigarashi@fkblaw.com>, Mariann Wang <mwang@wanghecker.com>, Luk Luk PLLC <lukspc@aol.com>, Jeff Toback <jefftoback@gmail.com>

**Subject:** RE: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

Eric:

First, I was away on vacation with my family.  I am not required to speak to you or write back to you when I am away for 4 days.  I therefore, will only communicate in writing or as required by the Court in the future, with other parties present.

Second, we have answered the Rule 26f disclosures to the best of our ability.  Your request for additional irrelevant information will be reviewed and responded to in due course.  As asserted in the past, there is NO Discriminatory conduct by my client and anyone else in 202 Marine, LLC, which has been improperly pled into this case.  Requesting applicants to be "duly qualified" is not discriminatory on its face, and we resent your improper innuendos with regard to obvious financial and credit requirements, which are standard in the industry and are requested by virtually every Landlord on any application for rental in the State.

Finally, the Apartment.Com advertisement was provided to you in our disclosures, (see attached), so the rest of your allegations are ethically improper and like your case designed to create a hostile non-compliant atmosphere or record for self-serving purposes which only you know best.

Please be guided accordingly.


Very truly yours,
Nicholas G. Sekas, Esq.



Email: nsekas@sekaslaw.com
www.sekaslaw.com

530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-1333 | Facsimile (201) 816-1522

515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212) 695-7577 | Facsimile (212) 753-3866

345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 | Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of the individual or entity to which it is addressed, and contains information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by telephone at 201-816-1333 or return email and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-free, and accepts no liability for any damages sustained as a result of any such virus.

---

**From:** Eric Hecker <ehecker@wanghecker.com>
**Sent:** Tuesday, March 25, 2025 2:14 PM
**To:** Nicholas Sekas <nsekas@sekaslaw.com>
**Cc:** Mayda Haroutunian <mharoutunian@sekaslaw.com>; Christopher P DelCioppio <cpdelcioppio@saccofillas.com>; Asher Kest Esq. <akest@fkblaw.com>; Spencer A. Richards Esq. <srichards@fkblaw.com>; Sarah Igarashi <sigarashi@fkblaw.com>; Mariann Wang <mwang@wanghecker.com>; Luk Luk PLLC <lukspc@aol.com>; Jeff Toback <jefftoback@gmail.com>
**Subject:** Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

I already wrote you a detailed email about the deficiencies in your production on March 23 at 11:56 a.m.  To summarize again, in no particular order:

1. You produced text messages between Sekas and Niayzov from February 2024 to May 2024, but you did not produce any texts between them before or after those dates.
2. You did not produce any texts or emails between Sekas and anyone else affiliated with 202, such as his sister(s).
3. You did not produce any documents relating to any communications between 202 and any other brokers relating to renting this unit.
4. You did not produce any applications that were received with respect to this unit.
5. You did not produce the lease that was entered into with the tenant who was chosen for this unit.

When we speak tomorrow, please be prepared to discuss why you believe you are not obligated to produce such documents.

Also, have you considered whether Disciplinary Rule 3.3(a)(1) requires you to make any corrective disclosures to the Court? You represented to the Court that the unit was only listed on Apartments.com. But the documents you have produce show that the unit was not listed on Apartments.com until nearly two weeks after the events alleged in the complaint; and that during those two weeks, Sekas was actively working with Niayzov to find tenants, telling him to "Just bring the right clients" and even offering to pay his fee. I know the version of the texts that you produced is printed in a very small font and is difficult to read. Did you read those texts?

Anyhow, I look forward to meeting and conferring about the outstanding documents tomorrow at 11:00 a.m.


Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel: (212) 620-2600
Dir: (212) 620-2602
Email: ehecker@wanghecker.com

---

**From:** Nicholas Sekas <nsekas@sekaslaw.com>
**Date:** Tuesday, March 25, 2025 at 12:06 PM
**To:** Eric Hecker <ehecker@wanghecker.com>
**Cc:** Mayda Haroutunian <mharoutunian@sekaslaw.com>, Christopher P DelCioppio <cpdelcioppio@saccofillas.com>, "Asher Kest Esq." <akest@fkblaw.com>, "Spencer A. Richards Esq." <srichards@fkblaw.com>, Sarah Igarashi <sigarashi@fkblaw.com>, Mariann Wang <mwang@wanghecker.com>, Luk Luk PLLC <lukspc@aol.com>, Jeff Toback <jefftoback@gmail.com>
**Subject:** RE: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

Please be more specific, we have fully answered the disclosure.


