UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                               Plaintiffs,

            v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                               Defendants.
-----------------------------------------------------------X

24 Civ. 4201 (LDH) (TAM)

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION BY THE REMAX DEFENDANTS TO DISMISS THE THIRD AMENDED COMPLAINT

Eric Hecker
Mariann Wang
Heather Gregorio
WANG HECKER LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ...........................................................................................1

FACTS AND PROCEDURAL HISTORY ............................................................................3

LEGAL STANDARD............................................................................................................17

ARGUMENT.........................................................................................................................17

I.       THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT ZHANG
         AND REMAX ENGAGED IN UNLAWFUL DISCRIMINATION IN VIOLATION
         OF FEDERAL, STATE, AND NEW YORK CITY LAW ....................................17

         A.  The Allegations in the Third Amended Complaint Are Well Pled....................17

         B.  The Court Should Additionally Consider the Discovery Record.......................22

II.      IN THE ALTERNATIVE, THE MOTION TO DISMISS SHOULD BE
         CONVERTED TO A MOTION FOR SUMMARY JUDGMENT .......................23

III.     IN THE ALTERNATIVE, LEAVE TO REPLEAD SHOULD BE GRANTED ...............24

CONCLUSION.....................................................................................................................25

## **TABLE OF AUTHORITIES**

*Agerbrink v. Model Service LLC*,
    155 F. Supp. 3d 448 (S.D.N.Y. 2016) ................................................................ 25

*Amerol Corp. v. American Chemie-Pharma, Inc.*,
    04 Civ. 0940, 2006 WL 721319 (E.D.N.Y. March 17, 2006) ............................... 24

*Ananiadis v. Mediterranean Gyros Products, Inc.*,
    151 A.D.3d 915 (2d Dep't 2017) ......................................................................... 21

*Andujar v. Hewitt*,
    02 Civ. 2223, 2002 WL 1792065 (S.D.N.Y. Aug. 2, 2002) ................................. 18

*Arista Records, LLC v. Doe* ,
    604 F.3d 110 (2d Cir. 2010) ................................................................................. 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................................... 17, 21

*Attali v. City of New York*,
    2018 WL 11476391 (S.D.N.Y. Sept. 17, 2018) ................................................... 22

*Boykin v. KeyCorp*,
    521 F.3d 202 (2d Cir. 2008) ................................................................................. 21

*Cabrera v. Jakabovitz*,
    24 F.3d 372 (2d Cir. 1994) ................................................................................... 17

*Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*,
    09 Civ. 6552, 2011 WL 710204 (W.D.N.Y. Feb. 22, 2011) ............................... 18

*Clopay Plastic Prods. Co., Inc. v. Excelsior Packaging Grp., Inc.*,
    2013 WL 6388444 (S.D.N.Y. 2013) .................................................................... 23

*Colbert v. FSA Store, Inc.*,
    2020 WL 1989404 (S.D.N.Y. Apr. 27, 2020) ...................................................... 22

*Diaz-Roa v. Hermes L., P.C.*,
    2024 WL 4866450 (S.D.N.Y. Nov. 21, 2024) ...................................................... 21

*Dou v. TD Bank N.A.*,
    2024 WL 4252500 (S.D.N.Y. Sept. 20, 2024) ..................................................... 20

*Fair Housing Justice Center, Inc. v. Allure Rehabilitation Servs. LLC*,
    2017 WL 4297237 (E.D.N.Y. Sept. 26, 2017) .................................................... 18

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir. 2019) ................................................................. 17

*Geinosky v. City of Chicago*,
    675 F.3d 743 (7th Cir. 2012) ............................................................... 22

*Installed Bldg. Products, LLC v. Cottrell*,
    13 Civ. 1112, 2014 WL 3729369 (W.D.N.Y. July 25, 2014) .................... 20

*Lee v. Riverbay Corp.*,
    2024 WL 4312166 (S.D.N.Y. Sept. 27, 2024) ........................................ 21

*Lugo v. City of Troy*,
    114 F.4th 80 (2d Cir. 2024) ................................................................. 22

*Meyer v. Holley*,
    537 U.S. 28 (2003) .............................................................................. 19

*Modny v. Foley Hoag LLP*,
    2025 WL 487308 (S.D.N.Y. Feb. 12, 2025) ........................................... 21

*Murray v. United Parcels Service, Inc.*,
    20 Civ. 1427, 2022 WL 4468295 (E.D.N.Y. Sept. 25, 2022) .................... 20

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*,
    595 F.3d 86 (2d Cir. 2010) ................................................................... 17

*Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*,
    712 F.3d 705 (2d Cir. 2013) ................................................................. 21

*Speedfit LLC v. Chapco Inc.*,
    15 Civ. 1323, 2016 WL 5793738 (E.D.N.Y. June 29, 2016) .................... 20

*Tenecora v. Ba-Kal Restaurant Corp.*,
    2021 WL 424364 (E.D.N.Y. 2021) ........................................................ 21

*United States v. Space Hunters, Inc.*,
    429 F.3d 416 (2d Cir. 2005) ................................................................. 18

Other Authorities

24 CFR § 100.75 .................................................................................................... 18

42 U.S.C. § 3604 ............................................................................................... 17, 18

*Fed. Prac. & Proc. Civ.* § 1224 (4th ed.) ............................................................ 20

N.Y. Exec. Law § 296(5)(c) ................................................................................. 18

N.Y.C. Admin. Code § 8-107 ......................................................................... 18, 19

Plaintiffs, by and through their attorneys, Wang Hecker LLP, hereby oppose the motion by Defendants Remax Edge Realty, LLC ("Remax") and Xian Jin Zhang ("Zhang") to dismiss the Third Amended Complaint.

## PRELIMINARY STATEMENT

Defendants Remax Edge Realty, LLC ("Remax") and Xian Jin Zhang ("Zhang") seek dismissal of Plaintiffs' well-pleaded housing discrimination claims by representing that Zhang had no involvement with the rental of the apartment that Plaintiffs Patricia Delone-Felix and Stanley Felix sought to lease.  Both the factual allegations in the Third Amended Complaint ("TAC") and the recently produced discovery tell a dramatically different story.