Very truly yours,
Nicholas G. Sekas, Esq.



Email: nsekas@sekaslaw.com

[www.sekaslaw.com](www.sekaslaw.com)

530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-1333 | Facsimile (201) 816-1522

515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212) 695-7577 | Facsimile (212) 753-3866

345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 | Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of the individual or entity to which it is addressed, and contains information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by telephone at 201-816-1333 or return email and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-free, and accepts no liability for any damages sustained as a result of any such virus.

**From:** Eric Hecker <[ehecker@wanghecker.com](ehecker@wanghecker.com)>
**Sent:** Tuesday, March 25, 2025 12:00 PM
**To:** Nicholas Sekas <[nsekas@sekaslaw.com](nsekas@sekaslaw.com)>
**Cc:** Mayda Haroutunian <[mharoutunian@sekaslaw.com](mharoutunian@sekaslaw.com)>; Christopher P DelCioppio <[cpdelcioppio@saccofillas.com](cpdelcioppio@saccofillas.com)>; Asher Kest Esq. <[akest@fkblaw.com](akest@fkblaw.com)>; Spencer A. Richards Esq. <[srichards@fkblaw.com](srichards@fkblaw.com)>; Sarah Igarashi <[sigarashi@fkblaw.com](sigarashi@fkblaw.com)>; Mariann Wang <[mwang@wanghecker.com](mwang@wanghecker.com)>; Luk Luk PLLC <[lukspc@aol.com](lukspc@aol.com)>; Jeff Toback <[jefftoback@gmail.com](jefftoback@gmail.com)>
**Subject:** Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

11 o'clock tomorrow is fine. Please be prepared to discuss when you will produce the remainder of your production, including all of the items high identify below.

Eric Hecker

Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel:  (212) 620-2600
Dir:  (212) 620-2602
Email:  ehecker@wanghecker.com


On Mar 25, 2025, at 11:51 AM, Nicholas Sekas <nsekas@sekaslaw.com> wrote:


Eric, not today, tomorrow is better 11:00am.  I am fully booked with a
backlog of clients and other appointments.


Very truly yours,
Nicholas G. Sekas, Esq.

<image003.png>

Email: nsekas@sekaslaw.com
www.sekaslaw.com

530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-
1333 | Facsimile (201) 816-1522

515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212)
695-7577 | Facsimile (212) 753-3866

345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 |
Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of
the individual or entity to which it is addressed, and contains
information that is privileged, confidential and/or exempt from
disclosure under applicable law. If the reader of this message is not the
intended recipient, or employee or agent responsible for delivering the
message to the intended recipient, you are hereby notified that any
dissemination, distribution or copying of this communication is
STRICTLY PROHIBITED. If you have received this communication in

error, please notify the sender immediately by telephone at 201-816-1333 or return email and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-free, and accepts no liability for any damages sustained as a result of any such virus.

---

**From:** Eric Hecker <ehecker@wanghecker.com>
**Sent:** Tuesday, March 25, 2025 8:20 AM
**To:** Nicholas Sekas <nsekas@sekaslaw.com>; Mayda Haroutunian <mharoutunian@sekaslaw.com>
**Cc:** Christopher P DelCioppio <cpdelcioppio@saccofillas.com>; Asher Kest, Esq. <akest@fkblaw.com>; Spencer A. Richards, Esq. <srichards@fkblaw.com>; Sarah Igarashi <sigarashi@fkblaw.com>; Mariann Wang <mwang@wanghecker.com>; Luk Luk PLLC <lukspc@aol.com>; Jeff Toback <jefftoback@gmail.com>
**Subject:** Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

Nick, welcome back from your trip.  When can we speak about your production?


Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel:  (212) 620-2600
Dir:  (212) 620-2602
Email:  ehecker@wanghecker.com

---

**From:** Eric Hecker <ehecker@wanghecker.com>
**Date:** Sunday, March 23, 2025 at 12:45 PM
**To:** Nicholas Sekas <nsekas@sekaslaw.com>, Mayda Haroutunian <mharoutunian@sekaslaw.com>
**Cc:** Christopher P DelCioppio <cpdelcioppio@saccofillas.com>, "Asher Kest, Esq." <akest@fkblaw.com>, "Spencer A. Richards, Esq." <srichards@fkblaw.com>, Sarah Igarashi <sigarashi@fkblaw.com>, Mariann Wang <mwang@wanghecker.com>, Luk Luk PLLC <lukspc@aol.com>, Jeff Toback <jefftoback@gmail.com>
**Subject:** Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

Nick, one more thing we need to discuss:  what did your client meant when he told Mr. Niayzov, with respect to the unit in question, before it was advertised on Apartments.com, to "Just bring the right clients"?