The TAC contains detailed, non-conclusory allegations that Zhang actively participated in discriminating against Plaintiffs Delone-Felix and Felix, who were rejected for an apartment at 581 West Caswell Avenue because they are Black.  The TAC alleges in more than sufficient detail that Zhang, while affiliated with Remax, worked with the property owners to set pricing, evaluate rental applications, and reject Plaintiffs' application for discriminatory reasons. Defendants' motion ignores most of those allegations.

Instead of confronting the facts that are pled, Defendants argue that Plaintiffs' allegations are inherently deficient because some of them are pled "upon information and belief."  The case law makes clear, however, that such pleading is entirely appropriate where, as here, the facts are peculiarly within Defendants' knowledge.

In any event, discovery has now revealed evidence that flatly contradicts Defendants' materially false denials and representations.  Text messages between Zhang and Defendant Niayzov show that Zhang regularly brokered rental properties, maintained a close ongoing business relationship with Niayzov specifically to handle rental transactions, accepted a portion

of the commissions their rental brokerage partnership generated, worked with Niayzov to rent the unit at issue in this case and the other unit in the same house, helped the owners navigate the regulatory process with respect to the rental units, and even made in-person trips to the property to help the owners collect rent and execute leases. Defense counsel's representations to this Court in connection with this motion – including that Zhang's "only formal role was representing the Owners during the original purchase of the Property" in 2022 and that after the purchase Zhang "did not represent the Owners in their search for renters" – are fabrications that have serious implications under Rule 11 and the New York Rules of Professional Conduct.

Not only is the TAC sufficiently pleaded, but the recently produced texts and emails prove beyond dispute that Zhang engaged in the unlawful discrimination alleged in the TAC, and then some. Zhang and Niayzov repeatedly engaged in racial and other forms of unlawful discrimination in their texts, and with respect to the application submitted by Plaintiffs for the unit at issue, the evidence is particularly stark and disturbing. Plaintiffs were the first applicants for the unit, and they were well qualified. Niayzov texted and emailed their application materials to Zhang, but after Zhang saw that they are Black, *he never forwarded Plaintiff's application to the owners for consideration*. Niayzov told Plaintiffs that their application had been rejected because they are Black, and the unit languished on the market for nearly two months before Zhang and Niayzov found a tenant that Zhang and the owners found suitable. Zhang then deleted the email from Niayzov attaching Plaintiffs' application materials.

As shown below, the allegations in the TAC are more than sufficient, and the Court can and should consider the discovery record in connection with evaluating Defendants' motion to dismiss; in the alternative, the motion should be converted to a summary judgment motion; or at

a minimum, Plaintiff should be allowed to replead to add the additional details proven by the text messages between Zhang and Niayzov that Zhang has now belatedly disclosed.

It is surprising and troubling that Defendants and their counsel have not withdrawn or corrected this motion.  They should.

## **FACTS AND PROCEDURAL HISTORY**

<u>The Discrimination Against Plaintiffs</u>

In early November 2023, Plaintiffs Delone-Felix and Felix responded to a Zillow ad for an available rental unit at 581 West Caswell that was listed by Defendant Judah Niayzov ("Niayzov").  Ex. 6, ¶ 20.[1]  Plaintiffs viewed, liked, and applied for the unit.  *Id*. ¶¶ 27-38.  Later in November, Niayzov informed Plaintiffs that their application had been rejected because they are Black.  *Id*. ¶¶ 60-64.

<u>The FHJC Investigation and Original Complaint</u>

Plaintiffs lodged a complaint with the Fair Housing Justice Center, Inc. ("FHJC"), which conducted an investigation into Niayzov's practices, including by sending paired testers to express interest in available units and gauge differential treatment.  FHJC's testing showed strong evidence of race discrimination with respect to several properties and several defendants.

Plaintiffs commenced this action on June 12, 2024 by filing a Complaint (Ex. 1) against Niayzov, his business partner and wife, his company, and three other Defendants.  Plaintiffs named Amina Ali, who they believed was the owner of 581 West Caswell.  Plaintiffs did not name Zhang or Remax because they were unaware at the time that Zhang and Remax were involved in the discrimination against them.

---

[1]  All references to "Ex. __" refer to the exhibits appended to the accompanying Declaration of Eric Hecker, Esq.

<u>The Amended Complaint</u>

Plaintiffs filed an Amended Complaint on July 23, 2024 (Ex. 2), the sole purpose of which was to correct Plaintiffs' error in naming the wrong owner of 581 West Caswell. Plaintiffs dismissed Defendant Amina Ali and added Defendants Zueqiang Zheng ("Zheng") and Yu Li Weng ("Weng"), the actual owners of 581 West Caswell. Once again, Plaintiffs did not name Zhang or Remax because they remained unaware that Zhang and Remax were involved in the discrimination against them. There are no substantive differences between the original Complaint and the Amended Complaint.

<u>The Second Amended Complaint</u>

Counsel for Niayzov appeared in July 2024. During informal pre-answer discussions between Plaintiff's counsel and Niayzov's counsel, Niayzov's counsel disclosed that Zhang, who is a real estate agent affiliated with Remax, served as the "intermediary" between Niayzov and the owners of 581 West Caswell with respect to Plaintiffs' application. Hecker Decl. ¶ 4. Based on this new information, Plaintiffs filed a Second Amended Complaint on August 15, 2024 (Ex. 3) naming Zhang and Remax as additional Defendants.

The Niayzov Defendants answered on September 4, 2024 (ECF 33), and the owners of 581 West Caswell, Zheng and Weng, answered on January 6, 2025 (ECF 48).

<u>Defense Counsel's Rule 11 Letter and Initial Pre-Motion Letter</u>

On October 9, 2024, attorneys Spencer Richards and Asher Kest of Furman Kornfeld & Brennan LLP co-signed a letter to Plaintiffs' counsel threatening to move for Rule 11 sanctions if Plaintiffs did not withdraw their claims against Zhang and Remax (Ex. 4). Attorneys Richards and Kest represented in writing as follows:

> Upon review, we have determined that Remax and Zhang represented the Owners solely for the Owners' purchase of the Property prior to its listing for rental.

> Remax and Zhang did not at any time represent the Owners in connection with
> any rental, advertisement to rent the Property, showing of the Property, or
> prospective renters. On this basis alone, Plaintiff will be unable to assert any
> viable claim against Remax and Agent Zhang.