I hope you had a nice trip.  I am looking forward to our discussion very much.  Please send your availability.

<image004.png>

Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel:  (212) 620-2600
Dir:  (212) 620-2602
Email:  ehecker@wanghecker.com

**From:** Eric Hecker <ehecker@wanghecker.com>
**Date:** Sunday, March 23, 2025 at 11:56 AM
**To:** Nicholas Sekas <nsekas@sekaslaw.com>
**Cc:** Mayda Haroutunian <mharoutunian@sekaslaw.com>, Christopher P DelCioppio <cpdelcioppio@saccofillas.com>, "Asher Kest, Esq." <akest@fkblaw.com>, "Spencer A. Richards, Esq." <srichards@fkblaw.com>, Sarah Igarashi <sigarashi@fkblaw.com>, Mariann Wang <mwang@wanghecker.com>, Luk Luk PLLC <lukspc@aol.com>, Jeff Toback <jefftoback@gmail.com>
**Subject:** Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

Nick, thank you for the documents you produced with your initial disclosures.

Did you know, when you represented to the Court at the March 6 conference that the unit had been advertised on Apartments.com, (a) that the Apartments.com listing was not published until March 18, almost two weeks after the events alleged in the Complaint; (b) that Mr. Sekas and Mr. Niayzov corresponded and spoke by phone about the unit extensively starting on February 20, including showing multiple prospective tenant the unit, before it was advertised on Apartments.com nearly a month later; and (c) that Mr. Sekas offered to pay Mr. Niayzov's broker fee?  Now that you know those facts, have you considered whether Disciplinary Rule 3.3(a)(1) requires you to make any corrective disclosures to the Court?  You should consider that question carefully, because I intend to raise it with the Court if you have the temerity to seek leave to move against the Third Amended Complaint.

We need to meet and confer about the remainder of your production.  You have not produced, for example, any of the applications that your client received for the unit, the lease that was signed, all other communications (including communications with other brokers, with Mr. Sekas's sister, etc.) regarding the unit between February and May 2023, all communications between Mr. Sekas and Mr. Niayzov before February 15 and after July 15, etc.

Would you please provide your availability for this week so that we can discuss next steps?


Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel:  (212) 620-2600
Dir:  (212) 620-2602
Email:  ehecker@wanghecker.com

---

**From:** Mayda Haroutunian <mharoutunian@sekaslaw.com>
**Date:** Wednesday, March 19, 2025 at 4:40 PM
**To:** Eric Hecker <ehecker@wanghecker.com>, "Asher Kest, Esq." <akest@fkblaw.com>
**Cc:** Nicholas Sekas <nsekas@sekaslaw.com>, Christopher P DelCioppio <cpdelcioppio@saccofillas.com>, "Spencer A. Richards, Esq." <srichards@fkblaw.com>, Sarah Igarashi <sigarashi@fkblaw.com>, Mariann Wang <mwang@wanghecker.com>, Luk Luk PLLC <lukspc@aol.com>
**Subject:** Re: FHJC et al. v. Niayzov et al., 24-cv-04201 (E.D.N.Y.)

To all,

Attached please find Defendant 202 Marine LLC's Initial Disclosure with exhibits.

Thank you.


SEKAS LAW GROUP, LLC


530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-1333 | Facsimile (201) 816-1522


515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212) 695-7577 | Facsimile (212) 753-3866


345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 | Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of the individual or entity to which it is addressed, and contains information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by telephone at 201-816-1333 or return email and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-free, and accepts no liability for any damages sustained as a result of any such virus.

———

# EXHIBIT C

**Tuesday, April 22, 2025 at 14:33:27 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Re: Supp Letter Cover |
| **Date:** | Tuesday, April 22, 2025 at 12:33:21 PM Eastern Daylight Time |
| **From:** | Eric Hecker |
| **To:** | Nicholas Sekas |
| **CC:** | Mayda Haroutunian, Giancarlo Ghione |
| **Priority:** | High |
| **Attachments:** | image001.png, image002.png, Letter to Judge Merkl 4.23.25 (EH to NS 4.22.25).doc |

Nick, please read this email carefully.