*Id*. at 1; *see also id*. at 2 (representing that Zhang's "role was exclusive to the sale of the

Property"). They further represented that "Zhang specifically expressed an intent to *not* provide

services for potential renting of the Property, and informed the Owners that he did not broker

rentals"). *Id*. (emphasis in original). As discussed below, that representation was false: in fact,

Zhang regularly brokers rental properties. They further represented that Zhang had "no

knowledge" of any "prior rental transactions with the Owners." *Id*. As discussed below, that

representation also was false: in fact, Zhang was closely involved in multiple prior rental

transactions with the owners.

Defense counsel did not stop there. On October 23, 2024, attorneys Richards and Kest

co-signed a pre-motion letter seeking leave to move to dismiss (Ex. 5). In that letter, attorneys

Richards and Kest represented to the Court that Zhang had not represented the owners of 581

Caswell Avenue since they purchased the property in 2022 and that Zhang supposedly did not

broker rentals:

> Neither Remax nor Zhang have represented the Owners since the sale, and indeed
> Zhang specifically informed the Owners that he did not broker rentals and that
> they would need to use another agent for such a transaction.

They also represented to the Court that "other brokers represented the Owners in their search for

renters." *Id*. They also suggested to the Court that any interaction between Zhang and the

owners following their purchase of the property was only "incidental." *Id*. at 2. They also

represented to the Court that Zhang was not "directly involved in any transaction in which any

Plaintiff attempted" to rent from the owners. *Id*. at 3. They also represented to the Court that

Zhang had no involvement in the rejection of Plaintiffs' rental application.  *Id*.  As discussed

below, all of those representations are false.

<u>The Third Amended Complaint</u>

During the March 6, 2025 pre-motion conference, the Court indicated that it was inclined

to hold that the Second Amended Complaint was inadequately pled, but the Court granted

Plaintiffs leave to file a Third Amended Complaint.

On March 10, 2025, Plaintiffs filed a Third Amended Complaint (Ex. 6).  To be clear,

this was the first time that Plaintiffs' pleading had been amended substantively (the Amended

Complaint merely corrected the identity of an incorrectly named party, and the Second Amended

Complaint merely added Zhang and Remax as Defendants).  The TAC – which, critically, was

filed before Plaintiffs received any of the damning discovery discussed below – contains the

following specific, non-conclusory allegations that Plaintiffs made in good faith upon

information and belief:

> Defendant Zhang is a licensed real estate salesperson employed by Remax;
>
> Defendant Zhang is fluent in Mandarin and Cantonese;
>
> Defendants Zheng and Weng are not native English speakers;
>
> Defendants Zheng and Weng speak primarily Mandarin and/or Cantonese;
>
> Defendants Zhang and Remax acted as agents of Defendants Zheng and Weng in connection with the purchase of 581 West Caswell Avenue by Defendants Zheng and Weng in 2022;
>
> [W]hen Defendants Zheng and Weng subsequently sought to rent the unit at issue at 581 West Caswell Avenue in 2023, they asked Defendant Zhang to serve as the listing agent for that rental transaction;
>
> Defendant Zhang informed Defendants Zheng and Weng that he does not formally serve as the listing agent for rental transactions;

Defendants Zheng and Weng nevertheless asked Defendant Zhang to provide assistance to them in connection with the rental transaction, and Defendant Zhang agreed to provide them such assistance;

Defendant Zhang had a pecuniary motive to provide assistance to Defendants Zheng and Weng in connection with the rental transaction and to hold himself out as an agent with authority on their behalf and to act as an agent with actual and/or apparent authority on their behalf, even though he was not formally listing it, because he hoped that Defendants Zheng and Weng would list 581 West Caswell Avenue with him in the future if they chose to sell it and because he hoped that Defendants Zheng and Weng would recommend him to other potential buyers and sellers in the community;

Defendants Zheng and Weng were not educated about the market for the available unit at 581 West Caswell Avenue;

Defendant Zhang was very educated about the market for the available unit at 581 West Caswell Avenue;

Defendant Zhang provided Defendants Zheng and Weng with advice regarding renting the available unit at 581 West Caswell Avenue, including advice about the appropriate listing price and advice about how to advertise its availability;

Defendant Zhang helped Defendants Zheng and Weng evaluate the rental applications that were submitted for the available unit at 581 West Caswell Avenue, including the application that was submitted by Plaintiffs Delone-Felix and Felix;

Defendant Zhang acted within the scope of his actual and/or apparent authority when he took actions to screen and/or to help screen applications;

Defendant Zhang was aware that Plaintiffs Delone-Felix and Felix were the first applicants for the available unit at 581 West Caswell Avenue and that they were well qualified;

Defendants Zheng and Weng informed Defendant Zhang that they did not want to rent to Plaintiffs Delone-Felix and Felix because they had had negative experiences renting to Black tenants in the past;

Defendant Zhang knew that this reason for rejecting the application submitted by Plaintiffs Delone-Felix and Felix violated federal, state, and local law;

Defendant Zhang nevertheless agreed to assist Defendants Zheng and Weng in unlawfully rejecting the application submitted by Plaintiffs Delone-Felix and Felix;

[I]n or about November 2023, Defendant Zhang participated in a telephone call among himself, Defendant Zheng and/or Defendant Weng, and Defendant Niayzov; and

[D]uring that telephone call, Defendant Zhang informed Defendant Niayzov that Defendant Zheng and Weng had rejected the application submitted by Plaintiffs Delone-Felix and Felix because Defendant Zheng and Weng had had negative experiences renting to Black tenants in the past.

*Id*. ¶¶ 40-64.  The TAC also alleges that:

Zhang was authorized by Defendants Zheng and Weng to perform actions on their behalf regarding one or more matters related to rental of the available unit at 581 Caswell Avenue;

Zheng and Weng asked Defendant Zhang to assist them in renting the available unit at 581 Caswell Avenue and to screen potential tenants on their behalf, Defendant Zhang agreed to do so, Defendant Zhang did in fact do so, and Defendants Zheng and Weng maintained ultimate control over the transaction; and

Additionally, Defendants Zhang and Niayzov are both directly liable for their own violations of federal law [because] [t]he Fair Housing Act makes it unlawful for any person to make any statement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race or color [and] Defendants Zhang and Niayzov violated the Fair Housing Act by telling Plaintiffs Delone-Felix and Felix that their application for 581 Caswell Avenue had been rejected because of their race.