1. You did not produce a "Lease Application."  Pages 044-080 of yesterday's production are the **lease and lease riders only**.  **No application was produced**.  If you are telling me that 202 never received any application materials from Ms. Chellis, that is not credible.
2. Your whole theory is that 202 was working with lots of outside brokers, not just Niayzov, to rent the unit at issue.  **Why have you produced no communications whatsoever between 202 and any other broker relating to this unit?**  Are you conceding that Niayzov was the only broker who 202 worked with on this transaction?
3. **Why have you produced no documents whatsoever relating to any consideration by anyone affiliated with 202 relating to the renting of this unit**, other than some but not all of the texts between Sekas and Niayzov?  Are you representing that Sekas communicated with nobody at all – his sister, other 202 officials, a photographer, etc. – relating to the renting of this unit?
4. **Please serve your responses to Plaintiffs' interrogatories and document requests.**
5. Judge Merkl's order is clear that we are supposed to submit a joint letter.  You are not free to write your own letter.  Here is a revised draft of our joint letter.  Please send your insert by the close of business today.  If you do so, I will of course remove the statement that you are refusing to participate.


Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel:  (212) 620-2600
Dir:  (212) 620-2602
Email:  ehecker@wanghecker.com

---

**From:** Nicholas Sekas <nsekas@sekaslaw.com>
**Date:** Tuesday, April 22, 2025 at 11:24 AM
**To:** Eric Hecker <ehecker@wanghecker.com>
**Cc:** Mayda Haroutunian <mharoutunian@sekaslaw.com>, Giancarlo Ghione <gghione@sekaslaw.com>
**Subject:** RE: Supp Letter Cover

Eric:

Upon review of the documents received by our client, the Lease Application is in fact the lease with all attached documents contained therein.  There is no separate application document.

Additionally, our client provided all texts messages available in his mobile phone.

They are not the same documents and texts provided previously.

Very truly yours,
Nicholas G. Sekas, Esq.



Email: nsekas@sekaslaw.com
www.sekaslaw.com

530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-1333 | Facsimile (201) 816-1522

515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212) 695-7577 | Facsimile (212) 753-3866

345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 | Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of the individual or entity to which it is addressed, and contains information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by telephone at 201-816-1333 or return email and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-

2 of 6

free, and accepts no liability for any damages sustained as a result of any such virus.

---

**From:** Nicholas Sekas
**Sent:** Tuesday, April 22, 2025 11:13 AM
**To:** Eric Hecker <ehecker@wanghecker.com>; Mayda Haroutunian <mharoutunian@sekaslaw.com>; Giancarlo Ghione <gghione@sekaslaw.com>
**Subject:** RE: Supp Letter Cover

Eric:

We will address your additional request with our client who is traveling today. Please send you letter, we will submit our own letter in response to your letter as our joint request.

Very truly yours,
Nicholas G. Sekas, Esq.



Email: nsekas@sekaslaw.com
www.sekaslaw.com

530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-1333 | Facsimile (201) 816-1522

515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212) 695-7577 | Facsimile (212) 753-3866

345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 | Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of the individual or entity to which it is addressed, and contains information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent

responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by telephone at 201-816-1333 or return email and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-free, and accepts no liability for any damages sustained as a result of any such virus.

---

**From:** Eric Hecker <ehecker@wanghecker.com>
**Sent:** Monday, April 21, 2025 4:34 PM
**To:** Nicholas Sekas <nsekas@sekaslaw.com>; Mayda Haroutunian <mharoutunian@sekaslaw.com>; Giancarlo Ghione <gghione@sekaslaw.com>
**Subject:** Re: Supp Letter Cover

Nick, most of the documents you just produced are the same as the ones you already produced last month.

Your cover letter states that you produced the application, but you didn't. You produced the lease but not the application. Where is the application?

Where are all of the other missing texts and emails?

When are you going to serve responses to Plaintiffs' interrogatories and discovery requests?

Finally, here is an updated draft joint letter. When will you be supplying your insert?

Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007
Tel: (212) 620-2600
Dir: (212) 620-2602
Email: ehecker@wanghecker.com

---

**From:** Nicholas Sekas <nsekas@sekaslaw.com>
**Date:** Monday, April 21, 2025 at 4:11 PM
**To:** Eric Hecker <ehecker@wanghecker.com>
**Cc:** Nicholas Sekas <nsekas@sekaslaw.com>, "Asher Kest, Esq." <akest@fkblaw.com>, "Spencer A. Richards, Esq." <srichards@fkblaw.com>, Sarah Igarashi <sigarashi@fkblaw.com>, Luk Luk PLLC <lukspc@aol.com>, Christopher P DelCioppio <cpdelcioppio@saccofillas.com>, Jeff Toback

<[jefftoback@gmail.com](mailto:jefftoback@gmail.com)>, Mayda Haroutunian <[mharoutunian@sekaslaw.com](mailto:mharoutunian@sekaslaw.com)>
**Subject:** Supp Letter Cover

Eric:

Following our conversation last week, I am enclosing supplemental initial disclosures in response to your supplemental request for information.   We did not discuss any depositions, nor anyone else discovery, the priority of depositions, only 202 Marine's supplemental responses, following our conversation bate stamped 0044 to 0114.

Please be guided accordingly.

Very truly yours,
Nicholas G. Sekas, Esq.



Email: [nsekas@sekaslaw.com](mailto:nsekas@sekaslaw.com)
[www.sekaslaw.com](http://www.sekaslaw.com)

530 Sylvan Avenue, Englewood Cliffs, NJ 07632 | Telephone (201) 816-1333 | Facsimile (201) 816-1522

515 Madison Avenue, 6th Fl., New York, NY 10022 | Telephone (212) 695-7577 | Facsimile (212) 753-3866

345 Centre St, Suite 1, Nutley, NJ 07110 | Telephone (973) 667-3399 | Facsimile | (201) 816-1522

This email including any attachment(s) is intended only for the use of the individual or entity to which it is addressed, and contains information that is privileged, confidential and/or exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is STRICTLY PROHIBITED. If you have received this communication in error, please notify the sender immediately by telephone at 201-816-1333 or return email

and delete/destroy the message and any copies thereof. Although Sekas Law Group, LLC attempts to prevent the passage of computer viruses via email and attachments thereto, Sekas Law Group, LLC does not guarantee that either is virus-free, and accepts no liability for any damages sustained as a result of any such virus.

# EXHIBIT D

# Sekas Law Group, l.l.c.

### Attorneys At Law

**Nicholas G. Sekas** *ø*
Giancarlo Ghione #
Michael T. Halkias o+
Janet C. Navarro *ø*+
Dae-Ki Min *ø*+
Saverio Cereste *ø*+
Paul Faugno *ø*+×

× **Certified Civil Trial Attorney of the Superior Court of New Jersey**
+ **Of Counsel**
_____

Retired Judge Walter F. Skrod+

530 Sylvan Avenue, Suite 201
Englewood Cliffs, NJ 07632
201.816.1333
Facsimile 201.816.1522

www.sekaslaw.com

515 Madison Avenue, 6th FL
New York, NY 10022
212.695.7577
Facsimile 212.753.386

345 Centre Street, Suite 1
Nutley, NJ 07110
973.667.3399
Facsimile 973.235.1575

*Members are admitted to:*
*#   NJ Bar*
*⁑   NY Bars*
*✦    NY & CT Bars*
*o   NJ & NY Bars*
*ø   NJ & PA Bars*

April 21, 2025

**VIA eMail**
Eric Hecker
Wang Hecker LLP
305 Broadway, Suite 607
New York, New York 10007

> **Re:** **Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.**
> **Civil Case No.:    1:24-cv-04201**

Mr. Hecker:

As you know, this office represents defendant 202 Marine in the above referenced matter. Please accept this letter supplementing the discovery demands served on my client. Enclosed please find:

- Bates Stamped Docs 202 Marine 0044 to 0080 of application submitted by the successful applicant
- Bates Stamped Docs 202 Marine 0081 to 0113 of text messages between 202 Marine agent Nicholas Sekas and defendant Juda Niayzov
- Bates Stamped Doc 202 Marine 0114 of the email sent by 202 Marine agent Nicholas Sekas to numerous realtors in the New York area advising of the relevant unit for rent.

Very truly yours,

/s/ *Nicholas Sekas*
Nicholas Sekas

cc: Client (Via email)
Enc.