*Id*. ¶¶ 214-218.

Attorney Kest Claims Falsely that No Text Messages Exist

Plaintiffs served Zhang and Remax with discovery demands in January 2024 (Ex. 7). Zhang and Remax moved for a discovery stay twice.  Magistrate Judge Merkl denied both motions (*see* Minute Entries 3/3/25, 3/11/25).

Zhang and Remax belatedly served their responses to Plaintiffs' discovery demands on March 20, 2025 (Ex. 8).  They produced very little.  They produced no text messages or emails between Zhang and the owners and no texts or emails between Zhang and Niayzov.  Attorney

Richards certified pursuant to Rule 26(g) that Zhang had no documents concerning Plaintiffs (Ex. 8, Request No. 4).

Plaintiffs' counsel met and conferred with attorney Kest on March 24, 2025. Hecker Decl. ¶ 11. Attorney Kest refused to say whether any attorney at his firm had examined Zhang's phone to see whether there were any texts with Niayzov. *Id*.

On April 1, 2025, Plaintiffs moved to compel. ECF 67. Plaintiffs' counsel then met and conferred with attorney Kest again on April 1, 2025. During that call, attorney Kest informed Plaintiffs' counsel that Zhang had deleted any emails he had exchanged with Niayzov or with the owners of 581 West Caswell. Hecker Decl. ¶ 12. Attorney Kest also informed Plaintiffs' counsel that contrary to his prior representations, Zhang in fact did have responsive text messages that had not been produced, but he refused to commit to a production date. *Id*. Judge Merkl held a conference on April 24, 2025, during which she ordered Zhang to produce the missing texts by April 29, 2025 (*see* Minute Entry 4/24/25).

The Text Messages Between Zhang and Niayzov

On April 30, 2025 – more than two months after Defendants' discovery response deadline, and more than a month and a half after Plaintiffs amended their pleading – Defendants finally produced the texts that attorney Kest previously insisted did not exist (Ex. 9). They are shocking. The two-year, 200-page colloquy between Zhang and Niayzov confirms both that Zhang unlawfully discriminated against Plaintiffs and that he and his attorneys materially misled the Court in numerous ways.

First, contrary to defense counsel's false representation to the Court that Zhang does not broker rentals, Zhang in fact regularly brokers rental units. The texts show that in 2022 and 2023 alone, Zhang made Niayzov aware of at least 18 properties that Zhang was listing for rent:

277 Seguine Avenue, 271 Moreland Street, 132 Buffalo Street, 346 55th Street, 166 Mill Road, 98 Russell Street, 579 West Caswell Avenue, 321 Garretson Avenue, 58 Eagan Avenue, 2128 72nd Street, 277 Seguine Avenue, 30 Coale Avenue, 7516 Bay Parkway, 1524 Drumgoole Road, 432 Eltingville Blvd., 1133 Olympia Blvd., 132 Camden Avenue, and 10 Row Place.  *Id.*

The texts further make clear that Zhang and Niayzov worked together as partners, and they strongly suggest that Zhang and Niayzov split the broker fees that flowed from their partnership.  During 2022 and 2023, Niayzov asked Zhang by text if Zhang had any new rental listings at least 24 times (on 4/23/22, 5/19/22, 5/23/22, 6/1/22, 7/31/22, 8/26/22, 9/7/22, 9/13/22, 9/18/22, 11/2/22, 11/7/22, 1/24/23, 2/2/23, 2/15/23, 3/12/23, 4/24/23, 4/26/23, 5/8/23, 5/19/23, 5/22/23, 5/31/23, 6/9/23, 7/27/23, and 11/29/23).  *Id.*  In response to these inquiries, Zhang repeatedly reassured Niayzov that Niayzov was Zhang's primary rental partner.  For example, on August 26, 2022, Zhang wrote that Niayzov was the "First person I going to call" when a new listing came in.  *Id.* at 226.  On April 24, 2023, Zhang wrote "If I have new rental listing I alway [sic] give to you."  *Id.* at 150.  On May 8 and again on May 22, 2023, Zhang wrote "If I have new listing I already call you."  *Id.* at 145, 147.  On January 31, 2022, Zhang told Niayzov "you are my partner."  *Id.* at 269.

The texts further make clear that when Zhang told Niayzov about a new listing, they would often meet at the property, typically the next day.  It appears that Niayzov would take photographs of the property and advertise it to prospective renters on Zillow.com or another similar real estate website.  Niayzov would handle the showings and present the application materials to Zhang, Zhang would present the materials to the owners, and Zhang would relay back to Niayzov any requests by the owners for additional information.  Sometimes the potential tenants would offer less than the asking rent, Niayzov would tell Zhang, Zhang would consult

with the owners, and Zhang would report back to Niayzov about whether the offer was accepted. Their partnership was fruitful. The texts show that together they successfully filled many and apparently most of the rental listings Zhang brought to Niayzov.

It also appears that Zhang and Niayzov would split the broker fees that they generated together. Although the texts themselves are not conclusive on this point, as discussed below, the day that Zhang and Niayzov closed a rental transaction at 581 West Caswell – the property at issue in this case – Niayzov texted Zhang "I got the money," Ex. 9 at 238, and two days later, Zhang texted "Hi Jacob what time tomorrow you will be in Staten Island so I can pick up money from you." *Id*. at 238. They also discussed exchanging gifts, including liquor and a gift from Zhang for Niayzov's child. *Id*. at 80, 224-25.

The texts further confirm that contrary to defense counsel's false representations to the Court that Zhang had nothing to do with renting 581 West Caswell, Zhang actually was repeatedly deeply involved in that process. The sale of the property to Zheng and Weng closed in mid-2022. It is a two-family home, with a larger unit with a driveway and garage on the first floor, and a smaller unit on the second floor. On June 16, 2022, Zhang texted Niayzov that both units were available to rent. *Id*. at 259. Zhang showed the units to Niayzov the next day. *Id*. at 258-59. The following day, Zhang gave Niayzov the door code. *Id*. at 258.

On June 19, 2022, Niayzov showed the downstairs unit to white prospective tenants, who he assured Zhang were "good people." *Id*. at 255-57. That deal fell through, but Niayzov presented other prospective tenants a few days later. On June 24, 2022, Zhang asked Niayzov for additional information about them, and when Niayzov did not immediately provide it, Zhang wrote the next day that "The owner call me two time already. They need to see it then sign the lease." *Id*. at 251-52. Niayzov submitted materials for other prospective tenants on June 30,

11

2022, Zhang responded that the owners were requesting additional information, Niayzov responded that it would be submitted on July 2, and at 10:09 p.m. July 2, Zhang wrote "Hey Jacob what time you going email me the paperwork because the owner going to bed at 11:00am she just call." *Id*. at 247-50. That potential transaction apparently did not close either.

On July 12, 2022, Niayzov presented Zhang with application materials from Diego Hernandez Lopez, who became the owners' first tenant in the downstairs unit. Niayzov wrote they were "Good people, Mexican." *Id*. at 240. Niayzov then followed up, urging Zhang to call the owner, referring to Lopez again as a "Good Mexican." *Id*. at 239. The owners agreed to rent to him, Niayzov drafted the lease, Niayzov sent the lease to Zhang, and Zhang emailed the lease to Weng for signing (Ex. 10). As discussed above, it appears that Zhang and Niayzov split the commission.

Zhang and Niayzov then continued to work together to fill the upstairs unit. On July 17, 2022, Niayzov presented application materials from Rick Lialli ("Lialli") (Ex. 9 at 237-38). Zhang relayed that the owners asked for additional information, which Niayzov provided the next day. *Id*. at 236-37. Zhang then reported that Weng "just call me" and "want full credit report with name." *Id*. at 236. Niayzov provided it, and Zhang confirmed that he "just email owner." *Id*. at 235. Shortly thereafter, he confirmed that "owner ok." *Id*. Niayzov prepared the lease, he and Zhang met the tenant at the unit, and the tenant signed in Zhang's presence. *Id*. Zhang then emailed the signed lease to Weng (Ex. 11).

Zhang's undeniably deep involvement in renting the two 581 West Caswell units belies defense counsel's written representations to the contrary. But there is even more. On at least two occasions, Zhang went so far as to draft letters from the owners to the New York City Human Resources Administration to help the owners collect agency rent subsidies with respect

12

to the downstairs unit at 581 West Caswell.  Zhang prepared these letters and emailed them to Weng for signature (Ex. 12, 13).

Zhang also was deeply involved with trying to get Lialli to catch up on rent arrears he owed the owners.  On August 31, 2022, Zhang complained to Niayzov that Lialli had thrown Amazon boxes out the window into the backyard and that the Lopez family had complained (Ex. 9 at 225-26).  Then, on November 17, 2022, Zhang told Niayzov that Lialli was behind on the rent and asked Niayzov for help collecting it.  *Id*. at 209.  The texts show that this became quite a saga.  In the ensuing months, Zhang followed up with Niayzov about the rent arrears at 581 Caswell at least 26 times (on 11/25/22, 1/3/23, 1/4/23, 1/9/23, 1/26/23, 2/20/23, 2/28/23, 3/2/23, 3/6/23, 3/8/23, 3/9/23, 3/14/23, 3/15/23, 3/19/23, 4/2/23, 4/10/23, 4/26/23, 4/28/23, 4/29/23, 5/4/23, 5/8/23, 5/22/23, 5/24/23, 6/5/23, 7/27/23, and 8/1/23).  *Id*.  The texts make clear that Zhang personally called and texted the tenant dozens of times, repeatedly spoke to Zheng and Weng about the arrears, and repeatedly attempted to collect the rent arrears from Lialli in person. On September 28, 2023, the downstairs tenants made another pointed complaint about Lialli, *id*. at 120-21, and Lialli finally vacated the upstairs unit at some point not long thereafter.

The texts further show that Zhang and Niayzov repeatedly made comments to one another that evidence unlawful race, gender, and family status discrimination.  In addition to the "Good Mexican" comments about the downstairs tenant at 581 West Caswell discussed above, the texts show that on December 12, 2022, Zhang told Niayzov that the owner of Coale Avenue was only interested in "good tenants."  *Id*. at 125.  When Niayzov presented a tenant for that unit on January 4, 2023, Zhang reviewed his driver's license photo and asked whether he was "Russian or India."  *Id*. at 182-83.  Niayzov confirmed that the prospective tenant was Russian, and Zhang responded "Ok."  *Id*. at 182.  On January 11, 2023, Niayzov told Zhang that he had

prospective tenants for a unit that were "Panama Spanish" and "Good people." *Id*. at 179.  On January 20, 2023, Zhang referred to the first-floor tenant at 581 Caswell as "Mexico guy." *Id*. at 179.  On April 2, 2023, Niayzov told Zhang that he had a "good client" for one of Zhang's rental listings, Zhang asked "What kind of people?"  Niayzov responded "White," "Italian," "Nice family," and Zhang responded "Ok." *Id*. at 160-61.  On April 21, 2023, Niayzov told Zhang that he had a "Very good client" who was a "Russian family" for a Zhang property, and Zhang responded "Ok." *Id*. at 155.  On May 5, 2023, Zhang complained to Niayzov about prospective tenants, writing "Those people didn't speak English." *Id*. at 147.  On December 10, 2023, when Niayzov submitted a tenant's application for a Zhang listing, Zhang asked "Hey Jacob that tenant is Spanish or white the owner ask," Niayzov responded "Good client," "White," and Zhang responded "Ok." *Id*. at 96.  On at least two occasions (7/8/22 and 9/5/23), Zhang told Niayzov that a unit was only available to female tenants. *Id*. at 133, 242.  On multiple occasions (12/28/22, 3/18/23, 11/3/23), Zhang and Niayzov discussed owners' preferences for tenants without children, *id*. at 115, 162, 186, including a discussion on December 28, 2022, in which Zhang confirmed that the owners of 432 Eltingville Blvd. had rejected Niayzov's applicants because they had children. *Id*. at 186.

This brings us to Zhang's discrimination against Plaintiffs.  On November 3, 2023, after Lialli had vacated the upstairs unit at 581 West Caswell, Zhang texted Niayzov that the unit was available and provided the door code. *Id*. at 115.  Plaintiffs viewed the unit on November 4, 2023, and they liked it.  At 9:48 a.m. on November 5, 2023, Niayzov texted Zhang "I have family like the apartment." *Id*.  At 3:41 p.m., Zhang asked whether the prospective tenants had children, and Niayzov confirmed that they do not. *Id*.  Niayzov emailed Plaintiffs' application

14

materials to Zhang at 3:44 p.m. (Ex. 14). One minute later, Niayzov texted Plaintiffs' driver's

licenses to Zhang:





Ex. 9 at 114-15. Zhang's call log shows that he spoke to Niayzov by telephone at 3:43, 4:00, and

5:47 p.m. that day. Ex. 15. Even though Plaintiffs both worked full-time, had more than

sufficient income to qualify, and had excellent credit, *Zhang never forwarded Plaintiffs'*

*application materials to Zheng or Weng.* Instead, *Niayzov informed Plaintiffs that their*

*application had been rejected because they are Black.* Ex. 6, ¶ 64. *And then the unit sat on the market for nearly two more months.*

Another tenant signed a lease for January 1, 2024. Niayzov found the tenant, he presented the application materials to Zhang, Zhang presented the materials to the owners, Niayzov prepared the lease, the tenant signed, and Zhang sent the signed lease to Weng. Ex. 9 at 88-94; Ex. 16.

<u>The Instant Motion</u>

Notwithstanding this record, on April 1, 2025, attorneys Richards and Kest co-signed a second pre-motion letter in which they doubled down on their blatantly false representations to the Court that Zhang's "only formal role was representing the Owners during the original purchase of the Property" and that after the purchase, Zhang "did not represent the Owners in their search for renters." Ex. 17. at 1.

Defendants then filed the instant motion, in which they continue to insist not just that the Third Amended Complaint *does* not but that it "*cannot*" "plead any connection" between Zhang and "Niyazov's alleged discriminatory acts." ECF 82 at 1 (emphasis supplied). The brief that they signed expressly represents that "Niyazov was the rental agent" and that the 2022 sale of the property "was the only professional relationship between the Owners" and Zhang. Id. at 1, 4.[2]

---

[2] Attorneys Richards and Kest co-signed their pre-motion letters and brief pursuant to Rule 11(b)(4), which prohibits an attorney from presenting a court with a motion that contains "denials of factual contentions" that are not "warranted on the evidence." Although motions for sanctions should be brought only in extreme cases, we respectfully submit that this is such a case, and we therefore have served attorneys Richards and Kest and their law firm, Furman Kornfeld & Brennan LLP, with a notice of motion for sanctions and a Rule 11(c)(2) safe harbor notice informing them that Plaintiffs will move for sanctions against their clients, them, and their law firm if they do not withdraw their motion or correct their misrepresentations to the Court within 21 days.

## LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the court "accepts as true 'all well-pleaded factual allegations in the complaint,' [and] draws 'all reasonable inferences in favor of the nonmoving party,'" *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). While a complaint "must allege a plausible set of facts sufficient to raise a right to relief above the speculative level," *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010), this standard "does not require 'detailed factual allegations.'" *Gamm*, 944 F.3d at 462 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

**I.    THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT ZHANG AND REMAX ENGAGED IN UNLAWFUL DISCRIMINATION IN VIOLATION OF FEDERAL, STATE, AND NEW YORK CITY LAW**

### A.    The Allegations in the Third Amended Complaint Are Well Pled

Defendants' brief focuses on whether the Third Amended Complaint plausibly alleges that Zhang served as the agent of the owners of 581 West Caswell in connection with the discrimination against Plaintiffs. Although it plainly does, that issue is a red herring because in this case *Zhang himself was a key discriminator*.

Federal, state, and New York City law each make clear that it is unlawful for a real estate broker to discriminate against a prospective tenant because of race. *See* 42 U.S.C. § 3604 (making it unlawful among other things to "refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race"); *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (affirming jury verdict against landlords, brokerage firms, and brokers in their individual capacities for discrimination); *Carpenter v. Churchville Greene Homeowner's Ass'n, Inc.*, 09 Civ. 6552, 2011 WL 710204, at *4 (W.D.N.Y. Feb. 22, 2011)

17

("[I]ndividuals . . . and agents can be held liable for their own discriminatory acts under the Fair Housing Act.") (citing *Andujar v. Hewitt*, 02 Civ. 2223, 2002 WL 1792065, at *10 (S.D.N.Y. Aug. 2, 2002)); *see also* N.Y. Exec. Law § 296(5)(c) (explicitly prohibiting real estate brokers from discriminating against prospective tenants); N.Y.C. Admin. Code § 8-107(5)(c) (same).

The statutes, regulations, and case law are equally clear that even where a real estate broker is not himself the discriminator, it is unlawful even to make statements expressing that an owner has rejected an application because of race.  42 U.S.C. § 3604(c) (prohibiting "mak[ing], print[ing], or publish[ing], or caus[ing] to be made, printed, or published any . . . statement . . . with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race . . . or an intention to make any such preference, limitation, or discrimination"); 24 CFR § 100.75 (same); N.Y. Exec. Law § 296(5)(a)(3) and § 296(5)(c)(3); N.Y.C. Admin. Code § 8-107(5)(a)(2) and 8-107(5)(c)(2); s*ee also Fair Housing Justice Center, Inc. v. Allure Rehabilitation Servs. LLC*, 15 Civ. 6336, 2017 WL 4297237, at *6 (E.D.N.Y. Sept. 26, 2017) ("'Section 3604(c) does not merely prevent expressions that result in the denial of housing,' . . .  Rather, '[t]he statute also protect[s] against [the] psychic injury caused by discriminatory statements made in connection with the housing market.'") (quoting *United States v. Space Hunters, Inc*., 429 F.3d 416, 424 (2d Cir. 2005)); *see also Space Hunters, Inc.*, 429 F.3d at 424 (noting the broad sweep of Section 3604(c), which "does not provide any specific exemptions or designate the persons covered, but rather ... applies on its face to anyone who makes prohibited statements") (internal citations omitted).

Here, the TAC alleges that Zhang agreed to provide Zheng and Weng with assistance in renting the unit in question; that Zhang had a pecuniary motive to provide such assistance; that Zhang advised the owners with respect to pricing, screened prospective tenants, and evaluated

their qualifications, including Plaintiffs' qualifications; that Zhang was aware that Plaintiffs were the first applicants and were well qualified; and that "Defendant Zhang informed Defendant Niayzov that Defendant Zheng and Weng had rejected the application submitted by Plaintiffs Delone-Felix and Felix because Defendant Zheng and Weng had had negative experiences renting to Black tenants in the past."  Ex, 6, ¶¶ 40-64.

The TAC further alleges that at all relevant times Zhang was employed by or associated with Remax, acting within the scope of such employment or association.  *Id*. ¶¶ 22-23.  The law is clear that Remax therefore is vicariously liable for Zhang's misconduct.  *See Meyer v. Holley*, 537 U.S. 280, 285-86 (2003); (N.Y.C. Admin. Code § 8-107(13) ("An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section . . . .").

Instead of confronting the actual language of Plaintiffs' specific allegations, Defendants devote most of their brief to their meritless argument that Plaintiffs supposedly did something improper by pleading certain allegations upon information and belief.  Def. Br. at 9-16.  Contrary to Defendants' spin, there is nothing wrong with pleading facts upon information and belief when the alleged facts are exclusively within the defendants' knowledge.  *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (holding that the *Twombly* plausibility standard "does not prevent a plaintiff from 'pleading facts alleged 'upon information and belief'' where the facts are peculiarly within the possession and control of the defendant . . . or where the belief is based on factual information that makes the inference of culpability plausible.") (internal citations omitted).  The standard only requires that there is a "reasonable expectation that discovery will reveal evidence of illegality."  *Id.*; *see also Murray v. United Parcels Service, Inc.*, 20 Civ. 1427, 2022 WL 4468295, at *9-10 (E.D.N.Y. Sept. 25, 2022) (plaintiffs' allegations

upon information and belief plausibly pled where "based on factual information that ma[de] the inference of culpability plausible") (internal quotation omitted); *Speedfit LLC v. Chapco Inc.*, 15 Civ. 1323, 2016 WL 5793738, at *7 (E.D.N.Y. June 29, 2016) (permitting pleading on information and belief where details of an agreement were "reasonably beyond Plaintiffs' knowledge"); *Installed Bldg. Products, LLC v. Cottrell*, 13 Civ. 1112, 2014 WL 3729369, at *8 (W.D.N.Y. July 25, 2014) (allowing claim to proceed to discovery even though "key allegations . . . [were] all made 'upon information and belief,'" where inferences were reasonable).

Far from being improper, acknowledging candidly that certain allegations are pled on information and belief because they are exclusively within the defendants' knowledge is the forthright and responsible approach to pleading. *See* 5 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1224 (4th ed.) (pleading on information and belief is a "practical necessity" and "a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff" because "[h]ow else can a pleader avoid the appearance of perjury when he is without direct personal knowledge regarding one or more of the allegations necessary to his claim and therefore must plead on a less certain footing?").

To be sure, a plaintiff may not rescue an otherwise impermissible wholly conclusory allegation by "plop[ping]" the words "upon information and belief" before a conclusory statement. *Dou v. TD Bank N.A.*, 2024 WL 4252500, at *7 (S.D.N.Y. Sept. 20, 2024). Here, however, there is nothing conclusory about any of the highly specific factual allegations at issue. *See, e.g.*, *id.* (claim based upon 22 paragraphs of factual allegations pleaded "on information and belief" was adequately pled)*; Tenecora v. Ba-Kal Restaurant Corp.*, 2021 WL 424364, at *5 (E.D.N.Y. 2021) (plaintiffs adequately pled race discrimination by pleading that Latino employees' wages were withheld and white employees' wages were not withheld "on

information and belief") (citing *Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008)).  The detailed factual allegations in the TAC are far from "threadbare recitals of the elements of a cause of action," *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "unadorned, the-defendant-unlawfully-harmed-me accusation[s]," or "naked assertion[s] devoid of further factual enhancement" of the type that have been considered conclusory, *Pension Ben. Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 717 (2d Cir. 2013) (internal quotations omitted).

Notably, Defendants do not point to any specific allegation that they claim is conclusory, much less do they attempt to demonstrate that all or even most of the relevant allegations are conclusory.  Defendants' strained attack on the sufficiency of the TAC therefore fails.

Moreover, Defendants do not even acknowledge, much less move against, Plaintiffs' claim that Zhang and Remax aided and abetted the owners and Niayzov in discriminating against Plaintiffs.  Ex 6, ¶¶ 272, 292.  The applicable legal standard is notably modest, requiring only that the defendant "actually participates in the conduct giving rise to a discrimination claim."  *Modny v. Foley Hoag LLP*, 2025 WL 487308 (S.D.N.Y. Feb. 12, 2025); *see also Ananiadis v. Mediterranean Gyros Products, Inc*., 151 A.D.3d 915 (2d Dep't 2017) ("Where a defendant provided, or attempted to provide, assistance to the individual or individuals participating in the primary violation, he or she may be found liable for aiding and abetting discriminatory conduct.").  "The bar for pleading 'actual participation' at the motion to dismiss stage is low." *Diaz-Roa v. Hermes L., P.C*., 2024 WL 4866450, at *34 (S.D.N.Y. Nov. 21, 2024); *see also Robinson v. MSG Ent. Grp., LLC*, 2024 WL 3938361, at *16 (S.D.N.Y. Aug. 26, 2024); *Lee v. Riverbay Corp*., 2024 WL 4312166, at *16 (S.D.N.Y. Sept. 27, 2024); *Colbert v. FSA Store, Inc*., 2020 WL 1989404, at *5 (S.D.N.Y. Apr. 27, 2020); *Attali v. City of New York*, 2018 WL 11476391, at *3–4 (S.D.N.Y. Sept. 17, 2018).  Defendants could not contend credibly

21

that Plaintiffs have not met this standard, nor do they attempt to do so, which is reason enough to deny the motion.

**B.    The Court Should Additionally Consider the Discovery Record**

This case is in a somewhat unusual (but not unique) posture because many of the Defendants have answered, Judge Merkl has twice declined to stay discovery, some Defendants have partially complied with their discovery obligations, and the documents that have been produced strongly support Plaintiffs' allegations; and yet Defendants are moving against a pleading that was filed before they belatedly and begrudgingly produced the documents that betray the blatant misrepresentations in their motion.  Under these circumstances the Court can and should consider not just the allegations in the TAC – which themselves are plainly sufficient – but also the extensive discovery record discussed above.  *See supra* at 9-16.

As the Second Circuit recently explained, whereas the Rule 12(b)(6) standard "acts as a screening mechanism in the early stages of the litigation" by "clos[ing] the doors of discovery" unless the complaint "allege[s] sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the defendant's wrongdoing," "*once the parties have already incurred the expense of discovery, that objective becomes inapposite*."  *Lugo v. City of Troy*, 114 F.4th 80, 89 (2d Cir. 2024) (emphasis added) (citation omitted).  In this somewhat unusual but not unique posture, the appropriate course is for the Court to afford Plaintiffs "flexibility in opposing a Rule 12(b)(6) motion" by allowing Plaintiffs to "elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings."  *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Clopay Plastic Prods. Co., Inc. v. Excelsior Packaging Grp., Inc.*, 2013 WL 6388444, at *5 (S.D.N.Y. 2013) (where the plaintiff is the party offering the

documents for consideration, "there is no concern of lack of notice to the plaintiff," the typical basis for excluding documents outside the pleadings).

In this case, it would be particularly unfair to judge the sufficiency of the TAC without also considering the discovery record given that the discovery record shows unequivocally, through Zhang's own words, that defense counsel materially misrepresented the facts in their pre-motion letter and brief.

To be clear, as shown above, the detailed allegations in the TAC themselves are plainly sufficient to withstand this motion. When the actual facts proven by the discovery record are considered, as they should be here, Defendants' motion is reduced from very weak to frivolous.

## II.   IN THE ALTERNATIVE, THE MOTION TO DISMISS SHOULD BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT

As shown above, whether or not the Court formally converts Defendants' motion to dismiss to a motion for summary judgment, the discovery record should be considered. If the Court disagrees, then the Court should convert the motion to a motion for summary judgment pursuant to Rule 12(d) and allow the evidence that has been adduced during discovery to be presented and considered.

Rule 12(d) provides that where a defendant presents "matters outside the pleadings" that are "not excluded by the court," the motion "must be treated as one for summary judgment under Rule 56." Here, Defendants have presented and rely upon the 581 West Caswell purchase contract, Richards Decl. Ex. B, which they assert falsely "was the only professional relationship between the Owners" and Zhang, Def. Br. at 4. By presenting and relying on the purchase contract and making that representation to the Court, Defendants have opened the door to consideration of contrary evidence of their involvement in the transaction at issue. *See, e.g.*, *Amerol Corp. v. American Chemie-Pharma, Inc.*, 04 Civ. 0940, 2006 WL 721319, at *12

(E.D.N.Y. March 17, 2006) (where party relied on evidence outside of the pleadings, it "opened the door for [the court] to convert" the motion into one for summary judgment).

To be clear, this is an alternative argument. As shown in Point I, *supra*, the motion should be denied based on the allegations in the TAC alone. But if the Court has any doubts about the sufficiency of those allegations or its ability to consider the discovery record in a Rule 12 posture, the Court can and should exercise its authority under Rule 12(d) to provide the parties with notice that it is converting the motion to a summary judgment motion, and affording each side the opportunity to make their respective cases under the standard that applies to Rule 56 motions.

## III.    IN THE ALTERNATIVE, LEAVE TO REPLEAD SHOULD BE GRANTED

If the Court is inclined to conclude (i) that the allegations in the TAC are insufficient, (ii) that it cannot consider the discovery record in a Rule 12 posture, and (iii) that it would be inappropriate to convert the motion to a summary judgment motion pursuant to Rule 12(d), then the Court should permit Plaintiffs to amend the TAC to add all of the additional allegations (indeed, facts) discussed at pages 9-16, *supra*.

It is true that Plaintiffs already have amended twice, but as discussed above, the first amendment was to correct an inadvertent mistake in naming the wrong owner of the property at issue, and the second amendment was to add Zhang and Remax as parties based on information provided by Niayzov after he appeared. There has been only one amendment amplifying the allegations substantively, and the amendment deadline set by Judge Merkl is not until July 14, 2025 (Minute Order 3/3/25).

It is axiomatic that leave to amend should be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a)(2); *Agerbrink v. Model Service LLC*, 155 F. Supp. 3d 448, 452 (S.D.N.Y.

2016) ("Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.").

Indeed, the amendment standard is so forgiving that Rule 15(b)(1) instructs courts to "freely allow" an amendment of a complaint *during a trial* to conform to the evidence presented at trial "when doing so will aid in presenting the merits" and there is no prejudice. We are a long way from trial, Defendants cannot point to any prejudice, and it therefore plainly would be appropriate to allow amendment if the Court rejects all of Plaintiffs' other arguments, which take precedence over their request to replead.

It is notable that Zhang's discovery production was due in late February. Ex. 7. Had Zhang met the deadline prescribed by Rule 30, then Plaintiffs would have been able to include the facts shown in the Zhang-Niayzov texts when Plaintiffs filed the TAC on March 10. To be sure, it is customary for discovery extensions to be sought and granted as a courtesy. Here, however, Defendants never received an extension, and it would be unfair for the Court to allow them to leverage their non-compliance with their Rule 30 obligation to prevent Plaintiffs from having a fair opportunity to plead the facts and proceed with allegations that Plaintiffs now know are supported by overwhelming evidence.[3]

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be denied.

---

[3] As noted in footnote 1 in the TAC, defense counsel has appeared in this action as counsel for Defendant Remax Edge Realty, LLP but has identified itself as counsel for Womcore LLC d/b/a Remax Edge. This may reflect that Plaintiffs may have unintentionally named the wrong Remax entity based on diligent searches of the limited information that is publicly available, and that the entity through which Defendant Zhang allegedly acted as the agent for Defendants Zheng and Weng may have been Womcore LLC. Plaintiffs reserve the right to seek leave to further amend to name Womcore LLC once that identity has been confirmed.

Dated: New York, New York
       May 6, 2025

                                   WANG HECKER LLP

                                   By:_____
                                         Eric Hecker
                                         Mariann Wang
                                         Heather Gregorio

                                   305 Broadway, Suite 607
                                   New York, New York 10007
                                   (212) 620-2600

                                   *Attorneys for Plaintiffs*