UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;          24 Civ. 4201 (LDH) (TAM)
FELIX; BIANCA JONES; and ROSLYN
SEALE,
                                          **DECLARATION OF ERIC HECKER**
                                          **IN OPPOSITION TO DEFENDANTS'**
                    Plaintiffs,           **MOTION TO DISMISS**

          v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; AND REMAX EDGE REALTY,
LLC,

                    Defendants.
-------------------------------------------------------X

     **ERIC HECKER, ESQ.** hereby declares the following to be true under penalty of perjury

pursuant to 28 U.S.C. § 1746:

     1.      I am an attorney duly licensed to practice law in New York State and before this

Court.  I am a partner at Wang Hecker LLP, which represents the Plaintiffs in this action.  I

hereby submit this Declaration, and the exhibits appended hereto, in support of Plaintiffs'

opposition to the motion to dismiss filed by Defendants Remax Edge Realty, LLC ("Remax")

and Xian Jin Zhang ("Zhang").

     2.      Attached as Exhibit 1 is a true and correct copy of Plaintiffs' original Complaint

in this action dated June 12, 2024.

3.      Attached as Exhibit 2 is a true and correct copy of Plaintiffs' Amended Complaint in this action dated July 23, 2024.

4.      Counsel for Niayzov appeared in July 2024.  During informal pre-answer discussions between Plaintiff's counsel and Niayzov's counsel, Niayzov's counsel disclosed that Zhang, who is a real estate agent affiliated with Remax, served as the "intermediary" between Niayzov and the owners of 581 West Caswell with respect to Plaintiffs' application.

5.      Attached as Exhibit 3 is a true and correct copy of Plaintiffs' Second Amended Complaint in this action dated August 15, 2024.

6.      Attached as Exhibit 4 is a true and correct copy of defense counsel's October 9, 2024 letter to the undersigned.

7.      Attached as Exhibit 5 is a true and correct copy of Zhang's first pre-motion letter to the Court dated October 23, 2024.

8.      Attached as Exhibit 6 is a true and correct copy of Plaintiffs' Third Amended Complaint in this action dated March 10, 2025.

9.      Attached as Exhibit 7 is a true and correct copy of Plaintiff's First Set of Discovery Requests to Defendants dated January 27, 2025

10.     Attached as Exhibit 8 is a true and correct copy of Zhang's Responses to Document Requests dated March 20, 2025.

11.     I met and conferred with attorney Asher Kest on March 24, 2025.  During that conversation, I expressed concern that Zhang had not produced any responsive texts, and I asked attorney Kest whether any attorney at his firm had examined Zhang's phone to see if there were any texts with Niayzov.  Attorney Kest would not answer that question.

12.     I met and conferred with attorney Kest for a second time on April 1, 2025. During that call, attorney Kest informed me that Zhang had deleted any emails he had exchanged with Niayzov or with the owners of 581 West Caswell, ostensibly pursuant to Zhang's general practice of deleting all of his sent or received emails.  Attorney Kest also informed me that contrary to his prior representations, Zhang in fact did have responsive texts that had not been produced, but attorney Kest refused to commit to a production date.

13.     Attached as Exhibit 9 is a true and correct copy of a text colloquy between Defendant Zhang and Defendant Niayzov that Zhang produced on April 30, 2025.

14.     Attached as Exhibit 10 is a true and correct copy of a July 14, 2022 email from Zhang to Yu Li Weng attaching a lease for the ground floor unit at 581 West Caswell Avenue that had been signed by the new tenants.  This was produced by defense counsel Leon Luk.

15.     Attached as Exhibit 11 is a true and correct copy of a July 18, 2022 email from Zhang to Yu Li Weng attaching a lease for the upstairs unit at 581 West Caswell Avenue that had been signed by the new tenants.  This was produced by defense counsel Leon Luk.

16.     Attached as Exhibit 12 is a true and correct copy of a December 21, 2023 email from Zhang to Yu Li Weng attaching a draft letter from the owner of 581 West Caswell Avenue to the New York City Human Resources Administration that Zhang had prepared for the owner's signature.  This was produced by defense counsel Leon Luk.

17.     Attached as Exhibit 13 is a true and correct copy of a October 8, 2024 email from Zhang to Yu Li Weng attaching a draft letter to the New York City Human Resources Administration that Zhang had prepared for the owner's signature.  This was produced by defense counsel Leon Luk.

18.     Attached as Exhibit 14 is a true and correct copy of a November 5, 2023 email from Niayzov to Zhang in which Niayzov forwarded to Zhang Plaintiffs' application materials for 581 West Caswell Avenue.  This was produced by defense counsel Christopher DelCioppio,

19.     Attached as Exhibit 15 are phone records showing cell phone calls between Zhang and Niayzov from October 1, 2023 through December 24, 2023.  This was produced by Zhang.

20.     Attached as Exhibit 16 is a true and correct copy of a December 21, 2023 email from Zhang in Yu Li Weng attaching a lease for the upstairs unit at 581 West Caswell Avenue that had been signed by the new tenants.  This was produced by defense counsel Leon Luk.

21.     Attached as Exhibit 17 is a true and correct copy of defense counsel's pre-motion letter to the Court dated April 1, 2024.

22.     I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
       May 6, 2025

By:_____
       Eric Hecker, Esq.

4

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                         Plaintiffs,

        v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
AMINA ALI; NDERIM DEMIROVIC; and
202 MARINE LLC,

                         Defendants.
-------------------------------------------------------------X

Index No. 24 Civ. 4201

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

    Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their Complaint against Defendants allege as follows:

### INTRODUCTION

    1.    This case involves shocking race discrimination by Defendants Juda (a.k.a "Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties Realty, Inc., and various property owners in connection with residential apartment rentals in Staten Island and Brooklyn.

    2.    In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an available rental unit owned by Defendant Amini Ali and represented by Defendant Niayzov. Plaintiffs Delone-Felix and Felix, who work full-time and have excellent income and credit, sought to apply for the unit. Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that Defendant Amini refused to rent to Black tenants.

3.      Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.      The results of both of the tests confirm Defendants' racial animus.

5.      During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.      Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.      More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities.  Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides in Staten Island, New York.

14.    Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.    Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.    Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.    Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18.    Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.    Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.    Defendant Amina Ali is a natural person who, upon information and belief, lives in Staten Island.  Defendant Ali is the owner if 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Amina, acting within the scope of their agency.

21.    Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

22.    Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is an owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

<div align="center"><strong><u>FACTUAL ALLEGATIONS</u></strong></div>

<strong><u>Discrimination Against Plaintiffs Delone-Felix and Felix</u></strong>

23.    On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 518 West Caswell Avenue in Staten Island.

<div align="center">5</div>

24.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

25.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

26.     Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

27.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

28.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

29.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

30.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

31.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

32.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

33.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

34.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

35.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

36.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

37.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

38.     Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

39.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

40.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experience renting to Black tenants in the past.

**FHJC Investigates Defendants**

41.     Plaintiff Delone-Felix reported her experience to FHJC.

42.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

43.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

44.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

45.     At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

46.     Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

47.     The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

48.     Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

49.     The tester responded that his budget was up to $3,200.00 per month.

50.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

51.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

52.     The tester was met by a woman named Nicole, who showed him the unit.

53.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

54.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

55.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

56.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

57.     When the tester left the unit, Defendant Niayzov was outside.

58.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

59.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

60.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

61.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

62.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

63.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

64.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

65.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

66.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

67.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

68.    The tester expressed interest in both units.

69.    Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

70.    Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

71.    The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

72.    The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

73.    The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

74.    The tester responded that he was renting a different apartment.

75.    Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

76.    On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

77.    Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

78.    Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

79.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

80.     Defendant Niayzov did not call Plaintiff Jones back.

81.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

82.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

83.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

84.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

85.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

86.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

87.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

88.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

89.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

90.     Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

91.     The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

92.     Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

93.     Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

94.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

95.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

96.     At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

97.     Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

98.     The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

99.     Defendant Ioffe asked the tester what she did for a living and if she had good credit.

100.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

101.    The tester asked whether there were available two-bedrooms in Brooklyn.

102.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

103.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

104.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

105.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

106.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

107.    During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

108.    The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

109.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

110.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

111.     Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

112.     During the drive, Defendant Niayzov made explicitly racist comments to the tester.

113.     Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

114.     Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

115.     Defendant Niayzov complained to the tester about "criminals" in New York City.

116.     Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

117.     Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

118.     Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

119.     Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

120.     Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

121.    Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

122.    Defendant Niayzov then showed the tester 202 Marine Avenue.

123.    Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

124.    When they left, Defendant Niayzov offered to show the tester other available apartments.

125.    Defendant Niayzov then drove the tester to the subway.

126.    During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

127.    Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

128.    Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

129.    Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

130.    After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

131.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

132.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

133.    Defendant Niayzov confirmed that it was and asked the tester to call him.

134.    The tester responded that she would call soon.

135.    Defendant Niayzov responded by asking the tester if she could come to his office.

136.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

137.    The tester responded by text that she would call him in a few minutes.

138.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

139.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

140.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

141.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

142.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

143.    Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

144.    The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

145.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

146.     Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

147.     Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

148.     On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

149.     Defendant Niayzov arrived approximately twenty minutes late.

150.     The showing lasted approximately three and a half minutes.

151.     Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

152.     Defendant Niayzov told Plaintiff Seale to call him the following day.

153.     Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

154.     The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

155.     Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

156.     In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

157.    Defendant Niayzov did not respond to any of those texts.

158.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

159.    Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

160.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

161.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

162.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

163.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

164.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

165.    As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

166.    As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

167.    Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

168.    Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

<u>**FIRST SECOND CAUSE OF ACTION**</u>
**Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.**
**(By All Plaintiffs Against All Defendants)**

169.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

170.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

171.     Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

172.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

173.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

174.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

175.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

176.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

177.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

178.     Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

179.     Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

180.     Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

181.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

182.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

183.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

184.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

185.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

186.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

187.    Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violation of 42 U.S.C. §§ 1981 and 1982**
**(By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)**

188.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

189.    42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

21

190.    42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

191.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with their effort to rent 518 West Caswell Avenue.

192.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

193.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

194.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

195.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

196.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

197.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

198.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

199.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

200.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

201.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

202.    Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

203.    Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Selase based on their race.

204.    Defendants acted with racial animus.

205.    Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

206.    Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

207.    Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

208.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

209.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

210.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

211.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

212.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

<div align="center">

**THIRD CAUSE OF ACTION**
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

</div>

213.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

214.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

215.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

216.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

217.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

218.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

219.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

220.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

221.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

222.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

223.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

224.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

225.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

226.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

227.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

228.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

229.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

230.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

231.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

232.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

233.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

234.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

235.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

236.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

237.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

238.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

239.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

240.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

241.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

242.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

243.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

244.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

245.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

246.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

247.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

248.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

249.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

250.    Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.    An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.    An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)    refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)    discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

   (iii) coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

  c. An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

   (i) ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

   (ii) make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

   (iii) train all management, agents, and employees on fair housing laws;

   (iv) display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

   (v) allow monitoring of their rental screening and application process and decisions;

   (vi) retain records to allow for appropriate monitoring;

   (vii) develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

   (viii) undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)    establish a system so that their agents can be tested for unlawful discriminatory practices;

d.    An order and judgment awarding monetary damages to each Plaintiff;

e.    An order and judgment awarding punitive damages to each Plaintiff;

f.    An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.    Pre- and post-judgment interest on any and all such awards; and

h.    Any further relief that may be just and proper.


Dated: New York, New York
       June 12, 2024


By:    /s/ Eric Hecker
       Mariann Wang
       Eric Hecker

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
mwang@chwllp.com
ehecker@chwllp.com

*Attorneys for Plaintiffs*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                         Index No. 24 Civ. 4201

                    Plaintiffs,

                         **COMPLAINT AND**
        v.                   **DEMAND FOR JURY TRIAL**

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; and YU LI WENG,

                     Defendants.
----------------------------------------------------------X

      Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their

Complaint against Defendants allege as follows:

<u>**INTRODUCTION**</u>

      1.      This case involves shocking race discrimination by Defendants Juda (a.k.a

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various property owners in connection with residential apartment rentals in

Staten Island and Brooklyn.

      2.      In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an

available rental unit owned by Defendants Xueqiang Zheng and Yu Li Weng and represented by

Defendant Niayzov.  Plaintiffs Delone-Felix and Felix, who work full-time and have excellent

income and credit, sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff

Delone-Felix that the owners of the unit refused to rent to Black tenants.

3.      Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.      The results of both of the tests confirm Defendants' racial animus.

5.      During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.      Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.      More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay compensatory and punitive damages and should be enjoined from further violating the law.

2

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and

42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of

Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over

Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because

Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York

and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of

New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam,

Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all

people have equal access to housing opportunities in the New York region.  FHJC expended staff

time and other resources to investigate and respond to Defendants' discriminatory housing

policies and practices, which diverted resources from other FHJC activities.  Defendants'

discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all

people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides

in Staten Island, New York.

3

14.     Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.     Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.     Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.     Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18.     Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.     Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20. Defendant Xueqiang Zheng is a natural person who, upon information and belief, lives in Staten Island. Defendant Zheng is an owner of 581 West Caswell Avenue in Staten Island, New York. Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Zheng, acting within the scope of their agency.

21. Defendant Yu Li Weng is a natural person who, upon information and belief, lives in Staten Island. Defendant Weng is an owner of 581 West Caswell Avenue in Staten Island, New York. Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Weng, acting within the scope of their agency.

22. Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn. Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn. Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

23. Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York. Upon information and belief, Defendant 202 Marine LLC is the owner of 202 Marine Avenue in Brooklyn. Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

**Discrimination Against Plaintiffs Delone-Felix and Felix**

24.    On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant

Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell

Avenue in Staten Island.

25.    Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix

and her husband, Plaintiff Felix, to see the unit later that day.

26.    Defendant Niayzov was unable to attend the showing, so he provided Plaintiff

Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the

unit unescorted.

27.    Upon information and belief, Defendant Niayzov was unaware at the time that

Plaintiffs Delone-Felix and Felix are Black.

28.    Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband

wished to apply for the unit.

29.    Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed

her to email him certain documentation.

30.    In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and

her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

31.    Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's

employment verification letters.

32.    Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so

that he could independently verify their credit, which she then sent.

33.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

34.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

35.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

36.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

37.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

38.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

39.     Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

40.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

41.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experience renting to Black tenants in the past.

**FHJC Investigates Defendants**

42.     Plaintiff Delone-Felix reported her experience to FHJC.

43.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

44.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

45.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

46.      At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

47.     Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

48.     The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

49.     Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

50.     The tester responded that his budget was up to $3,200.00 per month.

51.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

52.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

53.     The tester was met by a woman named Nicole, who showed him the unit.

8

54.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

55.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

56.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

57.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

58.     When the tester left the unit, Defendant Niayzov was outside.

59.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

60.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

61.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

62.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

63.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

64.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

65.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

66.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

67.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

68.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

69.     The tester expressed interest in both units.

70.     Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

71.     Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

72.     The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

73.     The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

74.     The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

75.     The tester responded that he was renting a different apartment.

76.     Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

77.     On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

78.     Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

79.     Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

80.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

81.     Defendant Niayzov did not call Plaintiff Jones back.

82.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

83.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

84.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

85.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

86.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

87.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

88.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

89.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

90.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

91.     Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

92.     The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

93.     Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

94.     Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

95.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

96.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

97.     At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

98.     Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

99.     The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

100.    Defendant Ioffe asked the tester what she did for a living and if she had good credit.

101.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

102.    The tester asked whether there were available two-bedrooms in Brooklyn.

103.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

104.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

105.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

106.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

107.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

108.    During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

109.    The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

110.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

111.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

112.    Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

113.    During the drive, Defendant Niayzov made explicitly racist comments to the tester.

114.    Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

115.    Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

116.    Defendant Niayzov complained to the tester about "criminals" in New York City.

117.    Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

118.    Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

119.    Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

120.    Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard. They get everything on their lap. Why is that? That's like also not right."

121.    Defendant Niayzov complained to the tester that "You want health? No problem. I will give you work, we will give you a job, earn it. Don't give it on the lap for free. This is what America is doing right now. It's not right."

122.    Defendant Niayzov complained to the tester that "They rob. And the cops don't do anything. They're like okay, we can't do anything about it. It's called misdemeanor. They lock them up for one day, they come back out. That's New York."

123.    Defendant Niayzov then showed the tester 202 Marine Avenue.

124.    Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

125.    When they left, Defendant Niayzov offered to show the tester other available apartments.

126.    Defendant Niayzov then drove the tester to the subway.

127.    During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

128.    Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

129.    Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

15

130.    Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

131.    After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

132.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

133.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

134.    Defendant Niayzov confirmed that it was and asked the tester to call him.

135.    The tester responded that she would call soon.

136.    Defendant Niayzov responded by asking the tester if she could come to his office.

137.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

138.    The tester responded by text that she would call him in a few minutes.

139.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

140.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

141.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

142.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

143.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

144.    Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

145.    The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

146.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

147.    Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

148.    Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day. Defendant Niayzov indicated that he also could show her other units close to that location.

149.    On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

150.    Defendant Niayzov arrived approximately twenty minutes late.

151.    The showing lasted approximately three and a half minutes.

152.    Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

153.    Defendant Niayzov told Plaintiff Seale to call him the following day.

154.    Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

155. The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

156. Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

157. In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

158. Defendant Niayzov did not respond to any of those texts.

159. Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

160. Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

161. Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

162. By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

163. By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

164.     Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

165.     Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

166.      As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

167.     As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

168.     Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

169.     Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

**FIRST SECOND CAUSE OF ACTION**
**Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.***
**(By All Plaintiffs Against All Defendants)**

170.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

171.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

172.    Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

173.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

174.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

175.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

176.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

177.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

178.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

179.    Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

180. Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

181. Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

182. Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

183. Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

184. As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

185. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

186. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

187. Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

188. Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §§ 1981 and 1982
### (By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)

189.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

190.    42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

191.    42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

192.    Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

193.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

194.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

195.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

196.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

197.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

198.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

199.    Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

200.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

201.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

202.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

203.    Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

204.    Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Selase based on their race.

205.    Defendants acted with racial animus.

206.    Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

207.    Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

208.    Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

209. Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

210. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

211. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

212. Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

213. Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

214. Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

215. It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

216. Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

217. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

218. Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

219.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

220.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

221.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

222.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

223.     Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

224.     Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

225.     Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

226.     Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

227.     Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

228.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

229.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

230.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

231.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

232.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

233.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

234.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

235.    Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

236.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

237.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

238.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

239.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

240.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

241.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

242.     Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

243.     Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

244.     Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

245.     Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

246.     Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

247.     As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

248.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

249.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

250.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

251.     Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.     An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)      refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)     discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)    coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)      ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)     make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)    train all management, agents, and employees on fair housing laws;

(iv)    display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)     allow monitoring of their rental screening and application process and decisions;

(vi)    retain records to allow for appropriate monitoring;

(vii)    develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)    undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)    establish a system so that their agents can be tested for unlawful discriminatory practices;

d.    An order and judgment awarding monetary damages to each Plaintiff;

e.    An order and judgment awarding punitive damages to each Plaintiff;

f.    An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.    Pre- and post-judgment interest on any and all such awards; and

h.    Any further relief that may be just and proper.


Dated:  New York, New York
         July 23, 2024


                              By:  ___/s/ Eric Hecker___
                                   Mariann Wang
                                   Eric Hecker

                              CUTI HECKER WANG LLP
                              305 Broadway, Suite 607
                              New York, New York 10007
                              (212) 620-2604
                              mwang@chwllp.com
                              ehecker@chwllp.com

                              *Attorneys for Plaintiffs*

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                          Plaintiffs,

            v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                          Defendants.
--------------------------------------------------------X

Index No. 24 Civ. 4201

**SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their

Second Amended Complaint against Defendants allege as follows:

## <u>INTRODUCTION</u>

1.      This case involves shocking race discrimination by Defendants Juda (a.k.a

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various other brokers and property owners in connection with residential

apartment rentals in Staten Island and Brooklyn.

2.      In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed

an available rental unit owned by Defendants Xueqiang Zheng and Yu Li Weng and

represented by Defendant Niayzov through Defendants Xian Jin Zhang and Remax Edge

Realty, LLC.  Plaintiffs Delone-Felix and Felix, who work full-time and have excellent

income and credit, sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that the owners of the unit refused to rent to Black tenants.

3.      Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.      The results of both of the tests confirm Defendants' racial animus.

5.      During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.      Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.      More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay

compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities.  Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides in Staten Island, New York.

3

14.     Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.     Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.     Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.     Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18.     Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.     Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.     Defendant Xueqiang Zheng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Zheng is an owner of 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Zheng, acting within the scope of their agency.

21.     Defendant Yu Li Weng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Weng is an owner of 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Weng, acting within the scope of their agency.

22.     Defendant Remax Edge Realty, LLC is New York limited liability company that is headquartered or does business at 1812 Bath Avenue in Brooklyn, New York.  Defendant Remax Edge Realty, LLC is licensed by the State of New York to serve as a real estate brokerage.  Upon information and belief, at all relevant times, Defendant Remax Edge Realty, LLC employed or was otherwise associated with Defendant Xian Jin Zhang and served as the agents of Defendants Xueqiang Zheng and Yu Li Weng with respect to 581 West Caswell Avenue, acting within the scope of their agency.

23.     Defendant Xian Jin Zhang is a natural person who upon information and belief resides in Brooklyn, New York.  Defendant Zhang is licensed by the State of New York to serve as a real estate broker and at all relevant times was employed by or associated with Defendant Remax Edge Realty, LLC acting within the scope of such employment or association.  Upon

5

information and belief, at all relevant times, Defendant Zhang was acting as an agent of the owners of 581 West Caswell Avenue, acting within the scope of his agency, under the auspices of Defendant Remax Edge Realty, LLC.

24.     Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

25.     Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is the owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

### Discrimination Against Plaintiffs Delone-Felix and Felix

26.     On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell Avenue in Staten Island.

27.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

28.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

29.    Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

30.    Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

31.    Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

32.    In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

33.    Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

34.    Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

35.    Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

36.    The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

37.    Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

38.    On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

39.    Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

40.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

41.     Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

42.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

43.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experiences renting to Black tenants in the past.

44.     Upon information and belief, Defendant Zhang told Defendant Niayzov, on behalf of Defendants Zheng and Weng, that the owner had rejected the application because the owner had had negative experiences renting to Black tenants in the past.

**FHJC Investigates Defendants**

45.     Plaintiff Delone-Felix reported her experience to FHJC.

46.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

47.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

48.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

49.    At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

50.    Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

51.    The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

52.    Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

53.    The tester responded that his budget was up to $3,200.00 per month.

54.    They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

55.    The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

56.    The tester was met by a woman named Nicole, who showed him the unit.

57.    Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

58.    Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

59.    Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

60.    At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

9

61.     When the tester left the unit, Defendant Niayzov was outside.

62.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

63.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

64.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

65.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

66.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

67.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

68.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

69.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

70.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

71.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

72.     The tester expressed interest in both units.

73.    Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

74.    Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

75.    The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

76.    The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

77.    The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

78.    The tester responded that he was renting a different apartment.

79.    Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

80.    On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

81.    Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

82.    Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

83.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

84.     Defendant Niayzov did not call Plaintiff Jones back.

85.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

86.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

87.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

88.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

89.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

90.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

91.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

92.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

93.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

94.     Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

95.     The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

96.     Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

97.     Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

98.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

99.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

100.    At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

101.    Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

102.    The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

13

103.    Defendant Ioffe asked the tester what she did for a living and if she had good credit.

104.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

105.    The tester asked whether there were available two-bedrooms in Brooklyn.

106.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

107.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

108.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

109.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

110.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

111.    During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

112.    The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

113.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

114.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

115.     Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

116.     During the drive, Defendant Niayzov made explicitly racist comments to the tester.

117.     Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

118.     Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

119.     Defendant Niayzov complained to the tester about "criminals" in New York City.

120.     Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

121.     Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

122.     Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

123.     Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

124.     Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

15

125.    Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

126.    Defendant Niayzov then showed the tester 202 Marine Avenue.

127.    Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

128.    When they left, Defendant Niayzov offered to show the tester other available apartments.

129.    Defendant Niayzov then drove the tester to the subway.

130.    During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

131.    Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

132.    Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

133.    Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

134.    After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

135.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

136.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

137.    Defendant Niayzov confirmed that it was and asked the tester to call him.

138.    The tester responded that she would call soon.

139.    Defendant Niayzov responded by asking the tester if she could come to his office.

140.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

141.    The tester responded by text that she would call him in a few minutes.

142.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

143.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

144.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

145.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

146.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

147.    Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

148.    The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

149.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

150.     Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

151.     Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

152.     On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

153.     Defendant Niayzov arrived approximately twenty minutes late.

154.     The showing lasted approximately three and a half minutes.

155.     Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

156.     Defendant Niayzov told Plaintiff Seale to call him the following day.

157.     Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

158.     The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

159.     Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

160.     In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

161.    Defendant Niayzov did not respond to any of those texts.

162.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

163.    Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

164.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

165.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

166.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

167.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

168.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

169.    As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

170.    As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

171.    Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

172.    Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

## FIRST SECOND CAUSE OF ACTION
### Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*
### (By All Plaintiffs Against All Defendants)

173.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

174.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

175.     Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

176.     Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

177.      Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

178.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

179.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

180.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

181.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

182.     Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

183.     Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

184.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

185.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

186.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

187.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

188.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

189.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

190.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

191.    Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §§ 1981 and 1982
### (By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)

192.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

193.    42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

194.    42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

195.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

196.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

197.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

198.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

199.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

200.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

201.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

202.    Upon information and belief, Defendant Niayzov conspired with Defendants Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

203.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

204.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

205.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

206.    Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

207.    Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale based on their race.

208.    Defendants acted with racial animus.

209.    Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

210.    Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

211.    Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

212.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

213.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

214.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

215.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

216.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

<div align="center">

**THIRD CAUSE OF ACTION**
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

</div>

217.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

218.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

219.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

220.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agent of Defendants Zheng and Weng, acting within the scope of their agency.

221.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

222.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

223.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

224.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

225.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

226.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

227.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

228.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

229.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

230.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

231.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

232.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

233.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

234.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

235.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

236.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

237.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

238.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

239.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

240.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

241.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

242.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

243.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

244.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

245.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

246.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

247.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

248.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

249.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

250.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

251.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

252.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

253.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

254.    Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.      An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.      An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)      refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)      discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)      coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.      An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)      ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)      make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)      train all management, agents, and employees on fair housing laws;

(iv)      display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)      allow monitoring of their rental screening and application process and decisions;

(vi)      retain records to allow for appropriate monitoring;

30

(vii)    develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)    undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)    establish a system so that their agents can be tested for unlawful discriminatory practices;

d.      An order and judgment awarding monetary damages to each Plaintiff;

e.      An order and judgment awarding punitive damages to each Plaintiff;

f.      An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.      Pre- and post-judgment interest on any and all such awards; and

h.      Any further relief that may be just and proper.


Dated:  New York, New York
        August 15, 2024


                              By:    /s/ Eric Hecker
                                     Mariann Wang
                                     Eric Hecker

                              CUTI HECKER WANG LLP
                              305 Broadway, Suite 607
                              New York, New York 10007
                              (212) 620-2604
                              mwang@chwllp.com
                              ehecker@chwllp.com

                              *Attorneys for Plaintiffs*

# EXHIBIT 4



Wall Street Plaza
88 Pine Street, 32nd Floor, New York, NY 10005
Tel: 212-867-4100 Fax: 212-867-4118
www.fkblaw.com

October 9, 2024

**_VIA E-MAIL_**
Eric Hecker, Esq.
Cuti Hecker Wang LLP
305 Broadway, Suite 607
New York, New York 10007

Re:    *Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.*
       Docket No.: 1:24-cv-04201
       FKB File No.: 302.175

Dear Mr. Hecker:

As you are aware, we represent Defendants Womcore LLC d/b/a Remax Edge ("Remax") and Xian Jin Zhang ("Agent Zhang") in the above-captioned matter. We write concerning the claims against Remax and Zhang, pursuant to Fed. R. Civ. P. § 11.

The Second Amended Complaint (the "Complaint") in the instant action asserts causes of action for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), violations of 42 U.S.C. §§ 1981 and 1982, violations of New York State Human Rights Law ("NYSHRL") § 296(5)(a)(1), and violations of New York City Human Rights Law ("NYCHRL") § 8-107(5)(a)(1) based upon a real estate rental transaction wherein Xueqiang Zheng and Yu Li Weng (collectively, the "Owners") sought to rent  their property located at 581 West Caswell Ave, Staten Island, NY 10314 (the "Property").

As an initial matter, the Complaint asserts that Remax and Zhang served as agents of the Owners with respect to the Property, acting within the scope of their agency. Upon review, we have determined that Remax and Zhang represented the Owners solely for the Owners' purchase of the Property prior to its listing for rental. Remax and Zhang did not at any time represent the Owners in connection with any rental, advertisement to rent the Property, showing of the Property, or prospective renters. On this basis alone, Plaintiff will be unable to assert any viable claim against Remax and Agent Zhang.

**I.    Plaintiffs Cannot Allege a Cause of Action Under the Fair Housing Act Against Remax and Agent Zhang**

To establish a claim for discrimination under the FHA, "[t]he plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination." *Mitchell v. Shane*, 350 F. 3d, 39, 49 (2nd Cir. 2003) (citations omitted). Courts have dismissed FHA claims where, as here, a plaintiff cannot

demonstrate that a defendant was involved in a determination to turn down a plaintiff's housing application. *See Sayeh v. 66 Madison Ave. Apt. Corp.*, 73 A.D.3d 459, (1st Dept. 2010).

The Complaint cannot and does not allege that Remax and Zhang interacted with any prospective renter of the Property, and indeed there is similarly no allegation that Remax or Zhang were ever involved with the alleged discriminatory acts described in the Complaint. Given their role was exclusive to the sale of the Property to the Owners, Plaintiffs will be unable to state any claim for an FHA violation. Remax and Zhang cannot be held liable for any purported acts that may have occurred after the Owners purchased the Property and allegedly discriminated in its rental. Indeed, Zhang specifically expressed an intent to *not* provide services for potential renting of the Property, and informed the Owners that he did not broker rentals.

Moreover, Zhang expressly denies the single allegation as against either himself or Remax; he has never stated to Juda Niayzov ("Niyazov") or any other individual involved with or connected to the Property, that the Owners had previously discriminated against prospective renters on the basis of race. This accords with the fact that Zhang would have no such knowledge of prior rental transactions with the Owners, since he never represented them in such a capacity.

In any event, the statement attributed to Zhang as alleged in the Complaint would not have violated the FHA because it does not give rise to a basis to assert that Zhang "was involved in a determination to turn down a plaintiff's housing application" in any way.

## II.    Plaintiffs Cannot Allege a Cause of Action Under 42 U.S.C. §§ 1981 and 1982

The Complaint also fails to allege specific facts that would constitute a violation of 42 U.S.C. §§ 1981 and 1982 by Remax or Agent Zhang.

Under 42 U.S.C. § 1981, a Plaintiff bears the initial burden of establishing racial discrimination in the making or enforcement of a contract. *See Vargas v. Morgan Stanley,* 438 F. App'x 7 (2d Cir. 2011) (applying a burden-shifting framework to § 1981 discrimination claims.) Plaintiffs are unable to meet this burden because neither Remax nor Zhang contracted or purported to contract with Plaintiffs at any point during the alleged rental applications; nor does the Complaint so allege. The Complaint does not assert any factual basis to allege that Remax and/or Zhang acted as an agent for the Owners at any time, which indeed they did not. Remax and Zhang would have been unable to authorize such a contract for the rental of the Property, as they did not represent the Owners after the purchase of the Property.

42 U.S.C. § 1982 "does not prohibit advertising or other representations that indicate discriminatory preferences. It does not refer explicitly to discrimination […] in the provision of brokerage services." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 88 S. Ct. 2186, 2189, (1968), cited in *Wheatley Heights Neighborhood Coal. v. Jenna Resales Co.*, 447 F. Supp. 838, 843 (E.D.N.Y. 1978). While neither Remax nor Zhang represented or acted as an agent for the Owners in connection with the rental applications at issue, the alleged statement by Zhang to Niayzov would nonetheless fail to provide a basis for such claim even if they had. Furthermore, while Zhang did not report the Owners' past discrimination to Niayzov, § 1982 would be inapplicable to such a statement regardless of its veracity, because it would constitute a mere

account of another's prior transactions. *Id.*

Moreover, to succeed on a claim under § 1982, Plaintiffs must prove each of the following elements:

> (1) that the owner (or responsible party) placed the property on the open market for sale or rental, (2) that the plaintiff was willing to rent or purchase the property on the terms specified by the owner, (3) the plaintiff communicated his willingness to the owner at a time when the property was available for sale or rent, (4) that the owner refused to rent or sell the property to the plaintiff on the terms which the owner indicated would otherwise be satisfactory, and (5) that there is no apparent reason for the refusal of the defendant to rent the property to the plaintiff other than the plaintiff's race.

*Fred v. Kokinokos*, 347 F. Supp. 942, 944 (E.D.N.Y. 1972). Plaintiffs' claims against Remax and Zhang under § 1982 must fail as a threshold matter, because they were neither owners of the Property nor responsible for placing the Property on the open market for rent.

Neither Remax nor Zhang were directly involved in any transaction in which any Plaintiff attempted to "inherit, purchase, lease, sell, hold, and convey real and personal property", as is protected under § 1982. Furthermore, none of the actions taken or alleged as against Remax or Zhang impacted any of the Plaintiffs' rights, either.

### III.    Plaintiffs Cannot Allege a Cause of Action Under N.Y. Exec. Law § 296(5)(a)(1) and New York City Human Rights Law § 8-107(5)(a)(1) Against Remax and Agent Zhang

NYSHRL § 296(5)(a)(1) and NYCHRL § 8-107(5)(a)(1) both apply only to parties qualifying as an "owner, […] lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, […] or any agent or employee thereof"[1] that discriminate in renting housing accommodations. As discussed, Remax and Zhang did not have any of the statutorily described relationships with the Property or Owners in connection with the purported rental attempts.

In *Sayeh*, the court dismissed a discrimination claim under NYSHRL where the Plaintiff could not demonstrate that the defendants, the co-op's attorney and managing agent, were involved in a determination to reject plaintiff's application for housing accommodations. *See Sayeh*, 73 A.D.3d 459. Here, Remax and Zhang were even less involved in the rejection of your client's application, as they were not agents for the Owners for the rental at any point, let alone at the time of the Plaintiffs' applications.

Even if Plaintiffs were to allege that Remax or Zhang aided and abetted a discriminatory practice under NYSHRL or NYCHRL, such a cause of action would fail. For aiding and abetting

---

[1] New York City Human Rights Law § 8-107(5)(a)(1) contains two additional categories absent from N.Y. Exec. Law § 296(5)(a)(1): lessors and those holding an interest in the property. However, neither category applies to Remax or Zhang here.

*Fair Housing Justice Center, Inc. et al v. Niayzov et al*
FKB File No.: 302.175
Page 4 of 4

under NYSHRL, individuals must still have "actually participated in the conduct giving rise to the claim." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012) (Oetken, J.) (quoting *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004)). The NYCHRL applies that same standard in determining liability for allegations of aiding and abetting. *Id.*, *see also Fried v. LVI Servs., Inc.,* 2011 WL 2119748 (S.D.N.Y. May 23, 2011*)*.

For liability in aiding and abetting in alleged discrimination, a party must have had "direct, purposeful participation" with a "community of purpose." *Fried* at *7. As discussed, the Complaint fails to allege that Remax or Zhang had any such participation or involvement in the events leading to the alleged discrimination against rental applicants; indeed, Zhang did not in fact have any such participation. Even the sole statement attributed to Zhang would not create a cause of action here.

**\*\*\*\***

Based on the forgoing, it is apparent that Plaintiffs will not be able to state a claim for any of causes of action against Remax and Agent Zhang. It is unclear why either party was included in this Complaint, which solely concerns rental transactions and discrimination for which even the Complaint cannot assert they were involved. Even if every allegation in the Complaint were true, the assertions therein do not plead a claim as against Remax and Agent Zhang.

Rule 11 requires a good faith basis for the prosecution of claims. Based on the foregoing, we do not believe that Plaintiffs can demonstrate any viable basis for claims as against Remax and Agent Zhang. We respectfully request that Plaintiffs withdraw or discontinue their claims against Remax and Agent Zhang.

Please contact the undersigned to discuss further. Nothing in this letter is intended to waive any rights, privileges, or defenses of, in equity, or otherwise.

Regards,

FURMAN KORNFELD & BRENNAN LLP

Spencer A. Richards, Esq.
Asher Kest, Esq.

cc: Sarah Igarashi (FKB - NYC)

# EXHIBIT 5

**FKB** | **Furman Kornfeld**
**& Brennan LLP**

Wall Street Plaza
88 Pine Street, 32nd Floor, New York, NY 10005
Tel: 212-867-4100 Fax: 212-867-4118
www.fkblaw.com

October 23, 2024

**VIA ECF**
Hon. LaShann DeArcy Hall, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East, Court Room 4H-N
Brooklyn, New York 11201

Re:       *Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.*
          Docket No.: 1:24-cv-04201
          FKB File No.: 302.175

Dear Judge Hall:

We represent defendants Womcore LLC d/b/a Remax Edge ("Remax") and Xian Jin Zhang ("Zhang") (collectively, "Defendants") in the above referenced action. Pursuant to Part III.A of this Court's Individual Practices, Defendants respectfully request a pre-motion conference for leave to file a motion to dismiss the Second Amended Complaint (ECF Dkt. No. 28) of Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca Jones, and Roslyn Seale (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. Rule § 12(b)(6).

## I.  **Factual and Procedural Background**

The instant claims arise from defendants Xueqiang Zheng and Yu Li Weng (collectively, the "Owners") purported discrimination against rental applicants for their property at 581 West Caswell Avenue, Staten Island, NY 10314 (the "Property"). The Complaint alleges serious claims that the Owners discriminated against prospective renters on the basis of race, and asserts causes of action for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), violations of 42 U.S.C. §§ 1981 and 1982, violations of New York State Human Rights Law ("NYSHRL") § 296(5)(a)(1), and violations of New York City Human Rights Law ("NYCHRL") § 8-107(5)(a)(1).

Remax and Zhang's only formal role in connection to this action, however, is that they represented the Owners during the original purchase of the Property in 2021, which closed in 2022. The sale of the Property is not at issue in the instant action. Neither Remax nor Zhang have represented the Owners since the sale, and indeed Zhang specifically informed the Owners that he did not broker rentals and that they would need to use another agent for such a transaction.

The Complaint alleges that the Owners were represented in seeking renters by Remax and Zhang "through" Juda Niayzov ("Niyazov"), a broker unaffiliated with either. The parties do not dispute that Niayzov and other brokers represented the Owners in their search for renters, and that they were not employed or contracted by Remax or Zhang. The Complaint also alleges that Zhang informed Niazov that the Owners had previously discriminated against prospective renters on the basis of race.

## II.  The Complaint Fails to State a Cause of Action

Pursuant to Rule 12(b)(6), a complaint must "provide the grounds upon which [the] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Here, Plaintiff cannot and has not pleaded any violation of the FHA, 42 U.S.C. §§ 1981 or 1982, NYSHRL, or NYCHRL.

As an initial matter, it is undisputed that Remax and Zhang had no written or financial agreement with the Owners beyond the initial sale of the Property. Plaintiff also cannot establish an implied or common law agency relationship between the Owners and Remax and Zhang. The Second Circuit has held that proof of an agency relationship requires three elements: "(1) the manifestation by the principal that the agent shall act for him; (2) the agent's acceptance of the undertaking; and (3) the understanding of the parties that the principal is to be in control of the undertaking." *Cleveland v. Caplaw Enterprises*, 448 F3d 518, 522 (2d Cir 2006). A "right of control by the principal may be exercised by prescribing what the agent shall or shall not do before the agent acts, or at the time when he acts, or at both times." *Cleveland*, 448 F3d at 520 (quoting the Restatement (Second) of Agency § 14 cmt. a). It is undisputed that the Owners never exercised such control over Remax or Zhang after the closing of the sale of the Property, and that Remax and Zhang did not accept any agency undertaking. Any incidental interaction that occurred between Remax and/or Zhang and the Owners cannot by law rise to the level of control required to create an agency relationship under the common law in this jurisdiction.

### A.  The Complaint Fails to State a Cause of Action Under the Fair Housing Act

To establish a claim for discrimination under the FHA, "[t]he plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination." *Mitchell v. Shane*, 350 F. 3d, 39, 49 (2nd Cir. 2003) (citations omitted.) Dismissal of a claim brought under the FHA is appropriate where a plaintiff fails to demonstrate that a defendant was involved in a determination to turn down a plaintiff's housing application. *Sayeh v. 66 Madison Ave. Apt. Corp.*, 73 A.D.3d 459, (1st Dept. 2010). It is undisputed that Remax and Zhang never interacted with any prospective renter of the Property. Remax and Zhang cannot be held liable for any alleged discrimination that may have occurred after the Owners purchased the Property as their representation ended before the purported discrimination occurred.

Zhang expressly denies the allegation in the Complaint that he stated to Niayzov, or any other individual involved with or connected to the Property, that the Owners had previously discriminated against prospective renters on the basis of race. In any event, the statement allegedly attributed to Zhang would not have violated the FHA because it does not give rise to a basis to assert that Zhang "was involved in a determination to turn down a plaintiff's housing application" in any way.

### B.  The Complaint Fails to State a Cause of Action Under 42 U.S.C. §§ 1981 and 1982

Under 42 U.S.C. § 1981, a Plaintiff bears the initial burden of establishing racial discrimination in the making or enforcement of a contract. *See Vargas v. Morgan Stanley,* 438 F. App'x 7 (2d Cir. 2011).  The Complaint fails to allege that either Remax or Zhang contracted or purported to contract with Plaintiffs at any point regarding the alleged rental applications. Indeed,

Case 1:24-cv-04201-LDH-JAM   Document 42   Filed 05/08/24   Page 107 of 422 PageID #: 700
*Fair Housing Justice Center, Inc. et al v. Niayzov et al*, Docket No.: 1:24-cv-04201-LDH-SJB
Page 3

Remax and Zhang lacked any authority to enter into any contract on the Owners' behalf.

Regarding 42 U.S.C. § 1982, the statute is clear: § 1982 only protects the right to "inherit, purchase, lease, sell, hold, and convey real and personal property." § 1982 "does not prohibit advertising or other representations that indicate discriminatory preferences. It does not refer explicitly to discrimination […] in the provision of brokerage services." *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 413 88 S. Ct. 2186, 2189, (1968), cited in *Wheatley Heights Neighborhood Coal. v. Jenna Resales Co.*, 447 F. Supp. 838, 843 (E.D.N.Y. 1978). Moreover, to succeed on a claim under § 1982, a plaintiff must prove that the defendant was a responsible party in placing the property on the open market for sale or rental. *Fred v. Kokinokos*, 347 F. Supp. 942, 944 (E.D.N.Y. 1972). Therefore, while neither Remax nor Zhang represented or acted as an agent for the Owners in connection with the rental applications at issue, Plaintiffs cannot and do not allege a violation of § 1982 regardless. Neither Remax nor Zhang were directly involved in any transaction in which any Plaintiff attempted to "inherit, purchase, lease, sell, hold, and convey real and personal property.".

## C. **The Complaint Fails to State a Cause of Action Under N.Y. Exec. Law § 296(5)(a)(1) and New York City Human Rights Law § 8-107(5)(a)(1)**

The statutory language of both NYSHRL § 296(5)(a)(1) and NYCHRL § 8-107(5)(a)(1) also preclude Plaintiffs' claims. Both statutes apply only to parties qualifying as an "owner, […] lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, […] or any agent or employee thereof"[1] that discriminate in renting housing accommodations. In *Sayeh*, the First Department affirmed a grant of summary judgment against a discrimination claim brought under NYSHRL where the Plaintiff could not demonstrate that the defendants, the co-op's attorney and managing agent, were involved in a determination to reject plaintiff's application for housing accommodations. *See Sayeh*, 73 A.D.3d 459. Here, Remax and Zhang were even less involved in the rejection of Plaintiffs' rental applications, as they were not agents for the Owners for the rental at any point, let alone at the time of the Plaintiffs' applications.

****

For the reasons stated above, Remax and Zhang respectfully request that the Court schedule a pre-motion conference for leave to file a motion to dismiss the Complaint at the Court's convenience.

Respectfully submitted,

FURMAN KORNFELD & BRENNAN LLP

Spencer A. Richards
Asher Kest

CC:    All Counsel of Record (via ECF)

---

[1] New York City Human Rights Law § 8-107(5)(a)(1) contains two additional categories absent from N.Y. Exec. Law § 296(5)(a)(1): lessors and those holding an interest in the property. However, neither category applies to Remax or Zhang here.

# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                        Plaintiffs,

        v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                        Defendants.
---------------------------------------------------------------X

Index No. 24 Civ. 4201

**THIRD AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

    Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Wang Hecker LLP, for their Third

Amended Complaint against Defendants allege as follows:

### **INTRODUCTION**

    1.    This case involves shocking race discrimination by Defendants Juda (a.k.a

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various other brokers and property owners in connection with residential

apartment rentals in Staten Island and Brooklyn.

    2.    In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an

available rental unit owned by Defendants Xueqiang Zheng and Yu Li Weng and represented by

Defendant Niayzov through Defendants Xian Jin Zhang and Remax Edge Realty, LLC.

Plaintiffs Delone-Felix and Felix, who work full-time and have excellent income and credit,

sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that the owners of the unit refused to rent to Black tenants.

3.     Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.     The results of both of the tests confirm Defendants' racial animus.

5.     During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.     Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.     More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay

compensatory and punitive damages and should be enjoined from further violating the law.

### JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and

42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of

Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over

Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because

Defendants' acts of discrimination occurred in this District.

### JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

### PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York

and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of

New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam,

Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all

people have equal access to housing opportunities in the New York region.  FHJC expended staff

time and other resources to investigate and respond to Defendants' discriminatory housing

policies and practices, which diverted resources from other FHJC activities.  Defendants'

discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all

people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides

in Staten Island, New York.

14.     Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.     Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.     Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.     Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov held himself out to the public as an authorized agent on behalf of the property owners detailed herein and in fact acted as an agent with actual and/or apparent authority on behalf of the property owners detailed herein to offer for rent and to actually facilitate the rental of the relevant properties and/or apartments mentioned herein, and to screen potential tenants for the property owners, acting within the scope of his agency.

18.     Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe held herself out to the public as an authorized agent on behalf of the property owners detailed herein and in fact acted as an agent with actual and/or apparent authority on behalf of the property owners detailed

herein to offer for rent and to actually facilitate the rental of the relevant properties and/or apartments mentioned herein, and to screen potential tenants for the property owners, acting within the scope of her agency, and/or conspired with and/or aided and abetted Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.     Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.     Defendant Xueqiang Zheng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Zheng is an owner of 581 West Caswell Avenue in Staten Island, New York.

21.     Defendant Yu Li Weng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Weng is an owner of 581 West Caswell Avenue in Staten Island, New York.

22.     Defendant Remax Edge Realty, LLC is New York limited liability company that is headquartered or does business at 1812 Bath Avenue in Brooklyn, New York.  Defendant Remax Edge Realty, LLC is licensed by the State of New York to serve as a real estate brokerage.  Upon information and belief, at all relevant times, Defendant Remax Edge Realty, LLC employed or was otherwise associated with Defendant Xian Jin Zhang and served as the

agents of Defendants Xueqiang Zheng and Yu Li Weng with respect to 581 West Caswell Avenue, acting within the scope of their agency.[1]

23.    Defendant Xian Jin Zhang is a natural person who upon information and belief resides in Brooklyn, New York.  Defendant Zhang is licensed by the State of New York to serve as a real estate broker and at all relevant times was employed by or associated with Defendant Remax Edge Realty, LLC acting within the scope of such employment or association.  Upon information and belief, at all relevant times, Defendant Zhang was acting as an agent of the owners of 581 West Caswell Avenue, acting within the scope of his agency, under the auspices of Defendant Remax Edge Realty, LLC.

24.    Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. held themselves out to the public as authorized agents on behalf of Defendant Demirovic and in fact acted as agents with actual and/or apparent authority on behalf of Defendant Demirovic to offer for rent and to actually facilitate the rental of the relevant

---

[1]  Furman Kornfeld & Brennan LLP has appeared in this action as counsel for Defendant Remax Edge Realty, LLP but has identified itself as counsel for Womcore LLC d/b/a Remax Edge.  This may reflect that Plaintiffs may have unintentionally named the wrong Remax entity based on diligent searches of the limited information that is publicly available, and that the entity through which Defendant Zhang allegedly acted as the agent for Defendants Zheng and Weng may have been Womcore LLC.  Counsel for Plaintiffs has reached out to counsel for Womcore LLC to discuss this in the hope of ensuring, on consent, that the correct Remax entity has been named.  Those discussions remain ongoing.  Plaintiffs are not naming Womcore LLC at this time because Plaintiffs do not understand the Court to have granted such leave during the March 6, 2025 conference.  Plaintiffs reserve the right to seek leave to further amend to name Womcore LLC in the future.  For ease of reference, Plaintiffs refer herein to Remax Edge Realty, LLC and Womcore LLC collectively as "Remax."

apartments mentioned herein, and to screen potential tenants for Demirovic, acting within the scope of their agency.

25.    Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is the owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. held themselves out to the public as authorized agents on behalf of Defendant 202 Marine LLC and in fact acted as agents with actual and/or apparent authority on behalf of Defendant 202 Marine LLC to offer for rent and to actually facilitate the rental of the relevant apartments mentioned herein, and to screen potential tenants for Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

### Discrimination Against Plaintiffs Delone-Felix and Felix

26.    On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell Avenue in Staten Island.

27.    Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

28.    Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

29.    Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

30.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

31.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

32.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

33.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

34.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

35.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

36.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

37.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

38.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which he then emailed to her.

39.      Meanwhile, Defendant Niayzov interacted with Defendant Zhang regarding the rental application submitted by Plaintiffs Delone-Felix and Felix for the unit at 581 West Caswell Avenue owned by Defendants Zheng and Weng.

40.     Upon information and belief, Defendant Zhang is a licensed real estate salesperson employed by Remax.

8

41.     Upon information and belief, Defendant Zhang is fluent in Mandarin and Cantonese.

42.     Upon information and belief, Defendants Zheng and Weng are not native English speakers.

43.     Upon information and belief, Defendants Zheng and Weng speak primarily Mandarin and/or Cantonese.

44.     Upon information and belief, Defendants Zhang and Remax acted as agents of Defendants Zheng and Weng in connection with the purchase of 581 West Caswell Avenue by Defendants Zheng and Weng in 2022.

45.     Upon information and belief, when Defendants Zheng and Weng subsequently sought to rent the unit at issue at 581 West Caswell Avenue in 2023, they asked Defendant Zhang to serve as the listing agent for that rental transaction.

46.     Upon information and belief, Defendant Zhang informed Defendants Zheng and Weng that he does not formally serve as the listing agent for rental transactions.

47.     Upon information and belief, Defendants Zheng and Weng nevertheless asked Defendant Zhang to provide assistance to them in connection with the rental transaction, and Defendant Zhang agreed to provide them such assistance.

48.     Upon information and belief, Defendant Zhang had a pecuniary motive to provide assistance to Defendants Zheng and Weng in connection with the rental transaction and to hold himself out as an agent with authority on their behalf and to act as an agent with actual and/or apparent authority on their behalf, even though he was not formally listing it, because he hoped that Defendants Zheng and Weng would list 581 West Caswell Avenue with him in the future if

they chose to sell it and because he hoped that Defendants Zheng and Weng would recommend him to other potential buyers and sellers in the community.

49.    Upon information and belief, Defendants Zheng and Weng were not educated about the market for the available unit at 581 West Caswell Avenue.

50.    Defendant Zhang was very educated about the market for the available unit at 581 West Caswell Avenue.

51.    Upon information and belief, Defendant Zhang provided Defendants Zheng and Weng with advice regarding renting the available unit at 581 West Caswell Avenue, including advice about the appropriate listing price and advice about how to advertise its availability.

52.    Upon information and belief, Defendant Zhang helped Defendants Zheng and Weng evaluate the rental applications that were submitted for the available unit at 581 West Caswell Avenue, including the application that was submitted by Plaintiffs Delone-Felix and Felix.

53.    Upon information and belief, Defendant Zhang acted within the scope of his actual and/or apparent authority when he took actions to screen and/or to help screen applications.

54.    Upon information and belief, Defendant Zhang was aware that Plaintiffs Delone-Felix and Felix were the first applicants for the available unit at 581 West Caswell Avenue and that they were well qualified.

55.    Upon information and belief, Defendants Zheng and Weng informed Defendant Zhang that they did not want to rent to Plaintiffs Delone-Felix and Felix because they had had negative experiences renting to Black tenants in the past.

10

56.     Upon information and belief, Defendant Zhang knew that this reason for rejecting the application submitted by Plaintiffs Delone-Felix and Felix violated federal, state, and local law.

57.     Upon information and belief, Defendant Zhang nevertheless agreed to assist Defendants Zheng and Weng in unlawfully rejecting the application submitted by Plaintiffs Delone-Felix and Felix.

58.     Upon information and belief, in or about November 2023, Defendant Zhang participated in a telephone call among himself, Defendant Zheng and/or Defendant Weng, and Defendant Niayzov.

59.     Upon information and belief, during that telephone call, Defendant Zhang informed Defendant Niayzov that Defendant Zheng and Weng had rejected the application submitted by Plaintiffs Delone-Felix and Felix because Defendant Zheng and Weng had had negative experiences renting to Black tenants in the past.

60.     Meanwhile, Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

61.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

62.     Defendant Niayzov initially told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

63.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

64.    Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why Defendants Zheng and Weng had rejected the application was that they had had negative experiences renting to Black tenants in the past.

**FHJC Investigates Defendants**

65.    Plaintiff Delone-Felix reported her experience to FHJC.

66.    FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

67.    In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

68.    All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

69.    At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

70.    Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

71.    The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

72.    Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

73.     The tester responded that his budget was up to $3,200.00 per month.

74.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

75.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

76.     The tester was met by a woman named Nicole, who showed him the unit.

77.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

78.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

79.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

80.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

81.     When the tester left the unit, Defendant Niayzov was outside.

82.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

83.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

84.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

85.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

13

86.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

87.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

88.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

89.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

90.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

91.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

92.     The tester expressed interest in both units.

93.     Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

94.     Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

95.     The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

96.     The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

97.     The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

98.     The tester responded that he was renting a different apartment.

99.     Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

100.    On January 30, 2024 – the day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

101.    Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

102.    Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

103.    On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

104.    Defendant Niayzov did not call Plaintiff Jones back.

105.    At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

106.    Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

107.    Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

15

108.    Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

109.    Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

110.    Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

111.    Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

112.    Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

113.    Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

114.    Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

115.    The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

116.    Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

117.    Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

118.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

119.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

120.     At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

121.     Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

122.     The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

123.     Defendant Ioffe asked the tester what she did for a living and if she had good credit.

124.     The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

125.     The tester asked whether there were available two-bedrooms in Brooklyn.

126.     At that point, Defendant Ioffe put Defendant Niayzov on the phone.

127.     Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

128.     Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

129.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

130.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

131.    Meanwhile, upon information and belief, the owner of 202 Marine Avenue had authorized Defendant Niayzov to act as one of its agents with respect to screening applicants for and finding a tenant to rent an available unit in that building.

132.    Upon information and belief, the owner of 202 Marine Avenue had known Defendant Niayzov for several years.

133.    Upon information and belief, the owner of 202 Marine Avenue had previously completed one or more rental transactions in which Defendant Niayzov had served as agent.

134.    Upon information and belief, the owner of 202 Marine Avenue had Defendant Niayzov's mobile telephone number saved in his contacts.

135.    Upon information and belief, Defendant Niayzov had the mobile telephone number of the owner of 202 Marine Avenue saved in his contacts.

136.    Upon information and belief, in or about late February or early March 2024, the owner of 202 Marine Avenue had texted Defendant Niayzov and informed him that there was a unit available for rent in that building.

137.    Upon information and belief, in that text, the owner of 202 Marine Avenue informed Defendant Niayzov that he was authorized to advertise the availability of the unit to potential renters.

138.    Upon information and belief, the owner of 202 Marine Avenue communicated and/or implied to Niayzov that he was authorized to screen applicants for the available unit and to bring to the owner applicants that the owner would find acceptable.

139.    Upon information and belief, the owner of 202 Marine Avenue sent similar text messages to other real estate agents, in addition to Defendant Niayzov, offering each agent the opportunity to compete with one another to consummate the rental transaction and earn a fee.

140.    When Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn on March 5, 2024, he contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

141.    The owner of 202 Marine asked Defendant Niayzov what the tester and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

142.    After assessing the tester's qualifications, the owner of 202 Marine approved Defendant Niayzov's request to show the tester the available unit at 202 Marine Avenue on the owner's behalf.

143.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

144.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

145.    Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

146.     During the drive, Defendant Niayzov made explicitly racist comments to the tester.

147.     Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

148.     Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

149.     Defendant Niayzov complained to the tester about "criminals" in New York City.

150.     Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

151.     Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

152.     Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

153.     Defendant Niayzov complained to the tester that "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

154.     Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

155. Defendant Niayzov complained to the tester that "They rob. And the cops don't do anything. They're like okay, we can't do anything about it. It's called misdemeanor. They lock them up for one day, they come back out. That's New York."

156. Defendant Niayzov then showed the tester 202 Marine Avenue.

157. The owner of 202 Marine Avenue was aware that Defendant Niayzov was showing the unit, and the owner of 202 Marine Avenue had authorized and approved of Defendant Niayzov showing the unit on his behalf.

158. Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

159. When they left, Defendant Niayzov offered to show the tester other available apartments.

160. Defendant Niayzov then drove the tester to the subway.

161. During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

162. Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

163. Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

164. Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

165. After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode. Come on, talk normally."

166.     Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

167.     Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

168.     Defendant Niayzov confirmed that it was and asked the tester to call him.

169.     The tester responded that she would call soon.

170.     Defendant Niayzov responded by asking the tester if she could come to his office.

171.     At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

172.     The tester responded by text that she would call him in a few minutes.

173.     Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

174.     At approximately 2:55 p.m., the tester called Defendant Niayzov.

175.     Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

176.     The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

177.     Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

178.     Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

179.     The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

180.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

181.    Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

182.    Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

183.    Upon information and belief, Defendant Demirovic had informed Defendant Niayzov that there was a unit available for rent at 2732 East 65th Street.

184.    Upon information and belief, Defendant Demirovic had informed Defendant Niayzov that he was authorized to advertise the availability of the unit to potential renters.

185.    Upon information and belief, Defendant Demirovic communicated and/or implied to Niayzov that he was authorized to screen applicants for the available unit and to bring him applicants that he would find acceptable.

186.    Upon information and belief, Defendant Demirovic was aware that Defendant Niayzov was showing the unit on his behalf, and Defendant Demirovic had authorized and approved of Defendant Niayzov showing the unit on his behalf.

187.    On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street on behalf of Defendant Demirovic.

188.    Defendant Niayzov arrived approximately twenty minutes late.

23

189.    The showing lasted approximately three and a half minutes.

190.    Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

191.    Defendant Niayzov told Plaintiff Seale to call him the following day.

192.    Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

193.    The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

194.    Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

195.    In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

196.    Defendant Niayzov did not respond to any of those texts.

197.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

198.    Defendant Niayzov did not offer Plaintiff Seale the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

199.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

200.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

201.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

202.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

203.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

204.     As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

205.    As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

206.     Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

207.     Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

<div align="center">

**FIRST CAUSE OF ACTION**
**Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.**
**(By All Plaintiffs Against All Defendants)**

</div>

208.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

209.     It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

210.     Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with their application to rent 581 West Caswell Avenue.

211.     Additionally, upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agents of Defendants Zheng and Weng, acting with actual and/or apparent authority and within the scope of their agency.

212.     Upon information and belief, Defendant Zhang held the power to alter the legal relations between, on the one hand, Defendants Zheng and Weng and, on the other hand, applicants for the available unit at 581 West Caswell Avenue, including by advising Defendants Zheng and Weng about pricing and advertising strategies, by assisting Defendants Zheng and

Weng in evaluating and screening applications, and by informing Defendants Zheng and Weng that it is unlawful to discriminate on the basis of race.

213.    Upon information and belief, Defendants Zheng and Weng nevertheless retained ultimate control over the rental of the available unit at 581 West Caswell Avenue, including by retaining the ultimate ability to accept or reject applications.

214.    Upon information and belief, Defendant Zhang was authorized by Defendants Zheng and Weng to perform actions on their behalf regarding one or more matters related to rental of the available unit at 581 Caswell Avenue.

215.    Upon information and belief, Defendants Zheng and Weng asked Defendant Zhang to assist them in renting the available unit at 581 Caswell Avenue and to screen potential tenants on their behalf, Defendant Zhang agreed to do so, Defendant Zhang did in fact do so, and Defendants Zheng and Weng maintained ultimate control over the transaction.

216.    Additionally, Defendants Zhang and Niayzov are both directly liable for their own violations of federal law.

217.    The Fair Housing Act makes it unlawful for any person to make any statement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race or color.  *See* 42 U.S.C. § 3604(c); 24 C.F.R. § 100.50(b)(4).

218.    Defendants Zhang and Niayzov violated the Fair Housing Act by telling Plaintiffs Delone-Felix and Felix that their application for 581 Caswell Avenue had been rejected because of their race.

219.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

220.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

221.    Upon information and belief, at all relevant times, Defendant Niayzov held himself out to the public as an authorized agent on behalf of Defendant Demirovic and in fact acted as an agent with actual and/or apparent authority on behalf of Defendant Demirovic, acting within the scope of his agency.

222.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

223.    Upon information and belief, at all relevant times, Defendant Niayzov held himself out to the public as an authorized agent of Defendant 202 Marine LLC and in fact acted as an agent with actual and/or apparent authority on behalf of Defendant 202 Marine LLC, acting within the scope of his agency.

224.    Upon information and belief, Defendant Niayzov was authorized by Defendant 202 Marine LLC to perform actions on its behalf regarding one or more matters related to rental of the available unit at 202 Marine Avenue.

225.    Upon information and belief, Defendant 202 Marine LLC asked Defendant Niayzov to assist it in renting the available unit at 202 Marine Avenue and to screen potential tenants on its behalf, Defendant Niayzov agreed to do so, Defendant Niayzov did in fact do so, and Defendant 202 Marine LLC maintained ultimate control over the transaction.

226.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

227.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

228.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

229.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

230.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

231.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

232.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

233.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

234.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

235.    Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

29

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §§ 1981 and 1982
### (By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)

236.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

237.    42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

238.    42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

239.    Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

240.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

241.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

242.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

243.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

244.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

245.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

246.    Upon information and belief, Defendant Niayzov conspired with Defendants Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

247.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

248.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

249.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

250.    Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

251.    Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale based on their race.

252.    Defendants acted with racial animus.

253.    Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

254.    Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

255.    Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

256.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

257.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

258.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

259.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

260.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## THIRD CAUSE OF ACTION
### Violation of N.Y. Exec. Law § 296(5)(a)(1)
### (By All Plaintiffs Against All Defendants)

261.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

262.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

263.    Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

264.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agent of Defendants Zheng and Weng, acting within the scope of their agency.

265.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

266.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

267.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

268.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

269.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

270.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

271.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

272.    Upon information and belief, Defendants Zhang and Remax aided and abetted Defendants Zheng and Weng in their discrimination against Plaintiffs Delone-Felix and Felix by actually participating in the discrimination.

273.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

274.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

275.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

276.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

277.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

278.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

279.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

280.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

<div align="center">

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

</div>

281.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

282.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

283.    Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

284.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

285.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

286.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

287.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

288.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

289.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

290.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

291.   Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

292.   Upon information and belief, Defendants Zhang and Remax aided and abetted Defendants Zheng and Weng in their discrimination against Plaintiffs Delone-Felix and Felix by actually participating in the discrimination.

293.   Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

294.   Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

295.   Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

296.   As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

297.   As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

298.   As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

299.   Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

300.     Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.     An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)     refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)     discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)     coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

  (i)  ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

  (ii)  make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

  (iii)  train all management, agents, and employees on fair housing laws;

  (iv)  display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

  (v)  allow monitoring of their rental screening and application process and decisions;

  (vi)  retain records to allow for appropriate monitoring;

  (vii)  develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

  (viii)  undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

  (ix)  establish a system so that their agents can be tested for unlawful discriminatory practices;

d.  An order and judgment awarding monetary damages to each Plaintiff;

e.  An order and judgment awarding punitive damages to each Plaintiff;

f.  An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.      Pre- and post-judgment interest on any and all such awards; and

h.      Any further relief that may be just and proper.

Dated: New York, New York
        March 10, 2025

By:    /s/ Eric Hecker   
       Mariann Wang
       Eric Hecker

WANG HECKER LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
mwang@wanghecker.com
ehecker@wanghecker.com

*Attorneys for Plaintiffs*

# EXHIBIT 7

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x

FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;          24 Civ. 4201 (LDH) (TAM)
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                  Plaintiffs,

        v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                 Defendants.
---------------------------------------------------------x

## PLAINTIFFS' FIRST SET OF COMBINED DISCOVERY REQUESTS
## TO DEFENDANTS XIAN JIN ZHANG AND REMAX EDGE REALTY, LLC

      PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Rule

26 of the Local Rules of the United States District Court for the Eastern District of New York

(the "Local Rules"), Plaintiffs, by and through their attorneys, Wang Hecker LLP, hereby

demand that Defendants XIAN JIN ZHANG and REMAX EDGE REALTY, LLC produce for

inspection and copying at the offices of Wang Hecker LLP, located at 305 Broadway, New York,

New York 10007, by March 3, 2025, all documents which are responsive to the requests that are

contained herein.

      PLEASE TAKE FURTHER NOTICE that Plaintiffs further demand, pursuant to Rule 33

of the Federal Rules of Civil Procedure and Local Rule 33.3, that Defendants XIAN JIN

ZHANG and REMAX EDGE REALTY, LLC answer under oath, by March 3, 2025, the interrogatories set forth herein.

## **DEFINITIONS**

The Uniform Definitions set forth in Local Rule 26.3 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York shall be used to interpret these document demands and interrogatories and are hereby incorporated by reference.  In addition, as used in these document demands:

1.     Complaint:  The term "Complaint" means the Second Amended Complaint filed in this action on August 15, 2024.

2.     FHJC:  The term "FHJC" means the Fair Housing Justice Center, Inc.

3.     Defendants, you, your, or yours:  The terms "Defendants," "you," "your" or "yours" means XIAN JIN ZHANG and REMAX EDGE REALTY, LLC.

4.     581 West Caswell:  The term "581 West Caswell" refers to the property located at 581 West Caswell Avenue in Staten Island.

5.     Concerning:  The term "concerning" means related to, relating to, consisting of, referring to, pertaining to, constituting, describing, evidencing, substantiating, reflecting, supporting, prepared in connection with, used in preparation for, or being in any way legally or logically connected to the matter described or discussed.

6.     Communication:  The term "communication" refers to any transfer of information, ideas, opinions, or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or oral transfers between natural persons, but includes all other transfers, including electronic or digital transfers, transfers of information stored on computer disk or in computer memory, and memoranda to file.

7.      Document:  The term "document" means, without limitation, any written, recorded, or graphic material, whether prepared by you or any other person, that is in your possession, custody, or control, including memoranda, reports, letters, telegrams, electronic mail, other electronic correspondence, and any other communications or information recorded in any form or medium; notes, minutes, and transcripts of conferences, meetings, and telephone or other communications; transparencies, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; blueprints, diagrams, graphs, charts, and other drawings; work orders; punch lists; publications; photographs; photocopies, microfilm, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, and optical disks), and other electronic recordings; financial models; statistical models and other data compilations; and computer printouts. The term includes all drafts of a document; the original document (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, highlighting, or other markings).  The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations, including material or information stored on the cloud or internet or at or on a computer not owned but controlled and/or accessible by you, and includes without limitation any and all emails, social media postings, blog postings, and or any other means of communication, whether texting, posting, or otherwise communicating, even if the communication is meant to be temporary or not fixed or stored but can still be captured.

8.      All/Any/Each:  The terms "all," "any," and "each" shall each be construed as

encompassing any and all.

9.    And/Or:  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

10.    Number:  The use of the singular form of any words includes the plural and vice versa.

11.    Email(s):  The use of the term "Email" or "Emails" shall mean any form of communication or possible communication that is stored, maintained or transmitted in electronic or digital form.

## **INSTRUCTIONS**

1.    In answering the following interrogatories and responding to the following document requests, (collectively the "request"), you shall furnish all information that is available to you, including information or materials in the possession, custody, or control of your attorneys, investigators, experts, representatives, contractors, employees, or other agents.

2.    If, in answering the following, you are unable to answer fully, after exercising due diligence to obtain the information to do so, you shall answer said interrogatory to the fullest extent possible, specifying your inability to answer the remainder, describing the efforts taken by you to obtain the information to fully answer said interrogatory, and stating whatever information or knowledge you have concerning the unanswered portion thereof.

3.    If, in answering the following interrogatories, you state in whole or in part that "I do not know" or "unknown" or otherwise indicate any similar lack of knowledge, you shall state in detail all efforts made to obtain the information requested, the nature of any continuing efforts in that regard, and by whom any such efforts were and are being made.

4.      If any document responsive to the requests has been lost, destroyed, or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the name(s) of the authors(s), the name(s) of the person(s) who received the original and all copies and the date and subject matter, (ii) the last known custodian of the document, (iii) the incident, event, or occurrence during which such document was lost, destroyed, or otherwise became unavailable, (iv) the nature or subject matter of such document, (v) each person having knowledge of the circumstances of it being lost, discarded or destroyed, and (vi) your efforts to locate each such document.

5.      If a claim of privilege is asserted with respect to any document, or you refuse to disclose any document requested herein on any other ground, state the basis for your claim that such document need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of your objection or position, and, for each such document, identify:

(a) whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

(b) whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

(c) any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

(d) the nature of the privilege (including work product) that is being claimed, and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

(e) the type of document, e.g., letter or memorandum; the general subject matter of the document; and such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

6.    If, in answering these requests you claim any ambiguity in interpreting either the request or a definition instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond; rather, you shall set forth in a part of your response to such a request the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

7.    Respond separately and completely to each document request or subdivision thereof and each interrogatory or subdivision thereof, setting forth the question in full followed by each answer.

8.    With respect to the documents requested, this request seeks production of all documents described, in their entirety, along with any attachments, drafts and non-identical copies.

9.    Questions regarding the interpretation of this request should be resolved in favor of the broadest possible construction.

10.    The documents produced in response to this request shall be: (i) organized and designated to correspond to the categories in the request, or (ii) produced in a form that accurately reflects how they are maintained by you in the normal course of business, including, but not limited to the following:

(a) that all associated file labels, file headings, and file folders be produced with the responsive documents from each file and that each file be identified as to its owner(s) or custodian(s);

(b) that all pages now stapled or fastened together be produced stapled or fastened together; and

(c) that all documents which cannot legibly be copied be produced in their original form.

11.     This request is to be considered as continuing and Defendant is requested to provide, by way of supplementary responses hereto, such additional information as it or any persons acting on its behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to this request.  Such supplementary responses are to be served upon counsel for Plaintiffs as soon as practicable after receipt of such information or documents.

12.     Unless otherwise specified, the time frame for the requests below is from January 1, 2020 through the present.

## INTERROGATORIES

1.     Identify each person with knowledge or information concerning any of the allegations in the Complaint.

2.     Identify each person with knowledge or information that supports any of your defenses to the allegations in the Complaint.

3.     Identify each person from whom you or your counsel have obtained or requested a statement or information regarding the allegations in the Complaint and/or your defenses.

4.     Idenitfy any testifying or consulting expert with whom you or your counsel have consulted in connection with this action.

5.     Identify any and all document custodians with knowledge or information about the existence and/or location of documents relevant to the subject matter of this action.

6.     Identify each person with knowledge or information concerning your policies and practices in effect at any time from January 1, 2020 to the present with respect to discrimination and/or compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination.

7.    Identify the person primarily responsible for managing 581 West Caswell.

8.    Identify each person or entity who has made a complaint or charge of alleged discrimination against you, whether formal or informal, written or oral, with respect to any real estate services provided by you at any time since January 1, 2020.

9.    Identify any liability insurer insuring you that may provide coverage concerning this action.

## DOCUMENTS TO BE PRODUCED

1.    All documents concerning FHJC.

2.    All documents concerning any of the allegations in the Complaint.

3.    All documents concerning any defense to any claim in this action.

4.    All documents concerning Patricia Delone-Felix or Stanley Felix.

5.    All contracts or agreements between Womcore LLC d/b/a Remax edge and Xian Jin Zhang.

6.    Documents sufficient to show the nature of the business relationship between Womcore LLC d/b/a Remax edge and Xian Jin Zhang.

7.    All documents reflecting any effort to rent any unit at 581 West Caswell, including all agreements and communications with any owner of 581 West Caswell.

8.    All documents regarding Juda Niayzov, including all documents relating to or reflecting any communications with Juda Niayzov from January 1, 2020 to present.

9.    All documents regarding Alventina Ioffe, including all documents relating to or reflecting any communications with Alventina Ioffe from January 1, 2020 to present.

10.    All documents relating to any application to rent any unit at 581 West Caswell in October, November, or December 2023.

11.     All documents relating to or reflecting any of your policies, rules, or practices, whether formal or informal, concerning compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination.

12.     All documents concerning steps taken by you at any time since January 1, 2020 to ensure that it does not discriminate against prospective renters.

13.     All documents concerning or evidencing any training that was provided by or to you regarding compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination at any time since January 1, 2020.

14.     All documents concerning any investigation conducted by you or any of your attorneys, agents, employees, or contractors, or anyone else, concerning the allegations in the Complaint, the Second Test, and/or any alleged non-compliance with any the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination at any time since January 1, 2020.

15.     All documents concerning any and all actions taken by any of the Defendants in connection with the Complaint.

16.     All documents concerning the responses, allegations, defenses, and/or crossclaims to the Complaint, including all documents supporting or rebutting those responses, allegations, defenses, and/or crossclaims and all documents referenced, reviewed, or otherwise used in providing those responses, allegations, and/or defenses.

17.     All documents (including drafts, draft reports, letters, notes, and e-mails) sent to, reviewed by, or prepared by any expert retained by you or any of you attorneys or agents in connection with this action.

18.     All documents that any of you intends to introduce into evidence at the trial in this action.

DATED:   New York, New York
              January 27, 2025

WANG HECKER LLP

By: _____
         Eric Hecker
         Mariann Meier Wang
         305 Broadway, Suite 607
         New York, New York 10007
         (212) 620-2600

         *Attorneys for Plaintiffs*

To (by U.S. Mail):

Christopher P. DelCioppio, Esq.
SACCO & FILLAS, LLP
31-19 Newtown Avenue, Third Floor
Astoria, New York 11102
cpdelcioppio@saccofillas.com

Jeffrey Toback
Jeffrey W. Toback, P.C.
48 Dalton Street
Long Beach, NY 11561
jefftoback@gmail.com

Nicholas G. Sekas, Esq.
SEKAS LAW GROUP, LLC
515 MADISON AVE FL 6
NEW YORK, NY 10022-5403
NSEKAS@SEKASLAW.COM

Asher Kest, Esq.
Furman Kornfeld & Brennan LLP
Wall Street Plaza
88 Pine Street, 32nd Floor
New York, NY 10005
akest@fkblaw.com

Leon K. Luk, Esq.
Luk & Luk, PLLC
254 Canal Street, Suite 2001
New York, N.Y. 10013
lukspc@aol.com

# EXHIBIT 8

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

FAIR HOUSING JUSTICE CENTER, INC.;                    24 Civ. 4201 (LDH) (TAM)
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,                                                **DEFENDANTS' RESPONSES
                                                      TO FIRST SET OF DEMANDS
                              Plaintiffs,             FOR DOCUMENTS**

                  v.

JUDA NIYAZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                              Defendants.
-------------------------------------------------------------------X

     **PLEASE TAKE NOTICE** that Defendants XIAN JIN ZHANG and REMAX EDGE

REALTY, LLC. ("Defendants"), by their attorneys FURMAN KORNFELD & BRENNAN LLP,

as and for their response to Plaintiffs' First Set of Interrogatories states the following:

## GENERAL OBJECTIONS

     1.    Defendants object to each and every demand in Plaintiffs' demands to the extent

that it attempts to impose obligations upon Defendants that are inconsistent with and/or in addition

to those imposed by the Federal Rules of Civil Procedure, the Local Rules of the United States

District Courts for the Southern and Eastern Districts of New York, the New York Civil Practice

Laws and Rules, or any other applicable rules or laws.

     2.    Defendants object to each and every demand in Plaintiffs' demands to the extent

that it seeks to require Defendants to organize their responses by any method other than that in

which the records are kept in the normal course of business on the grounds that to do otherwise

would impose an undue burden and unreasonable expense on Defendants.

3.     Defendants object to each and every demand in Plaintiffs' demands to the extent it purports to require the disclosure of matters protected by the attorney-client privilege, work-product doctrine, or any other applicable privilege, restriction, immunity or protection from discovery, all of which are herein invoked and asserted.  The inadvertent production of any information subject to such privileges or protection is not intended to relinquish any privilege or protection and shall not be deemed to constitute a waiver of any applicable privilege or protection.

4.     Defendants object to each and every demand in Plaintiffs' demands to the extent it purports to seek production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action.

5.     Defendants object to each and every demand in Plaintiffs' demands to the extent that it is vague, ambiguous, and/or ill-defined.

6.     Defendants object to each and every demand in Plaintiffs' demands to the extent that the compilation of such information would be unduly burdensome, oppressive, unreasonably expensive, or would require unreasonable investigation on the part of Defendants.

7.     Defendants object to each and every demand in Plaintiffs' demands to the extent that the information sought is a matter of public record and is equally accessible and available through an examination of public records.

8.     Defendants object to each and every demand in Plaintiffs' demands to the extent it seeks information not within Defendants' possession, custody, or control on the grounds that said discovery is overly broad, unduly burdensome, and could require Defendants to search for non-party information and answer on behalf of non-parties.

9.     Defendants object to each and every demand in Plaintiffs' demands to the extent

that it seeks information that is already in the possession of Plaintiffs or information that is equally accessible to Plaintiffs.

10.    Any documents provided by Defendants in response to Plaintiffs' demands are made on the basis of the best information available to Defendants at the time of gathering responsive materials, within the limits of, and subject to Defendants' general and specific objections to the aforementioned demand.  The fact that Defendants is willing to provide responsive information to any particular demand does not constitute an admission or acknowledgement that the demand is proper, that the information it seeks is within the proper bounds of discovery, or that demands for similar information will be treated in a similar fashion. Furthermore, any and all responses provided pursuant to the aforementioned demand are for the purposes of this action only, and are not responses for any other purpose, nor may they be used against Defendants in any other proceedings.  Defendants reserve the right to supplement or modify their responses and objections if and as additional information becomes available.

11.    In addition to these General Objections, Defendants may also make, where appropriate, other specific objections to individual demands.  By setting forth such specific objections, Defendants do not limit or waive these General Objections. To the extent that Defendants responds to the demands to which it objects, such objections are not waived by such responses.

12.    Defendants expressly reserve the right to supplement these responses should further information become available.

## SPECIFIC RESPONSES AND OBJECTIONS

**Document Request No.1:** All documents concerning FHJC.

### Response to Document Request #1:

Defendants object to this Request on the grounds that it is vague, ambiguous, and ill-defined. Defendants further object on the grounds that it seeks information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Subject to, and without waiver of, the foregoing objections, Defendants have no documents responsive to this request.

**Document Request No. 2:** All documents concerning any of the allegations in the Complaint.

### Response to Document Request No. 2:

Defendants object to this Request on the grounds that it is vague, ambiguous, and ill-defined. Defendants further object on the grounds that this request seeks to require the disclosure of matters protected by the attorney-client privilege, the work-product doctrine, the common interest doctrine, or any other applicable privilege, restriction, immunity or protection from discovery, all of which are herein invoked and asserted. Subject to, and without waiver of, the foregoing objections, Defendants will produce any non-privileged responsive documents in Defendants' possession, custody, or control under separate cover.

**Document Request No. 3:** All documents concerning any defense to any claim in this action.

### Response to Document Request No. 3:

See response to Request no. 3.

**Document Request No. 4:** All documents concerning Patricia Delone-Felix or Stanley Felix.

### Response to Document Request No. 4

Defendants object to this Request on the grounds that it is vague, ambiguous, and ill-

defined. Subject to, and without waiver of, the foregoing objections, Defendants have no documents responsive to this request.

**Document Request No. 5:** All contracts or agreements between Womcore LLC d/b/a Remax Edge and Xian Jin Zhang.

       **Response to Document Request No. 5:**

Defendants object on the grounds that this Request is not limited by time, and is vague and overbroad. Defendants further object on the grounds that it seeks production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Subject to, and without waiver of, the foregoing objections, Defendants will produce all responsive documents which are in Defendants' possession, custody, or control under separate cover.

**Document Request No. 6:** Documents sufficient to show the nature of the business relationship between Womcore LLC d/b/a Remax Edge and Xian Jin Zhang.

       **Response to Document Request No. 6:**

See response to Request no. 5.

**Document Request No. 7:** All documents reflecting any effort to rent any unit at 581 West Caswell, including all agreements and communications with any owner of 581 West Caswell.

       **Response to Document Request No. 7:**

Defendants object to this Request on the grounds that it is not limited by time, and is vague, ambiguous, and ill-defined. Defendants further object on the grounds that it seeks production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Defendants further object to the extent it seeks information not within the Defendants' possession, custody or control. Subject to, and without waiver of, the foregoing objections, Defendants will produce all responsive documents

relevant to the allegations in the Complaint which are in Defendants' possession, custody, or control under separate cover.

**Document Request No. 8:** All documents regarding Juda Niyazov, including all documents relating to or reflecting any communications with Juda Niyazov from January 1, 2020 to present.

    **Response to Document Request No. 8:**

    Defendants object to this Request on the grounds that it is vague, ambiguous, and ill-defined. Defendants further object on the grounds that it seeks production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Subject to, and without waiver of, the foregoing objections, Defendants will produce responsive documents relevant to the allegations in the Complaint which are in Defendants' possession, custody, or control under separate cover.

**Document Request No. 9:** All documents regarding Alevtina Ioffe, including all documents relating to or reflecting any communications with Alevtina Ioffe from January 1, 2020 to present.

    **Response to Document Request No. 9:**

    See response to request no. 8.

**Document Request No. 10:** All documents relating to any application to rent any unit at 581 West Caswell in October, November, or December 2023.

    **Response to Document Request No. 10:**

    Defendants object to this Request to the extent it seeks information not within the Defendants' possession, custody or control. Defendants further object on the grounds that it seeks production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Subject to, and without waiver of, the foregoing objections, Defendants will produce responsive documents relevant to the allegations in the Complaint which are in Defendants' possession, custody, or control under separate cover.

**Document Request No. 11:** All documents relating to or reflecting any of your policies, rules, or practices, whether formal or informal, concerning compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination.

**Response to Document Request No. 11:**

Defendants object to this Request on the grounds that it is overbroad and unduly burdensome. Defendants further object on the grounds that it purports to seek production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Subject to, and without waiver of, the foregoing objections, Defendants will produce responsive documents which are in Defendants' possession, custody, or control under separate cover.

**Document Request No. 12:** All documents concerning steps taken by you at any time since January 1, 2020 to ensure that it does not discriminate against prospective renters.

**Response to Document Request No. 12:**

See response to Request no. 11.

**Document Request No. 13:** All documents concerning or evidencing any training that was provided by or to you regarding compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting discrimination at any times since January 1, 2020.

**Response to Document Request No. 13:**

See response to Request no. 11.

**Document Request No. 14:** All documents concerning any investigation conducted by you or any of your attorneys, agents, employees, or contractors, or anyone else, concerning the allegations in the Complaint, the Second Test, and/or any alleged non-compliance with any the provisions of the Federal fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination at any time since January 1, 2020.

**Response to Document Request No. 14:**

Defendants object to this Request on the grounds that it compounds multiple requests and does not define "Second Test," and is vague, ambiguous, and ill-defined. Defendants further object on the grounds that it purports to seek production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Defendants further object on the grounds that it seeks to require the disclosure of matters protected by the attorney-client privilege, the work-product doctrine, the common interest doctrine, or any other applicable privilege, restriction, immunity or protection from discovery, all of which are herein invoked and asserted. Subject to, and without waiver of, the foregoing objections, Defendants will produce any non-privileged responsive documents to the request for documents concerning the allegations in the Complaint which are in Defendants' possession, custody, or control under separate cover.

**Document Request No. 15:** All documents concerning any and all actions taken by any of the Defendants in connection with the Complaint.

**Response to Document Request No. 15:** Defendants object to this Request on the grounds that it is unclear whether it seeks documents concerning the Complaint as a pleading itself, or with the allegations described therein, and is vague, ambiguous, and ill-defined. Defendants further object on the grounds that it is overbroad and unduly burdensome. Defendants further object on the grounds that it purports to seek production of information that is not relevant to the subject matter of this action and is not reasonably calculated to lead to the discovery of admissible evidence in this action. Defendants further object on the grounds that it seeks to require the disclosure of matters protected by the attorney-client privilege, the work-product doctrine, the common interest doctrine, or any other applicable privilege, restriction, immunity or protection from discovery, all of which are herein invoked and asserted.

**Document Request No. 16:** All documents concerning the responses, allegations, defenses, and/or crossclaims to the Complaint, including all documents supporting or rebutting those responses, allegations, defenses, and/or crossclaims and all documents referenced, reviewed, or otherwise used in providing those responses, allegations, and/or defenses.

**Response to Document Request No. 16:**

Defendants object to this Request on the grounds that it does not define "responses" or "defenses," lacks clarity by compounding multiple requests, and is vague, ambiguous, and ill-defined. Defendants further object on the grounds that it seeks to require the disclosure of matters protected by the attorney-client privilege, the work-product doctrine, the common interest doctrine, or any other applicable privilege, restriction, immunity or protection from discovery, all of which are herein invoked and asserted. Subject to, and without waiver of, the foregoing objections, Defendants will produce any non-privileged responsive documents concerning the allegations in the Complaint which are in Defendants' possession, custody, or control under separate cover. Please clarify the nature of this Request so that Defendants may provide any further responsive documents.

**Document Request No. 17:** All documents (including drafts, draft reports, letters, notes, and e-mails) sent to, reviewed by, or prepared by any expert retained by your or any of your attorneys or agents in connection with this action.

**Response to Document Request No. 17:**

Defendants object to this Request on the grounds that it is vague and overbroad. Defendants further object on the grounds that it is premature, and reserve the right to retain experts and produce discoverable documents that are not protected by the attorney client privilege and/or the attorney work product doctrine or exempt from disclosure at a later time. Defendants reserve the right to amend and/or supplement this response up to and including at the conclusion of discovery. Defendants reserve the right to amend and/or supplement this response up to and including at the

conclusion of discovery.

**Document Request No. 18:** All documents that any of you intends to produce into evidence at the trial in this connection.

**Response to Document Request No. 18:**

Defendants object to this Request on the grounds that it is vague and overbroad. Defendants further object on the grounds that it is premature, and reserve the right to retain experts and produce discoverable documents that are not protected by the attorney client privilege and/or the attorney work product doctrine or exempt from disclosure at a later time. Defendants reserve the right to amend and/or supplement this response up to and including at the conclusion of discovery.

**PLEASE TAKE FURTHER NOTICE THAT** Defendants XIAN JIN ZHANG and REMAX EDGE REALTY, LLC. reserve all rights to amend and/or supplement these responses to the extent any additional information becomes available and/or at the conclusion of discovery.

Dated: March 20, 2025
New York, New York

Yours, Etc.,

**FURMAN KORNFELD & BRENNAN LLP**

By:    /s/ Spencer A. Richards
Spencer A. Richards, Esq.
Asher Kest, Esq.
*Attorneys for Defendants*
XIAN JIN ZHANG and
REMAX EDGE REALTY, LLC.
WALL STREET PLAZA
88 Pine Street, 32nd Floor
New York, New York 10005
Tel.:    (212) 867-4100

TO:

Eric Hecker, Esq.
WANG HECKER LLP

*Attorneys for Plaintiffs*
305 BROADWAY, SUITE 607
NEW YORK, NY 10007
(212) 620-2600

Christopher P. DelCioppio, Esq.
SACCO & FILLAS, LLP
31-19 Newtown Avenue, Third Floor
Astoria. New York 11102

Jeffrey Toback
Jeffrey W. Toback, P.C.
48 Dalton Street
Long Beach, NY 11561

Nicholas G. Sekas, Esq.
SEKAS LAW CROUP, LLC
5I5 MADISON AVE FL 6
NEW YORK. NY 10022-5403

Leon K. Luk. Esq.
LUK & LUK, PLLC
254 Canal Street, Suite 2001
New York, NY 10013

# EXHIBIT 9

Messages - Rental Jacob

iMessage
12/28/2023 9:26:39 AM

Yes

12/28/2023 9:25:44 AM

See you 11:00am

12/24/2023 5:56:10 PM

Thanks 🙏

12/24/2023 5:56:02 PM

Happy Christmas Eve

12/24/2023 5:55:31 PM

🎁👍Confirmed 11 am Thursday

12/24/2023 5:55:23 PM

You young than me 1983

12/24/2023 5:54:36 PM

I got you a bottle

12/24/2023 5:54:26 PM

Where is my Christmas gift

12/24/2023 5:54:18 PM

lol 😂

12/24/2023 5:54:15 PM

Check my license

12/24/2023 5:54:05 PM



12/24/2023 5:53:32 PM

Also my birthday don't for get my gift

12/24/2023 5:53:14 PM

Yes

Remax - 080

Messages - Rental Jacob

12/24/2023 5:53:08 PM

See you 12/28 Thursday 11:00am

12/24/2023 3:29:57 PM

Ok

12/24/2023 3:29:47 PM

Ok I send over to owner

12/24/2023 3:24:53 PM

Do you have husband W2

12/24/2023 3:11:53 PM



12/24/2023 3:11:53 PM



12/24/2023 3:11:53 PM

12/24/2023 3:11:53 PM

NYC HEALTH+ HOSPITALS

PRELIMINARY OFFER LETTER

Dear CHARLES WONG,

[redacted]

12/24/2023 3:11:53 PM

[redacted]



12/24/2023 3:11:53 PM



12/24/2023 3:11:53 PM



12/24/2023 3:11:53 PM



Messages - Rental Jacob

12/24/2023 3:11:53 PM



12/24/2023 3:11:53 PM



12/24/2023 3:02:26 PM



12/24/2023 3:02:05 PM



12/24/2023 3:01:57 PM



12/24/2023 3:01:34 PM



Messages - Rental Jacob

12/24/2023 3:00:45 PM



12/24/2023 3:00:45 PM



12/24/2023 2:59:40 PM

Husband gets every other weeks direct deposit

12/24/2023 2:54:51 PM

Good client

12/24/2023 2:54:29 PM

Ok

12/24/2023 2:53:52 PM

She will send me 30 min

12/24/2023 2:53:42 PM

Yes

12/24/2023 2:53:21 PM

Yes can you send me both pay stub and last year w2.

12/24/2023 2:51:34 PM

You got it

12/24/2023 2:51:31 PM

I send you the credit report

Messages - Rental Jacob

12/24/2023 2:33:53 PM

Ok

12/24/2023 2:32:57 PM

Ok send me paper work. Thank you

12/24/2023 2:27:37 PM

The husband is a Respiratory Therapist at Staten Island University Hospital and she work for Aasha Home Care Agency as a Home Healthcare Aide

12/24/2023 2:26:32 PM



12/24/2023 2:26:32 PM



12/19/2023 11:27:33 AM

Can we sign today ?

12/19/2023 11:27:12 AM

Good morning

12/18/2023 9:40:19 PM

My friend

12/18/2023 9:40:14 PM

Very good Cleint

Messages - Rental Jacob

12/18/2023 9:17:45 PM

Ok

12/18/2023 9:13:53 PM

Daughter id private investigator

12/18/2023 9:13:06 PM

Mother is  a teacher

12/18/2023 9:12:15 PM

You got it

12/18/2023 9:12:11 PM

Mother and daughter

12/18/2023 9:12:04 PM

I send you the paperwork

12/18/2023 11:47:59 AM

I'm here

12/18/2023 10:38:08 AM

Ok

12/18/2023 10:16:38 AM

See u 12 pm

Tomorrow 12 pm confirmed

12/17/2023 2:59:30 PM

12/17/2023 11:57:52 AM

Ok

12/17/2023 11:57:45 AM

$2,700

12/17/2023 11:57:36 AM

How much rent you told them

12/17/2023 11:12:11 AM

Total income $130,000

12/17/2023 11:05:41 AM

Check your email

12/17/2023 11:05:35 AM

I also email u his credit report

12/17/2023 10:56:30 AM

3 sons and mother

Remax - 088

Messages - Rental Jacob

12/17/2023 10:56:30 AM



12/17/2023 10:56:30 AM



12/17/2023 10:56:30 AM



12/17/2023 10:39:31 AM

Moving date Jan 1

12/17/2023 10:34:54 AM

No pets

12/17/2023 10:34:52 AM

No kids

Messages - Rental Jacob

12/17/2023 10:34:49 AM

4 adults

12/17/2023 10:34:45 AM

Good people

12/17/2023 10:34:38 AM

They are from Mexico

12/17/2023 10:32:22 AM



12/17/2023 10:31:56 AM



12/17/2023 10:31:56 AM



Messages - Rental Jacob

12/17/2023 10:30:57 AM

581 west Caswell ave

12/17/2023 10:30:57 AM

I send you the paperwork

12/17/2023 10:30:57 AM



12/17/2023 10:30:57 AM



12/17/2023 10:30:57 AM



Messages - Rental Jacob

12/17/2023 10:30:57 AM



12/17/2023 10:30:57 AM



12/17/2023 10:30:57 AM



Remax - 092

Messages - Rental Jacob

12/17/2023 10:30:57 AM



12/17/2023 10:30:57 AM



12/17/2023 10:30:57 AM



Messages - Rental Jacob

12/17/2023 10:30:57 AM



12/17/2023 10:30:21 AM

Can I call you later?

12/17/2023 10:29:56 AM

Call me

Okay

12/13/2023 10:23:38 AM

12/13/2023 10:22:17 AM

Tomorrow 5pm confirmed

12/13/2023 9:55:26 AM

K

12/13/2023 9:51:55 AM

Ok let me ask landlord

12/13/2023 8:57:23 AM

Can u ask the landlord

12/13/2023 8:57:10 AM

She has work today

12/13/2023 8:57:02 AM

Hey can we do tomorrow 5 pm

12/12/2023 7:46:14 PM

Liked "See you "

12/12/2023 7:39:45 PM

See you

12/12/2023 7:39:40 PM

Ok

Messages - Rental Jacob

12/12/2023 7:37:24 PM

Tomorrow 5:00pm confirmed

12/12/2023 2:34:49 PM

Let me check I am driving

12/12/2023 2:33:57 PM

You got it

12/12/2023 2:33:54 PM

I send you the credit check

12/12/2023 12:32:18 PM

Ok

12/12/2023 12:32:00 PM

Dec15

12/12/2023 12:31:49 PM

When she move in

12/12/2023 12:31:16 PM

Take your time

12/12/2023 12:30:55 PM

Ok I just send over the paper to owner already

12/12/2023 12:30:46 PM

From Staten Island

12/12/2023 12:30:39 PM

I'm still driving

12/12/2023 12:30:30 PM

I will do it when I get to the office

12/12/2023 12:30:16 PM

Sure

12/12/2023 12:30:13 PM

Can you send me credit report the owner ask

12/12/2023 10:26:43 AM

?

12/12/2023 10:26:37 AM

You got it

12/12/2023 10:26:33 AM

I just send you

Remax - 095

Messages - Rental Jacob

12/12/2023 9:30:41 AM

Ok

12/12/2023 9:09:31 AM

She will send her employment letter today and income tax

12/12/2023 9:09:13 AM

Good morning

12/11/2023 1:09:08 PM

Ok

12/11/2023 10:53:51 AM

And employment letter

12/11/2023 10:53:40 AM

Shortly

12/11/2023 10:53:38 AM

I will send you the income tax

12/10/2023 8:00:15 PM

Ok

12/10/2023 8:00:11 PM

Good Cleint

12/10/2023 7:59:40 PM

White

12/10/2023 7:47:40 PM

Hey Jacob that tenant is Spanish or white the owner ask

12/10/2023 3:04:39 PM



Remax - 096

Messages - Rental Jacob

12/10/2023 3:03:49 PM



12/10/2023 3:03:49 PM



12/10/2023 3:03:49 PM



Messages - Rental Jacob

12/10/2023 3:03:49 PM



12/10/2023 3:03:49 PM



12/10/2023 3:02:35 PM



12/10/2023 3:02:29 PM

1

12/10/2023 3:02:28 PM

$1700

12/10/2023 3:01:57 PM

How many people and how much?

12/10/2023 3:01:39 PM

Yes

12/10/2023 3:01:34 PM

That is for 10 row pl

12/10/2023 3:01:26 PM

I will do the credit check tonight

12/10/2023 3:01:14 PM

She will send me her income tax tomorrow morning

12/10/2023 3:00:38 PM

Small pet

12/10/2023 3:00:38 PM



12/10/2023 3:00:15 PM



12/10/2023 2:55:36 PM

720 credit score

12/10/2023 2:55:31 PM

$90,000 year

12/10/2023 2:55:21 PM

She is Engineer

12/10/2023 2:55:07 PM

I got the deposit $500

12/10/2023 2:30:33 PM



FILE_5087.pdf

Messages - Rental Jacob

12/10/2023 2:30:12 PM



Job Verification.pdf

12/10/2023 2:29:10 PM

Send

12/10/2023 2:28:40 PM

Can you send again

12/10/2023 2:28:23 PM



12/10/2023 2:28:19 PM

Nothing on the blow

12/10/2023 2:26:21 PM

In the email

12/10/2023 2:26:17 PM

I send you

12/10/2023 2:25:26 PM

Can you send photo ID

12/10/2023 1:57:37 PM

👌

12/10/2023 1:57:24 PM

Credit good

12/10/2023 1:57:18 PM

Income $85,000

12/10/2023 1:33:16 PM

K

Messages - Rental Jacob

12/10/2023 1:32:50 PM

Ok check it later
I am doing open house

12/10/2023 1:28:07 PM

Manager at New York City School Bus located on 1959 Richmond Terr Staten Island

12/10/2023 1:27:50 PM

10 row pl

12/10/2023 1:27:41 PM

School bus manager

12/10/2023 1:27:22 PM

Only

12/10/2023 1:27:19 PM

1 person

12/10/2023 1:27:16 PM

I send you the paperwork

12/8/2023 11:57:37 AM

Hi Jacob the owner just call back said find different tenants.

12/8/2023 10:00:14 AM

Any update

12/8/2023 10:00:11 AM

Good morning

12/7/2023 9:57:27 PM

Moving date December 15

12/7/2023 9:57:11 PM

They look good

12/7/2023 9:57:04 PM

No smoking

12/7/2023 9:57:00 PM

No pets

12/7/2023 9:56:12 PM

Plus cash $25,000

12/7/2023 9:56:01 PM

She makes $38,000 check

12/7/2023 9:55:29 PM

Employee letter

Messages - Rental Jacob

12/7/2023 9:55:14 PM

City job

12/7/2023 9:55:08 PM

Tell the owner local 3 union

12/7/2023 9:54:28 PM



12/7/2023 9:54:06 PM



12/7/2023 9:53:46 PM



Messages - Rental Jacob

12/7/2023 9:53:46 PM



12/7/2023 9:53:46 PM



12/7/2023 9:53:46 PM



12/7/2023 9:53:46 PM



12/7/2023 9:52:31 PM





12/7/2023 9:52:18 PM



jocelyn lependorf experian .pdf

And also email you other stuff

12/7/2023 9:30:15 PM

12/7/2023 9:30:14 PM

12/7/2023 9:30:14 PM



12/7/2023 9:30:14 PM



12/7/2023 9:30:14 PM



12/7/2023 4:52:15 PM

581 west caswell ave

12/7/2023 4:52:02 PM

Which house?

Messages - Rental Jacob

12/7/2023 3:59:57 PM



12/7/2023 3:59:57 PM



11/30/2023 10:55:20 AM

Call me

11/29/2023 11:00:11 AM

Any new listings

11/29/2023 11:00:11 AM

Hi

11/28/2023 8:18:00 PM

Dec 1

11/28/2023 7:16:00 PM

When he move in

11/28/2023 5:58:00 PM

Let me ask owner

11/28/2023 5:57:06 PM

Confirmed

11/28/2023 5:56:56 PM

Thursday 7 pm

Messages - Rental Jacob

11/28/2023 4:13:27 PM

I still waiting owner call me

11/28/2023 3:49:38 PM

Call me

11/28/2023 3:49:36 PM

Hi

11/27/2023 10:09:46 PM

Ok

11/27/2023 10:04:29 PM

Let the owner see the document paper and I will let you know.

11/27/2023 10:02:48 PM

Let me know

11/27/2023 10:02:46 PM

To sign the lease

11/27/2023 10:02:41 PM

My client is available Wednesday 8 pm

11/27/2023 10:02:21 PM

Send over to owner now

11/27/2023 10:02:08 PM

Yes 👍

11/27/2023 10:01:27 PM

You got it

11/27/2023 9:53:11 PM

Can you send me credit report

11/27/2023 9:49:51 PM

Personal income $15,130
Business income $48,150

11/27/2023 9:22:54 PM



FILE_0514.pdf

11/27/2023 8:34:30 PM

Also he own car dealer

Messages - Rental Jacob

11/27/2023 8:34:20 PM



11/27/2023 8:32:59 PM



11/27/2023 8:30:04 PM

Can I call you later?

11/27/2023 8:29:43 PM

He is good

11/27/2023 8:29:33 PM



11/27/2023 8:25:57 PM

8409 18 ave his pizzeria

Messages - Rental Jacob

11/27/2023 8:22:25 PM

10 row pl

11/27/2023 8:22:19 PM

He own pizzeria

11/27/2023 8:22:02 PM

$96,000 income

11/27/2023 8:22:02 PM

1 person

11/27/2023 8:22:02 PM



11/27/2023 1:27:12 PM

Ok

11/27/2023 9:29:03 AM

581 west Caswell

11/27/2023 9:28:54 AM

I'm showing today 10:30 am

11/27/2023 9:28:43 AM

Hi

11/15/2023 12:35:06 PM

Single person

11/15/2023 12:34:54 PM

$1600

11/15/2023 12:34:52 PM

Is the price negotiable

11/15/2023 12:34:48 PM

Row pl

Messages - Rental Jacob

11/15/2023 12:34:43 PM

👍

11/15/2023 12:34:37 PM

Give you updates

11/15/2023 12:34:31 PM

I'm still showing west Caswell

11/15/2023 12:34:12 PM

Hi

11/11/2023 5:26:46 PM

Call me

11/11/2023 5:26:32 PM

Hi

11/11/2023 12:48:42 PM

Give me a call when you available

11/10/2023 8:30:43 AM

Okay

11/10/2023 8:29:44 AM

Can I call you later?

11/9/2023 9:18:06 PM

Hi

11/9/2023 6:51:07 PM

Can I call you later?

11/9/2023 6:29:34 PM


FILE_2727.pdf

11/9/2023 6:28:43 PM

Good people

Messages - Rental Jacob

11/9/2023 6:28:39 PM



11/9/2023 6:28:22 PM



FILE_8719.pdf

11/9/2023 6:28:03 PM



FILE_1659.pdf

11/9/2023 6:27:38 PM



FILE_9070.pdf

11/9/2023 6:27:25 PM



FILE_9749.pdf

Messages - Rental Jacob

11/9/2023 6:26:49 PM



11/9/2023 6:26:49 PM



11/9/2023 6:26:49 PM



11/9/2023 6:26:45 PM

Yes

11/9/2023 6:26:39 PM

So 4adults

Messages - Rental Jacob

11/9/2023 6:26:35 PM



11/9/2023 6:26:35 PM



11/9/2023 6:26:35 PM



11/9/2023 6:26:18 PM

Ok

11/9/2023 6:26:12 PM

23 and 25

11/9/2023 6:25:57 PM

Have kid

Remax - 113

Messages - Rental Jacob

11/9/2023 6:25:19 PM

4 people

11/9/2023 6:24:44 PM

For caswell

11/9/2023 6:24:38 PM

Good

11/9/2023 6:24:37 PM

I have Mexico people

11/9/2023 6:24:27 PM

Hi

11/8/2023 8:11:53 AM

Ok

11/8/2023 8:11:49 AM

Yes

11/8/2023 8:11:06 AM

Is available

11/8/2023 8:11:03 AM

10 row pl

11/8/2023 8:10:57 AM

Good morning

11/5/2023 4:00:09 PM

Very small words

11/5/2023 3:59:51 PM

Text me ur email

11/5/2023 3:59:33 PM

Can't see you email me

11/5/2023 3:45:06 PM



Messages - Rental Jacob

11/5/2023 3:45:06 PM



11/5/2023 3:43:27 PM

2 people

11/5/2023 3:42:32 PM

How many people?

11/5/2023 3:42:10 PM

Ok

11/5/2023 3:42:04 PM

No pets

11/5/2023 3:42:01 PM

No kids

11/5/2023 3:41:56 PM

They have kids?

11/5/2023 3:41:38 PM

581

11/5/2023 3:41:30 PM

Which apartment?

11/5/2023 3:38:10 PM

I will send you the paperwork tonight

11/5/2023 3:37:57 PM

I have family like the apartment

11/4/2023 9:48:57 AM

Okay

11/3/2023 7:18:01 PM

581 west caswell Ave
Lockbox# 1688

Messages - Rental Jacob

10/31/2023 1:43:51 PM

Row pl still available

10/29/2023 9:13:13 AM

You got the keys

10/29/2023 9:12:59 AM

Good morning

10/26/2023 2:14:22 PM

Ok

10/26/2023 2:11:01 PM

The owner will call me tonight

10/26/2023 2:10:10 PM

When will u get there

10/26/2023 2:09:55 PM

I still didn't get the key yet because owner cancel the schedule yesterday. He will call me tonight

10/26/2023 2:07:07 PM

When can I get the key

10/22/2023 11:01:50 AM

Call me

10/22/2023 10:47:27 AM

I have single guy

10/22/2023 10:37:13 AM

Good morning you call me last night

10/17/2023 2:17:50 PM

Ok

10/17/2023 2:17:47 PM

Staten Island

10/17/2023 2:17:36 PM

Staten Island or Brooklyn

10/17/2023 2:17:24 PM

Ok

10/17/2023 2:17:05 PM

379 Woodrow rd

10/17/2023 2:12:03 PM

Hey Jacob last Friday you said send me tenant paper

Remax - 116

Messages - Rental Jacob

10/13/2023 11:26:10 AM

Ok send me all the paper work then I talk to owner

10/13/2023 11:25:08 AM

1700

10/13/2023 11:18:42 AM

Ok send over payroll or income paper and credit report. How much rent you told her

10/13/2023 11:16:15 AM

Income $65,000

10/13/2023 11:13:59 AM

Small beagle is ok

10/13/2023 11:13:12 AM

She's accounting

10/13/2023 11:13:01 AM

Female

10/13/2023 11:12:58 AM

1 person

10/13/2023 11:12:38 AM

Beagle

10/13/2023 11:12:13 AM

What kind pet?

10/13/2023 11:11:18 AM

Small pet ok

10/13/2023 11:11:11 AM

Hi

10/2/2023 6:46:30 PM

Is the price negotiable

10/2/2023 6:46:18 PM

K

10/2/2023 6:46:05 PM

The owner said find different tenants

Messages - Rental Jacob

10/1/2023 9:36:50 PM



9/29/2023 6:32:51 PM

Ok

9/29/2023 5:06:07 PM

The owner said find different tenants

9/29/2023 8:04:14 AM

I also emailed you

9/29/2023 8:04:14 AM



9/29/2023 8:04:14 AM



Messages - Rental Jacob

9/29/2023 8:04:06 AM



9/29/2023 8:04:06 AM



9/29/2023 8:03:48 AM



Messages - Rental Jacob

9/29/2023 8:03:48 AM



9/29/2023 8:01:52 AM



9/29/2023 8:00:45 AM

The brother will be the co-signer

9/29/2023 8:00:26 AM

I send you the paperwork

9/29/2023 8:00:22 AM

Good morning

9/28/2023 10:01:04 PM



Messages - Rental Jacob

9/28/2023 10:01:02 PM



9/28/2023 8:06:03 PM

I got the deposit $500

9/28/2023 7:46:10 PM

Ok

9/28/2023 7:46:07 PM

Code 1688

9/28/2023 7:46:02 PM

You forgot again

9/28/2023 7:45:08 PM

I'm here

9/28/2023 7:45:06 PM

Lock box

9/28/2023 7:45:01 PM

What's the password

9/27/2023 10:29:18 AM

Okay

9/27/2023 10:23:25 AM

The owner pay cooking gas, hot water and heat and tenant pay only electric

9/27/2023 10:21:10 AM

Ok

9/27/2023 10:21:02 AM

The owner want $1800

9/27/2023 10:20:35 AM

Row pl can we get lower $1700

Remax - 121

Messages - Rental Jacob

9/27/2023 10:20:17 AM

Good morning

9/26/2023 12:51:13 PM

He's expecting their call mention Alla from Exclusive Properties

9/26/2023 12:47:59 PM

Landlord Tenant Issues.vcf

9/26/2023 12:03:40 PM

Ok

9/26/2023 12:02:27 PM

I'm here

9/26/2023 11:50:06 AM

10 row pl Staten Island ny

9/25/2023 9:16:40 PM

Ok 👍

9/25/2023 9:16:33 PM

👍

9/25/2023 9:15:19 PM

You got the lease

9/25/2023 5:52:43 PM

Please give me a call

9/25/2023 10:52:01 AM

Can you email me Lease for 58 Eagan  Ave because the owner text me again.

9/24/2023 12:40:56 PM

Ok 👍

9/24/2023 12:20:38 PM

The owner confirmed Tuesday 12pm and can you email me lease the owner want to see.

9/23/2023 8:29:57 PM

12 pm Tuesday confirmed

9/23/2023 8:23:08 PM

Any update

9/22/2023 4:57:35 PM

Call me please

Remax - 122

Messages - Rental Jacob

9/22/2023 10:46:06 AM



9/22/2023 10:46:06 AM



9/22/2023 10:46:06 AM



9/22/2023 10:44:03 AM

Can I call you later?

Messages - Rental Jacob

9/22/2023 10:43:04 AM



9/22/2023 10:42:25 AM



9/22/2023 10:42:25 AM



Messages - Rental Jacob

9/22/2023 10:42:25 AM



9/22/2023 10:39:54 AM



9/22/2023 10:39:54 AM



Messages - Rental Jacob

9/22/2023 10:39:54 AM



9/22/2023 10:39:54 AM



9/22/2023 10:39:54 AM



Messages - Rental Jacob

9/22/2023 10:34:28 AM



9/22/2023 10:34:28 AM



9/22/2023 10:34:28 AM



9/22/2023 10:10:30 AM

Plumbing and electrical

9/22/2023 10:10:17 AM

Maintenance worker

9/22/2023 10:09:33 AM

Ok Thanks

Messages - Rental Jacob

9/22/2023 10:09:08 AM

Let me ask

9/22/2023 10:08:50 AM

The owner ask what kind job city worker for husband and what kind job wife

9/22/2023 10:03:42 AM



9/22/2023 10:03:42 AM



9/22/2023 9:51:58 AM

Ok 

9/22/2023 9:50:52 AM

Can I call you later?

Messages - Rental Jacob

9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



Messages - Rental Jacob

9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



Messages - Rental Jacob

9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



Messages - Rental Jacob

9/22/2023 9:42:28 AM



9/22/2023 9:42:28 AM



9/15/2023 11:16:05 AM

Call me

9/13/2023 3:39:33 PM

Ok

9/13/2023 3:31:00 PM

Lol

9/13/2023 3:30:59 PM

I text met wife

9/13/2023 3:30:56 PM

Sorry wrong text

9/13/2023 3:30:05 PM

Side entrance

9/13/2023 3:30:00 PM

1688

9/12/2023 12:37:39 PM

K

Messages - Rental Jacob

9/12/2023 12:37:33 PM

58 Eagan Ave Staten Island ny
Rent $1700 tenant pay gas and electric.    Lock box on side door #1688

9/12/2023 12:35:33 PM

$1700

9/12/2023 12:35:27 PM

58 Eagan ave

9/12/2023 12:35:07 PM

58 Eagar ave

9/11/2023 10:18:59 AM

Ok

9/11/2023 10:09:11 AM

132 Camden Ave

9/11/2023 10:09:06 AM

I'm showing today

9/5/2023 9:14:10 PM

I don't understand

9/5/2023 9:13:40 PM

The owner just call only female tenant.

9/5/2023 8:11:06 PM

Let me know 11 am Sunday ?

9/5/2023 8:06:28 PM

Ok

9/5/2023 7:55:16 PM

Also ask the owner if he is available Sunday for lease signing

9/5/2023 7:51:15 PM

Ok

9/5/2023 7:51:10 PM

Later I send to owner

9/5/2023 7:51:00 PM

Ok

9/5/2023 7:50:55 PM

Driving now

9/5/2023 7:49:09 PM

You got it

Remax - 133

Messages - Rental Jacob

9/5/2023 7:07:30 PM

I send you the paperwork

9/5/2023 1:57:55 PM

Ok

9/5/2023 1:38:27 PM

I will send you the paperwork shortly

9/3/2023 3:46:38 PM

Ok

9/3/2023 3:46:33 PM

Tonight he will send me

9/3/2023 3:46:03 PM

Can you send me his boyfriend income paper or paystubs.

9/3/2023 3:21:39 PM

He works for union carpenter

9/3/2023 3:21:28 PM

He will be the co-signer

9/3/2023 3:21:19 PM



9/3/2023 3:21:19 PM



Messages - Rental Jacob

9/3/2023 3:21:07 PM

?

9/3/2023 3:16:08 PM

You got the credit report

9/3/2023 10:38:26 AM

For camden ave

9/3/2023 10:38:19 AM

I got the deposit $500

9/3/2023 10:38:14 AM

Call me

8/31/2023 11:37:36 AM

Still showing today

8/31/2023 11:37:19 AM

Hi Jacob any update for 132 Camden Ave

8/25/2023 10:08:47 AM

Call me please

8/22/2023 11:35:58 AM



8/22/2023 11:35:49 AM

Liked "1 pm Confirmed Friday"

8/22/2023 11:21:11 AM

1 pm
Confirmed Friday

8/22/2023 11:11:25 AM

I also got deposit $500

8/22/2023 11:07:39 AM

For lease

8/22/2023 11:07:36 AM

Friday 2 pm confirmed

8/22/2023 11:05:33 AM

She works for EMT

8/22/2023 11:05:05 AM

1 person only

Remax - 135

Messages - Rental Jacob

8/22/2023 11:04:03 AM

You got it

8/22/2023 11:04:01 AM

I send you the paperwork

8/21/2023 9:37:48 AM

Single guy

8/21/2023 9:37:45 AM

1 person

8/21/2023 9:36:50 AM

One person?

8/21/2023 9:36:05 AM

What kind tenant?

8/21/2023 9:35:39 AM

Ok

8/21/2023 9:35:33 AM

The owner lower price is $1300.

8/21/2023 9:34:15 AM

What u think

8/21/2023 9:34:11 AM

??

8/21/2023 9:34:10 AM

$1250

8/21/2023 9:34:07 AM

Camden ave

8/20/2023 7:51:05 PM

Ok

8/20/2023 7:50:53 PM

Call u back

8/10/2023 8:51:57 PM

1688 password

8/10/2023 8:49:51 PM

Yes

8/10/2023 8:49:48 PM

Code

Messages - Rental Jacob

8/10/2023 8:49:45 PM

What's the corn

8/8/2023 4:03:32 PM

Ok

8/8/2023 4:03:30 PM

$1300

8/8/2023 4:02:21 PM

The owner said lower price $1300

8/8/2023 4:02:10 PM

Call u few min

8/8/2023 3:47:26 PM

Ok

8/8/2023 3:44:35 PM

Let talk to owner

8/8/2023 3:43:59 PM

They say too much

8/8/2023 3:43:54 PM

I showed few clients

8/8/2023 3:43:46 PM

Is. The price negotiable

8/8/2023 3:43:38 PM

Hi

8/2/2023 10:37:47 AM

Yes

8/2/2023 10:32:09 AM

Lock box 1688

8/2/2023 8:43:34 AM

Ok

8/2/2023 8:43:18 AM

I will be there 10:15am

8/2/2023 8:42:30 AM

Seee u 10:30 am

8/1/2023 4:17:12 PM

Yes

Remax - 137

Messages - Rental Jacob

8/1/2023 4:16:36 PM

That bs guy alway have excuses.

8/1/2023 4:07:45 PM



8/1/2023 4:02:31 PM

Liked "Ok"

8/1/2023 4:02:15 PM

Ok

8/1/2023 3:59:54 PM

132 Camden Ave Staten Island NY 10309. See you tomorrow 10:15 am And I call 581 caswell Ave 2nd floor no answer he told you Monday or Tuesday pay right. I think he want you to call him.

7/27/2023 6:37:16 PM

Thank you

7/27/2023 6:36:35 PM

Ok

7/27/2023 6:34:04 PM

Every two or three day text me said I will paid but never pay.

7/27/2023 6:24:33 PM



Messages - Rental Jacob

7/27/2023 3:52:33 PM

Any new listings

7/5/2023 10:21:36 AM

Okay

7/5/2023 10:20:14 AM

They just closing wait next two week.

7/5/2023 8:20:20 AM

Any new listings

7/5/2023 8:20:17 AM

Good morning

6/9/2023 11:30:27 AM

Okay

6/9/2023 11:30:20 AM

Nothing right now
Maybe one closing at the end of month. If I have new listing I will call you

6/9/2023 9:59:18 AM

Any new listings

6/9/2023 9:59:13 AM

Hi

6/5/2023 3:48:02 PM

Thank you

6/5/2023 3:41:06 PM

Can you please call them

6/5/2023 3:38:17 PM



5/31/2023 1:01:15 PM

Very slow

Messages - Rental Jacob

5/31/2023 1:00:49 PM

Ok

5/31/2023 12:58:52 PM

Nothing sit at home take rest.

5/31/2023 10:32:13 AM

Any new listings

5/30/2023 3:25:35 PM

March $700, April $2600 May $2600 Total $5900

5/30/2023 3:00:18 PM

Hey I call you no answer

5/30/2023 2:50:59 PM

Call me is very important

5/27/2023 10:04:08 PM

Ok Thank you 🙏

5/27/2023 10:02:42 PM

I will call him tomorrow

5/27/2023 10:02:35 PM

That's crazy

5/26/2023 2:21:10 PM

He text back said wait to Sunday pay cash

5/26/2023 11:52:41 AM

Hi Jacob
Can you text 2nd floor can we pick up  $5900 today 4:30pm because I text him no response

5/24/2023 3:54:53 PM

Ok

5/24/2023 3:54:07 PM



Messages - Rental Jacob

5/24/2023 3:44:41 PM

Play game with us.

5/24/2023 3:37:45 PM

Now

5/24/2023 3:37:43 PM

He saying Friday

5/24/2023 3:37:36 PM



5/24/2023 3:30:20 PM

Good properties

5/24/2023 3:30:04 PM

Also has another property

5/24/2023 3:29:53 PM

And studio down stair

5/24/2023 3:29:42 PM

3 bedrooms upstairs

5/24/2023 3:29:25 PM

What is 2nd floor said?

5/24/2023 3:28:59 PM

Ok

5/24/2023 3:28:52 PM

Open house Sunday 2 pm till 4 pm

Messages - Rental Jacob

5/24/2023 3:28:15 PM

Prop Type: Residential
Sub Type: Single Family
Status: Active
Borough: Brooklyn
Neighborhood: Marine Park
Address: 2080 Brown St
City/State/Zip: Brooklyn, New York 11229
List Price: $1,500,000
Cross St 1: Avenue T
Cross St 2: Avenue U
General
click to collapse contents
Bldg Type: Semi-Detached
Style: Duplex - Side/Side
Beds: 3
Baths Full: 2
Baths Half: 1
Baths 3/4: 0
Tot Rms: 6
# Fam: 1
Stories: 2
Bldg Size: 22 x 34
Sqft: 1,600
Lot Size: 14 x 100
Lot Sqft: 1,492
Zoning: R4
Year Blt: 1940
Tax Yr$: 6,605.00

5/24/2023 3:27:49 PM

So I can send over to buyers

5/24/2023 3:27:33 PM

Send me properties information and what is price?

5/24/2023 3:08:09 PM

2 properties

5/24/2023 3:06:15 PM



Messages - Rental Jacob

5/24/2023 3:06:15 PM



5/24/2023 3:06:15 PM



5/24/2023 3:05:49 PM



5/24/2023 3:05:19 PM

You have buyer

5/24/2023 3:05:05 PM

2080 brown st

5/24/2023 3:05:00 PM

New listing

Messages - Rental Jacob

5/24/2023 10:53:01 AM

Ok

5/24/2023 10:50:47 AM

Hi Jacob can you check 2nd floor pay $5900 tonight 8pm if yes and I will tell my wife meet you over there because I still in Minnesota and I will be back nyc tomorrow early morning.

5/22/2023 5:04:08 PM

Ok

5/22/2023 5:04:03 PM

Every day he said sure I pay you tomorrow

5/22/2023 5:03:54 PM

I will come with you together

5/22/2023 5:03:45 PM

8 pm

5/22/2023 5:03:43 PM

Wednesday

5/22/2023 5:02:30 PM



5/22/2023 5:01:52 PM



Messages - Rental Jacob

5/22/2023 5:01:12 PM

Okay

5/22/2023 5:00:59 PM

Can you tell him pay balance $5900 one time

5/22/2023 4:59:06 PM

I text him

5/22/2023 4:48:46 PM

Last Thursday he told me pick up today

5/22/2023 4:48:07 PM

March $700 April $2600, May $2600 Total owe $5900

5/22/2023 4:46:16 PM

Questioned an image

5/22/2023 4:45:03 PM



5/22/2023 4:44:37 PM

I call him so many time no answer and best way find him new house also the lease end 7/14/2023

5/22/2023 4:42:22 PM

Everyday said I pay you tomorrow day after day.

5/22/2023 4:41:31 PM

That stupid guy

5/22/2023 4:41:23 PM

Let me call him

5/22/2023 4:41:00 PM

If I have new listing I already call you and too much headache with 2nd floor 3 months not pay and owner call me so many times.

5/22/2023 4:11:58 PM

New listing

Messages - Rental Jacob

5/19/2023 11:15:09 AM

Very slow

5/19/2023 11:14:19 AM

What happen

5/19/2023 11:14:13 AM

Nothing

5/19/2023 10:16:14 AM

Any new listings

5/8/2023 4:03:42 PM

March still owe $700
April still owe $2600
May 15 come up $2600
Give me a call when You have time

5/8/2023 3:59:46 PM

Hello, I'm sorry I missed your call. Please text me and I will reply shortly. Thanks

5/8/2023 3:44:56 PM



5/8/2023 12:52:05 PM

Crazy

5/8/2023 12:52:02 PM

It's creamy

5/8/2023 12:51:59 PM

Yes

5/8/2023 12:51:43 PM

That fucking guy really like a babysitter

5/8/2023 12:50:00 PM

Let me try him again

Messages - Rental Jacob

5/8/2023 12:49:54 PM

I left him messages

5/8/2023 12:49:40 PM

You call 2nd floor what he said?
This morning I call and text no response.

5/8/2023 9:03:24 AM

I will call him 10am

5/8/2023 9:02:59 AM

Good morning
Nothing if I have something I already call you. The 2nd floor call you back yet? I call him fews time no answer

5/8/2023 8:51:03 AM

Anything new

5/8/2023 8:51:00 AM

Good morning

5/5/2023 12:44:16 PM

Ok 🙏

5/5/2023 12:43:49 PM

To the bathroom

5/5/2023 12:43:37 PM

And I spoke to him don't throw paper towels

5/5/2023 12:43:17 PM

They will fix the glass over the weeken

5/5/2023 12:40:02 PM

Ok

5/5/2023 12:39:40 PM

Little

5/5/2023 12:39:37 PM

They understand

5/5/2023 12:39:20 PM

Those people didn't speak English

5/5/2023 12:38:55 PM

Got it

Messages - Rental Jacob

5/5/2023 12:37:55 PM



5/4/2023 2:20:56 PM

2nd floor.   917-215-9170

5/2/2023 4:49:44 PM

Left message

5/2/2023 4:46:55 PM

No
You call 2nd floor?

5/2/2023 4:34:14 PM

Any new listings

4/29/2023 8:39:28 PM

Ok I will call him tomorrow morning

4/29/2023 12:56:33 PM

Good morning
2nd floor two week ago he said today pay $8500. But today he only pay $2600 and he told me different story those people didn't pay him back. He said Next week Tuesday he will pay more. Also his lease expire on 7/14/2023 what can we do?

4/28/2023 4:34:25 PM

Ok

4/28/2023 4:34:14 PM

Let me try

4/28/2023 4:34:08 PM

I call him no answer

4/28/2023 4:33:30 PM

Let me call him again

4/28/2023 4:33:03 PM

I text 2nd floor but no response
He text you back

Messages - Rental Jacob

4/28/2023 11:34:36 AM

Thank you

4/28/2023 11:34:28 AM

Ok

4/28/2023 11:33:38 AM

I just text him too

4/28/2023 11:32:50 AM

Hi Jacob remind you can you text 2nd floor I will pick up rent tomorrow at 10:00am his house.

4/26/2023 3:22:57 PM

Lol

4/26/2023 3:20:39 PM

Everybody very this year
Maybe I have to find some part time job 😂😂

4/26/2023 3:19:06 PM

She said slow

4/26/2023 3:18:31 PM

You text Eva?
Maybe she have some new listing

4/26/2023 3:16:31 PM

Remax edge #1 agent we chat last night she told me very very slow this year too.

4/26/2023 3:13:58 PM

I try before

4/26/2023 3:13:11 PM

Try

4/26/2023 3:13:07 PM

Nah

4/26/2023 3:12:45 PM

Lot of these are fake

4/26/2023 3:12:40 PM

But they speak Chinese

4/26/2023 3:12:33 PM

They have lots of rentals

4/26/2023 3:12:25 PM

Zing cha

Remax - 149

Messages - Rental Jacob

4/26/2023 3:12:19 PM

Buy Chinese magizin

4/26/2023 3:11:36 PM

This year very slow compare last year

4/26/2023 3:10:33 PM

😂

4/26/2023 3:09:56 PM

Nothing

4/26/2023 2:58:48 PM

Any new listings

4/24/2023 11:36:01 AM

Ok

4/24/2023 11:35:56 AM

No
I wish I have more new listing.
If I have new rental listing I alway give to you

4/24/2023 10:01:34 AM

Good morning any. New listing

4/23/2023 7:50:04 PM

K

4/23/2023 7:49:54 PM

10min

4/23/2023 7:49:40 PM

I'm here

4/23/2023 12:20:47 PM

K

4/23/2023 12:20:34 PM

See you 8pm

4/23/2023 12:20:29 PM

Yes

4/23/2023 10:23:09 AM

Are we confirmed

4/23/2023 10:21:26 AM

Ok I send over to owner

Remax - 150

Messages - Rental Jacob

4/23/2023 10:19:55 AM

Her paystubs

4/23/2023 10:19:22 AM



4/23/2023 10:19:22 AM



4/23/2023 10:19:22 AM



Messages - Rental Jacob

4/23/2023 10:19:22 AM



4/23/2023 9:09:31 AM



4/23/2023 9:09:31 AM



Messages - Rental Jacob

4/23/2023 9:09:31 AM



4/23/2023 9:08:44 AM

You got it

4/23/2023 9:08:41 AM

Her direct deposit

4/23/2023 9:08:30 AM



4/23/2023 9:08:30 AM



Messages - Rental Jacob

4/23/2023 9:08:30 AM



4/23/2023 9:04:15 AM

Direct deposit

4/23/2023 9:04:05 AM

Check ur email

4/23/2023 9:03:58 AM

I send you her husband paystubs

4/23/2023 8:31:47 AM

Confirmed 8 pm today

4/23/2023 8:31:39 AM

She will send me direct deposit later she said

4/22/2023 10:28:51 PM

K

4/22/2023 10:28:43 PM

Thanks

4/22/2023 10:28:28 PM

K

4/22/2023 10:28:08 PM

Yes and waiting tenant wife payroll

4/22/2023 10:25:57 PM

You got it

4/22/2023 10:25:54 PM

I send you the credit report

4/22/2023 9:34:45 PM

Ok let tell the owner

Remax - 154

Messages - Rental Jacob

4/22/2023 9:29:52 PM

8 pm confirmed tomorrow 👍

4/22/2023 8:44:41 PM

Can I call you later?

4/22/2023 8:39:35 PM

You got it

4/22/2023 8:39:30 PM

I just send it

4/22/2023 3:01:41 PM

You have paper work yet

4/21/2023 5:11:02 PM

Ok 👍

4/21/2023 5:10:50 PM

I will shortly

4/21/2023 5:10:33 PM

Can you send me paper work then I can ask owner at same time.

4/21/2023 5:04:55 PM

May 1

4/21/2023 5:04:51 PM

Thay are available

4/21/2023 5:04:36 PM

Can we sign the lease Sunday 8 pm

4/21/2023 5:02:30 PM

Ok

4/21/2023 4:46:14 PM

I will send you the paperwork shortly

4/21/2023 4:45:56 PM

Nurse and truck driver

4/21/2023 4:45:47 PM

Russian family

4/21/2023 4:45:42 PM

Very good client

4/21/2023 4:45:36 PM

I took a deposit $500

Messages - Rental Jacob

4/21/2023 2:06:57 PM

4

4/21/2023 2:06:46 PM

How many people?

4/21/2023 2:04:25 PM

He works for sanitation

4/21/2023 2:04:04 PM

Sunday 6 pm

4/21/2023 2:03:55 PM

He will come with his wife

4/21/2023 2:03:44 PM

My client like the house

4/21/2023 2:03:37 PM

Hi

4/18/2023 10:49:44 AM

K

4/18/2023 10:49:38 AM

10 min

4/18/2023 10:49:08 AM

I'm here

4/17/2023 6:53:03 PM

Add on lease
1. Tenants are responsible for snow cleaning around their property.
2. Electric include but $250 above tenant paying different & Gas include but $250 above tenant paying different.
3. Total 3 people in that unit

Can you prepare co sign agreement paper and lease for tomorrow print. One month broker fee, rent , security and April 13 days rent too.

I am not home tonight you print the paper.

4/17/2023 3:37:18 PM

Ok

4/17/2023 3:34:36 PM

Confirmed tomorrow 11 am

4/17/2023 1:22:19 PM

Ok

4/17/2023 1:18:24 PM

Ok I check later I still outside

Remax - 156

Messages - Rental Jacob

4/17/2023 12:52:58 PM

I send you the lease

4/17/2023 12:13:31 PM

Code# 8585

4/17/2023 12:13:17 PM

$3200

4/17/2023 12:12:46 PM

1133 Olympia Blvd
Staten Island, NY  10306

4/16/2023 12:21:03 PM

K

4/16/2023 12:19:38 PM

Ok I am driving now

4/16/2023 12:16:48 PM

You got it

4/16/2023 12:16:45 PM

I send you income business and personal

4/16/2023 12:16:16 PM

*Attachment not found:
FILE_4566.pdf (Attachment)*

4/16/2023 12:15:35 PM

*Attachment not found:
FILE_6843.pdf (Attachment)*

4/16/2023 12:06:38 PM

NP

4/16/2023 12:06:24 PM

I will send you his income

4/16/2023 12:05:52 PM

Also that income tax is 2020 so wait his personal income

4/16/2023 11:52:03 AM

I told you that

4/16/2023 11:51:47 AM

It's the father

4/16/2023 11:51:38 AM

The ID last name not match income paper last name

Remax - 157

Messages - Rental Jacob

4/16/2023 11:50:47 AM

Attachment not found: IMG_4882.jpg (Image)

4/16/2023 10:34:11 AM

Attachment not found: IMG_2441.heic (Image)

4/16/2023 10:33:18 AM

Attachment not found: IMG_6927.heic (Image)

4/16/2023 10:33:15 AM

Attachment not found: FILE_5471.pdf (Attachment)

4/16/2023 10:20:44 AM

I'm here

4/14/2023 6:15:56 PM

They like it

4/14/2023 6:15:53 PM

They coming again

4/14/2023 6:15:31 PM

10:30 am

4/14/2023 6:15:28 PM

432 eltingville blvd

4/14/2023 6:15:23 PM

Sunday

4/11/2023 1:34:24 PM

Ok

4/11/2023 1:33:56 PM

Cleint cancel 7 pm

4/10/2023 7:26:40 PM

Ok

4/10/2023 7:26:37 PM

I come

4/10/2023 7:26:26 PM

Come up

4/10/2023 7:26:11 PM

I just got here few mins pick up kids

Messages - Rental Jacob

4/10/2023 7:22:49 PM

I'm here

4/10/2023 4:44:06 PM

I'll check

4/10/2023 4:43:50 PM

He alway said not in New York and I really sick with that guy

4/10/2023 4:42:08 PM

I'll come to his house 🏡

4/10/2023 4:38:45 PM

I text him too no respond

4/10/2023 4:37:25 PM

Noting yet

4/10/2023 4:26:50 PM

The 581 w caswell Ave 2nd floor call you back yet

4/10/2023 1:34:05 PM

Ok

4/10/2023 1:33:47 PM

Give me a call

4/10/2023 1:33:26 PM

Hello, I'm sorry I missed your call. Please text me and I will reply shortly. Thanks

4/10/2023 12:03:19 PM

Not yet

4/10/2023 11:23:45 AM

You finished showing

4/10/2023 11:22:14 AM

You find showing

4/9/2023 9:40:10 PM

Ok

4/9/2023 9:32:38 PM

Yes

4/9/2023 9:31:49 PM

Still available

4/9/2023 9:31:45 PM

11 am

Remax - 159

Messages - Rental Jacob

4/9/2023 9:31:43 PM

432 eltingville blvd

4/9/2023 9:31:37 PM

I'm showing tomorrow

4/3/2023 12:08:39 PM

Ok

4/3/2023 12:08:03 PM

Will find someone else

4/3/2023 12:07:49 PM

Because they want to meet wife also

4/3/2023 12:07:31 PM

They said

4/3/2023 12:07:27 PM

They don't fell comfortable

4/3/2023 12:06:53 PM

Why?

4/3/2023 12:04:05 PM

Today

4/3/2023 12:04:00 PM

7 pm cancel

4/3/2023 10:01:19 AM

Can u call me

4/3/2023 10:01:14 AM

Good morning

4/3/2023 6:56:12 AM

It's  crazy

4/2/2023 11:03:45 PM

The 2nd floor just text me he said maybe can pay cash Tuesday. I think he just play game with us.

4/2/2023 6:04:45 PM

Okay

4/2/2023 5:58:28 PM

I see you Tomorrow 7pm

4/2/2023 5:47:11 PM

Ok

Messages - Rental Jacob

4/2/2023 5:46:42 PM

Nice family

4/2/2023 5:46:38 PM

Italian

4/2/2023 5:46:31 PM

White

4/2/2023 5:46:26 PM

What kind people?

4/2/2023 5:46:25 PM

Kids go to school

4/2/2023 5:45:08 PM

Good job

4/2/2023 5:45:01 PM

Good client 👍

4/2/2023 5:44:48 PM

$3,000

4/2/2023 5:44:38 PM

How much rent

4/2/2023 5:33:25 PM

Call me

4/2/2023 4:26:20 PM

Attachment not found: IMG_4759.PNG (Image)

4/2/2023 3:36:25 PM

Call me

4/2/2023 12:19:10 PM

Not yet

4/2/2023 12:14:58 PM

Hi Jacob the 581 west caswell 2nd floor call you yet

4/1/2023 8:06:45 PM

How are you

4/1/2023 8:06:42 PM

Hi

4/1/2023 10:33:53 AM

Good morning Jacob
When you available please give me call

Remax - 161

3/31/2023 10:41:57 PM

Attachment not found: IMG_4795.JPG (Image)

3/31/2023 2:04:39 PM

Attachment not found: IMG_4785.PNG (Image)

3/30/2023 9:37:09 PM

Attachment not found: IMG_4759.PNG (Image)

3/30/2023 5:47:20 PM

Attachment not found: IMG_4757.PNG (Image)

3/30/2023 2:36:02 PM

Ok

3/30/2023 2:35:49 PM

The owner deposited Monday 8:00pm.

3/30/2023 2:31:38 PM

Attachment not found: IMG_1480.jpeg (Image)

K

3/28/2023 4:20:22 PM

3/28/2023 3:59:51 PM

The owner Said 30lb dog too big and small pet is ok

3/19/2023 7:02:48 PM

432 Eltingville Ave rent $3,000 one or two kids is ok

3/19/2023 7:01:17 PM

Attachment not found: IMG_1239.jpeg (Image)

3/19/2023 5:26:07 PM

Now

3/19/2023 5:26:06 PM

I will call him

3/19/2023 5:23:38 PM

Now he text me back said tomorrow. Everyday day after day

3/19/2023 4:02:26 PM

Ok

Messages - Rental Jacob

3/19/2023 3:56:32 PM

Maybe he will pick up

3/19/2023 3:56:26 PM

Again

3/19/2023 3:56:20 PM

Call him

3/19/2023 2:47:53 PM

Not yet

3/19/2023 2:46:59 PM

I still waiting 2nd floor call me and he call you?

3/18/2023 10:27:27 PM

Ok I wait him call me tomorrow. Thank you

3/18/2023 10:22:20 PM

Attachment not found: IMG_1236.jpeg (Image)

3/18/2023 9:55:19 AM

What time you are free today so I can call you?

3/18/2023 9:52:17 AM

He text me 9:03am and I text him back 9:20am because I was take shower. Last night I pick up rent for 1 floor he was home his contractor van is outside. I think he didn't want to pay rent and can you ask you wife what to do?

3/18/2023 9:47:15 AM

Attachment not found: IMG_4710.PNG (Image)

3/18/2023 9:47:15 AM

Attachment not found: IMG_4709.PNG (Image)

3/15/2023 12:52:33 PM

👌

3/15/2023 12:49:34 PM

Call u few min

3/15/2023 12:49:12 PM

I call 2nd floor no answer and he call you

3/14/2023 5:13:24 PM

I call him no answer so I text him

Messages - Rental Jacob

3/14/2023 4:18:45 PM

Call me

3/12/2023 11:47:41 AM

👍

3/12/2023 10:54:03 AM

Today

3/12/2023 10:54:00 AM

Showing

3/12/2023 10:53:28 AM

Nothing now
How about 432 eltingville

3/12/2023 10:35:24 AM

Any new listings

3/12/2023 10:35:21 AM

Good morning

3/9/2023 10:25:21 PM

Ok 👌

3/9/2023 10:24:27 PM

Different family

3/9/2023 10:24:17 PM

Sunday

3/9/2023 10:23:38 PM

He told you Monday and told me weekend. Playing game with us two. You bring tenant for 432 Eltingville

3/9/2023 10:18:22 PM

He told me Monday

3/9/2023 9:36:19 PM

432 Eltingville?

3/9/2023 9:35:18 PM

2nd floor just text said pay on weekends. Every time said the same He text you?

3/9/2023 3:36:20 PM

I will call him now

3/9/2023 3:35:35 PM

I call him no answer

Remax - 164

Messages - Rental Jacob

3/9/2023 3:35:21 PM

Hi Jacob the 2nd floor text you back

3/8/2023 7:04:19 PM

Anything for 432 Eltingville

3/8/2023 7:01:49 PM

I know

3/8/2023 7:00:45 PM

That guy alway said I am out of city not home.

3/8/2023 6:58:02 PM

Attachment not found:
IMG_1052.jpeg (Image)

3/8/2023 6:56:25 PM



3/8/2023 6:54:34 PM

I will call him now

3/8/2023 6:53:28 PM

Hi Jacob the 2nd floor call you he said pay rent today but I call him no answer.

3/6/2023 2:15:16 PM

Let me call him

3/6/2023 2:12:53 PM

I call him no answer

3/6/2023 2:12:05 PM

February rent still not pay yet and march 15 is come up

3/6/2023 2:10:48 PM

Hi Jacob you text 2nd floor yet and can you ask him pay later fee

3/2/2023 3:30:18 PM

Hello, I'm sorry I missed your call. Please text me and I will reply shortly. Thanks

3/2/2023 11:46:04 AM

He text me

3/2/2023 11:45:58 AM

Attachment not found:
IMG_0928.jpeg (Image)

Remax - 165

Messages - Rental Jacob

3/2/2023 10:31:07 AM

Wrong text

3/2/2023 10:30:39 AM

???

3/2/2023 10:30:34 AM

And now we already march 2

3/2/2023 10:30:12 AM

When can u pay February 15 rent is due before

3/2/2023 10:27:56 AM

February rent still not pay yet

3/2/2023 10:27:44 AM

Lol

3/2/2023 10:27:43 AM

Why not

3/2/2023 10:27:21 AM

No

3/2/2023 10:26:44 AM

He will pay

3/2/2023 10:26:40 AM

He said Monday

3/2/2023 10:26:03 AM

Ok and the 581 2nd floor call you

3/2/2023 10:06:57 AM

8 pm

3/2/2023 10:06:53 AM

432 eltingville blvd

3/2/2023 10:06:47 AM

I'm showing today again

3/2/2023 10:06:42 AM

Hi

2/28/2023 2:30:34 PM

I text him waiting for answer

2/28/2023 2:30:00 PM

Attachment not found: IMG_0879.jpeg (Image)

Remax - 166

Messages - Rental Jacob

2/28/2023 2:29:38 PM

I call last Friday and sunday, Monday

2/28/2023 2:26:24 PM

Let me call again

2/28/2023 2:25:21 PM

The 581 west caswell Ave 2nd floor call you still not pay rent yet

2/28/2023 2:23:45 PM

Same people coming

2/28/2023 2:23:43 PM

Ok

2/28/2023 2:23:36 PM

Again

2/28/2023 2:23:35 PM

Showing today 8 pm

2/28/2023 2:23:19 PM

Anything on 432 Eltingville

2/22/2023 3:12:45 PM

The 2nd floor guy call you?

2/22/2023 3:12:11 PM

Anything about 432 Eltingville

2/20/2023 3:47:39 PM

Ok

2/20/2023 3:47:25 PM

I will call him now

2/20/2023 3:47:04 PM

Hi Jacob you call 581 west caswell Ave 2nd floor

2/16/2023 2:18:09 PM

Attachment not found: IMG_6261.heic (Image)

2/16/2023 2:18:09 PM

Attachment not found: IMG_6260.heic (Image)

2/16/2023 2:18:09 PM

Attachment not found: IMG_6259.heic (Image)

Remax - 167

2/16/2023 2:18:09 PM

*Attachment not found: IMG_6258.heic (Image)*

2/16/2023 2:18:09 PM

*Attachment not found: IMG_6257.heic (Image)*

2/16/2023 2:18:09 PM

*Attachment not found: IMG_6256.heic (Image)*

2/16/2023 2:18:09 PM

*Attachment not found: IMG_6255.heic (Image)*

2/16/2023 2:18:09 PM

*Attachment not found: IMG_6254.heic (Image)*

2/16/2023 2:18:09 PM

*Attachment not found: IMG_6253.heic (Image)*

2/16/2023 2:17:02 PM

Prop Type: Residential
Sub Type: Single Family
Status: Active
Borough: Brooklyn
Neighborhood: Mill Basin
Address: 2136 East 63rd St
City/State/Zip: Brooklyn, New York 11234
List Date: 11/13/2022
List Price: $1,199,000
Cross St 1: Avenue U
Cross St 2: Strickland Ave
General
click to collapse contents
Bldg Type: Detached
Style: Ranch
Beds: 4
Baths Full: 2
Baths Half: 0
Baths 3/4: 0
Tot Rms: 6
# Fam: 1
Stories: 1
Bldg Size: 27 x 37
Sqft: 1,944
Lot Size: 49 x 100
Lot Sqft: 4,950
Zoning: R2
Waterfront: No
Year Blt: 1950
Hndcap Acc: No
Tax Yr$: 8,583.00

2/16/2023 2:16:25 PM

*Attachment not found: IMG_8264.heic (Image)*

Messages - Rental Jacob

2/16/2023 2:16:25 PM

Attachment not found:
IMG_8263.heic (Image)

2/16/2023 2:16:25 PM

Attachment not found:
IMG_8266.heic (Image)

2/16/2023 2:16:25 PM

Attachment not found:
IMG_8265.heic (Image)

2/16/2023 2:16:25 PM

Attachment not found:
IMG_8267.heic (Image)

2/16/2023 2:15:33 PM

Prop Type: Residential
Sub Type: Multi-Family
Status: Active
Borough: Brooklyn
Neighborhood: Seagate
Address: 3786 Surf Ave
City/State/Zip: Brooklyn, New York 11224
List Date: 11/15/2022
List Price: $1,499,000
Cross St 1: Beach 38th St
Cross St 2: Beach 40th St
General
click to collapse contents
Bldg Type: Detached
Style: Colonial
Beds: 7
Baths Full: 4
Baths Half: 0
Baths 3/4: 0
Tot Rms: 12
# Fam: 3
Stories: 2
Bldg Size: 22 x 46
Sqft: 3,256
Lot Size: 34 x 100
Lot Sqft: 3,425
Zoning: R3-1
Waterfront: No
Year Blt: 1920
Hndcap Acc: No
Tax Yr$: 7,113.00

2/16/2023 2:15:22 PM

3786 surf ave

2/16/2023 2:14:56 PM

Attachment not found:
IMG_0494.HEIC (Image)

2/16/2023 2:14:56 PM

Attachment not found:
IMG_0493.HEIC (Image)

Messages - Rental Jacob

2/16/2023 2:14:56 PM

Attachment not found: IMG_0497.HEIC (Image)

2/16/2023 2:14:56 PM

Attachment not found: IMG_0495.HEIC (Image)

2/16/2023 2:14:56 PM

Attachment not found: IMG_0496.HEIC (Image)

2/16/2023 2:14:56 PM

Attachment not found: IMG_0499.HEIC (Image)

2/16/2023 2:14:56 PM

Attachment not found: IMG_0498.HEIC (Image)

2/16/2023 2:14:21 PM

Sub Type: Multi-Family
Status: Active
Borough: Brooklyn
Neighborhood: Gravesend
Address: 744 Dunne Ct
City/State/Zip: Brooklyn, New York 11235
List Date: 02/07/2023
List Price: $1,745,000
Cross St 1: East 7th St
Cross St 2: Coney Island
General
click to collapse contents
Bldg Type: Detached
Style: Duplex
Beds: 7
Baths Full: 4
Baths Half: 0
Baths 3/4: 0
# Fam: 2
Stories: 2
Bldg Size: 24 x 40
Sqft: 2,769
Lot Size: 42 x 100
Lot Sqft: 4,233
Zoning: R4
Year Blt: 1930
Hndcap Acc: No
Tax Yr$: 7,296.00

2/16/2023 2:12:26 PM

744 Dunne ct

2/15/2023 2:50:35 PM

No

2/15/2023 2:35:22 PM

Any new listings

Remax - 170

Messages - Rental Jacob

2/15/2023 2:35:19 PM

Hi

2/15/2023 8:59:23 AM

Ok

2/15/2023 8:41:34 AM

I will be there

2/15/2023 8:41:30 AM

Ok

2/15/2023 8:39:14 AM

Code# 1688

2/15/2023 8:38:28 AM

Yesterday morning I already put lockbox.

2/15/2023 8:36:24 AM

432 Eltingville

2/15/2023 8:36:17 AM

10 am

2/15/2023 8:35:57 AM

Today

2/15/2023 8:35:56 AM

I have client

2/13/2023 8:40:51 PM

Ok

2/13/2023 8:04:09 PM

The 2nd floor that guy want driveway and garage maybe you can tell him move over

2/13/2023 8:02:13 PM

They rent $3500 and our side house only rent $3200. 😂😂

2/13/2023 8:01:04 PM

Not my listing maybe you can call  2nd floor want to move over.

2/13/2023 7:58:59 PM

$3500

2/13/2023 7:40:22 PM

How much

2/13/2023 5:58:34 PM

579 west caswell Ave 1 floor with basement and driveway and garage.

Messages - Rental Jacob

2/13/2023 10:12:27 AM

Call u back

2/8/2023 4:56:09 PM



2/8/2023 4:56:02 PM

Go get some new listing in Staten Island

2/8/2023 4:54:42 PM

Let men see

2/8/2023 4:53:02 PM

I have few buyer want 2-4 family in Bensonhurst and Dyker height and Staten Island 1 or 2 family.

2/8/2023 4:47:52 PM

Yes

2/8/2023 4:47:30 PM

210 bond street is commercial building right

2/8/2023 4:44:58 PM

Brooklyn

2/8/2023 4:44:53 PM

Brooklyn or Staten Island

2/8/2023 4:44:44 PM

And 744 dunne ct

2/8/2023 4:44:32 PM

Building

2/8/2023 4:44:28 PM

For sale

2/8/2023 4:44:24 PM

219 bond st

2/8/2023 4:39:39 PM

Ok

2/8/2023 4:39:28 PM

Call u back few min

2/2/2023 2:19:51 PM

Me too

Messages - Rental Jacob

2/2/2023 2:19:48 PM

I know

2/2/2023 2:19:36 PM

No money come in need to make some money 💰😂

2/2/2023 2:17:52 PM

No still waiting the Brooklyn one I told you before and they still not finish new yet.

2/2/2023 1:19:23 PM

New listings

1/26/2023 5:59:08 PM

👍

1/26/2023 5:58:59 PM

Thank you

1/26/2023 5:58:48 PM

Ok

1/26/2023 5:58:38 PM

I'll call him tomorrow

1/26/2023 5:58:23 PM

I call no answer

1/26/2023 5:57:32 PM

No call yet

1/26/2023 5:57:27 PM

I left messages

1/26/2023 5:57:03 PM

You call 581 west caswell Ave 2nd floor

1/26/2023 9:05:07 AM

Ok

1/26/2023 8:49:29 AM

Let me ask owner

1/26/2023 8:47:39 AM

Unless he will take them

1/26/2023 8:47:22 AM

We will find other clients than

Messages - Rental Jacob

1/26/2023 8:46:50 AM

The Tenent send me

1/26/2023 8:46:42 AM



1/26/2023 8:38:39 AM



1/26/2023 8:20:39 AM

With 3 people

1/26/2023 8:20:30 AM

Total income $120,000

1/26/2023 8:20:09 AM

I also emailed you

1/26/2023 8:19:06 AM

Daughter income

Messages - Rental Jacob

1/26/2023 8:19:00 AM



1/26/2023 8:18:56 AM



1/26/2023 8:17:51 AM

Mom income

1/26/2023 8:17:39 AM



1/25/2023 9:57:05 PM

She will send me other paperwork tomorrow

1/25/2023 9:56:57 PM

*Attachment not found: IMG_0227.jpeg (Image)*

Messages - Rental Jacob

1/25/2023 9:56:57 PM

Attachment not found: IMG_0226.jpeg (Image)

1/25/2023 9:56:57 PM

Attachment not found: IMG_0224.jpeg (Image)

1/25/2023 9:56:57 PM

Attachment not found: IMG_0223.jpeg (Image)

1/25/2023 9:56:57 PM

Attachment not found: IMG_0222.jpeg (Image)

1/25/2023 9:56:57 PM

Attachment not found: IMG_0225.jpeg (Image)

1/25/2023 9:56:57 PM

Attachment not found: IMG_0220.jpeg (Image)

1/25/2023 9:56:57 PM



1/25/2023 9:11:04 PM

Ok

1/25/2023 9:02:04 PM

Also send me his mother income too

1/25/2023 8:58:47 PM

Give me a call

1/25/2023 5:49:09 PM

You got it

1/25/2023 5:49:04 PM

I just send you the paperwork

Remax - 176

Messages - Rental Jacob

1/25/2023 5:41:00 PM

I will send you the other stuff later

1/25/2023 5:40:43 PM

You got the credit report

1/25/2023 5:39:44 PM

*Attachment not found: IMG_0169.HEIC (Image)*

1/25/2023 5:39:44 PM



1/25/2023 5:39:30 PM

Send you the report

1/25/2023 5:38:56 PM

yydoinoy@hotmail.com

1/25/2023 5:38:17 PM

I will send you the credit report

1/25/2023 5:38:06 PM

Send me ur email

1/25/2023 12:52:21 PM

Call me

1/25/2023 12:52:19 PM

For 432 eltingville blvd

1/25/2023 12:45:24 PM

Shortly

1/25/2023 12:45:19 PM

I will send you my client paperwork

1/25/2023 12:45:11 PM

Hi

Messages - Rental Jacob

1/24/2023 9:50:14 AM

👍

1/24/2023 9:46:16 AM

Everything is slow down

I have to go find part time job later 😂

1/24/2023 9:43:33 AM

Lol 😂

1/24/2023 9:43:24 AM

Need more buyer to buy house 💪

1/24/2023 9:42:23 AM

Right now

1/24/2023 9:42:12 AM

Nothing right

1/24/2023 9:41:13 AM

Any new listings

1/24/2023 9:41:10 AM

Hi

1/23/2023 4:36:16 PM



1/20/2023 2:00:51 PM

K

1/20/2023 2:00:29 PM

2 floor said pay tomorrow two month rent.

1/20/2023 1:58:29 PM

Ok

1/20/2023 1:58:24 PM

No

Messages - Rental Jacob

1/20/2023 1:58:17 PM

He did pay this month

1/20/2023 1:57:53 PM

Mexico guy

1/20/2023 1:57:42 PM

Hey Jacob can you call 581 west caswell Ave 1floor for rent phone# 646-994-7765

1/11/2023 12:21:43 PM

Call men

1/11/2023 11:30:17 AM

Good people

1/11/2023 11:29:48 AM

There are panama Spanish

1/11/2023 11:29:29 AM

You got it

1/11/2023 11:00:50 AM

Attachment not found: IMG_9797.jpeg (Image)

1/11/2023 11:00:50 AM

Attachment not found: IMG_9799.jpeg (Image)

1/11/2023 11:00:50 AM

Attachment not found: IMG_9796.jpeg (Image)

1/10/2023 10:46:38 PM

Spanish

1/10/2023 10:44:54 PM

Attachment not found: IMG_4904.heic (Image)

1/10/2023 10:44:16 PM

Jesse

1/10/2023 10:43:55 PM

Here is only one person income

1/10/2023 10:33:28 PM

Attachment not found: IMG_9794.heic (Image)

Messages - Rental Jacob

1/10/2023 10:33:28 PM

Attachment not found: IMG_9793.heic (Image)

1/10/2023 10:32:40 PM

Attachment not found: IMG_9792.heic (Image)

1/10/2023 10:32:29 PM



1/10/2023 10:32:08 PM



1/10/2023 10:30:29 PM



1/10/2023 6:19:41 PM

No I am driving to Staten Island and I will check later.

Messages - Rental Jacob

1/10/2023 6:07:21 PM

Check ur email

1/10/2023 6:07:18 PM

I send you the report

1/10/2023 1:42:49 PM

Call me

1/10/2023 1:42:03 PM

Call men

1/10/2023 1:02:38 PM

I will send you the paperwork later today

1/10/2023 1:02:19 PM

Good morning

1/9/2023 6:25:54 PM

Let me ask

1/9/2023 6:16:18 PM

$3,100?

1/9/2023 6:16:12 PM

432 eltingville

1/9/2023 8:36:47 AM

Ok let me know

1/9/2023 8:27:24 AM

No but he said paid today

1/9/2023 8:14:14 AM

Good morning. 581 casewell ave 2 floor paid the rent ???

1/5/2023 1:01:33 PM

Ok

1/5/2023 12:59:24 PM

You bring the lease

1/5/2023 10:10:47 AM

Ok

1/5/2023 10:10:37 AM

15 Jan

1/5/2023 10:10:28 AM

When the lease start?

Messages - Rental Jacob

1/5/2023 9:52:47 AM

The owner come home from work around 7pm

1/5/2023 9:52:25 AM

Hey make 7:30pm

1/5/2023 9:52:08 AM

6 pm today confirmed

1/4/2023 8:57:44 PM

Let me ask owner

1/4/2023 8:57:38 PM

1 person

1/4/2023 8:57:30 PM

Maybe

1/4/2023 8:57:28 PM

Can we do $2,000

1/4/2023 8:57:14 PM

I just send to owner already

1/4/2023 8:57:14 PM

$2,100

1/4/2023 8:57:03 PM

How much rent?

1/4/2023 8:53:23 PM

Ok

1/4/2023 8:53:19 PM

My friend

1/4/2023 8:53:13 PM

Russian guy

1/4/2023 8:52:56 PM

That guy is Russian or india

Messages - Rental Jacob

1/4/2023 8:43:50 PM



1/4/2023 8:43:32 PM

Attachment not found: IMG_0915.heic (Image)

1/4/2023 8:43:04 PM

Attachment not found: IMG_9273.heic (Image)

1/4/2023 8:42:49 PM

Attachment not found: IMG_6890.heic (Image)

1/4/2023 8:42:29 PM

Attachment not found: FILE_6135.pdf (Attachment)

1/4/2023 8:41:48 PM

Attachment not found: FILE_5632.pdf (Attachment)

1/4/2023 8:41:26 PM

Attachment not found: FILE_0727.pdf (Attachment)

1/4/2023 8:41:06 PM

Attachment not found: FILE_1964.pdf (Attachment)

1/4/2023 8:40:42 PM

Attachment not found: FILE_5579.pdf (Attachment)

1/4/2023 8:40:16 PM

Attachment not found: FILE_3550.pdf (Attachment)

1/4/2023 8:39:52 PM

Coale ave

Messages - Rental Jacob

1/4/2023 8:39:44 PM

1 person

1/4/2023 8:39:42 PM

My friend

1/4/2023 8:39:37 PM

I will send you the paperwork

1/4/2023 7:50:49 PM

Ok

1/4/2023 7:50:38 PM

The owner everyday check bank account never received no money from him. I think he just play game with us.

1/4/2023 7:43:05 PM

*Attachment not found: IMG_9709.jpeg (Image)*

1/4/2023 7:43:05 PM

*Attachment not found: IMG_9708.jpeg (Image)*

1/4/2023 10:25:22 AM

Screen shot from client

1/4/2023 10:25:19 AM

*Attachment not found: IMG_9677.jpeg (Image)*

1/3/2023 6:35:54 PM

581 west caswell Ave 2Floor phone# 917-215-9170

1/3/2023 1:25:06 PM

Hey Jacob
That is 581 west caswell Ave 1floor phone# 646-994-7765. Can you call them for rent and they still didn't pay December rent. I call them nobody answer.

1/2/2023 11:27:06 PM

Ok

1/2/2023 11:26:52 PM

The wife talk almost half hour on the phone 😊

1/2/2023 11:25:08 PM

I Understand

1/2/2023 11:25:01 PM

The rent included washer and dry.

Remax - 184

Messages - Rental Jacob

1/2/2023 11:20:02 PM

She said electric and gas went up so much. And the gas going up this year again.

1/2/2023 11:19:03 PM

Ok

1/2/2023 11:18:56 PM

She said too low because the owner pay electric, gas, heat and Ac .

1/2/2023 11:17:06 PM

Why

1/2/2023 11:10:00 PM

The owner said no $3000

1/2/2023 7:18:01 PM

K

1/2/2023 7:16:24 PM

I call the owner nobody answer and I will call them later.

1/2/2023 6:00:47 PM

For eltingville

1/2/2023 5:58:15 PM

Can we get them $3,000

1/2/2023 5:57:59 PM

There budget max  $3,000

1/2/2023 5:57:15 PM

I have couple only 2 people only

12/31/2022 10:58:14 PM

Attachment not found: IMG_4189.JPG (Image)

12/31/2022 6:44:44 PM

Happy new year 🎆

12/29/2022 10:33:22 AM

I will get I shortly

12/29/2022 10:32:54 AM

New tenant income paper and credit report.

12/29/2022 1:40:46 AM

Just got back from gambling room call you tomorrow.

12/28/2022 7:40:07 PM

Call me

Messages - Rental Jacob

12/28/2022 12:50:07 PM

Kids quite

12/28/2022 12:49:56 PM

The owner call said too many kids too noise.

12/28/2022 12:41:10 PM

Attachment not found: image000000.heic (Image)

12/28/2022 12:41:10 PM

Attachment not found: image000000.heic (Image)

12/28/2022 12:41:10 PM

Attachment not found: image000000.heic (Image)

12/28/2022 12:41:10 PM

Attachment not found: image000000.heic (Image)

12/28/2022 10:04:55 AM

Ok

12/28/2022 10:04:30 AM

You back from vacation

12/28/2022 10:04:04 AM

Jan 1

12/28/2022 10:04:02 AM

Okay

12/28/2022 10:03:55 AM

Ok I will tell the owner

12/28/2022 10:02:15 AM

Wife home health aid

12/28/2022 10:02:07 AM

Husband security

12/28/2022 9:58:00 AM

What kind job husband and wife?

12/27/2022 11:26:22 PM

Small pet

12/27/2022 11:25:56 PM

Kids age 8 11 12

Messages - Rental Jacob

12/27/2022 11:25:25 PM

Family 5 people

12/27/2022 11:22:48 PM

Family 5 people

12/27/2022 11:22:43 PM

For Eltingville

12/27/2022 11:22:30 PM

W

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0691.HEIC (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0689.HEIC (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0366.heic (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0367.heic (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0368.heic (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0369.heic (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0370.heic (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: 69119734249__2E5C9CED-555E-46C0-9865-89D6B80F1073.heic (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0616.HEIC (Image)*

12/27/2022 11:22:30 PM

*Attachment not found: IMG_0730.heic (Image)*

Messages - Rental Jacob

12/27/2022 11:22:30 PM

Attachment not found: image000001.HEIC (Image)

12/27/2022 11:22:30 PM

Attachment not found: IMG_0729.HEIC (Image)

12/27/2022 11:22:30 PM

Attachment not found: IMG_0699.heic (Image)

12/27/2022 11:22:30 PM

Attachment not found: IMG_0690.HEIC (Image)

12/27/2022 11:22:30 PM



12/22/2022 1:06:11 PM

Ok

12/22/2022 1:01:44 PM

That house didn't have basement

12/22/2022 1:01:20 PM

No basement

12/22/2022 1:01:17 PM

Ok

12/22/2022 1:01:11 PM

Owner use backyard
Tenant no backyard

12/22/2022 1:00:55 PM

And no basement

12/22/2022 12:59:47 PM

No

Messages - Rental Jacob

12/22/2022 12:57:23 PM

?

12/22/2022 12:57:21 PM

Eltingville has backyard

12/20/2022 6:58:53 PM

Ok

12/20/2022 6:58:41 PM

Same code 8510

12/20/2022 6:58:21 PM

Code again

12/20/2022 6:58:10 PM

The lock box front door

12/20/2022 6:57:32 PM

Same

12/20/2022 6:57:07 PM

?

12/20/2022 6:57:05 PM

Eltingville

12/20/2022 6:57:02 PM

Lock box

12/20/2022 11:01:09 AM

He working this week

12/20/2022 11:01:00 AM

Client is asking he needs to reschedule December 30

12/20/2022 11:00:29 AM

Hi

12/18/2022 7:01:01 PM

Confirmed

12/18/2022 7:00:58 PM

8 pm Tuesday concentrate

12/18/2022 4:19:15 PM

Okay 👍

12/18/2022 4:13:10 PM

I send over to owner already and he need to wait the son take a look all the paper.

Messages - Rental Jacob

12/18/2022 3:56:36 PM

👍

12/18/2022 3:56:31 PM

Yes

12/18/2022 3:56:20 PM

You got it

12/18/2022 3:56:05 PM

Attachment not found:
IMG_9476.heic (Image)

12/18/2022 3:56:05 PM

Attachment not found:
IMG_9486.heic (Image)

12/18/2022 3:56:05 PM

Attachment not found:
IMG_9485.heic (Image)

12/18/2022 3:56:05 PM



12/18/2022 2:26:33 PM

No pets

12/18/2022 2:26:31 PM

2 people only

12/18/2022 2:26:28 PM

Moving Jan 1

12/18/2022 2:26:22 PM

Let me know if you got it

12/18/2022 2:26:14 PM

I also email you the credit report

Messages - Rental Jacob

12/18/2022 2:25:20 PM



12/18/2022 2:24:34 PM

Attachment not found:
IMG_9462.heic (Image)

12/18/2022 2:24:34 PM



12/18/2022 2:23:40 PM

Attachment not found:
IMG_9478.heic (Image)

12/18/2022 2:23:40 PM

Attachment not found:
IMG_9480.heic (Image)

12/18/2022 2:23:40 PM

Attachment not found:
IMG_9479.heic (Image)

Messages - Rental Jacob

12/18/2022 2:23:40 PM



12/18/2022 2:23:20 PM

*Attachment not found: IMG_9470.heic (Image)*

12/18/2022 2:23:20 PM



12/18/2022 2:23:20 PM

*Attachment not found: 69307844553__EA43CEED-2C70-437C-9AB5-1409A371EBED.heic (Image)*

12/18/2022 2:23:20 PM



Messages - Rental Jacob

12/18/2022 12:43:39 PM

I'm inside

12/18/2022 12:43:34 PM

Ok

12/18/2022 12:42:12 PM

I am inside car

12/18/2022 12:41:51 PM

Im here

12/18/2022 12:26:17 PM

??

12/18/2022 12:26:12 PM

Coale ave what's included

12/18/2022 11:43:52 AM

Wrong text sorry

12/18/2022 11:43:46 AM

Can u call me

12/18/2022 10:17:26 AM

Can we still show it

12/18/2022 10:17:02 AM

Still waiting that stupid guy and the owner get mad at me now.

12/18/2022 10:11:22 AM

I have family

12/18/2022 10:11:14 AM

432 eltongville is Avalible to show

12/17/2022 4:17:29 PM

👍

12/17/2022 4:17:06 PM

Tomorrow

12/17/2022 4:17:04 PM

1 pm confirmed

12/17/2022 1:47:58 PM

Hey Jacob is your tenant ok 1:00pm tomorrow?

12/17/2022 12:26:34 PM

Let the lease start 1/1/2023

Remax - 193

Messages - Rental Jacob

12/17/2022 12:26:15 PM

The owner will be home 1:00pm tomorrow so your tenant ok?

12/17/2022 10:35:47 AM

Ok let me know

12/17/2022 10:31:14 AM

I call them nobody answer

12/17/2022 10:28:50 AM

12 pm

Are we confirmed tomorrow

12/17/2022 10:28:31 AM

12/17/2022 10:28:22 AM

Or Jan 1

12/17/2022 10:28:01 AM

If possible

12/17/2022 9:47:40 AM

So you mean he want move in right alway.

12/17/2022 9:44:57 AM

Can u text me

12/17/2022 9:44:18 AM

This month

12/17/2022 9:44:10 AM

We will prorate few days

12/17/2022 9:41:58 AM

When the lease start?

12/17/2022 9:39:36 AM

Tx

12/17/2022 9:39:30 AM

Ok let me ask

12/17/2022 9:37:51 AM

To sign

12/17/2022 9:37:43 AM

Can u ask if the owner is available Sunday 12 pm

12/17/2022 9:13:48 AM

Kk

Messages - Rental Jacob

12/16/2022 7:22:07 PM

The tenant said need to go inside apartment and make owner scare. Can you text your tenants said you cant go inside without agent.

12/16/2022 7:14:37 PM

For 1524 Drumgoole rd The owner just call your tenants keep knocking the owner door. Can you text your tenants.

12/15/2022 7:53:15 AM

Ok

12/15/2022 7:52:22 AM

Tell to the owner

12/15/2022 7:52:13 AM

Lease

12/15/2022 7:52:10 AM

1524 Drumgoole rd

12/15/2022 7:52:04 AM

Dec 21 Wednesday confirmed    7 pm

12/15/2022 7:51:46 AM

Good morning

12/14/2022 1:44:39 PM

To show

12/14/2022 1:43:56 PM

Eltingville is available

12/12/2022 9:54:56 AM

Okay 👍

12/12/2022 9:48:18 AM

The owner said ok $2100 only good tenants for 30 coale Ave

12/11/2022 11:16:56 PM

Ok

12/11/2022 11:16:38 PM

I send you the report

12/11/2022 7:49:42 PM

$1500

12/11/2022 7:49:31 PM

How much rent?

12/11/2022 7:49:06 PM

Moving

Remax - 195

Messages - Rental Jacob

12/11/2022 7:49:04 PM

Jan 1

12/11/2022 7:49:02 PM

Ok

12/11/2022 7:48:50 PM

I will send you the credit report shortly

12/11/2022 7:45:46 PM



12/11/2022 7:45:33 PM

Attachment not found:
IMG_9121.jpeg (Image)

12/11/2022 7:45:33 PM

Attachment not found:
IMG_9120.jpeg (Image)

12/11/2022 7:45:33 PM

Attachment not found:
IMG_9119.jpeg (Image)

12/11/2022 7:45:33 PM

Attachment not found:
IMG_9115.jpeg (Image)

12/11/2022 7:45:33 PM

Attachment not found:
IMG_9118.jpeg (Image)

12/11/2022 7:45:33 PM

Attachment not found:
IMG_9117.jpeg (Image)

Remax - 196

Messages - Rental Jacob

12/11/2022 7:45:33 PM



12/11/2022 7:44:17 PM

I can't open it up

12/11/2022 7:43:50 PM

Ok

12/11/2022 7:40:28 PM

Let me check

12/11/2022 7:39:35 PM

You got it

12/11/2022 7:39:30 PM

I send you the paperwork

12/11/2022 6:59:20 PM

He is. Architect

12/11/2022 6:57:54 PM

1 person

12/11/2022 6:57:54 PM



12/11/2022 10:23:54 AM

Ok

Messages - Rental Jacob

12/11/2022 10:22:45 AM

I have another client

12/11/2022 10:22:37 AM

Cancel 8 pm she find something else

12/9/2022 10:40:52 PM

Ok

12/9/2022 9:20:01 PM

The owner confirmed 8:00pm on Sunday sign lease.

12/9/2022 4:16:12 PM

👍

12/9/2022 4:12:40 PM

I send you the lease

12/9/2022 12:36:33 PM

Lease

12/9/2022 12:36:30 PM

That less for 1630 80 street

12/9/2022 12:36:22 PM



12/9/2022 12:35:31 PM

Check again

12/9/2022 12:35:17 PM

Lease

12/9/2022 12:34:33 PM

You send me wrong

Messages - Rental Jacob

12/9/2022 12:34:28 PM



12/9/2022 12:33:19 PM

You got the lease

12/9/2022 12:19:32 PM

K

12/9/2022 12:18:57 PM

Can you prepare the lease so I can send over to owner to look.

12/9/2022 9:51:21 AM

Can we do 1 pm

12/9/2022 9:51:15 AM

What time can we sign the lease today

12/9/2022 8:54:34 AM

Sorry

12/9/2022 8:54:23 AM



12/9/2022 8:52:47 AM

Ok

Messages - Rental Jacob

12/9/2022 8:50:36 AM



12/9/2022 8:50:04 AM

12/9/2022 8:49:42 AM



12/9/2022 8:11:30 AM

K

12/9/2022 8:08:15 AM

Wednesday I spoke to construction guy and he said few more days and I will call him again afternoon.

12/9/2022 7:51:01 AM

Eltingville

Messages - Rental Jacob

12/9/2022 7:50:54 AM

When the 3 bedrooms available

12/9/2022 7:22:40 AM

Ok

12/9/2022 7:22:03 AM

I will call her 9 am

12/9/2022 7:21:42 AM

Can you ask tenant send over now because owner ask want to see it first.

12/9/2022 7:19:43 AM

Let's set appointment today

12/9/2022 7:19:32 AM

Or she could bring it

12/9/2022 7:19:22 AM

She will send me

12/9/2022 7:16:42 AM

Last night owner ask can you ask tenant send few more week payroll paper because their only three week payroll paper.

12/9/2022 7:14:53 AM

Okay

12/9/2022 7:14:43 AM

Said

12/9/2022 7:14:39 AM

Let see what the owner side

12/9/2022 7:13:49 AM

Can we sign the lease today 12pm

12/9/2022 7:13:01 AM

Yes

12/8/2022 11:33:52 PM

?

12/8/2022 11:31:40 PM

You got it

12/8/2022 11:31:37 PM

I send u the credit report

12/8/2022 8:34:57 PM

$1,500

Remax - 201

Messages - Rental Jacob

12/8/2022 8:34:25 PM

hey Jacob there only 3 week payroll paper and the owner ask can you ask tenant send few more week payroll paper and credit report. Because last year her total w2 only 8 thousand something. How much price you rent?

12/8/2022 7:15:55 PM



12/8/2022 7:14:27 PM



12/8/2022 7:14:24 PM



Messages - Rental Jacob

12/8/2022 7:13:29 PM



12/8/2022 7:12:44 PM



12/8/2022 7:11:14 PM



*Attachment not found:*
*IMG_9011.heic (Image)*

Messages - Rental Jacob

12/8/2022 7:11:11 PM



12/8/2022 7:09:00 PM



12/8/2022 7:02:56 PM

Call me

12/2/2022 12:08:12 PM

Can I call you later?

12/2/2022 12:07:55 PM

Call me

12/2/2022 12:06:18 PM

Mom id

Messages - Rental Jacob

12/2/2022 12:06:18 PM



12/2/2022 12:05:56 PM

30 coals ave

12/2/2022 12:05:41 PM

And the mom work's cleaning lady

12/2/2022 12:05:29 PM

Wife

12/2/2022 12:05:29 PM

And she works for Amazon

12/2/2022 12:05:28 PM

Husband works for cement construction

12/2/2022 12:05:28 PM

*Attachment not found: IMG_8808.heic (Image)*

12/2/2022 12:05:28 PM



12/2/2022 12:05:04 PM

*Attachment not found: IMG_8810.heic (Image)*

Messages - Rental Jacob

12/2/2022 12:05:04 PM

*Attachment not found: IMG_8813.heic (Image)*

12/2/2022 12:05:04 PM



11/30/2022 5:24:08 PM

No

11/30/2022 5:09:34 PM

432 eltingville blvd Sunday 7 pm

11/29/2022 3:41:10 PM

Ok Thank you

11/29/2022 3:39:16 PM

*Attachment not found: IMG_8752.jpeg (Image)*

11/29/2022 3:39:04 PM

*Attachment not found: IMG_8751.jpeg (Image)*

11/29/2022 3:37:26 PM



11/29/2022 3:36:58 PM

Wrong text

11/29/2022 3:36:41 PM

How are you.

11/29/2022 7:54:49 PM

Ok

11/28/2022 7:51:30 PM

Tomorrow

Messages - Rental Jacob

11/28/2022 7:41:52 PM

Hey Jacob for 1524 Drumgoole rd w any tenant

11/27/2022 7:56:55 PM

Tomorrow 11 am

11/26/2022 6:39:28 PM

Ok lol

11/26/2022 6:39:14 PM

#8510

11/26/2022 6:38:56 PM

Same code you forgot

11/26/2022 5:59:29 PM

Text me the lock box

11/26/2022 5:59:23 PM

10:30 am

11/26/2022 5:59:18 PM

Tomorrow 1524 Drumgoole ave

11/25/2022 1:27:32 PM

They find something else

11/25/2022 1:18:25 PM

You forgot send me 30 coals Ave income and credit report paper. you call 581 west caswell Ave 2 floor?

11/23/2022 11:39:22 AM

The owner never got the rent

11/23/2022 11:34:53 AM

I'm here

11/23/2022 11:25:00 AM

432 Eltingville Blvd
Staten Island, NY  10312

11/23/2022 11:10:36 AM

I'm here

11/23/2022 11:07:28 AM

Ok

11/23/2022 11:04:54 AM

See u 5 min

Messages - Rental Jacob

11/22/2022 8:23:13 PM



11/22/2022 8:23:09 PM

Also later

11/22/2022 8:23:06 PM

And send u the paperwork

11/22/2022 8:22:59 PM

Tonight

11/22/2022 8:22:55 PM

I will do they credit check

11/22/2022 8:22:44 PM

Can you ask them both income paper and credit report

11/22/2022 8:19:33 PM

Attachment not found:
IMG_8594.heic (Image)

11/22/2022 8:19:02 PM

Attachment not found:
IMG_8593.heic (Image)

11/22/2022 5:09:26 PM

Ok

11/22/2022 5:09:16 PM

Ok 11:15am
1524 Drumgoole rd west Staten Island ny 10312

11/22/2022 11:23:57 AM

Ok

11/22/2022 10:21:59 AM

Im showing today 7 pm

11/22/2022 10:21:51 AM

30 coals ave still available

11/18/2022 9:01:19 AM

👍

11/18/2022 9:00:19 AM

Attachment not found:
IMG_8511.jpeg (Image)

11/18/2022 8:57:56 AM

I will call him shortly

Remax - 208

Messages - Rental Jacob

11/18/2022 8:57:50 AM

Sorry wrong text

11/18/2022 8:35:54 AM

Pick up today what time

11/17/2022 9:00:57 PM

Can xian pick up the rent tomorrow

11/17/2022 8:59:59 PM

Ok

11/17/2022 8:59:26 PM

The owner Wells Fargo Bank checking account.
Account name : yuli weng
Checking account# 7924874880

That is for 581 west caswell Ave #2 floor Staten Island. Tenant name Rick phone# 917-215-9170. You can text or call him tomorrow.   Thank you

11/17/2022 7:25:49 PM

*Attachment not found: IMG_3955.JPG (Image)*

11/17/2022 7:23:55 PM

My client is there

11/17/2022 7:14:43 PM

Ok

11/17/2022 7:14:38 PM

Few min

11/17/2022 7:14:22 PM

Your client down stair

11/17/2022 7:13:57 PM

K

11/17/2022 7:13:40 PM

Yes

11/17/2022 7:13:33 PM

Can I send my client there

11/17/2022 7:13:19 PM

I'm running late

11/17/2022 6:52:07 PM

Ok

Remax - 209

Messages - Rental Jacob

11/17/2022 6:51:51 PM

When you down ring #7C so I can open the door.

11/17/2022 6:50:43 PM

7:15 pm

11/17/2022 6:50:37 PM

I am here.

11/17/2022 5:18:44 PM

Ok

11/17/2022 5:18:35 PM

Yes

11/17/2022 5:18:28 PM

See u 7:15 pm

11/16/2022 5:38:42 PM

Ask $3100

11/16/2022 5:38:33 PM

With parking

11/16/2022 5:30:27 PM

Call me

11/16/2022 5:29:45 PM

?????

11/16/2022 5:27:13 PM

Has parking included

11/16/2022 3:02:12 PM

2 bedrooms 2 bathrooms with open kitchen

11/16/2022 3:01:22 PM

That picture is for penthouse condo

11/16/2022 2:18:20 PM

*Attachment not found: IMG_3955.JPG (Image)*

11/16/2022 2:18:20 PM

*Attachment not found: IMG_3954.JPG (Image)*

11/16/2022 2:18:20 PM

*Attachment not found: IMG_3953.JPG (Image)*

Messages - Rental Jacob

11/16/2022 2:18:20 PM

Attachment not found: IMG_3952.JPG (Image)

11/16/2022 2:18:20 PM

Attachment not found: IMG_3951.JPG (Image)

11/16/2022 2:18:20 PM

Attachment not found: IMG_3950.JPG (Image)

11/16/2022 2:18:20 PM

Attachment not found: IMG_3949.JPG (Image)

11/16/2022 2:18:20 PM

Attachment not found: IMG_3948.JPG (Image)

11/16/2022 2:18:20 PM

Attachment not found: IMG_3947.JPG (Image)

11/15/2022 10:43:28 AM

You got pics

11/15/2022 10:01:25 AM

Can I call you later?

11/14/2022 1:46:37 PM

Penthouse 2 bedroom 2 bathroom asking $3100. I think $3000 ok. The owner need good credit and good income. The owner is builder and doctor.

11/14/2022 1:44:14 PM

7516 Bay parkway

11/13/2022 11:00:39 PM

Call you tomorrow

11/13/2022 5:55:48 PM

New listing

11/8/2022 3:50:02 PM



11/8/2022 3:49:30 PM

30 Coale ave

Messages - Rental Jacob

11/8/2022 3:49:25 PM

I'm showing today 8 pm

11/7/2022 1:49:42 PM

Ok

11/7/2022 10:36:20 AM

Maybe I will get a studio rental today still waiting the owner

11/7/2022 10:34:16 AM

Yes

11/7/2022 10:34:12 AM

Small

11/7/2022 10:34:05 AM

The room too room

11/7/2022 10:24:29 AM

Small rooms

11/7/2022 10:24:25 AM

Still showing

11/7/2022 10:18:37 AM

Nothing now
What is going on 30 coale ave

11/7/2022 8:47:53 AM

Any new listings

11/7/2022 8:47:52 AM

Good morning

11/3/2022 9:24:31 AM

Cleint

11/3/2022 9:24:27 AM

Find a club

11/3/2022 9:24:23 AM

Let's make a deal

11/3/2022 9:22:01 AM

Because my other two client already saw that house half year ago.

11/3/2022 9:12:20 AM

No

11/3/2022 9:11:10 AM

162 kelly Blvd House for sale 🏡 you have client

Remax - 212

Messages - Rental Jacob

11/3/2022 9:11:05 AM

Good morning

11/2/2022 2:15:06 PM

They will bring Sunday

11/2/2022 2:14:39 PM

The owner ask wife payroll and income paper.

11/2/2022 2:12:30 PM

One more still waiting the bank

11/2/2022 2:11:01 PM

Interest to high less people buy house

11/2/2022 2:09:57 PM

Let's close coale ave

11/2/2022 2:09:46 PM

I know

11/2/2022 2:09:27 PM

Very slow now

11/2/2022 2:05:31 PM

No

11/2/2022 12:03:24 PM

Any new listings

11/1/2022 10:31:07 PM

That owner crazy

11/1/2022 10:30:47 PM

I'll ask tomorrow

11/1/2022 10:30:10 PM

The wife have payroll or income paper owner ask.

11/1/2022 10:09:14 PM

Good client

11/1/2022 10:08:55 PM

Ok

11/1/2022 10:02:34 PM

Nurse

11/1/2022 6:31:19 PM

Where is wife work?

Messages - Rental Jacob

11/1/2022 6:16:26 PM

Yes

11/1/2022 6:03:10 PM

PS 44

11/1/2022 6:02:52 PM

He is teacher

11/1/2022 1:51:50 PM

You got it

11/1/2022 1:51:40 PM

*Attachment not found: IMG_8022.jpeg (Image)*

11/1/2022 1:51:40 PM

*Attachment not found: IMG_8020.jpeg (Image)*

11/1/2022 1:51:40 PM

*Attachment not found: IMG_8019.jpeg (Image)*

11/1/2022 1:51:40 PM

*Attachment not found: IMG_8021.jpeg (Image)*

11/1/2022 1:51:40 PM

*Attachment not found: IMG_8018.jpeg (Image)*

11/1/2022 1:51:29 PM

*Attachment not found: IMG_8029.jpeg (Image)*

11/1/2022 1:51:29 PM

*Attachment not found: IMG_8030.jpeg (Image)*

11/1/2022 1:51:29 PM

*Attachment not found: IMG_8028.jpeg (Image)*

11/1/2022 1:49:03 PM

*Attachment not found: IMG_8022.jpeg (Image)*

11/1/2022 1:49:03 PM

*Attachment not found: IMG_8018.jpeg (Image)*

Messages - Rental Jacob

11/1/2022 1:49:03 PM

Attachment not found:
IMG_8019.jpeg (Image)

11/1/2022 1:49:03 PM

Attachment not found:
IMG_8020.jpeg (Image)

11/1/2022 1:49:03 PM

Attachment not found:
IMG_8021.jpeg (Image)

11/1/2022 1:49:03 PM

Attachment not found:
IMG_8029.jpeg (Image)

11/1/2022 1:49:03 PM

Attachment not found:
IMG_8030.jpeg (Image)

11/1/2022 1:49:03 PM

Attachment not found:
IMG_8028.jpeg (Image)

11/1/2022 1:27:58 PM

Call me

11/1/2022 1:23:32 PM

4 pm Sunday

11/1/2022 1:21:27 PM

Call me

11/1/2022 1:21:22 PM

Hi

10/31/2022 9:34:22 AM

Attachment not found:
IMG_3810.PNG (Image)

10/27/2022 6:27:42 PM

See u

10/27/2022 6:27:40 PM

Ok

10/27/2022 6:27:31 PM

I will be late traffic

10/27/2022 6:25:02 PM

See u soon

Messages - Rental Jacob

10/27/2022 11:53:42 AM

My buyer didn't like the house and that house list long time ago still not sell yet

10/27/2022 11:39:48 AM

You have buyers

10/27/2022 11:26:30 AM

👍

10/27/2022 11:11:34 AM

$825,000

10/27/2022 11:11:13 AM

162 Kelly Blvd

10/27/2022 11:11:03 AM

Hi I have house for sale Staten Island 🏡

10/27/2022 9:15:53 AM

Okay 👍

10/27/2022 8:40:07 AM

So I see you 7pm tonight

10/27/2022 8:39:50 AM

Ok

10/27/2022 8:38:58 AM

Owner could sign later

10/27/2022 8:38:41 AM

7 pm

10/27/2022 8:38:39 AM

Can we sign the lease today

10/27/2022 8:38:32 AM

Good morning

10/26/2022 11:04:05 PM

Got it

10/26/2022 11:02:47 PM

K

10/26/2022 11:02:41 PM

Let me check

10/26/2022 11:02:14 PM

You got the lease

Remax - 216

Messages - Rental Jacob

10/26/2022 10:45:11 PM

Should I send u the lease

10/26/2022 10:44:17 PM

Yes and when you finishing lease email me one I show the owner.

10/26/2022 10:41:45 PM

You got it

10/26/2022 10:34:53 PM

Send you the credit report

10/26/2022 10:31:40 PM

Ok

10/26/2022 10:31:28 PM

Yes

10/26/2022 10:22:07 PM

That's ur email yydoinoy@hotmail.com

10/26/2022 10:04:36 PM

*Attachment not found: IMG_7907.jpeg (Image)*

10/26/2022 10:04:34 PM

*Attachment not found: IMG_7906.jpeg (Image)*

10/26/2022 10:04:26 PM

*Attachment not found: IMG_7906.jpeg (Image)*

10/26/2022 10:04:19 PM

*Attachment not found: IMG_7906.jpeg (Image)*

10/26/2022 10:04:08 PM

*Attachment not found: IMG_7906.jpeg (Image)*

10/26/2022 9:48:12 PM

*Attachment not found: IMG_7905.jpeg (Image)*

10/26/2022 9:47:49 PM

Her paystubs

10/26/2022 9:43:46 PM

*Attachment not found: IMG_7903.jpeg (Image)*

10/26/2022 9:42:48 PM

Attachment not found: IMG_7902.jpeg (Image)

10/26/2022 9:42:15 PM

His income $142,000

10/26/2022 9:40:50 PM

Attachment not found: IMG_7901.jpeg (Image)

10/26/2022 9:40:50 PM

Attachment not found: IMG_7900.jpeg (Image)

10/26/2022 9:40:50 PM

Attachment not found: IMG_7898.jpeg (Image)

10/26/2022 12:04:15 PM

Ok 👍

10/26/2022 12:04:06 PM

No pets

10/26/2022 12:03:52 PM

The owner ask

10/26/2022 12:03:44 PM

Hi Jacob the tenant have any pet?

10/26/2022 11:25:04 AM

Call me

10/26/2022 11:21:38 AM

I think he down stair

10/26/2022 11:20:50 AM

They have another appointment

10/26/2022 11:20:40 AM

How long

10/26/2022 11:13:01 AM

Attachment not found: IMG_7867.jpeg (Image)

10/26/2022 11:12:17 AM

Attachment not found: IMG_7866.heic (Image)

Messages - Rental Jacob

10/26/2022 11:12:11 AM

Attachment not found:
IMG_7862.heic (Image)

10/26/2022 11:12:05 AM

Attachment not found:
IMG_7865.heic (Image)

10/26/2022 11:12:05 AM

Attachment not found:
IMG_7864.heic (Image)

10/26/2022 11:12:05 AM

Attachment not found:
IMG_7863.heic (Image)

10/26/2022 11:12:05 AM

Attachment not found:
IMG_7861.heic (Image)

10/26/2022 11:11:32 AM

How much you rent

10/26/2022 11:10:42 AM

Attachment not found:
IMG_7858.heic (Image)

10/26/2022 11:10:42 AM

Attachment not found:
IMG_7859.heic (Image)

10/26/2022 11:10:42 AM

Attachment not found:
IMG_7860.heic (Image)

10/26/2022 11:10:05 AM

The owner be home 10min

10/26/2022 10:49:26 AM

Ok

10/26/2022 10:49:12 AM

Call u few min

10/24/2022 7:55:25 PM

Ok

10/24/2022 7:55:12 PM

She still thinking

10/24/2022 7:55:03 PM

I'm showing other clients tonight

Messages - Rental Jacob

10/24/2022 7:54:45 PM

You got the credit report yet ?

10/23/2022 10:25:01 PM

Only water ?

10/23/2022 10:24:54 PM

?

10/23/2022 10:24:53 PM

Which utility included

10/23/2022 8:38:36 PM

Hey Jacob the owner call she want to see credit report not rental report.

10/23/2022 8:26:56 PM

Ok

10/23/2022 8:23:27 PM

Accounting

10/23/2022 8:13:23 PM

What kind job she work?

10/23/2022 8:02:30 PM

*Attachment not found: FILE_8244.pdf (Attachment)*

10/23/2022 8:02:09 PM

*Attachment not found: FILE_7027.pdf (Attachment)*

10/23/2022 8:01:16 PM

*Attachment not found: FILE_1582.pdf (Attachment)*

10/23/2022 8:00:39 PM

*Attachment not found: FILE_7528.pdf (Attachment)*

10/23/2022 8:00:21 PM

*Attachment not found: FILE_8104.pdf (Attachment)*

10/23/2022 7:59:39 PM

*Attachment not found: IMG_2592.heic (Image)*

10/23/2022 7:59:16 PM

*Attachment not found: IMG_7775.heic (Image)*

Remax - 220

Messages - Rental Jacob

10/23/2022 7:59:00 PM

Attachment not found:
creditCheck.pdf (Attachment)

10/23/2022 7:49:08 PM

Ok

10/23/2022 7:48:59 PM

$1300

10/23/2022 7:48:36 PM

How much you rent to the girl?

10/23/2022 7:46:16 PM

Ok 👍

10/23/2022 7:31:03 PM

6pm

10/23/2022 7:27:23 PM

What time?

10/23/2022 7:22:10 PM

Ok Tuesday

10/23/2022 6:12:55 PM

581 west caswell Ave 2 floor
917-215-9170 name is Rick

10/19/2022 11:05:33 AM

2524 McDonald ave

10/19/2022 10:57:11 AM

Code

10/19/2022 10:57:09 AM

8510

10/19/2022 10:31:58 AM

Ok

10/19/2022 10:31:38 AM

10 min

10/19/2022 10:17:20 AM

No Tenent

10/19/2022 10:17:17 AM

Sequine ave

10/19/2022 10:15:21 AM

No tenant brand new

Messages - Rental Jacob

10/19/2022 10:00:36 AM

The tenant moved out

10/19/2022 9:57:51 AM

Ok

10/19/2022 9:56:30 AM

I'll see u 10:30 am

10/19/2022 9:56:26 AM

Sorry

10/19/2022 9:56:22 AM

Wrong text

10/19/2022 9:56:10 AM

Can I come 11:45 am

10/19/2022 9:55:50 AM

Good morning

10/18/2022 6:57:56 PM

Ok

10/18/2022 6:57:52 PM

30 Coale Ave, Staten Island, NY 10314
See you tomorrow 10:30am

10/18/2022 4:27:14 PM

Ok

10/18/2022 4:20:43 PM

Cal u tonight

10/18/2022 12:35:46 PM

Hi Jacob
Please give me a call

10/13/2022 11:07:44 AM

K

10/13/2022 11:07:39 AM

$1300

10/13/2022 11:07:17 AM

?

10/13/2022 10:57:53 AM

What's the rent $1,100

10/13/2022 10:55:33 AM

Ok

Remax - 222

Messages - Rental Jacob

10/11/2022 8:01:36 PM

Tenant phone 718-844-1440

10/11/2022 8:01:04 PM

Ok

10/11/2022 8:00:05 PM

Yes

10/11/2022 7:06:05 PM

$1,300

10/11/2022 7:05:55 PM

277 sequine ave

10/11/2022 7:05:06 PM

Call me please

10/11/2022 3:59:28 PM

Hi Jacob give me a call
Studio for rent

9/29/2022 3:37:29 PM

New listing

9/29/2022 3:37:25 PM

Lol

9/29/2022 3:37:23 PM

Where my gift 🎁

9/18/2022 9:33:11 PM

Ok
Still waiting

9/18/2022 9:31:13 PM

Any new listings

9/18/2022 9:31:07 PM

See u tomorrow

9/18/2022 12:02:30 PM

Ok

9/18/2022 11:59:59 AM

6 pm

9/18/2022 11:59:55 AM

I'll meet you later

9/18/2022 11:58:18 AM

I will be there 1:00pm at 105 73 street

Messages - Rental Jacob

9/17/2022 8:19:52 PM

K

9/17/2022 8:19:27 PM

I have showing tomorrow 1:00pm and I let you know tomorrow address.

9/17/2022 7:56:59 PM

Text me the address

9/17/2022 7:56:53 PM

1 pm

9/17/2022 7:53:24 PM

Around what time ?

9/17/2022 7:50:41 PM

Tomorrow

9/17/2022 7:50:38 PM

Okay great 👍

9/17/2022 10:47:03 AM

Hi Jacob when you come to Bklyn sunset park let me know give you the gift for your kid.

9/13/2022 11:57:48 AM

Wow 😅

9/13/2022 11:42:29 AM

The bank too slow

9/13/2022 11:40:43 AM

Too long 😜

9/13/2022 11:40:34 AM

Waiting

9/13/2022 10:27:47 AM

New listings

9/13/2022 10:27:44 AM

Hi

9/7/2022 3:29:14 PM



9/7/2022 3:29:10 PM



Remax - 224

Messages - Rental Jacob

9/7/2022 3:29:04 PM

In my luggage not for you for your kid

9/7/2022 3:27:47 PM

Where is my gift 🎁

9/7/2022 3:27:35 PM

Lol

9/7/2022 3:27:34 PM

😂

9/7/2022 3:27:23 PM

I just got off airplane and not yet still waiting to close.

9/7/2022 2:00:19 PM

?

9/7/2022 1:34:52 PM

Any new listings

9/2/2022 2:11:02 PM

Don't understand

9/2/2022 2:10:37 PM

The second floor tenant throw out Amazon boxs to first floor back yard.

9/2/2022 2:10:36 PM

Attachment not found:
IMG_3475.PNG (Image)

9/2/2022 2:10:36 PM

Attachment not found:
IMG_3476.PNG (Image)

9/2/2022 2:10:36 PM

Attachment not found:
IMG_3477.PNG (Image)

9/2/2022 10:48:59 AM

581 west caswell Ave 1 floor text me.

9/2/2022 10:48:26 AM

Attachment not found:
IMG_3471.PNG (Image)

8/31/2022 8:43:43 PM

1 floor

8/31/2022 8:43:33 PM

581 west caswell Ave 1

Remax - 225

Messages - Rental Jacob

8/31/2022 8:43:28 PM

*Attachment not found: IMG_0579.HEIC (Image)*

8/27/2022 11:05:40 AM

Ok

8/26/2022 7:35:11 PM

First person I going to call you when is closing.

8/26/2022 7:08:03 PM



8/26/2022 7:07:54 PM

Still waiting to close

8/26/2022 6:51:49 PM

Any new listings

8/26/2022 6:50:25 PM

Np

8/26/2022 6:50:03 PM

Wrong text

8/26/2022 6:49:55 PM

East 15 st

8/21/2022 12:02:59 PM

Ok

8/21/2022 12:02:29 PM

He will reach out to u

8/21/2022 12:02:19 PM

I just spoke to him

8/21/2022 11:58:03 AM

Ok Thank you

8/21/2022 11:57:40 AM

I left a message to call me

8/21/2022 11:55:12 AM

581 west Caswell Ave 2 Floor
Tenant name: Rick Lealli
917-215-9170

8/14/2022 6:58:27 PM

Ok

Remax - 226

Messages - Rental Jacob

8/14/2022 6:55:33 PM

I'm at the wedding

8/14/2022 2:34:57 PM

Hi Jacob
You call tenant yet

8/13/2022 10:41:57 PM

👌

8/13/2022 10:41:37 PM

I'll
Call her tomorrow

8/13/2022 9:51:59 PM

Ok

8/13/2022 9:16:08 PM

Can I call you 30mins

8/13/2022 8:40:51 PM

Why

8/13/2022 4:54:34 PM

They want to change lease move in September 1

8/13/2022 4:53:24 PM

You painter total $2500

8/13/2022 4:50:53 PM

Hi Jacob please give me a call. We have problem with 58 Eagan Ave main unit.

8/10/2022 2:45:37 PM

Ok

8/10/2022 1:50:53 PM

2136 east 63 st

8/10/2022 1:45:59 PM

Me too

8/10/2022 1:44:56 PM

I am here

8/10/2022 10:40:02 AM

Let me check

8/10/2022 10:39:40 AM

You got it

Messages - Rental Jacob

8/10/2022 10:39:37 AM

Send u the lease

8/10/2022 8:29:59 AM

He gets pension

8/10/2022 8:29:39 AM

Attachment not found:
IMG_6252.heic (Image)

8/10/2022 8:27:17 AM

Attachment not found:
IMG_8874.heic (Image)

8/10/2022 8:17:20 AM

Today

8/10/2022 8:17:16 AM

Let me know what time we good sign the lease

8/10/2022 8:16:58 AM

Very good client

8/10/2022 8:14:47 AM

Attachment not found:
IMG_3337.heic (Image)

8/10/2022 8:14:16 AM

Attachment not found:
IMG_5718.heic (Image)

8/10/2022 8:13:59 AM

Attachment not found:
IMG_6248.jpeg (Image)

8/10/2022 8:11:54 AM

Attachment not found:
FILE_6135.pdf (Attachment)

8/10/2022 8:11:25 AM

Attachment not found:
FILE_5022.pdf (Attachment)

8/9/2022 8:27:14 PM

K

8/9/2022 8:05:59 PM

Electric is included but $100 above tenant paying different.

8/9/2022 7:48:15 PM

Electric is included?

Messages - Rental Jacob

8/9/2022 6:56:21 PM

Ok let me ask owner

8/9/2022 6:56:07 PM

1

8/9/2022 6:55:57 PM

How many people?

8/9/2022 6:55:42 PM

The owner paid $150 electric for tenant.

8/9/2022 6:39:37 PM

$1,600?

8/9/2022 6:39:32 PM

Can the price be negotiable

8/8/2022 10:50:53 AM

Egan ave

8/8/2022 10:50:35 AM

When can we show 1 bedroom

8/6/2022 7:57:53 PM

K

8/6/2022 12:43:29 AM

Hi Jacob the apartment unit key in the master lock already. Good night

8/5/2022 4:58:34 PM

Attachment not found:
68141830011__0AED9026-E83C-478A-A7F5-9BF9BA3A36E8.heic
(Image)

8/5/2022 4:58:15 PM

Attachment not found:
IMG_5015.heic (Image)

8/5/2022 3:37:40 PM

I'm here

8/5/2022 3:37:14 PM

I will be 15min late stop in traffic

8/5/2022 1:41:11 PM

Ok

8/5/2022 1:40:45 PM

Can u also print it

Messages - Rental Jacob

8/5/2022 1:39:02 PM

K

8/5/2022 1:38:57 PM

Let me check

8/5/2022 1:38:36 PM

You got the lease

8/5/2022 1:00:16 PM

K

8/5/2022 12:45:51 PM

Sent you by mistake.

8/5/2022 12:40:49 PM

The owner pay solar fee for tenant I think like $170 and water

8/4/2022 6:32:06 PM

*Attachment not found: IMG_7541.heic (Image)*

8/4/2022 6:23:03 PM

The first can't see and second paper who is that person

8/4/2022 6:22:29 PM

*Attachment not found: IMG_3268.PNG (Image)*

8/4/2022 6:22:27 PM

*Attachment not found: IMG_3269.PNG (Image)*

8/4/2022 5:34:03 PM

No

8/4/2022 5:33:48 PM

Any update

8/4/2022 4:30:02 PM

Can we sign the lease today

8/4/2022 3:31:00 PM

Ok

8/4/2022 3:28:51 PM

No basement

8/4/2022 3:28:32 PM

$3,600

Messages - Rental Jacob

8/4/2022 3:28:15 PM

3 people

8/4/2022 3:28:00 PM

*Attachment not found: IMG_6157.jpeg (Image)*

8/4/2022 3:28:00 PM

*Attachment not found: IMG_6156.jpeg (Image)*

8/4/2022 3:28:00 PM

*Attachment not found: IMG_6161.jpeg (Image)*

8/4/2022 3:27:53 PM

*Attachment not found: IMG_6160.jpeg (Image)*

8/4/2022 3:27:53 PM

*Attachment not found: IMG_6159.jpeg (Image)*

8/4/2022 3:27:49 PM

*Attachment not found: IMG_6158.jpeg (Image)*

8/4/2022 3:27:38 PM

*Attachment not found: IMG_6163.jpeg (Image)*

8/4/2022 3:27:38 PM

*Attachment not found: IMG_6162.jpeg (Image)*

8/4/2022 3:05:39 PM

Ok

8/4/2022 3:05:27 PM

Few min

8/4/2022 3:05:10 PM

Hey Jacob send me yesterday tenants paper too. So I can send both to owner.

8/4/2022 2:58:29 PM

Whole house $4,600

8/4/2022 2:58:19 PM

Family 6 people

8/4/2022 2:58:05 PM

Good credit

Remax - 231

Messages - Rental Jacob

8/4/2022 2:57:56 PM

Total income $160,000

8/4/2022 2:57:20 PM

You got it

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0411.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0410.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0413.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0415.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0409.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0419.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0414.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0417.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0405.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_6137.jpeg (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0406.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found:
IMG_0425.heic (Image)

Messages - Rental Jacob

8/4/2022 2:56:50 PM

Attachment not found: IMG_0424.HEIC (Image)

8/4/2022 2:56:50 PM

Attachment not found: IMG_0423.HEIC (Image)

8/4/2022 2:56:50 PM

Attachment not found: IMG_0418.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found: IMG_0416.heic (Image)

8/4/2022 2:56:50 PM

Attachment not found: IMG_0407.heic (Image)

8/4/2022 2:55:38 PM

Ok

8/4/2022 2:53:54 PM

I will send you now

8/3/2022 8:56:08 PM

For Eagan

8/3/2022 8:55:56 PM

I got deposit

8/3/2022 8:55:51 PM

Call me please

8/3/2022 8:55:48 PM

Hi

8/3/2022 9:06:49 AM

I think too early let ask owner are home or not.

8/3/2022 9:05:33 AM

4 pm

8/3/2022 8:41:59 AM

What time?

8/3/2022 8:41:39 AM

I have showing Egan ave

8/3/2022 8:41:26 AM

Can we do little early

Remax - 233

Messages - Rental Jacob

8/3/2022 7:59:37 AM

2128 72 street Brooklyn ny

8/2/2022 9:57:27 PM

WhTs the address

8/2/2022 9:20:39 PM

I see you tomorrow 7pm

8/1/2022 4:13:03 PM

K

8/1/2022 4:12:53 PM

Code#8510

8/1/2022 4:12:52 PM

*Attachment not found: IMG_3208.HEIC (Image)*

8/1/2022 9:12:51 AM

Ok

8/1/2022 9:10:34 AM

Hi Jacob
I see you 2:45pm today at 58 Eagan Ave Staten island ny 10312.

7/31/2022 3:29:09 PM

Any new listing

7/31/2022 3:29:04 PM

Hi

7/30/2022 12:18:37 PM

Give me a call

7/30/2022 11:58:31 AM

I forgot you not work today. Let me see tomorrow.

7/30/2022 10:49:23 AM

Hi Jacob
I just got the key for 58 Eagan Ave so you want to come over at 3:30pm.

7/27/2022 12:26:26 PM

Ok

7/27/2022 11:54:25 AM

Wait few more days they doing the painting for Eagan Ave.

7/27/2022 9:59:04 AM

New listing?

Messages - Rental Jacob

7/20/2022 12:20:23 PM



7/20/2022 12:02:59 PM

For 579 w caswell Ave the owner just call they have few tenants for 2 floor.

7/20/2022 12:01:57 PM

Hello, I'm sorry I missed your call. Please text me and I will reply shortly. Thanks

7/19/2022 11:14:55 AM

Next door

7/19/2022 11:14:47 AM

When can we show west Caswell ave

7/18/2022 7:51:41 PM

Lol

7/18/2022 7:51:37 PM

I'm here early

7/18/2022 7:51:22 PM

I will be there 8:30pm

7/18/2022 7:24:33 PM

I'll be there 8 pm

K

7/18/2022 6:48:31 PM

7/18/2022 6:48:26 PM

The owner ok and I see you 8:30pm

7/18/2022 5:27:27 PM

Ok

7/18/2022 5:27:02 PM

I just email owner

7/18/2022 5:26:35 PM

You got it

7/18/2022 5:22:18 PM

Ok

7/18/2022 5:22:13 PM

Let me check

Messages - Rental Jacob

7/18/2022 5:21:25 PM

8:30 pm confirmed

7/18/2022 5:21:21 PM

You got it

7/18/2022 5:21:13 PM

I send you the credit report

7/18/2022 5:07:44 PM

K

7/18/2022 5:05:54 PM

If owner ok and I am ok

7/18/2022 5:00:51 PM

Can we meet 8 pm for lease

7/18/2022 4:48:50 PM

Ok

7/18/2022 4:44:33 PM

If she see the credit report ok so tonight we can sign lease.

7/18/2022 4:41:06 PM

Send u shorty

7/18/2022 4:40:59 PM

K

7/18/2022 4:40:46 PM

She just call me

7/18/2022 4:40:38 PM

The owner want full credit report with name.

7/18/2022 3:33:02 PM

Ok

7/18/2022 3:33:01 PM

1 person only

7/18/2022 3:32:56 PM

$$2,600

7/18/2022 3:32:42 PM

How rent you told tenant $2700 or $2600

7/18/2022 3:28:53 PM

*Attachment not found: IMG_9590.heic (Image)*

Remax - 236

Messages - Rental Jacob

7/18/2022 3:28:29 PM

Attachment not found: IMG_9867.heic (Image)

7/18/2022 3:28:08 PM

Attachment not found: IMG_7526.heic (Image)

7/18/2022 3:27:51 PM

Attachment not found: IMG_4410.heic (Image)

7/18/2022 3:27:28 PM

Attachment not found: IMG_5862.jpeg (Image)

7/18/2022 3:26:40 PM

Attachment not found: IMG_0167.heic (Image)

7/18/2022 3:25:40 PM

Attachment not found: IMG_0163.heic (Image)

7/18/2022 3:25:40 PM

Attachment not found: IMG_0162.HEIC (Image)

7/17/2022 1:57:22 PM

Thank you

7/17/2022 1:57:10 PM

Yess shortly

7/17/2022 1:56:49 PM

Ok can you ask him income tax paper and credit report.

7/17/2022 1:50:13 PM

No pets

7/17/2022 1:50:10 PM

No kids

7/17/2022 1:50:06 PM

Construction

7/17/2022 1:50:02 PM

$140,000 income

7/17/2022 1:49:57 PM

1 person

Messages - Rental Jacob

7/17/2022 1:49:57 PM

*Attachment not found: IMG_4678.heic (Image)*

7/16/2022 11:21:44 PM

Ok

7/16/2022 11:21:19 PM

I'll let her know

7/16/2022 10:14:23 PM

321 Garretson Ave

7/16/2022 10:14:13 PM

*Attachment not found: IMG_3035.PNG (Image)*

7/16/2022 9:38:05 PM

Tomorrow

7/16/2022 9:37:57 PM

Hi

7/16/2022 2:08:13 PM

Hi Jacob what time tomorrow you will be in Staten Island so I can pick up money from you.

7/15/2022 12:46:26 PM

*Attachment not found: IMG_3017.PNG (Image)*

7/15/2022 12:38:10 PM

I will call her now

7/15/2022 12:33:50 PM

What is about accounting tenant last you told me.

7/15/2022 12:32:19 PM

Hi Jacob are you in Staten Island today around 1:30pm.

7/14/2022 3:34:57 PM

I call you few mins

7/14/2022 3:34:28 PM

She don't want the bed

7/14/2022 3:34:20 PM

I got the money

7/13/2022 7:44:13 PM

Few min

Remax - 238

Messages - Rental Jacob

7/13/2022 7:44:04 PM

Everybody here

7/13/2022 5:56:24 PM

👋

7/13/2022 5:56:18 PM

And 9 pm

7/13/2022 5:56:12 PM

Yes

7/13/2022 5:56:02 PM

See you tonight 8pm

7/12/2022 9:46:16 PM

Caswell

7/12/2022 9:46:12 PM

I told him tomorrow 9 pm for lease

7/12/2022 9:46:00 PM

Don't want to loose good clients

7/12/2022 9:45:51 PM

Call me after

7/12/2022 9:34:40 PM

Ok

7/12/2022 9:34:30 PM

Can I call you little later I am outside dinner.

7/12/2022 9:30:13 PM

Good Mexican

7/12/2022 9:30:07 PM

West Caswell

7/12/2022 9:29:56 PM

Can u call the owner

7/12/2022 9:28:19 PM

K

7/12/2022 9:28:14 PM

321 garretson ave confirmed tomorrow 8pm

7/12/2022 9:27:51 PM

He will bring also job letter also tomorrow

Messages - Rental Jacob

7/12/2022 9:27:27 PM

Mexican

7/12/2022 9:27:24 PM

Good people

7/12/2022 9:27:20 PM

For lease

7/12/2022 9:27:16 PM

Also 581 west caswell ave 9 pm

7/12/2022 9:26:43 PM

Tomorrow

7/12/2022 9:26:37 PM

321 garretson ave 8 pm confirmed

7/12/2022 9:21:58 PM

*Attachment not found: IMG_4252.HEIC (Image)*

7/12/2022 9:20:58 PM

*Attachment not found: IMG_5806.heic (Image)*

7/12/2022 9:19:45 PM

*Attachment not found: IMG_5805.HEIC (Image)*

7/12/2022 9:19:33 PM

581 west caswell ave

7/12/2022 9:19:33 PM

*Attachment not found: IMG_5802.HEIC (Image)*

7/12/2022 9:19:23 PM

*Attachment not found: IMG_5804.HEIC (Image)*

7/12/2022 9:19:23 PM

*Attachment not found: IMG_5801.HEIC (Image)*

7/12/2022 9:19:23 PM

*Attachment not found: IMG_5803.HEIC (Image)*

7/12/2022 11:53:44 AM

*Attachment not found: IMG_8499.heic (Image)*

Remax - 240

Messages - Rental Jacob

7/12/2022 11:52:59 AM

Attachment not found: IMG_8248.heic (Image)

7/12/2022 11:52:38 AM

Attachment not found: IMG_3208.heic (Image)

7/12/2022 11:52:15 AM

Showing few people

7/12/2022 11:52:07 AM

I have client today 8pm

7/12/2022 11:51:19 AM

Ok Jacob I call her after 5pm that is the time she get home from work. How about 581 west caswell Ave?

7/12/2022 11:46:30 AM

You call me what sup

7/12/2022 11:21:05 AM

Hello, I'm sorry I missed your call. Please text me and I will reply shortly. Thanks

7/10/2022 8:44:00 AM

That's crazy waste our time

7/10/2022 8:43:46 AM



7/9/2022 9:11:56 PM

Yes

7/9/2022 8:12:55 PM

I see you tomorrow 1:00pm

7/8/2022 12:20:03 PM

K

Remax - 241

Messages - Rental Jacob

7/8/2022 12:17:38 PM

Please give me a call

7/8/2022 12:16:50 PM

She said only lady tenant.

7/8/2022 12:01:16 PM

321 garretson

7/8/2022 12:01:09 PM

Any update

7/7/2022 10:25:39 PM

Any update with 321 garretson ave

7/7/2022 1:43:24 PM

Ok

7/7/2022 1:31:40 PM

Let me send to owner first that papers

7/7/2022 1:31:17 PM

K

7/7/2022 1:26:29 PM

Can ask him credit report

7/7/2022 1:25:55 PM

Jacob can ask him credit report

7/7/2022 1:24:19 PM

Ok

7/7/2022 1:24:04 PM

Attachment not found: IMG_5728.jpeg (Image)

7/7/2022 1:24:04 PM

Attachment not found: IMG_5729.jpeg (Image)

7/7/2022 1:24:04 PM

Attachment not found: IMG_5730.jpeg (Image)

7/7/2022 1:24:04 PM

Attachment not found: IMG_5731.jpeg (Image)

7/7/2022 1:23:28 PM

Attachment not found: 67890739931__4696D950-D080-4642-B796-A80FBFC3B7AF.HEIC (Image)

Messages - Rental Jacob

7/7/2022 1:22:58 PM

Can not see

7/7/2022 1:22:14 PM

K

7/7/2022 1:22:08 PM

Ok I will send over to owner

7/7/2022 1:21:19 PM

For 321 garrisons ave

7/7/2022 1:21:05 PM

I send you the other paperwork

7/7/2022 12:37:11 PM

Ok 👍

7/7/2022 12:35:41 PM

Confirmed 1:00 pm Sunday for lease 👍

7/7/2022 12:35:19 PM

*Attachment not found: IMG_5717.jpeg (Image)*

7/7/2022 12:35:00 PM

581 west caswell sunday 1pm for lease

7/7/2022 11:42:01 AM

*Attachment not found: IMG_6052.heic (Image)*

7/7/2022 11:37:43 AM



7/7/2022 11:29:18 AM

*Attachment not found: IMG_5715.jpeg (Image)*

7/7/2022 11:17:17 AM

Fdny and Amazon

Messages - Rental Jacob

7/7/2022 11:17:08 AM

He has 2 jobs

7/7/2022 11:16:17 AM

Let me check

7/7/2022 11:15:20 AM

I send you the paperwork

7/7/2022 11:12:35 AM

yydoinoy@hotmail.com

7/7/2022 11:07:57 AM

How much deposit she paid

7/7/2022 11:06:09 AM

She paid me deposit

7/7/2022 11:05:12 AM

Attachment not found:
IMG_5714.jpeg (Image)

7/7/2022 9:03:54 AM



7/7/2022 8:38:37 AM

Good morning Jacob
For 581 w Caswell Ave 1 floor sign lease today 8pm is confirmed yet.

7/3/2022 6:55:20 PM

Because he also wants parking

7/3/2022 6:55:08 PM

They want to think about it till tomorrow

7/3/2022 6:49:42 PM

He owns company Lenscaping

7/3/2022 6:43:51 PM

Attachment not found:
IMG_0235.heic (Image)

7/3/2022 6:43:44 PM

Can you ask them credit report with them name on the paper.

7/3/2022 6:43:41 PM

Attachment not found:
IMG_9965.heic (Image)

Messages - Rental Jacob

7/3/2022 6:43:07 PM

Still no name on the credit report.

7/3/2022 6:36:59 PM

Attachment not found: IMG_5634.jpeg (Image)

7/3/2022 6:36:15 PM

Attachment not found: IMG_5633.jpeg (Image)

7/3/2022 6:36:15 PM

Attachment not found: IMG_5632.HEIC (Image)

7/3/2022 6:36:07 PM

Attachment not found: IMG_5629.HEIC (Image)

7/3/2022 6:36:07 PM

Attachment not found: IMG_5630.HEIC (Image)

7/3/2022 6:36:07 PM

Attachment not found: IMG_5631.HEIC (Image)

7/2/2022 11:40:32 PM

Ok

7/2/2022 11:40:02 PM

Confirmed

7/2/2022 11:40:00 PM

Thursday 8 pm

7/2/2022 11:37:43 PM

Ok

7/2/2022 11:37:30 PM

Vacation

7/2/2022 11:37:17 PM

Look like she not in USA

7/2/2022 11:37:11 PM

Let me ask

7/2/2022 11:36:47 PM

What time Thursday?

Remax - 245

Messages - Rental Jacob

7/2/2022 11:35:52 PM

*Attachment not found: IMG_5623.jpeg (Image)*

7/2/2022 11:35:10 PM

She just text me

7/2/2022 11:34:44 PM

*Attachment not found: IMG_5622.jpeg (Image)*

7/2/2022 10:35:31 PM

Ok 👍

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5615.jpeg (Image)*

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5621.jpeg (Image)*

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5620.jpeg (Image)*

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5619.jpeg (Image)*

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5616.jpeg (Image)*

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5617.jpeg (Image)*

7/2/2022 10:33:00 PM

*Attachment not found: IMG_5618.jpeg (Image)*

7/2/2022 10:25:29 PM

You forgot

7/2/2022 10:25:19 PM

No husband income

7/2/2022 10:19:16 PM



Messages - Rental Jacob

7/2/2022 10:19:16 PM

What you mean 11:00am

7/2/2022 10:19:06 PM



7/2/2022 10:19:03 PM

Yes

7/2/2022 10:18:59 PM

12pm tomorrow

7/2/2022 10:18:34 PM

Confirmed 12 pm tomorrow

7/2/2022 10:17:52 PM

Confirmed 11 am

7/2/2022 10:17:13 PM

3 emails

7/2/2022 10:15:04 PM

Let me check

7/2/2022 10:14:47 PM

You got it

7/2/2022 10:14:43 PM

I send you the paperwork

7/2/2022 10:10:15 PM

She works at the hospital

7/2/2022 10:10:08 PM

I will text my client right now

7/2/2022 10:09:37 PM

Hey Jacob what time you going email me the paperwork because the owner going to bed at 11:00am she just call.

7/1/2022 8:22:10 PM

Not to late.

7/1/2022 8:02:07 PM

I will send you the paperwork tomorrow night

7/1/2022 8:46:36 AM

K

Messages - Rental Jacob

7/1/2022 8:46:25 AM

Let me email to the owner first

7/1/2022 8:45:36 AM

I will prepare the lease

7/1/2022 8:45:21 AM

Ok

7/1/2022 8:45:10 AM

This for 2 floor

7/1/2022 8:44:54 AM

Ok

7/1/2022 8:44:27 AM

She will also send me job letter shortly

7/1/2022 8:44:09 AM

Mom works for school bus she get half cash and check

7/1/2022 8:42:06 AM

Can I call you later?

7/1/2022 8:38:47 AM

Sunday 11 am confirmed

7/1/2022 8:38:23 AM

For 2floor

7/1/2022 8:38:09 AM

*Attachment not found: IMG_5542.jpeg (Image)*

7/1/2022 8:38:09 AM

*Attachment not found: IMG_5541.jpeg (Image)*

7/1/2022 8:36:52 AM

*Attachment not found: IMG_5393.jpeg (Image)*

7/1/2022 8:36:52 AM

*Attachment not found: IMG_5394.jpeg (Image)*

7/1/2022 8:36:52 AM

*Attachment not found: IMG_5392.jpeg (Image)*

7/1/2022 8:36:25 AM

*Attachment not found: IMG_5390.jpeg (Image)*

Messages - Rental Jacob

7/1/2022 8:36:25 AM

Attachment not found: IMG_5391.jpeg (Image)

7/1/2022 8:36:04 AM

Attachment not found: IMG_5534.jpeg (Image)

7/1/2022 8:36:04 AM

Attachment not found: IMG_5533.jpeg (Image)

7/1/2022 8:36:04 AM

Attachment not found: IMG_5535.jpeg (Image)

7/1/2022 8:35:55 AM

Attachment not found: IMG_6158.heic (Image)

6/30/2022 10:51:54 PM

Ok

6/30/2022 10:51:46 PM

They will send me shortly

6/30/2022 10:51:18 PM

For 581 w caswell Ave 1 floor you have income and credit report now and if you do please email me so I can email to owner.

6/30/2022 10:47:05 PM

K

6/30/2022 10:44:44 PM

321 Garretson Ave the owner said no pet.

6/30/2022 8:55:40 PM



6/30/2022 8:55:22 PM

Yes

6/30/2022 8:55:16 PM

Don't forgot email me income and credit report. Thank you

6/30/2022 8:53:39 PM

Sunday 12 pm confirmed for lease

Messages - Rental Jacob

6/30/2022 8:53:39 PM

Attachment not found: IMG_5531.HEIC (Image)

6/30/2022 8:50:31 PM

Attachment not found: IMG_5532.HEIC (Image)

6/30/2022 8:46:01 PM

Call me

6/30/2022 3:21:08 PM

Garretson ave small pet ok

6/29/2022 9:07:52 PM

Call me

6/28/2022 6:03:09 AM

K

6/28/2022 1:01:09 AM

Code#8510

6/27/2022 8:18:30 PM

Before

6/27/2022 8:18:26 PM

Can I go there to take pics

6/27/2022 8:17:00 PM

I still in Bklyn and I will be there 9pm

6/27/2022 8:16:24 PM

I should be there 8:30 pm

6/27/2022 11:57:51 AM



6/27/2022 11:57:43 AM

K

6/27/2022 11:57:22 AM

I see you tonight 9:00pm
321 Garretson Ave Staten Island NY 10305

6/27/2022 10:29:29 AM

Ok

6/27/2022 10:22:55 AM

Good morning Jacob the owner said lower price 2nd floor $2600

Messages - Rental Jacob

6/27/2022 10:09:49 AM

581 west caswell ave

6/27/2022 10:09:42 AM

I will meet my client 11 am

6/27/2022 10:09:32 AM

Good morning

6/25/2022 10:21:32 PM

Thank you

6/25/2022 10:21:26 PM

Ok

6/25/2022 10:21:21 PM

Can you email me tenants income information when you get home.

6/25/2022 9:55:05 PM

I send you the lease

6/25/2022 9:52:00 PM

Tenants income information and the lease

6/25/2022 9:49:35 PM

And Id

6/25/2022 9:49:32 PM

I send you the credit report

6/25/2022 9:49:15 PM

Ok

6/25/2022 9:49:01 PM

I'm checking the email now

6/25/2022 9:48:29 PM

Hey Jacob forgot send me email

6/25/2022 2:42:19 PM



6/25/2022 2:42:04 PM

Ok tonight

6/25/2022 2:40:08 PM

The owner call me two time already. They need to see it then sign the lease.

Remax - 251

Messages - Rental Jacob

6/25/2022 2:38:24 PM

Tonight

6/24/2022 9:00:59 PM

Hi Jacob
When you have time please email me tenants income information and the lease for 581 w caswell Ave. Thank you

6/24/2022 12:48:23 PM

2 min

6/24/2022 12:47:09 PM

I'm here

6/24/2022 11:56:29 AM

K

6/24/2022 11:54:54 AM

See you 1:00pm

6/23/2022 4:11:12 PM

Ok

6/23/2022 4:08:21 PM

The owner just confirmed. See you tomorrow 1:00pm

6/23/2022 3:55:04 PM

346 55 st 1:00 pm tomorrow

6/23/2022 3:49:06 PM

You want go there see the apartments.

6/23/2022 3:47:59 PM

1bathroom

6/23/2022 3:47:50 PM

2 baths

6/23/2022 3:47:45 PM

3bedrooms

6/23/2022 3:47:44 PM

How many bedrooms

6/23/2022 3:47:37 PM

346 55th street Brooklyn
The owner pay utilities electric and gas ask $2300-2500.

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2838.JPG (Image)*

Messages - Rental Jacob

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2839.JPG (Image)*

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2840.JPG (Image)*

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2841.JPG (Image)*

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2842.JPG (Image)*

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2843.JPG (Image)*

6/23/2022 3:46:37 PM

*Attachment not found: IMG_2844.JPG (Image)*

6/23/2022 3:29:30 PM

They will bring all tomorrow

6/23/2022 3:29:12 PM

$150,000 total

6/23/2022 3:28:58 PM

I just see the credit report and how many there income any proof of income.

6/23/2022 3:28:00 PM

Can we sign the lease tomorrow 12 pm

6/23/2022 3:20:01 PM

*Attachment not found: IMG_5391.jpeg (Image)*

6/23/2022 3:20:01 PM

*Attachment not found: IMG_5390.jpeg (Image)*

6/23/2022 3:18:05 PM

*Attachment not found: IMG_6471.heic (Image)*

6/23/2022 3:17:05 PM

I send you the credit report

Messages - Rental Jacob

6/23/2022 12:19:03 PM



6/23/2022 12:18:52 PM

I will send you shortly

6/23/2022 12:18:40 PM

Hi Jacob you forgot email me tenant information.

6/22/2022 3:06:20 PM

For both apartments

6/22/2022 3:06:16 PM

Let him buy fridge

6/21/2022 9:26:05 AM

Ok

6/21/2022 9:25:43 AM

Send u the lease

6/20/2022 10:59:30 PM

Ok

6/20/2022 10:48:52 PM



6/20/2022 10:25:31 PM

My client want to reschedule for lease Sunday after 1 pm

6/20/2022 10:22:51 PM

Call me please

6/20/2022 5:37:34 PM

K

6/20/2022 5:37:23 PM

Thank you

Messages - Rental Jacob

6/20/2022 5:37:18 PM

Owner said add above words in the lease. And email me lease tonight. The owner can take a look.

6/20/2022 5:31:52 PM

Ok

6/20/2022 5:31:39 PM

The owner ok $3100 but they have to do remove snow front house and driveway and they use back yard very little grass they need to cut.

6/20/2022 2:58:09 PM

Hey call me please

6/20/2022 2:47:21 PM

Call me please

6/20/2022 1:32:37 PM



6/20/2022 1:32:24 PM

I'll fix it

6/20/2022 1:32:11 PM

The lease expire date is wrong still be June 30,2023 the first and last page.

6/20/2022 7:30:19 AM

Ok

6/20/2022 6:02:38 AM

And lease

6/20/2022 6:02:33 AM

I send you credit reports

6/19/2022 11:26:35 PM

Ok

6/19/2022 11:26:21 PM

She goes to college

6/19/2022 11:26:02 PM

The daughter didn't have income.

6/19/2022 11:12:04 PM

Ok

6/19/2022 11:11:57 PM

Good people

Remax - 255

Messages - Rental Jacob

6/19/2022 11:11:45 PM

Good jobs

6/19/2022 11:11:40 PM

Pilot and engineer

6/19/2022 11:11:32 PM

Ok I going to email to owner now

6/19/2022 11:10:58 PM

Okay great

6/19/2022 11:10:55 PM

Yes

6/19/2022 11:10:50 PM

You got it

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5298.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5297.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5296.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5295.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5294.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5293.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5292.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5291.jpeg (Image)

6/19/2022 11:10:34 PM

Attachment not found:
IMG_5290.jpeg (Image)

Messages - Rental Jacob

6/19/2022 11:10:34 PM



6/19/2022 11:05:57 PM

I will bring the lease

6/19/2022 11:05:51 PM

See u Tuesday 11:00 am

6/19/2022 11:05:26 PM

Yes

6/19/2022 11:04:11 PM

Check your email

6/19/2022 11:04:11 PM

You got it

6/19/2022 11:04:11 PM

Attachment not found: IMG_5285.HEIC (Image)

6/19/2022 11:04:11 PM

Attachment not found: IMG_0199.heic (Image)

6/19/2022 11:04:11 PM



Messages - Rental Jacob

6/19/2022 11:04:11 PM



6/19/2022 11:00:25 PM

I send you the paperwork

6/18/2022 9:24:28 PM

Okay great

6/18/2022 12:19:26 PM

Hi Jacob the combination lock #8510

6/17/2022 5:32:12 PM



6/17/2022 5:31:31 PM

I call you few time no answer

6/17/2022 5:29:47 PM

Call me please

6/17/2022 10:43:32 AM

What's the code

6/17/2022 10:43:28 AM

Are u here

6/17/2022 10:40:00 AM

Ok

Messages - Rental Jacob

6/17/2022 10:38:22 AM

I'm here

6/17/2022 10:37:09 AM

I
Her

6/17/2022 9:58:55 AM

Ok

6/17/2022 9:58:39 AM

Ok let me try I can make there little early.

6/17/2022 9:57:52 AM

Little early

6/17/2022 9:57:48 AM

I'll be there 10:30 am

6/17/2022 9:57:46 AM

See you 11:00am

6/17/2022 9:57:28 AM

See u soon

6/16/2022 9:59:28 PM

Okay 👍

6/16/2022 9:59:13 PM

6/6 house 2 families new construction. See you tomorrow 11:00am

6/16/2022 9:58:57 PM

How much

6/16/2022 9:57:13 PM

581 west caswell Ave Staten Island ny 10314

6/12/2022 11:40:26 AM

Ok

6/12/2022 11:39:14 AM

Husband phone number

6/12/2022 11:38:47 AM

*Attachment not found: IMG_2776.PNG (Image)*

6/12/2022 11:34:58 AM

Hi

6/12/2022 11:34:26 AM

Hi Jacob please give me a call

Messages - Rental Jacob

6/1/2022 9:20:29 AM

Okay 👍

6/1/2022 9:19:50 AM

Come soon the bank attorney keep delay. Do not worry all my listing will go with you 🤝

6/1/2022 8:00:57 AM

Good morning. you have new listings

5/29/2022 9:23:05 PM



5/29/2022 9:07:10 PM

It's ok

5/29/2022 9:07:06 PM

My wife called already

5/29/2022 9:06:53 PM

Hi Jacob you call his husband today.

5/28/2022 11:16:11 PM

Ok Thank you

5/28/2022 9:08:44 PM

I will call him

5/28/2022 12:47:38 PM

For 98 Russell Ave the piper is not leaking now and her husband said in future will be leaking, and ask owner to replace. I think that her husband is trouble maker.

5/28/2022 12:03:50 PM



Messages - Rental Jacob

5/28/2022 12:03:50 PM



5/26/2022 2:02:27 PM

347-609-1556.  That wife number

5/23/2022 10:03:30 AM

lol

5/23/2022 10:03:28 AM

I know

5/23/2022 10:03:22 AM

The bank too slow

5/23/2022 10:03:07 AM

K

5/23/2022 10:03:00 AM

Waiting to closing

5/23/2022 10:02:30 AM

Any new listings

5/23/2022 10:02:27 AM

Good morning

5/19/2022 12:35:14 PM

K

5/19/2022 12:33:02 PM

Come soon

5/19/2022 11:42:20 AM

Any new listings

5/19/2022 11:42:15 AM

Good morning

Messages - Rental Jacob

5/16/2022 7:26:38 AM

K

5/16/2022 7:26:29 AM

Good morning See you at 10:00am

5/15/2022 1:02:21 PM

👌

5/15/2022 12:57:06 PM

See u 2:00 pm

5/15/2022 11:53:16 AM

You got the lease

5/15/2022 11:26:44 AM

Email me the lease and I let her son see it and if he want to add somethings.

5/15/2022 11:16:09 AM

2pm confirmed

5/13/2022 7:58:54 PM

The owner son just call me said that tenant their income have problem. He scare that tenant can't pay the rent. He want our find new tenant.

5/13/2022 7:27:22 PM

I got it. Thank you

5/13/2022 7:26:27 PM

You got it

5/13/2022 7:26:23 PM

Send

5/13/2022 7:25:42 PM

Yes

5/13/2022 7:25:04 PM

That's ur email ?

5/13/2022 7:25:00 PM

yydoinoy@hotmail.com

5/13/2022 6:19:53 PM

Ok

5/13/2022 6:17:32 PM

*Attachment not found: IMG_4699.jpeg (Image)*

Remax - 262

Messages - Rental Jacob

5/13/2022 5:50:49 PM

You can't send over tonight because the owner son want to see it.

5/13/2022 5:46:28 PM

I'll send you the paperwork tomorrow night

5/13/2022 8:52:15 AM

Ok

5/13/2022 8:51:54 AM

I have good client

5/13/2022 8:51:48 AM

Can u come too

5/13/2022 8:51:28 AM

The code#8510

5/13/2022 7:49:17 AM

See u 11:00 am

5/13/2022 7:49:14 AM

Good morning

5/12/2022 10:37:23 AM

👍

5/12/2022 10:35:58 AM

Tomorrow 11:00 am confirmed

5/12/2022 9:33:22 AM

Ok

5/12/2022 9:31:03 AM

K

5/12/2022 9:30:57 AM

I am here already

5/12/2022 9:28:28 AM

I'll be there 10 min

5/11/2022 6:25:48 PM

10am

5/11/2022 6:25:44 PM

Sorry

5/11/2022 6:25:35 PM

10 am

Messages - Rental Jacob

5/11/2022 6:24:53 PM

See tomorrow 10pm.

5/11/2022 6:24:35 PM

98 Russell st Staten Island ny 10308

4/23/2022 9:43:51 PM

Ok

4/23/2022 9:41:00 PM

Come soon

4/23/2022 9:35:10 PM

Any new listings

3/23/2022 10:49:53 PM

You are welcome

3/23/2022 10:49:19 PM

Thank you

3/23/2022 10:49:13 PM

Tax

3/23/2022 10:49:04 PM

NP take care baby

3/23/2022 10:48:46 PM

Ok

3/23/2022 10:48:45 PM

Thank you 🙏

3/23/2022 10:48:36 PM

Yes please

3/23/2022 10:48:19 PM

You want me to print the lease tomorrow?

3/23/2022 10:35:58 PM

Ok

3/23/2022 10:35:54 PM

Got it
Let me sent to owner

3/23/2022 10:35:10 PM

Ok

3/23/2022 10:35:05 PM

Check again

Messages - Rental Jacob

3/23/2022 10:33:20 PM

Attachment not found: 66978198167__01BAC393-69DC-496D-A085-361306C33E5E.HEIC (Image)

3/23/2022 10:31:35 PM

I can't open up

3/23/2022 10:30:28 PM

Sorry let me see

3/23/2022 10:19:35 PM

??

3/23/2022 10:15:31 PM

You got the lease

3/23/2022 7:58:12 PM



3/23/2022 7:57:58 PM

Lol 

3/23/2022 7:57:39 PM

Next year one more baby so make half dozen 

3/23/2022 7:56:35 PM



3/23/2022 7:56:22 PM

Attachment not found: IMG_3858.heic (Image)

3/23/2022 7:56:16 PM

Girl

3/23/2022 7:55:46 PM

Hey Jacob my wife ask me your new baby is boy or girl because I forgot you told today.😂

3/23/2022 7:49:56 PM

Okay 

Messages - Rental Jacob

3/23/2022 7:49:36 PM

Hey Jacob
The owner want add on the lease
- no use drug inside the house.
after you finish the lease can you email me one so I let the owner review it.

3/23/2022 5:12:49 PM

*Attachment not found: IMG_3861.jpeg (Image)*

3/23/2022 5:09:55 PM

The sister is account manager and how about other two?

3/23/2022 5:08:55 PM

I'll send you now

3/23/2022 5:08:09 PM

I just look my email you side three people but I only see two ID

3/23/2022 5:08:04 PM

He is Account manager sister is Costomer service

3/23/2022 5:06:48 PM

Yes

3/23/2022 5:06:37 PM

Can you ask tenant what kind jobs they work for. The owner ask me

3/23/2022 4:46:50 PM

Lease signing

3/23/2022 4:46:47 PM

See u tomorrow 7 pm

3/22/2022 1:15:45 PM

Np 🤝

3/22/2022 1:15:33 PM

Confirmed

3/22/2022 1:15:30 PM

Please

3/22/2022 1:14:34 PM

I think ok but still need to call the owner tonight.

3/22/2022 1:13:16 PM

Confirmed

3/22/2022 1:13:12 PM

For lease signing

Remax - 266

Messages - Rental Jacob

3/22/2022 1:13:09 PM

7 pm Thursday

3/22/2022 12:54:46 PM

You got the paperwork

3/22/2022 12:46:20 PM

Ok

3/22/2022 12:45:54 PM

Just send

3/22/2022 12:40:05 PM

?

3/22/2022 12:40:03 PM

That's ur email

3/22/2022 12:40:00 PM

yydoinoy@hotmail.com

3/22/2022 12:39:26 PM

Send me ur email

3/22/2022 12:24:39 PM

For my client

3/22/2022 12:24:29 PM

I will send the paperwork

3/16/2022 7:24:00 PM

Code# 8510

3/16/2022 6:50:47 PM

My client is here

3/16/2022 6:50:43 PM

Hurry

3/16/2022 6:50:32 PM

I still 15min

3/16/2022 6:49:44 PM

I'm here

3/16/2022 11:45:32 AM



Messages - Rental Jacob

3/16/2022 11:22:03 AM

See u 7 pm

3/16/2022 8:44:23 AM

?

3/16/2022 8:32:14 AM

That's right ?

3/16/2022 8:31:25 AM

?

3/16/2022 8:31:21 AM

3 bedrooms 2 baths with parking and backyard has washer dryer $3,000

3/16/2022 8:20:55 AM

Ok

3/15/2022 12:05:06 PM

166 mill rd staten island ny 10306

3/14/2022 3:47:06 PM

Ok

3/14/2022 3:28:45 PM

Yes call you later

3/14/2022 3:25:19 PM

Any new listing

3/14/2022 3:25:15 PM

Hi

3/14/2022 3:25:13 PM

Jin

2/12/2022 7:57:18 PM

Oh k

2/12/2022 7:57:12 PM

Still waiting closing.

2/12/2022 7:55:30 PM

U have

2/12/2022 7:55:27 PM

I need whole house

2/12/2022 7:55:22 PM

Hi

Messages - Rental Jacob

2/4/2022 1:56:12 PM

Ok

2/4/2022 1:15:37 PM

Hi Jacob
21th Ave is rent out already.

2/4/2022 11:54:11 AM

Now

2/4/2022 11:54:09 AM

Can I show the Bensonhurst 3 bedrooms

1/31/2022 8:49:30 PM

Okay

1/31/2022 8:47:11 PM

In future all my rental I will call you.

1/31/2022 8:45:59 PM

👍

1/31/2022 8:45:38 PM

🙏

1/31/2022 8:45:37 PM

👍

1/31/2022 8:45:15 PM

I will call you after she close and you are my partner. 😂

1/31/2022 8:42:24 PM

Okay

1/31/2022 8:42:00 PM

My buyer still not close yet

1/31/2022 8:41:49 PM

Ill see

1/31/2022 8:41:39 PM

No wait three more week

Messages - Rental Jacob

1/31/2022 8:21:43 PM

Staten Island

1/31/2022 8:21:40 PM

You have 3 bedrooms

1/30/2022 11:23:00 AM

BMW

1/30/2022 11:22:53 AM

U see x7

1/30/2022 11:22:41 AM

I am here too

1/30/2022 11:22:10 AM

I'mhere

1/30/2022 11:01:01 AM

Ok

1/30/2022 11:00:40 AM

132 buffalo street staten island ny 10306

1/29/2022 6:04:30 PM

K

1/29/2022 6:03:35 PM

Tomorrow I will be there 11:00am

1/29/2022 6:02:25 PM

Hi Jacob
271 Moreland St, Staten Island, NY 10306

1/29/2022 5:57:22 PM

How are you.

1/27/2022 11:07:16 PM

Good night

1/27/2022 11:07:09 PM

Good night

1/27/2022 11:07:02 PM

Ok

1/27/2022 11:06:47 PM

I'll see u Sunday

1/27/2022 11:06:33 PM

Which date you have time to give you $975 cash.

Remax - 270

Messages - Rental Jacob

1/27/2022 11:03:42 PM

Yes

1/27/2022 11:03:38 PM

That is right

1/27/2022 11:03:19 PM

Today I need to give you $975

1/27/2022 11:01:36 PM

Total balance owe   $8,350

1/27/2022 11:00:26 PM

Today he  pay you ($500-$2950=$2450) tomorrow I collect $2450 right.

1/27/2022 10:56:32 PM



1/27/2022 10:56:14 PM

Yes

1/27/2022 10:55:51 PM



1/27/2022 10:55:48 PM

5 pm confirmed

1/27/2022 10:55:29 PM

You got it

1/27/2022 10:55:21 PM

Ok Thank you

1/27/2022 10:54:43 PM



Messages - Rental Jacob

1/27/2022 10:54:34 PM

Again

1/27/2022 10:54:33 PM

Send

1/27/2022 10:47:21 PM

👍

1/27/2022 10:46:42 PM

My wife will fix it now

1/27/2022 10:42:53 PM

Which #

1/27/2022 10:41:38 PM

It Says that they need to put insurance for the pool

1/27/2022 10:41:12 PM

Last page

1/27/2022 10:41:00 PM

Yes

1/27/2022 10:40:29 PM

Can you add the tenant need to buy the pool insurance and tenant need to make copy of insurance policy to owner.

1/27/2022 10:26:36 PM

Ok

1/27/2022 10:26:16 PM

For you

1/27/2022 10:26:13 PM

Print it out

1/27/2022 10:26:05 PM

I send you the lease

1/27/2022 9:16:37 PM

Ok 👍

1/27/2022 9:15:24 PM

Ok NP drive carefully.

1/27/2022 9:13:39 PM

Ok I will email it to you tonight. I'm still driving will have my wife prepare it when we get home.

Messages - Rental Jacob

1/27/2022 9:12:09 PM

Hi Jacob the owner just call me she want to see the lease for 2nd floor. If you finish the lease please let me know.

1/27/2022 6:10:17 PM

*Attachment not found: IMG_2872.HEIC (Image)*

1/27/2022 5:48:24 PM

8510

1/27/2022 5:11:11 PM

Running late

1/27/2022 5:08:30 PM

I'll be there

1/27/2022 5:08:27 PM

6 pm

1/26/2022 7:49:12 PM

I'm here

1/26/2022 7:47:49 PM

Ok

1/26/2022 7:47:40 PM

I have 3 clients

1/26/2022 7:47:40 PM

NP

1/26/2022 7:47:35 PM

1 min

1/26/2022 7:47:33 PM

Ok

1/26/2022 7:47:19 PM

I am here

1/26/2022 1:56:26 PM

Ok

1/26/2022 1:56:21 PM

Ok see you 8pm

1/26/2022 1:49:34 PM

Today

1/26/2022 1:49:31 PM

277 Seguine ave 8:00 pm

Messages - Rental Jacob

1/25/2022 3:20:21 PM

Ok

1/25/2022 3:19:17 PM

I will be there 4:15

1/25/2022 3:18:57 PM

4 pm

1/25/2022 3:18:36 PM

I will be 15 mins late stop on the Traffic.

1/24/2022 6:43:32 PM

Ok

1/24/2022 6:43:28 PM

No

1/24/2022 6:43:19 PM

Upstairs the tenant want the small bed in the middle room.

1/24/2022 6:23:53 PM

Ok

1/24/2022 6:23:43 PM

5 min

Traffic

1/24/2022 5:51:41 PM

I'll be there 6:20 pm

1/24/2022 5:51:37 PM

1/24/2022 12:52:03 PM

Ok

1/24/2022 12:51:57 PM

Check again

1/24/2022 12:51:26 PM

That is my email

1/24/2022 12:51:20 PM

yydoinoy@hotmail.com

1/24/2022 12:51:08 PM

No

1/24/2022 12:48:09 PM

You got it

Remax - 274

Messages - Rental Jacob

1/24/2022 12:48:06 PM

For 1 bedroom

1/24/2022 12:47:57 PM

I send you the paperwork

1/24/2022 11:05:10 AM

See u 6:00 pm and 6:30 pm

1/24/2022 11:05:01 AM

My client will bring the paperwork tonight

1/23/2022 7:36:11 PM

Good night

1/23/2022 7:28:59 PM

Good night

1/23/2022 7:28:44 PM

Ok

1/23/2022 7:28:41 PM

Yes

1/23/2022 7:28:32 PM

You going to do agreement paper for her right.

1/23/2022 7:26:58 PM

👍

1/23/2022 7:26:55 PM

Ok

1/23/2022 7:26:15 PM

See
U tomorrow 6:00 pm

1/23/2022 7:26:02 PM

Doctor

1/23/2022 7:25:55 PM

*Attachment not found:
IMG_2809.jpeg (Image)*

1/23/2022 7:25:45 PM

The lady from downstairs will send me the tax return tomorrow from her accountant

1/23/2022 4:14:08 PM

Parking

Remax - 275

Messages - Rental Jacob

1/23/2022 4:14:02 PM

I am here too

1/23/2022 4:13:35 PM

I'm here early

1/23/2022 1:23:19 PM

Liked "Yes "

1/23/2022 1:20:41 PM

Yes

1/23/2022 1:19:50 PM

Hi Jacob
See you tonight 4:30pm.

1/21/2022 2:43:36 PM

Ok

1/21/2022 2:43:18 PM

Sunday 4:30 pm

1/21/2022 2:23:01 PM

Sunday

1/21/2022 2:11:41 PM

Hi Jacob
Today you have any appointment for 277 seguine ave

1/20/2022 12:21:28 PM

Talking to the client

1/20/2022 12:21:22 PM

Call u few min

1/20/2022 12:19:50 PM

Waiting for confirmation

1/20/2022 12:18:37 PM

Hi Jacob
Any showing today?

1/19/2022 11:17:04 AM

Ok

1/19/2022 11:14:51 AM

I'm here also

1/19/2022 11:14:37 AM

Hi Jacob
I am here inside the house.

Messages - Rental Jacob

1/18/2022 6:42:19 PM

11:45 pm

1/18/2022 6:42:09 PM

Can you make 12:00pm and 5:30pm

1/18/2022 6:38:03 PM

Confirmed

1/18/2022 6:37:59 PM

Tomorrow 11:30 am and 5:30 pm

1/18/2022 6:37:49 PM

Hi

1/18/2022 12:02:00 PM

NP

1/18/2022 12:01:36 PM

Sorry

1/18/2022 12:01:35 PM

1 min

1/18/2022 11:47:27 AM

Ok

1/18/2022 11:47:17 AM

Yes

1/18/2022 11:47:10 AM

Are u still there

1/18/2022 11:47:05 AM

I'll be there 6 min

1/18/2022 11:17:09 AM

Ok drive safe.

1/18/2022 11:16:27 AM

Traffic is bad

1/18/2022 11:16:22 AM

I'll be there 11:45 pm

1/18/2022 10:26:47 AM

Ok

1/18/2022 10:26:40 AM

Few min

Messages - Rental Jacob

1/18/2022 10:24:26 AM

Nobody answer the phone

1/18/2022 10:23:26 AM

Ok

1/18/2022 10:09:15 AM

+1 (718) 866-5432 client

1/18/2022 10:07:42 AM

My client will be there 10:30 am

1/18/2022 10:07:35 AM

Hi

1/18/2022 7:30:40 AM

Thanks

1/18/2022 7:30:35 AM

Rd

1/18/2022 7:30:22 AM

Ok 11:30am but I will be there 10:30am.

1/18/2022 7:28:41 AM

Good morning can we do 11:30 am

1/16/2022 2:03:26 PM

Yes see you Tuesday 10:30am

1/16/2022 2:02:59 PM

10:30 am

1/16/2022 2:02:47 PM

Confirmed Tuesday

When can I show

1/15/2022 5:49:46 PM

1/15/2022 5:49:00 PM

277 Seguine Avenue, Staten Island, NY 10309

1/15/2022 5:46:01 PM

What's the address

1/15/2022 5:45:54 PM

Hi

1/14/2022 7:47:04 PM

Same house also have studio for rent and Tenant pay electrical and gas. Asking $1100 with parking

Messages - Rental Jacob

1/14/2022 7:46:11 PM

Sorry tenant pay both electrical and gas.

1/14/2022 7:43:43 PM

Tenant pay electrical and owner pay gas

1/14/2022 7:40:50 PM

No swim pool

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1958.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1972.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1968.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1973.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1962.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1965.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1964.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1971.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1966.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1957.JPG (Image)*

1/14/2022 7:40:20 PM

*Attachment not found: IMG_1970.JPG (Image)*

Messages - Rental Jacob

1/14/2022 7:40:20 PM

Attachment not found:
IMG_1969.JPG (Image)

1/14/2022 7:40:20 PM

Attachment not found:
IMG_1960.JPG (Image)

1/14/2022 7:40:20 PM

Attachment not found:
IMG_1967.JPG (Image)

1/14/2022 7:40:20 PM

Attachment not found:
IMG_1961.JPG (Image)

1/14/2022 7:40:20 PM

Attachment not found:
IMG_1963.JPG (Image)

1/14/2022 7:39:58 PM

Hi Jacob
3 bedrooms 2.5 bathrooms and backyard with parking and washer and dryer 2nd floor and 1 floor and half basement asking $2950.

12/31/2021 5:40:44 PM

Happy New Year

12/31/2021 5:40:22 PM

🥳🎉

12/31/2021 4:57:55 PM

Happy new year 🥳

12/16/2021 2:22:06 PM

Ok

12/16/2021 2:22:01 PM

Let me ask

12/16/2021 2:21:55 PM

What time you want

12/16/2021 2:20:05 PM

When can I show the apartment

12/16/2021 11:31:51 AM

3 floor

12/16/2021 11:31:28 AM

Yes

Remax - 280

# EXHIBIT 10-1

**Monday, May 5, 2025 at 14:47:20 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Fwd: Hi COCO FOR 581 WEST CASWELL AVE |
| **Date:** | Wednesday, April 30, 2025 at 12:50:10 PM Eastern Daylight Time |
| **From:** | yuli weng |
| **To:** | akest@fkblaw.com, nsekas@sekaslaw.com, sigarashi@fkblaw.com, srichards@fkblaw.com, mharoutunian@sekaslaw.com, gghione@sekaslaw.com, cpdelcioppio@saccofillas.com, jefftoback@gmail.com, Eric Hecker |
| **CC:** | Luk & Luk, Pllc |
| **Attachments:** | Lease 581 west caswell ave staten island ny 10314.pdf |

---------- Forwarded message ---------
发件人： **xian jin zhang** <yydoinoy@hotmail.com>
Date: 2022年7月14日周四 20:56
Subject: Hi COCO FOR 581 WEST CASWELL AVE
To: wengyuli520@gmail.com <wengyuli520@gmail.com>

Hi COCO
please see attached and sign it them email me back.
Thank you

# EXHIBIT 10-2

# Lease Agreement

**Lease Term:** 1 Year

**581 West Casewell Ave #1, Staten Island NY 10314**

Beginning: July 1~~5~~ 2022 *July 14 2023*
Ending: June 30, 2023 *Anten: Maceda Vivel*

**Landlord:** XueQiang, Zheng

**Tenants:** DIEGO HERNANDEZ LOPEZ

**Rent: $3,200**

*The Landlord and Tenant agree to lease the apartment for the terms and at the Rent stated on these terms.*

**1. Use:** The Apartment must be used only as a private residence and should not be used for any other reason other than the primary residence of the Tenant. Only a party signing this lease may use the Apartment. This is subject to Tenant's rights under the Apartment Sharing Law and to limits on the number of people who may legally occupy an Apartment of this size.

**2. Failure to give possession:** Landlord shall not be liable for failure to give Tenant possession of the Apartment on the beginning date of the Lease Term. Rent shall be payable as of the beginning of the lease term unless Landlord is unable to give possession of the Apartment to Tenant. Rent shall then be payable as of the date possession is available. Landlord must give possession within a reasonable time, if not, Tenant may cancel and obtain a refund of money deposited. Landlord will notify Tenant as to the date possession is available.

**3. Rent, added rent:** The rent payment for each month must be paid on the **first day** of that month at Landlord's indicated address. Landlord need not give notice to pay the rent. Rent must be paid in full without deduction. The first month's rent is to be paid when Tenant signs this Lease. **If rent is not paid in full within 5 days, a $50 late penalty will be incurred. Tenant will be charged a $30 penalty for any returned checks.** These added rent/fees will be billed and may be payable as rent, together with the next monthly rent due or may be deducted from security deposit. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent.

**4. Notices:** Any bill, statement or notice must be in writing. If addressed to Tenant, it must be delivered or mailed to the Tenant at the Apartment. If addressed to Landlord it must be mailed to Landlord's indicated address. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. A notice must be sent by certified mail. Each party must accept and claim the notice given by the other. Landlord must notify Tenant if Landlord's address is changed.

**5. Security:** Tenant has given security to Landlord in the amount stated in the last page. Tenant understands that the security will be held in a non-interest-bearing account. Therefore, deposits returned after inspecting the premises for damages will be no greater than the original amount given. Deductions will be taken from the security if the apartment was not returned at its original state.

> If Tenant does not pay rent or added rent on time, Landlord may use the security to pay for rent and added rent then due. If Tenant fails to timely perform any other term in this Lease, Landlord may use the security for payment of money Landlord may spend, or damages Landlord suffers because of Tenant's failure. If the landlord uses the security Tenant, shall, upon notice from Landlord, send to Landlord an amount equal to the sum used by Landlord. That amount is due, when billed, as rent. At all times Landlord is to have the amount of security stated in the last page.

> If Tenant fully performs all terms of this Lease, pays rent on time and leaves the Apartment in good condition on the last day of the Term, then Landlord will return the security being held.

> If Landlord sells or leases the Building, Landlord may give the security to the buyer or lessee. In that event Tenant will look only to the buyer or lessee for the return of the security and Landlord will be deemed released. The Landlord may use the security as stated in this section. Landlord may put the security in any place permitted by law. Tenant's security will bear interest only if required by law. Landlord will give Tenant the interest when Landlord is required to return the security to Tenant. Any interest returned to Tenant will be less the sum Landlord is allowed to keep for expenses. Landlord need not give Tenant interest on the security if Tenant is in default.

**6. Alteration:** Tenant must obtain Landlord's prior written consent to install any paneling, flooring, "built in" decorations, partitions, railings, or make alterations or to paint or wall paper the Apartment. Tenant must not change the plumbing, ventilating, air conditioning, electric or heating systems. If consent is given, the alterations and installations shall become the property of Landlord when completed and paid for. They shall remain with and as part of the Apartment at the end of the Term. Landlord has the right to demand that Tenant remove the alterations and installations before the end of the Term. The demand shall be by notice, given at least 15 days before the end of the Term. Tenant shall comply with the demand at Tenant's own cost. Landlord is not required to do or pay for any work unless stated in this Lease.

> Tenant understands that the apartment is being delivered in good condition. The apartment has Wood floors that are being delivered in good condition. Therefore, tenant will be charged for any damages beyond normal wear made to floors, walls, kitchen, bathrooms etc. For example, scratches, tears, rips, stains, urination or defecation damages. Tenant is not allowed to paint or wallpaper walls and especially moldings, unless given written consent from landlord. Tenant is not allowed to paint or wallpaper walls and especially moldings. If tenant paints apartment a $1,000 fee will be charged, unless given written consent from landlord.

*I Tenant(s), have read and understood all of the terms above.*

Tenant DHL

If a lien is filed on the Apartment or Building for any reason relating to Tenant, Tenant must immediately pay or bond the amount stated in the Lien. Landlord may pay or bond the lien if Tenant fails to do so within 20 days after Tenant has notice about the Lien. Landlord's costs shall be added rent.

**7. Repairs:** Tenant must take good care of the Apartment and all equipment and fixtures in it. Landlord will repair the plumbing, heating and electrical systems. Tenant must, at Tenant's cost, make all repairs and replacements whenever the need results from Tenant's act or neglect. If Tenant fails to make a needed repair or replacement, Landlord may do it. Landlord's reasonable expense will be added rent, unless agreed upon in writing.

**8. Fire, accident, defects, damage:** Tenant must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Apartment cannot be used because of fire or other casualty, Tenant is not required to pay rent for the time the Apartment is unusable. If part of the Apartment cannot be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Apartment is usable. Landlord need only repair the damaged part of the Apartment. Landlord is not required to repair or replace any fixtures, furnishings or decorations but only equipment that is originally installed by Landlord. Landlord is not responsible for delay due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.

**9.** If the apartment cannot be used, Landlord has 30 days to decide whether to repair it. Landlord's decision to repair must be given by notice to Tenant with 30 days of the fire or casualty. Landlord shall have a reasonable time to repair. In determining what a reasonable time is, consideration shall be given to any delays in receipt of insurance settlements, labor trouble and causes not within Landlord's control. If Landlord fails to give Tenant notice of its decision within 30 days, Tenant may cancel the lease as of the date of the fire or casualty. The cancellation shall be effective only if it is given before Landlord begins to repair or before Landlord notifies Tenant of its decision to repair. If the fire or other casualty is caused by an act or neglect of Tenant or guest of Tenant all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be added rent.

Landlord has the right to demolish, rebuild or renovate the Building if there is substantial damage by fire or another casualty. Even if the Apartment is not damaged, Landlord may cancel this lease within 30 days after the substantial fire or casualty by giving Tenant notice of Landlord's intention to demolish, rebuild or renovate. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Apartment to Landlord on or before the cancellation date in the notice and pay all rent due to the date of the fire or casualty. If the lease is cancelled, Landlord is not required to repair the Apartment or Building. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section is intended to replace the terms on New York Real Property Law Section 227.

**10. Liability:** Landlord is not liable for loss, expense, or damage to any person or property, unless due to Landlord's negligence. Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Building. Tenant must pay for damages suffered and reasonable expenses of Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord arising from Tenant's act or neglect Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice. Tenant is responsible for all acts or neglect of Tenant's family, employees, guests or invitees. Tenant understands that he/she can purchase their own renter's insurance to cover any damage, loss, expense to any person or property.

**11. Entry by Landlord:** Landlord may enter the Apartment at reasonable hours to: repair, inspect, exterminate, install or work on master antennas or other systems or equipment and perform other work that Landlord decides is necessary or desirable. At reasonable hours Landlord may show the Apartment to possible buyers, lenders, or tenants of the entire Building or land. At reasonable hours Landlord may show the Apartment to possible or new tenants during the last 4 months of the Term. Entry by Landlord must be on reasonable notice except in emergency.

**12. Assignment and sublease:** The Apartment must be used only as a private Apartment to live in as the primary residence of the Tenant and for no other reason. Only the party signing this agreement may use the Apartment. **There is absolutely no subletting.** Tenant must not assign all or part of this Lease or sublet all or part of the Apartment or permit any other person to use the Apartment. If Tenant does, Landlord has the right to cancel the Lease as stated in the Tenant 's Default section. In the event that one or more of the parties on this lease decide to leave tenant may not replace them or find a roommate on their own. If landlord wishes to continue this agreement with the remaining person(s), any replacement roommate must first be screened and approved by landlord or management.

**13. Subordination:** This Lease and Tenant's rights, are subject and subordinate to all present and future: (a) leases for the Building or the land on which it stands, (b) mortgages on the leases or the Building or land, (c) agreements securing money paid or to be paid by a lender, and (d) terms, conditions, renewals, changes of any kind and extensions of the mortgages, leases or lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant.

**14. Condemnation:** If all of the Apartment or Building is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Apartment or Building. If any part of the Apartment or Building is taken, Landlord may cancel this Lease on notice to Tenant. The notice shall set a cancellation date not less than 30 days from the date of the notice. If the Lease is cancelled, Tenant must deliver the Apartment to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant assigns to Landlord any interest Tenant may have to any part of the award. Tenant shall make no claim for the value of the remaining part of the Term.

*I Tenant(s), have read and understood all of the terms above.*

Tenant _____
Tenant _____

Page 2 of 5
Lease



**15. Construction or demolition:** Construction or demolition may be performed near the Building. Even if it interferes with Tenant's ventilation, view or enjoyment of the Apartment it shall not affect Tenant's obligations in this Lease.

**16. Tearing down the building:** If the Landlord wants to tear down the entire Building, Landlord shall have the right to end this Lease by giving 30-day notice to Tenant. If Landlord gives Tenant such notice and such notice was given to every residential tenant in the Building, then the Lease will end and Tenant must leave the Apartment at the end of the 30-day period in the notice.

**17. Liability for property left with Landlord's employees:** Landlord's employees are not permitted to drive Tenant's cars or care for Tenant's cars or personal property. Tenant must not leave a car or other personal property with any of Landlord's employees. Landlord is not responsible for (a) loss, theft or damage to the property, and (b) injury caused by the property or its use.

**18. Playground, pool, parking and recreation areas:** If there is a playground, pool, parking or recreation area, Landlord may give Tenant permission to use it. Tenant will use the area at Tenant's own risk. Landlord's permission may be canceled at any time, for good reasonable reason.

**19. Roof access:** No one is allowed on the roof, except in the event of an emergency such as a fire. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.

**20. Tenant's certificate:** Upon request by Landlord, Tenant shall sign a certificate stating the following: (1) This Lease is in full force and unchanged (or if changed, how it was changed); and (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; and (3) Tenant is fully performing all the terms of the Lease and will continue to do so; (4) rent and added rent have been paid to date; and (5) any other reasonable statement required by Landlord. The certificate will be addressed to the party Landlord chooses.

**21. Correcting Tenant's defaults:** If Tenant fails to timely correct a default after notice form Landlord, Landlord may correct it at Tenant's expense. Landlord's costs to correct the default shall be added rent.

**22. Tenant's duty to obey laws and regulations:** Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notices received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

**23. Tenant's default:** A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated:

(1) Failure to pay rent or added rent on time, 3 days.
(2) Failure to move into the Apartment within 15 days after the beginning date of the Term, 10 days.
(3) Issuance of a court order under which the Apartment may be taken by another party, 10 days.
(4) Improper conduct by Tenant annoying other tenants, 10 days.
(5) Failure to comply with any other term or Rule in the Lease, 10 days.

If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than 10 days after the date of the notice. On the cancellation date in the notice the Term of this Lease shall end. Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease. If the default cannot be cured in the time stated, Tenant must begin to cure within that time and continue diligently until cured.

**A.** If Tenant's application for the Apartment contains any material misstatement of fact, Landlord may cancel this Lease. Cancellation shall be by cancellation notice as stated in Section 23.A.

**B.** If **(1)** the Lease is cancelled; or **(2)** rent or added rent is not paid on time; or **(3)** Tenant vacates the Apartment, Landlord may, in addition to other remedies, take any of the following steps: **(a)** peacefully enter the Apartment and remove Tenant and any person or property, and **(b)** use eviction or other lawsuit method to take back the Apartment.

**C. If this Lease is cancelled, or Landlord takes back the Apartment, the following takes place:**

**(1)** Rent and added rent for the unexpired Term becomes due and payable.

**(2)** Landlord may re-let the Apartment and anything in it. The re-letting may be for any term. Landlord may charge any rent or no rent and five allowances to the new tenant. Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and prepare it for renting. Tenant stays liable and is not released except as provided by law.

**(3)** Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, broker fees, cleaning and repairing costs, decorating costs and advertising costs.

**(4)** From time to time Landlord may bring actions for damages. Delay or failure to bring an action shall not be a waiver of Landlord's rights. Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.

**(5)** If Landlord re-lets the Apartment combined with other space an adjustment will be made based on square footage. Money received by Landlord from the next tenant other than the monthly rent, shall not be considered as part of the rent paid to Landlord. Landlord is entitled to all of it. If Landlord re-lets the Apartment the fact that all or part of the next tenant's rent is not collected does not affect Tenant's liability. Landlord has no duty to collect the next tenant's rent. Tenant must continue to pay rent, damages, losses and expenses without offset.

**D.** If Landlord takes possession of the Apartment by Court order, or under the Lease, Tenant has no right to return to the Apartment.

*I Tenant(s), have read and understood all of the terms above.*

Tenant _____ DHC

Tenant _____

**24. Jury trial and counterclaims:** Landlord and Tenant agree not to use their right to a Trial by Jury in any action or proceeding brought by either, against the other, for any matter concerning this Lease or the Apartment. This does not include actions for personal injury or property damage.

**25. No waiver, illegality:** Landlord's acceptance of rent or failure to enforce any term in this Lease is not a waiver of any of Landlord's rights. If a term in this Lease is illegal, the rest of this lease remains in full force.

**26. Insolvency:** If (1) Tenant assigns property for the benefit of creditors, or (2) a non-bankruptcy trustee or receiver of Tenant or Tenant's property is appointed. Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not full dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset. If Tenant files a voluntary petition in bankruptcy or an involuntary petition in bankruptcy is filed against Tenant, Landlord may not terminate this Lease.

**27. Rules:** Tenant must comply with these Rules. Notice of new Rules will be given to Tenant. Landlord need not enforce Rules against other Tenants. Landlord is not liable to Tenant if another tenant violates these Rules. Tenant receives no rights under these Rules.
**(1)** The comfort or rights of other Tenants must not be interfered with. This means that annoying sounds, smells and lights are not allowed.
**(2)** No one is allowed on the roof. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.
**(3) No Smoking in apartment or in building.**
**(4)** Bicycles are not allowed in hallways.
**(5)** Tenant must give to Landlord key to all locks. Doors must be locked at all times. Windows must be locked when Tenant is out.
**(6)** No water beds allowed in Apartments.
**(7)** Garbage disposal rules must be followed. Wash lines, vents and plumbing fixtures must be used for their intended purpose.
**(8) Washing machine must be installed by a licensed professional.**
**(9)** Improperly parked cars may be removed without notice at Tenant's cost.
**(10)** Second hand furniture must be vermin free. If there is any type of infestation, Tenant is responsible for all incurred fees from cleaning and exterminating.
**(11)** Tenant is responsible for taking out the garbage to the street curb side on required days.

**28. Representations, changes in Lease:** Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in writing signed by delivered to each party.

**29. Landlord unable to perform:** If due to labor trouble, government order, lack of supply, Tenant's act or neglect, or any other cause not fully within Landlord's reasonable control, Landlord is delayed or unable to (a) carry out any of Landlord's promises or agreements, (b) supply any service required to be supplied, (c) make any required repair or change in the Apartment or Building, or (d) supply any equipment or appliances Landlord is required to supply, this Lease shall not be ended or Tenant's obligations affected.

**30. End of term:** At the end of the Term, Tenant must: leave the Apartment clean and in good condition, subject to ordinary wear and tear; remove all of Tenant's property and all Tenant's installations and decorations; repair all damages to the Apartment and Building caused by moving; and restore the Apartment to its condition at the beginning of the Term. Items such as bathroom fixtures, toilet, shower, sink, kitchen cabinets, ceiling fans, refrigerators must be left clean. If tenant fails to do so, a $200 clean up fee shall be deducted from security deposit. If the last day of the Term is on a Saturday, Sunday or State or Federal holiday the Term shall end on the prior business day.

**31. Space "as is":** Tenant has inspected the Apartment and Building. Tenant states they are in good order and repair and takes the Apartment as is except for latent defects.

**32. Landlord's warranty of habitability:** Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life of safety.

**33. Landlord's consent:** If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court for a declaratory judgment to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**34. Limit of recovery against Landlord:** Tenant is limited to Landlord's interest in the Building for payment of a judgment or other court remedy against Landlord.

**35. Lease binding on:** This Lease is binding on Landlord and Tenant and their heirs, distributes, executors, administrators, successors and lawful assigns.

**36. Landlord:** Landlord means the owner (Building or Apartment), or the lessee of the Building, or a lender in possession. Landlord's obligations end when Landlord's interest in the (Building or Apartment) is transferred. Any acts Landlord may do may be performed by Landlord's agents or employees.

*I Tenant(s), have read and understood all of the terms above.*

Tenant _____ DHC

Tenant _____

**37. Paragraph headings:** The paragraph headings are for convenience only.

**38. Furnishings:** If the Apartment is furnished, the furniture and other furnishings are accepted as is. If an inventory is supplied each party shall have a signed copy. At the end of the Term, Tenant shall return the furniture and other furnishings clean and in good order and repair.

**39. Services Landlord will supply:**
Landlord is not required to install air-conditioning. Stopping or reducing of service(s) will not be reason for Tenant to stop paying rent, to make a money claim or to claim eviction. Tenant may enforce its rights under the warranty of habitability. Damage to the equipment or appliances supplied by Landlord, caused by Tenant's acts may be repaired by Landlord at Tenant's expense. The repair cost will be added rent.

Tenant must not use a dishwasher, washing machine, dryer, freezer, heater, ventilator, air cooling equipment or other appliance unless installed by Landlord or with Landlord's written consent. Tenant must not use more electric than the wiring or feeders to the Building can safely carry.

Landlord may stop service of the plumbing, heating, elevator, air cooling or electrical systems, because of accident, emergency, repairs, or changes until the work is complete.

*l Tenant(s), have read and understood all of the terms above.*

**Signatures, effective date** Tenant have signed this Lease as of the below date. It is effective when Landlord delivers to Tenant a copy signed by all parties.

**40.** Additional occupants, other than the tenants stated on this lease are not permitted to live in the apartment. Any other persons interested in living in the apartment must be fully screened and approved by the landlord.

**41. Utilities:** water **Tenant pays:** electric and gas

**42.** Rent shall be paid on the first of every month

**43.** Any renovations to the apartment are the tenant's responsibility and must be approved by the landlord in advance of work being started

**44.** Tenants are entitled to parking space on premises as well as backyard use

**45.** Pets are not allowed in the apartment

**46.** There is no smoking in the apartment

**47.** Washer and dryer may not be installed in the apartment

**48.** Tenants must take garbage to the curb on garbage pick up days

**49.** Tenants are responsible for snow cleaning around their property

**50.** Tenant must give landlord a 30 days' notice when they decide to vacate the apartment after the completion of the lease term. Tenant agrees to allow the landlord and landlord's agents to show the apartment to potential tenants after giving the 30 days' notice.

**51.** Subleasing by tenant of any space in the apartment, parking or back yard is prohibited

**52.** If tenant defaults on paying the monthly lease, landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action.

**53.** Tenants are permitted to have guests such as extended family stay with them at the apartment for a period of up to two weeks. Additional permanent residents are not allowed in the apartment. If additional residents will occupy the apartment for an extended period of time, landlord has a right to increase the monthly rent by $150 per additional person.

54. Tenants are responsibe for cutting grass in the yard.

Property Address: 581 West Casewell Avenue Staten Island NY 10314

Date: 06/20/2022

Term: 1 Year

Beginning: July 15 2022

Ending: ~~June 30, 2022~~
         July, 14 2023

Monthly Rent: $3,200

First Month's Rent: $3,200

Security Deposit: $3,200

Next Payment due: August 15 2022

X_____
**Landlord:**

X _Antoni Meade_ _(J...)_     646-494-7765
**Tenant:**

X _____     718 764 3288
**Tenant:**

Tenant _DHL_
Tenant _____

# EXHIBIT 11-1

**Monday, May 5, 2025 at 14:49:57 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Fwd: Fw: Hi COCO FOR 581 WEST CASWELL AVE |
| **Date:** | Wednesday, April 30, 2025 at 12:57:57 PM Eastern Daylight Time |
| **From:** | yuli weng |
| **To:** | Eric Hecker, akest@fkblaw.com, mharoutunian@sekaslaw.com, cpdelcioppio@saccofillas.com, gghione@sekaslaw.com, sigarashi@fkblaw.com, nsekas@sekaslaw.com, jefftoback@gmail.com, srichards@fkblaw.com |
| **CC:** | Luk & Luk, Pllc |
| **Attachments:** | Rental 581 West Caswell Ave 2nd Floor Staten Island NY 10314.pdf |

---------- Forwarded message ---------
发件人： **xian jin zhang** <yydoinoy@hotmail.com>
Date: 2022年7月18日周一 23:19
Subject: Fw: Hi COCO FOR 581 WEST CASWELL AVE
To: wengyuli520@gmail.com <wengyuli520@gmail.com>

Hi COCO
Please see attached and sign it them email me back.
Thank you

---

**From:** xian jin zhang
**Sent:** Thursday, July 14, 2022 8:56 PM
**To:** wengyuli520@gmail.com <wengyuli520@gmail.com>
**Subject:** Hi COCO FOR 581 WEST CASWELL AVE

Hi COCO
please see attached and sign it them email me back.
Thank you

# EXHIBIT 11-2

# Lease Agreement
## 581 West Casewell Ave #2, Staten Island NY 10314

Lease Term: 1 Year ~~JULY 15 2022~~ × 2
Beginning: ~~August 1, 2022~~
Ending: ~~July 31, 2023~~ × 2.
JULY 14, 2023

**Landlord:** XueQiang Zheng
**Tenants:** Rick Leat Li
**Rent: $2,600**

*The Landlord and Tenant agree to lease the apartment for the terms and at the Rent stated on these terms.*

**1. Use:** The Apartment must be used only as a private residence and should not be used for any other reason other than the primary residence of the Tenant. Only a party signing this lease may use the Apartment. This is subject to Tenant's rights under the Apartment Sharing Law and to limits on the number of people who may legally occupy an Apartment of this size.

**2. Failure to give possession:** Landlord shall not be liable for failure to give Tenant possession of the Apartment on the beginning date of the Lease Term. Rent shall be payable as of the beginning of the lease term unless Landlord is unable to give possession of the Apartment to Tenant. Rent shall then be payable as of the date possession is available. Landlord must give possession within a reasonable time, if not, Tenant may cancel and obtain a refund of money deposited. Landlord will notify Tenant as to the date possession is available.        15th     AP ×2.

**3. Rent, added rent:** The rent payment for each month must be paid on the ~~first~~ day of that month at Landlord's indicated address. Landlord need not give notice to pay the rent. Rent must be paid in full without deduction. The first month's rent is to be paid when Tenant signs this Lease. **If rent is not paid in full within 5 days, a $50 late penalty will be incurred. Tenant will be charged a $30 penalty for any returned checks.** These added rent/fees will be billed and may be payable as rent, together with the next monthly rent due or may be deducted from security deposit. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent.

**4. Notices:** Any bill, statement or notice must be in writing. If addressed to Tenant, it must be delivered or mailed to the Tenant at the Apartment. If addressed to Landlord it must be mailed to Landlord's indicated address. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. A notice must be sent by certified mail. Each party must accept and claim the notice given by the other. Landlord must notify Tenant if Landlord's address is changed.

**5. Security:** Tenant has given security to Landlord in the amount stated in the last page. Tenant understands that the security will be held in a non-interest-bearing account. Therefore, deposits returned after inspecting the premises for damages will be no greater than the original amount given. Deductions will be taken from the security if the apartment was not returned at its original state.

  If Tenant does not pay rent or added rent on time, Landlord may use the security to pay for rent and added rent then due. If Tenant fails to timely perform any other term in this Lease, Landlord may use the security for payment of money Landlord may spend, or damages Landlord suffers because of Tenant's failure. If the landlord uses the security Tenant, shall, upon notice from Landlord, send to Landlord an amount equal to the sum used by Landlord. That amount is due, when billed, as rent. At all times Landlord is to have the amount of security stated in the last page.

  If Tenant fully performs all terms of this Lease, pays rent on time and leaves the Apartment in good condition on the last day of the Term, then Landlord will return the security being held.

  If Landlord sells or leases the Building, Landlord may give the security to the buyer or lessee. In that event Tenant will look only to the buyer or lessee for the return of the security and Landlord will be deemed released. The Landlord may use the security as stated in this section. Landlord may put the security in any place permitted by law. Tenant's security will bear interest only if required by law. Landlord will give Tenant the interest when Landlord is required to return the security to Tenant. Any interest returned to Tenant will be less the sum Landlord is allowed to keep for expenses. Landlord need not give Tenant interest on the security if Tenant is in default.

**6. Alteration:** Tenant must obtain Landlord's prior written consent to install any paneling, flooring, "built in" decorations, partitions, railings, or make alterations or to paint or wall paper the Apartment. Tenant must not change the plumbing, ventilating, air conditioning, electric or heating systems. If consent is given, the alterations and installations shall become the property of Landlord when completed and paid for. They shall remain with and as part of the Apartment at the end of the Term. Landlord has the right to demand that Tenant remove the alterations and installations before the end of the Term. The demand shall be by notice, given at least 15 days before the end of the Term. Tenant shall comply with the demand at Tenant's own cost. Landlord is not required to do or pay for any work unless stated in this Lease.

  Tenant understands that the apartment is being delivered in good condition. The apartment has Wood floors that are being delivered in good condition. Therefore, tenant will be charged for any damages beyond normal wear made to floors, walls, kitchen, bathrooms etc. For example, scratches, tears, rips, stains, urination or defecation damages. Tenant is not allowed to paint or wallpaper walls and especially moldings, unless given written consent from landlord. Tenant is not allowed to paint or wallpaper walls and especially moldings. If tenant paints apartment a $1,000 fee will be charged, unless given written consent from landlord.

*I Tenant(s), have read and understood all of the terms above.*

Tenant

If a lien is filed on the Apartment or Building for any reason relating to Tenant's fault, Tenant must immediately pay or bond the amount stated in the Lien. Landlord may pay or bond the lien if Tenant fails to do so within 20 days after Tenant has notice about the Lien. Landlord's costs shall be added rent.

**7. Repairs:** Tenant must take good care of the Apartment and all equipment and fixtures in it. Landlord will repair the plumbing, heating and electrical systems. Tenant must, at Tenant's cost, make all repairs and replacements whenever the need results from Tenant's act or neglect. If Tenant fails to make a needed repair or replacement, Landlord may do it. Landlord's reasonable expense will be added rent, unless agreed upon in writing.

**8. Fire, accident, defects, damage: Tenant** must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Apartment cannot be used because of fire or other casualty, Tenant is not required to pay rent for the time the Apartment is unusable. If part of the Apartment cannot be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Apartment is usable. Landlord need only repair the damaged part of the Apartment. Landlord is not required to repair or replace any fixtures, furnishings or decorations but only equipment that is originally installed by Landlord. Landlord is not responsible for delay due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.

**9.** If the apartment cannot be used, Landlord has 30 days to decide whether to repair it. Landlord's decision to repair must be given by notice to Tenant with 30 days of the fire or casualty. Landlord shall have a reasonable time to repair. In determining what a reasonable time is, consideration shall be given to any delays in receipt of insurance settlements, labor trouble and causes not within Landlord's control. If Landlord fails to give Tenant notice of its decision within 30 days, Tenant may cancel the lease as of the date of the fire or casualty. The cancellation shall be effective only if it is given before Landlord begins to repair or before Landlord notifies Tenant of its decision to repair. If the fire or other casualty is caused by an act or neglect of Tenant or guest of Tenant all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be added rent.

Landlord has the right to demolish, rebuild or renovate the Building if there is substantial damage by fire or another casualty. Even if the Apartment is not damaged, Landlord may cancel this lease within 30 days after the substantial fire or casualty by giving Tenant notice of Landlord's intention to demolish, rebuild or renovate. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Apartment to Landlord on or before the cancellation date in the notice and pay all rent due to the date of the fire or casualty. If the lease is cancelled, Landlord is not required to repair the Apartment or Building. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section is intended to replace the terms on New York Real Property Law Section 227.

**10. Liability:** Landlord is not liable for loss, expense, or damage to any person or property, unless due to Landlord's negligence. Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Building. Tenant must pay for damages suffered and reasonable expenses of Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord arising from Tenant's act or neglect Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice. Tenant is responsible for all acts or neglect of Tenant's family, employees, guests or invitees. Tenant understands that he/she can purchase their own renter's insurance to cover any damage, loss, expense to any person or property.

**11. Entry by Landlord:** Landlord may enter the Apartment at reasonable hours to: repair, inspect, exterminate, install or work on master antennas or other systems or equipment and perform other work that Landlord decides is necessary or desirable. At reasonable hours Landlord may show the Apartment to possible buyers, lenders, or tenants of the entire Building or land. At reasonable hours Landlord may show the Apartment to possible or new tenants during the last 4 months of the Term. Entry by Landlord must be on reasonable notice except in emergency.

**12. Assignment and sublease:** The Apartment must be used only as a private Apartment to live in as the primary residence of the Tenant and for no other reason. Only the party signing this agreement may use the Apartment. **There is absolutely no subletting**. Tenant must not assign all or part of this Lease or sublet all or part of the Apartment or permit any other person to use the Apartment. If Tenant does, Landlord has the right to cancel the Lease as stated in the Tenant 's Default section. In the event that one or more of the parties on this lease decide to leave tenant may not replace them or find a roommate on their own. If landlord wishes to continue this agreement with the remaining person(s), any replacement roommate must first be screened and approved by landlord or management.

**13. Subordination:** This Lease and Tenant's rights, are subject and subordinate to all present and future: (a) leases for the Building or the land on which it stands, (b) mortgages on the leases or the Building or land, (c) agreements securing money paid or to be paid by a lender, and (d) terms, conditions, renewals, changes of any kind and extensions of the mortgages, leases or lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant.

**14. Condemnation:** If all of the Apartment or Building is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Apartment or Building. If any part of the Apartment or Building is taken, Landlord may cancel this Lease on notice to Tenant. The notice shall set a cancellation date not less than 30 days from the date of the notice. If the Lease is cancelled, Tenant must deliver the Apartment to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant assigns to Landlord any interest Tenant may have to any part of the award. Tenant shall make no claim for the value of the remaining part of the Term.

*I Tenant(s), have read and understood all of the terms above.*

Tenant _____
Tenant _____

Page 2 of 5
Lease



**15. Construction or demolition:** Construction or demolition may be performed in or near the Building. Even if it interferes with Tenant's ventilation, view or enjoyment of the Apartment it shall not affect Tenant's obligations in this Lease.

**16. Tearing down the building:** If the Landlord wants to tear down the entire Building, Landlord shall have the right to end this Lease by giving 30-day notice to Tenant. If Landlord gives Tenant such notice and such notice was given to every residential tenant in the Building, then the Lease will end and Tenant must leave the Apartment at the end of the 30-day period in the notice.

**17. Liability for property left with Landlord's employees:** Landlord's employees are not permitted to drive Tenant's cars or care for Tenant's cars or personal property. Tenant must not leave a car or other personal property with any of Landlord's employees. Landlord is not responsible for (a) loss, theft or damage to the property, and (b) injury caused by the property or its use.

**18. Playground, pool, parking and recreation areas:** If there is a playground, pool, parking or recreation area, Landlord may give Tenant permission to use it. Tenant will use the area at Tenant's own risk. Landlord's permission may be canceled at any time, for good reasonable reason.

**19. Roof access:** No one is allowed on the roof, except in the event of an emergency such as a fire. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.

**20. Tenant's certificate:** Upon request by Landlord, Tenant shall sign a certificate stating the following: (1) This Lease is in full force and unchanged (or if changed, how it was changed); and (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; and (3) Tenant is fully performing all the terms of the Lease and will continue to do so; (4) rent and added rent have been paid to date; and (5) any other reasonable statement required by Landlord. The certificate will be addressed to the party Landlord chooses.

**21. Correcting Tenant's defaults:** If Tenant fails to timely correct a default after notice form Landlord, Landlord may correct it at Tenant's expense. Landlord's costs to correct the default shall be added rent.

**22. Tenant's duty to obey laws and regulations:** Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notices received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

**23. Tenant's default:** A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated:
(1) Failure to pay rent or added rent on time, 3 days.
(2) Failure to move into the Apartment within 15 days after the beginning date of the Term, 10 days.
(3) Issuance of a court order under which the Apartment may be taken by another party, 10 days.
(4) Improper conduct by Tenant annoying other tenants, 10 days.
(5) Failure to comply with any other term or Rule in the Lease, 10 days.
If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than 10 days after the date of the notice. On the cancellation date in the notice the Term of this Lease shall end. Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease. If the default cannot be cured in the time stated, Tenant must begin to cure within that time and continue diligently until cured.

**A.** If Tenant's application for the Apartment contains any material misstatement of fact, Landlord may cancel this Lease. Cancellation shall be by cancellation notice as stated in Section 23.A.
**B.** If **(1)** the Lease is cancelled; or **(2)** rent or added rent is not paid on time; or **(3)** Tenant vacates the Apartment, Landlord may, in addition to other remedies, take any of the following steps: **(a)** peacefully enter the Apartment and remove Tenant and any person or property, and **(b)** use eviction or other lawsuit method to take back the Apartment.
**C. If this Lease is cancelled, or Landlord takes back the Apartment, the following takes place:**
**(1)** Rent and added rent for the unexpired Term becomes due and payable.
**(2)** Landlord may re-let the Apartment and anything in it. The re-letting may be for any term. Landlord may charge any rent or no rent and five allowances to the next tenant. Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and prepare it for renting. Tenant stays liable and is not released except as provided by law.
**(3)** Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, broker fees, cleaning and repairing costs, decorating costs and advertising costs.
**(4)** From time to time Landlord may bring actions for damages. Delay or failure to bring an action shall not be a waiver of Landlord's rights. Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.
**(5)** If Landlord re-lets the Apartment combined with other space an adjustment will be made based on square footage. Money received by Landlord from the next tenant other than the monthly rent, shall not be considered as part of the rent paid to Landlord. Landlord is entitled to all of it. If Landlord re-lets the Apartment the fact that all or part of the next tenant's rent is not collected does not affect Tenant's liability. Landlord has no duty to collect the next tenant's rent. Tenant must continue to pay rent, damages, losses and expenses without offset.
**D.** If Landlord takes possession of the Apartment by Court order, or under the Lease, Tenant has no right to return to the Apartment.

*I Tenant(s), have read and understood all of the terms above.*
Tenant _____
Tenant _____

Page 3 of 5
Lease

**24. Jury trial and counterclaims:** Landlord and Tenant agree not to use their right to Trial by Jury in any action or proceeding brought by either, against the other, for any matter concerning this Lease or the Apartment. This does not include actions for personal injury or property damage.

**25. No waiver, illegality:** Landlord's acceptance of rent or failure to enforce any term in this Lease is not a waiver of any of Landlord's rights. If a term in this Lease is illegal, the rest of this lease remains in full force.

**26. Insolvency:** If (1) Tenant assigns property for the benefit of creditors, or (2) a non-bankruptcy trustee or receiver of Tenant or Tenant's property is appointed. Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not full dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset. If Tenant files a voluntary petition in bankruptcy or an involuntary petition in bankruptcy is filed against Tenant, Landlord may not terminate this Lease.

**27. Rules:** Tenant must comply with these Rules. Notice of new Rules will be given to Tenant. Landlord need not enforce Rules against other Tenants. Landlord is not liable to Tenant if another tenant violates these Rules. Tenant receives no rights under these Rules.
**(1)** The comfort or rights of other Tenants must not be interfered with. This means that annoying sounds, smells and lights are not allowed.
**(2)** No one is allowed on the roof. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.
**(3) No Smoking in apartment or in building.**
**(4)** Bicycles are not allowed in hallways.
**(5)** Tenant must give to Landlord key to all locks. Doors must be locked at all times. Windows must be locked when Tenant is out.
**(6)** No water beds allowed in Apartments.
**(7)** Garbage disposal rules must be followed. Wash lines, vents and plumbing fixtures must be used for their intended purpose.
**(8) Washing machine must be installed by a licensed professional.**
(9) Improperly parked cars may be removed without notice at Tenant's cost.
**(10)** Second hand furniture must be vermin free. If there is any type of infestation, Tenant is responsible for all incurred fees from cleaning and exterminating.
**(11)** Tenant is responsible for taking out the garbage to the street curb side on required days.

**28. Representations, changes in Lease:** Tenant has read this Lease. All promises made by the Landlord are in this Lease. There are no others. This Lease may be changed only by an agreement in writing signed by delivered to each party.

**29. Landlord unable to perform:** If due to labor trouble, government order, lack of supply, Tenant's act or neglect, or any other cause not fully within Landlord's reasonable control, Landlord is delayed or unable to (a) carry out any of Landlord's promises or agreements, (b) supply any service required to be supplied, (c) make any required repair or change in the Apartment or Building, or (d) supply any equipment or appliances Landlord is required to supply, this Lease shall not be ended or Tenant's obligations affected.

**30. End of term:** At the end of the Term, Tenant must: leave the Apartment clean and in good condition, subject to ordinary wear and tear; remove all of Tenant's property and all Tenant's installations and decorations; repair all damages to the Apartment and Building caused by moving; and restore the Apartment to its condition at the beginning of the Term. Items such as bathroom fixtures, toilet, shower, sink, kitchen cabinets, ceiling fans, refrigerators must be left clean. If tenant fails to do so, a $200 clean up fee shall be deducted from security deposit. If the last day of the Term is on a Saturday, Sunday or State or Federal holiday the Term shall end on the prior business day.

**31. Space "as is":** Tenant has inspected the Apartment and Building. Tenant states they are in good order and repair and takes the Apartment as is except for latent defects.

**32. Landlord's warranty of habitability:** Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life of safety.

**33. Landlord's consent:** If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court for a declaratory judgment to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**34. Limit of recovery against Landlord:** Tenant is limited to Landlord's interest in the Building for payment of a judgment or other court remedy against Landlord.

**35. Lease binding on:** This Lease is binding on Landlord and Tenant and their heirs, distributes, executors, administrators, successors and lawful assigns.

**36. Landlord:** Landlord means the owner (Building or Apartment), or the lessee of the Building, or a lender in possession. Landlord's obligations end when Landlord's interest in the (Building or Apartment) is transferred. Any acts Landlord may do may be performed by Landlord's agents or employees.

*I Tenant(s), have read and understood all of the terms above.*

Tenant _____
Tenant _____

Page 4 of 5
Lease

**37. Paragraph headings:** The paragraph headings are for convenience only.

**38. Furnishings:** If the Apartment is furnished, the furniture and other furnishings are accepted as is. If an inventory is supplied each party shall have a signed copy. At the end of the Term, Tenant shall return the furniture and other furnishings clean and in good order and repair.

**39. Services Landlord will supply:**
Landlord is not required to install air-conditioning. Stopping or reducing of service(s) will not be reason for Tenant to stop paying rent, to make a money claim or to claim eviction. Tenant may enforce its rights under the warranty of habitability. Damage to the equipment or appliances supplied by Landlord, caused by Tenant's acts may be repaired by Landlord at Tenant's expense. The repair cost will be added rent.

> Tenant must not use a dishwasher, washing machine, dryer, freezer, heater, ventilator, air cooling equipment or other appliance unless installed by Landlord or with Landlord's written consent. Tenant must not use more electric than the wiring or feeders to the Building can safely carry.

Landlord may stop service of the plumbing, heating, elevator, air cooling or electrical systems, because of accident, emergency, repairs, or changes until the work is complete.

> **Signatures, effective date** Tenant have signed this Lease as of the below date. It is effective when Landlord delivers to Tenant a copy signed by all parties.

**40.** Additional occupants, other than the tenants stated on this lease are not permitted to live in the apartment. Any other persons interested in living in the apartment must be fully screened and approved by the landlord.

**41. Utilities:** water **Tenant pays:** electric and gas
**42.** Rent shall be paid on the first of every month
**43.** Any renovations to the apartment are the tenant's responsibility and must be approved by the landlord in advance of work being started
**44.** Tenants are not entitled to parking space on premises as well as backyard use
**45.** Pets are not allowed in the apartment
**46.** There is no smoking in the apartment
**47.** Washer and dryer are installed and must be maintained in working condition.
**48.** Tenants must take garbage to the curb on garbage pickup days
**49.** Tenants are responsible for snow cleaning around their property
**50.** Tenant must give landlord a 30 days' notice when they decide to vacate the apartment after the completion of the lease term. Tenant agrees to allow the landlord and landlord's agents to show the apartment to potential tenants after giving the 30 days' notice.
**51.** Subleasing by tenant of any space in the apartment, parking or back yard is prohibited
**52.** If tenant defaults on paying the monthly lease, landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action.
**53.** Tenants are permitted to have guests such as extended family stay with them at the apartment for a period of up to two weeks. Additional permanent residents are not allowed in the apartment. If additional residents will occupy the apartment for an extended period of time, landlord has a right to increase the monthly rent by $150 per additional person.

Property Address: 581 West Casewell Avenue #2 Staten Island NY 10314
Date: 07/18/2022
Term: 1 Year ~~July 15 2022~~ X2
Beginning: ~~August 1, 2022~~
Ending: ~~July 31, 2022~~
~~July 14 2023~~ X2
Monthly Rent: $2,600
First Month's Rent: $2,600
Security Deposit: $2,600
Next Payment due: August 15 2022 X.2.

X_____
Landlord:

X_____
Tenant:

X_____
Tenant:

*l Tenant(s), have read and understood all of the terms above.*

Tenant _____
Tenant _____

# EXHIBIT 12-1

Monday, May 5, 2025 at 14:53:57 Eastern Daylight Time

| | |
|---|---|
| **Subject:** | Fwd: 581 West Caswell Ave |
| **Date:** | Wednesday, April 30, 2025 at 1:09:49 PM Eastern Daylight Time |
| **From:** | yuli weng |
| **To:** | Eric Hecker, akest@fkblaw.com, mharoutunian@sekaslaw.com, cpdelcioppio@saccofillas.com, gghione@sekaslaw.com, sigarashi@fkblaw.com, nsekas@sekaslaw.com, jefftoback@gmail.com, srichards@fkblaw.com |
| **CC:** | Luk & Luk, Pllc |
| **Attachments:** | Lease 581 West Caswell Ave 2Floor Staten Island NY 10314.pdf, Letter for check 581 West Caswell Ave 1Floor Staten Island NY.pdf |

---------- Forwarded message ---------
发件人: **xian jin zhang** <yydoinoy@hotmail.com>
Date: 2023年12月21日周四 20:17
Subject: 581 West Caswell Ave
To: wengyuli520@gmail.com <wengyuli520@gmail.com>

Hi Weng
Please see attached sign last page of the lease and HRA LETTER TOO, and email me back.
Thank you

# EXHIBIT 12-2

# Lease Agreement

**Lease Term:** 1 Year

**581 West Caswell Ave #2FL Staten Island NY 10314**  **Lease begins: January 1, 2024**
**Lease Ends: December 31, 2024**

Landlord: Xue Qiang Zheng
Tenants: Kenny Bautista, Joe Bautista, Oscar Falcon, Belen Delagdo.
Rent: $2,700

*The Landlord and Tenant agree to lease the apartment for the terms and at the Rent stated on these terms.*

**1. Use:** The Apartment must be used only as a private residence and should not be used for any other reason other than the primary residence of the Tenant. Only a party signing this lease may use the Apartment. This is subject to Tenant's rights under the Apartment Sharing Law and to limits on the number of people who may legally occupy an Apartment of this size.

**2. Failure to give possession:** Landlord shall not be liable for failure to give Tenant possession of the Apartment on the beginning date of the Lease Term. Rent shall be payable as of the beginning of the lease term unless Landlord is unable to give possession of the Apartment to Tenant. Rent shall then be payable as of the date possession is available. Landlord must give possession within a reasonable time, if not, Tenant may cancel and obtain a refund of money deposited. Landlord will notify Tenant as to the date possession is available.

**3. Rent, added rent:** The rent payment for each month must be paid on the **first day** of that month at the Landlord's indicated address. Landlord need not give notice to pay the rent. Rent must be paid in full without deduction. The first month's rent is to be paid when Tenant signs this Lease. **If rent is not paid in full within 5 days, a $75 late penalty will be incurred. Tenant will be charged a $50 penalty for any returned/bounced checks.** These added rent/fees will be billed  and may be payable as rent, together with the next monthly rent due or may be deducted from security deposit. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent.  **If tenant defaults on paying the monthly lease, the landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action. If the tenant fails to pay rent and is one month late, the landlord retains the right to initiate legal eviction proceedings.**

**4. Notices:** Any bill, statement or notice must be in writing. If addressed to Tenant, it must be delivered or mailed to the Tenant at the Apartment. If addressed to Landlord it must be mailed to Landlord's indicated address. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. A notice must be sent by certified mail. Each party must accept and claim the notice given by the other. Landlord must notify Tenant if Landlord's address is changed.

**5. Security:** Tenant has given security to Landlord in the amount stated in the last page. Tenant understands that the security will be held in a non-interest-bearing account. Therefore, deposits returned after inspecting the premises for damages will be no greater than the original amount given. Deductions will be taken from the security if the apartment was not returned at its original state.

    If Tenant does not pay rent or added rent on time, Landlord may use the security to pay for rent and added rent then due. If Tenant fails to timely perform any other term in this Lease, Landlord may use the security for payment of money Landlord may spend, or damages Landlord suffers because of Tenant's failure. If the landlord uses the security Tenant, shall, upon notice from the Landlord, send to the Landlord an amount equal to the  sum used by the Landlord. That amount is due, when billed, as rent. At all times Landlord is to have the amount of  security stated in the last page.

    If Tenant fully performs all terms of this Lease, pays rent on time and leaves the Apartment in good condition on the last day of the Term, then the Landlord will return the security being held.

    If Landlord sells or leases the Building, Landlord may give the security to the buyer or lessee. In that event Tenant will look only to the buyer or lessee for the return of the security and Landlord will be deemed released. The Landlord may use the security as stated in this section. Landlord may put the security in any place permitted by law. Tenant's security will bear interest only if required by law. Landlord will give Tenant the interest when Landlord is required to return the security to Tenant. Any interest returned to Tenant will be less the sum Landlord is allowed to keep for expenses. Landlord need not give Tenant interest on the security if Tenant is in default.

**6. Alteration:** Tenant must obtain Landlord's prior written consent to install any paneling, flooring, "built in" decorations, partitions, railings, or make alterations or to paint or wallpaper the Apartment. Tenant must not change the plumbing, ventilating, air conditioning, electric or heating systems. If consent is given, the alterations and installations shall become the property of the Landlord when completed and paid for. They shall remain with and as part of the Apartment at the end of the Term. Landlord has the right to demand that Tenant remove the alterations and installations before the end of the Term. The demand shall be by notice, given at least 15 days before the end of the Term. Tenant shall comply with the demand at Tenant's own cost. Landlord are not required to do or pay for any work unless stated in  this Lease.

    Tenant understands that the apartment is being delivered in good condition. The apartment has Wood floors that are being delivered in good condition. Therefore, tenant will be charged for any damages beyond normal wear made to floors, walls, kitchen, bathrooms etc. For example, scratches, tears, rips, stains, urination or defecation damages. Tenant is not allowed to paint or wallpaper walls and especially moldings, unless given written consent from landlord. Tenant is not allowed to paint or wallpaper walls and especially moldings. If tenant paints apartment a $1,000 fee will be charged, unless given written consent from landlord.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant **KB**   Tenant **JB**   Tenant **O.F**   Tenant **BD**

Lease Page 1 of 5

If a lien is filed on the Apartment or Building for any reason relating to Tenant's fault, Tenant must immediately pay or bond the amount stated in the Lien. Landlord may pay or bond the lien if Tenant fails to do so within 20 days after Tenant has notice about the Lien. Landlord's costs shall be added rent.

**7. Repairs:** Tenant must take good care of the Apartment and all equipment and fixtures in it. Landlord will repair the plumbing, heating and electrical systems. Tenant must, at Tenant's cost, make all repairs and replacements whenever the need results from Tenant's act or neglect. If Tenant fails to make a needed repair or replacement, Landlord may do it. Landlord's reasonable expense will be added rent, unless agreed upon in writing.

**8. Fire, accident, defects, damage:** Tenant must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Apartment cannot be used because of fire or other casualty, Tenant is not required to pay rent for the time the Apartment is unusable. If part of the Apartment cannot be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Apartment is usable. Landlord need only repair the damaged part of the Apartment. Landlord is not required to repair or replace any fixtures, furnishings or decorations but only equipment that is originally installed by Landlord. Landlord is not responsible for delay due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.

**9.** If the apartment cannot be used, Landlord has 30 days to decide whether to repair it. Landlord's decision to repair must be given by notice to Tenant with 30 days of the fire or casualty. Landlord shall have a reasonable time to repair. In determining what a reasonable time is consideration shall be given to any delays in receipt of insurance settlements, labor trouble and causes not within Landlord's control. If Landlord fails to give Tenant notice of its decision within 30 days, Tenant may cancel the lease as of the date of the fire or casualty. The cancellation shall be effective only if it is given before Landlord begins to repair or before Landlord notifies Tenant of its decision to repair. If the fire or other casualty is caused by an act or neglect of Tenant or guest of Tenant all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be added rent.

Landlord has the right to demolish, rebuild or renovate the Building if there is substantial damage by fire or another casualty. Even if the Apartment is not damaged, Landlord may cancel this lease within 30 days after the substantial fire or casualty by giving Tenant notice of Landlord's intention to demolish, rebuild or renovate. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Apartment to Landlord on or before the cancellation date in the notice and pay all rent due to the date of the fire or casualty. If the lease is canceled, Landlord is not required to repair the Apartment or Building. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section is intended to replace the terms on New York Real Property Law Section 227.

**10. Liability:** Landlord is not liable for loss, expense, or damage to any person or property, unless due to Landlord's negligence. Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Building. Tenant must pay for damages suffered and reasonable expenses of Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord arising from Tenant's act or neglect Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice. Tenant is responsible for all acts or neglect of Tenant's family, employees, guests or invitees. Tenant understands that he/she can purchase their own renter's insurance to cover any damage, loss, expense to any person or property.

**11. Entry by Landlord:** Landlord may enter the Apartment at reasonable hours to: repair, inspect, exterminate, install or work on master antennas or other systems or equipment and perform other work that Landlord decides is necessary or desirable. The landlord is required to provide the tenant with a 24-hour notice prior to entering the apartment for any specific purpose. At reasonable hours Landlord may show the Apartment to possible buyers, lenders, or tenants of the entire Building or land. At reasonable hours Landlord may show the Apartment to possible or new tenants during the last 4 months of the Term. Entry by Landlord must be on reasonable notice except in emergency.

**12. Assignment and sublease:** The Apartment must be used only as a private Apartment to live in as the primary residence of the Tenant and for no other reason. Only the party signing this agreement may use the Apartment. **There is absolutely no subletting**. Tenant must not assign all or part of this Lease or sublet all or part of the Apartment or permit any other person to use the Apartment. If Tenant does, Landlord has the right to cancel the Lease as stated in the Tenant 's Default section. In the event that one or more of the parties on this lease decide to leave tenant may not replace them or find a roommate on their own. If landlord wishes to continue this agreement with the remaining person(s), any replacement roommate <u>must first be screened and approved by landlord or management.</u>

**13. Subordination:** This Lease and Tenant's rights, are subject and subordinate to all present and future: (a) leases for the Building or the land on which it stands, (b) mortgages on the leases or the Building or land, (c) agreements securing money paid or to be paid by a lender, and (d) terms, conditions, renewals, changes of any kind and extensions of the mortgages, leases or lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant.

**14. Condemnation:** If all of the Apartment or Building is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Apartment or Building. If any part of the Apartment or Building is taken, Landlord may cancel this Lease on notice to Tenant. The notice shall set a cancellation date not less than 30 days from the date of the notice. If the Lease is canceled, Tenant must deliver the Apartment to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant assigns to Landlord any interest Tenant may have to any part of the award. Tenant shall make no claim for the value of the remaining part of the Term.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant __KB__  Tenant __JB__  Tenant __OF__  Tenant __BD__.

Lease  Page 2 of 5

**15. Construction or demolition:** Construction or demolition may be performed in or near the Building. Even if it interferes with Tenant's ventilation, view or enjoyment of the Apartment it shall not affect Tenant's obligations in this Lease.

**16. Tearing down the building:** If the Landlord wants to tear down the entire Building, Landlord shall have the right to end this Lease by giving 30-day notice to Tenant. If Landlord gives Tenant such notice and such notice was given to every residential tenant in the Building, then the Lease will end and Tenant must leave the Apartment at the end of the 30-day period in the notice.

**17. Liability for property left with Landlord's employees:** Landlord's employees are not permitted to drive Tenant's cars or care for Tenant's cars or personal property. Tenant must not leave a car or other personal property with any of Landlord's employees. Landlord is not responsible for (a) loss, theft or damage to the property, and (b) injury caused by the property or its use.

**18. Playground, pool, parking and recreation areas:** If there is a playground, pool, parking or recreation area, Landlord may give Tenant permission to use it. Tenant will use the area at Tenant's own risk. Landlord's permission may be canceled at any time, for good reasonable reason.

**19. Roof access:** No one is allowed on the roof, except in the event of an emergency such as a fire. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.

**20. Tenant's certificate:** Upon request by Landlord, Tenant shall sign a certificate stating the following: (1) This Lease is in full force and unchanged (or if changed, how it was changed); and (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; and (3) Tenant is fully performing all the terms of the Lease and will continue to do so; (4) rent and added rent have been paid to date; and (5) any other reasonable statement required by Landlord. The certificate will be addressed to the party Landlord chooses.

**21. Correcting Tenant's defaults:** If Tenant fails to timely correct a default after notice form Landlord, Landlord may correct it at Tenant's expense. Landlord's costs to correct the default shall be added rent.

**22. Tenant's duty to obey laws and regulations:** Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notices received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

**23. Tenant's default:** A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated:
(1) Failure to pay rent or added rent on time, 3 days.
(2) Failure to move into the Apartment within 15 days after the beginning date of the Term, 10 days.
(3) Issuance of a court order under which the Apartment may be taken by another party, 10 days.
(4) Improper conduct by Tenant annoying other tenants, 10 days.
(5) Failure to comply with any other term or Rule in the Lease, 10 days.
If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than 10 days after the date of the notice. On the cancellation date in the notice the Term of this Lease shall end. Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease. If the default cannot be cured in the time stated, Tenant must begin to cure within that time and continue diligently until cured.

**A.** If Tenant's application for the Apartment contains any material misstatement of fact, Landlord may cancel this Lease. Cancellation shall be by cancellation notice as stated in Section 23.A.

**B.** If **(1)** the Lease is canceled; or **(2)** rent or added rent is not paid on time; or **(3)** Tenant vacates the Apartment, Landlord may, in addition to other remedies, take any of the following steps: **(a)** peacefully enter the Apartment and remove Tenant and any person or property, and **(b)** use eviction or other lawsuit method to take back the Apartment.

**C. If this Lease is canceled, or Landlord takes back the Apartment, the following takes place: (1)** Rent and added rent for the unexpired Term becomes due and payable.

**(2)** Landlord may re-let the Apartment and anything in it. The re-letting may be for any term. Landlord may charge any rent or no rent and five allowances to the new tenant. Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and prepare it for renting. Tenant stays liable and is not released except as provided by law.

**(3)** Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, broker fees, cleaning and repairing costs, decorating costs and advertising costs.

**(4)** From time to time Landlord may bring actions for damages. Delay or failure to bring an action shall not be a waiver of Landlord's rights. Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.

**(5)** If Landlord re-lets the Apartment combined with other space an adjustment will be made based on square footage. Money received by Landlord from the next tenant other than the monthly rent, shall not be considered as part of the rent paid to Landlord. Landlord is entitled to all of it. If Landlord re-lets the Apartment the fact that all or part of the next tenant's rent is not collected does not affect Tenant's liability. Landlord has no duty to collect the next tenant's rent. Tenant must continue to pay rent, damages, losses and expenses without offset.

**D.** If Landlord takes possession of the Apartment by Court order, or under the Lease, Tenant has no right to return to the Apartment.

*I, Tenant(s), have read and understood all of the terms above.*
Tenant **K B**   Tenant **J B**   Tenant **O F**   Tenant **B D**

**24. Jury trial and counterclaims:** Landlord and Tenant agree not to use their right to a Trial by Jury in any action or proceeding brought by either, against the other, for any matter concerning this Lease or the Apartment. This does not include actions for personal injury or property damage.

**25. No waiver, illegality:** Landlord's acceptance of rent or failure to enforce any term in this Lease is not a waiver of any of Landlord's rights. If a term in this Lease is illegal, the rest of this lease remains in full force.

**26. Insolvency:** If (1) Tenant assigns property for the benefit of creditors, or (2) a non-bankruptcy trustee or receiver of Tenant or Tenant's property is appointed. Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not full dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset. If Tenant files a voluntary petition in bankruptcy or an involuntary petition in bankruptcy is filed against Tenant, Landlord may not terminate this Lease.

**27. Rules:** Tenant must comply with these Rules. Notice of new Rules will be given to Tenant. Landlord need not enforce Rules against other Tenants. Landlord is not liable to Tenant if another tenant violates these Rules. Tenant receives no rights under these Rules.

**(1)** The comfort or rights of other Tenants must not be interfered with. This means that annoying sounds, smells and lights are not allowed. Tenants are expected to be considerate and courteous to both fellow tenants and neighbors.

**(2)** No one is allowed on the roof. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.

**(3) No Smoking cigarettes/vaping  in apartment or in building.**

**(4)** Bicycles are not allowed in hallways.

**(5)** Tenant must give to Landlord key to all locks. Doors must be locked at all times. Windows must be locked when Tenant is out.

**(6)** No water beds allowed in Apartments.

**(7)** Garbage disposal rules must be followed. Wash lines, vents and plumbing fixtures must be used for their intended purpose.

**(8) Washer and Dryer have hookup in the apartment.**

**(9)** Improperly parked cars may be removed without notice at Tenant's cost.

**(10)** Second hand furniture must be vermin free. If there is any type of infestation, Tenant is responsible for all incurred fees from cleaning and exterminating.

**(11)** Tenant is responsible for taking out the garbage to the street curb side on required days.

**(12)** Pets/Animals are NOT allowed in the apartment

**(13) Possession or use of illegal drugs is strictly prohibited in or around the property; such action will be a violation of the lease.**

**(14)** Tenants are expressly prohibited from subleasing the property, and any such action will be considered a violation of the lease agreement.

**(15)** Heating system must be kept at 65F in the fall and winter months to prevent heating system damage. If damage, its tenant's responsibility to fix.

**28. Representations, changes in Lease:** Tenant has read this Lease. All promises made by the Landlord are in this  Lease. There are no others. This Lease may be changed only by an agreement in writing signed by delivered to each  party.

**29. Landlord unable to perform:** If due to labor trouble, government order, lack of supply, Tenant's act or neglect, or any other cause not fully within Landlord's reasonable control, Landlord is delayed or unable to (a) carry out any of Landlord's promises or agreements, (b) supply any service required to be supplied, (c) make any required repair or change in the Apartment or Building, or (d) supply any equipment or appliances Landlord is required to supply, this Lease shall not be ended or Tenant's obligations affected.

**30. End of term:** At the end of the Term, Tenant must: leave the Apartment clean and in good condition, subject to ordinary wear and tear; remove all of Tenant's property and all Tenant's installations and decorations; repair all  damages to the Apartment and Building caused by moving; and restore the Apartment to its condition at the beginning  of the Term. Items such as bathroom fixtures, toilet, shower, sink, kitchen cabinets, ceiling fans, refrigerators must be left  clean. If the tenant fails to do so, a $200 clean up fee shall be deducted from security deposit. If the last day of the Term is on  a Saturday, Sunday or State or Federal holiday the Term shall end on the prior business day. The security deposit will be refunded if the apartment is left in its original condition. However, if the apartment is significantly damaged or destroyed, the security deposit will not be refunded and will be applied to cover the costs of repairs or restoration.

**31. Space "as is":** Tenant has inspected the Apartment and Building. Tenant states they are in good order and repair and takes the Apartment as is except for latent defects.

**32. Landlord's warranty of habitability:** Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life or safety.

**33. Landlord's consent:** If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court for a declaratory judgment to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**34. Limit of recovery against Landlord:** Tenant is limited to Landlord's interest in the Building for payment of a judgment or other court remedy against Landlord.

**35. Lease binding on:** This Lease is binding on Landlord and Tenant and their heirs, distributes, executors, administrators, successors and lawful assigns.

**36. Landlord:** Landlord means the owner (Building or Apartment), or the lessee of the Building, or a lender in possession. Landlord's obligations end when Landlord's interest in the (Building or Apartment) is transferred. Any acts Landlord may do may be performed by Landlord's agents or employees.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant **KB**   Tenant **JB**   Tenant **OF**   Tenant **BD**                    Lease Page 4 of 5

**37. Paragraph headings:** The paragraph headings are for convenience only.

**38. Furnishings:** If the Apartment is furnished, the furniture and other furnishings are accepted as is. If an inventory is supplied each party shall have a signed copy. At the end of the Term, Tenant shall return the furniture and other furnishings clean and in good order and repair.

**39. Services Landlord will supply:**
Landlord is not required to install air-conditioning. Stopping or reducing of service(s) this will not be a reason for Tenant to stop paying rent, to make a money claim or to claim eviction. Tenant may enforce its rights under the warranty of habitability. Damage to the equipment or appliances supplied by Landlord, caused by Tenant's acts may be repaired by Landlord at Tenant's expense. The repair cost will be added rent.

> Tenant must not use a dishwasher, washing machine, dryer, freezer, heater, ventilator, air cooling equipment or other appliance unless installed by Landlord or with Landlord's written consent. Tenant must not use more electric than the wiring or feeders to the Building can safely carry.

Landlord may stop service of the plumbing, heating, elevator, air cooling or electrical systems, because of accident, emergency, repairs, or changes until the work is complete.

> **Signatures, effective date** Tenant have signed this Lease as of the below date. It is effective when Landlord delivers to Tenant a copy signed by all parties.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant $\underline{KB}$  Tenant $\underline{JB}$  Tenant $\underline{OF}$  Tenant $\underline{BD}$.

**40.** Additional occupants, other than the tenants stated on this lease are not permitted to live in the apartment. Any other persons interested in living in the apartment must be fully screened and approved by the landlord.

**41. Utilities: Landlord Pays: Cold water Tenant pays: Gas and Electric**
**42. Rent Shall be paid on the first of every month**
**43.** Any renovations to the apartment are the tenant's responsibility and must be approved by the landlord in advance of work being started
**44. Tenants are not entitled to use of backyard.**
**45. Pets are NOT allowed in the apartment**
**46. Tenants are not entitled use of parking space and garage.**
**47. Washer and dryer have hookup in the apartment.**
**48.** Tenants are responsible to observe garbage and recycling rules of the city of NY and for taking out the garbage to the street on garbage pickup days. If they fail to do so and that results in a fine by the city tenants will be responsible to pay the fine.
**49.** Tenants are responsible for maintaining sidewalk cleaning and snow removal around their property.
**50.** Tenant must give landlord a 30 days' notice when they decide to vacate the apartment after the completion of the lease term. Tenant agrees to allow the landlord and landlord's agents to show the apartment to potential tenants after giving the 30 days' notice.
**51.** Subleasing by tenant of any space in the apartment, parking or back yard is prohibited.
*52. If tenant defaults on paying the monthly lease, landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action.*
*53. The house is confined to 4 people, if additional residents will occupy the apartment, the landlord has a right to increase the monthly rent by $150 per additional person.*
*54. Tenants are prohibited from creating excessive wall damage by drilling multiple holes, and a fee of $25 will be applied for each hole that causes damage.*
*55. Tenants are responsible for replacing their own light bulbs.*

**Property Address: 581 West Caswell Ave #2FL Staten Island NY 10314**
**Term: 1 Year**
**Beginning: January 1, 2024**
**Ending: December 31, 2024**

**Monthly Rent: $2,700**
**First Rent Payment: $2,700**
**Security Deposit: $2,700**
**Next Payment due: February 1, 2024**

X_____
Landlord:  King Bautiste (347-465-0164).

X_____     X _____ (Oscar F.)
Tenant:  Joe.Bautisto   Tenant:

X_____     X _____ (Belen M.D).
Tenant:  Tenant

Tenant $\underline{KB}$  Tenant $\underline{JB}$  Tenant $\underline{OF}$  Tenant $\underline{BD}$     Lease Page 5 of 5

# EXHIBIT 12-3

December 22, 2023

Dear: HRA

I am <u>Xue Qiang Zheng</u> Landlord of 581 West Caswell Ave #1 Floor Staten Island NY 10314. This letter is about  I still didn't receive three check from my tenant each check amount should be $250.50 and total should be $751.50 payment period 9/7/2023 (Benefit# SP43923699 & Case# 030399674I).

If you have any questions feel free to reach at (646-264-8930) between the hours of 12pm-6pm.

Best Regards,

Landlord Signature

_____

# EXHIBIT 13-1

Case Number: 00030399674I

Date: October 8, 2024

Landlord name: Xue Qiang Zheng
Name(s): Diego Lopez hernandez, Antoni Maceda Viruel, and Victoria Viruel Vasquez

For Address: 581 West Caswell Ave 1floor, Staten Island New York 10314

Dear HRA Case Number (00030399674I),

I am the [Landlord] for 581 West Caswell Ave 1floor, Staten Island New York 10314. This letter is a formal verification that my tenant, Diego Lopez Hernandez, Antoni Maceda Viruel and Victoria Viruel Vasquez is currently residing in my rental property located at 581 West Caswell Ave 1floor, Staten Island New York 10314 for one year term lease. They Renew Leased on July 15, 2024 for a lease term of one year. Which is set to expire on July 14, 2025. They're kids who also lives at 581 West Caswell Ave 1floor Staten Island New York 10314 is Emily Lopez Viruel (8 years old), Joshua Lopez Viruel (10 years old), Jasmine Viruel (14 years old), Yamel Maceda Viruel (19 years old).

My tenant currently pays $3200 per month and has a strong history of making on-time rent payments. They have proven to be a reliable tenant.

If you have any questions for me, I can be reached at 646-264-8930 or [landload Information] between the hour of 12pm - 6pm.

Best Regards,

*Diego Lopez Hernandez*

Landloard Signature

# EXHIBIT 13

**Monday, May 5, 2025 at 14:55:23 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Fwd: 581 West Caswell Ave Staten Island NY 10314 |
| **Date:** | Wednesday, April 30, 2025 at 1:16:24 PM Eastern Daylight Time |
| **From:** | yuli weng |
| **To:** | akest@fkblaw.com, Eric Hecker, mharoutunian@sekaslaw.com, cpdelcioppio@saccofillas.com, gghione@sekaslaw.com, sigarashi@fkblaw.com, nsekas@sekaslaw.com, jefftoback@gmail.com, srichards@fkblaw.com |
| **CC:** | Luk & Luk, Pllc |
| **Attachments:** | Case Number- 00030399674I (1).pdf |

---------- Forwarded message ---------
发件人：**xian jin zhang** <yydoinoy@hotmail.com>
Date: 2024年10月8日周二 20:09
Subject: 581 West Caswell Ave Staten Island NY 10314
To: wengyuli520@gmail.com <wengyuli520@gmail.com>


Hi Weng
Please see attached sign the low page and email me back.
Thank you

# EXHIBIT 14



Sent from my iPhone

Begin forwarded message:

See More



# EXHIBIT 15

Usage for:                9173306611

LOCAL AIRTIME          LONG DISTANCE and INTERNATIONAL CHARGES

Total use:        3544 minutes

| Date (Pacific) | Number | Destination | Minutes | Type |
|---|---|---|---|---|
| 10/1/2023 21:34 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 10/2/2023 14:12 | (347) 546-5688 | Incoming | 4 Min | T-Mobile to T-Mobile |
| 10/2/2023 19:36 | (347) 546-5688 | to Bklyn Nyc/NY | 2 Min | T-Mobile to T-Mobile |
| 10/10/2023 12:13 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 10/10/2023 13:34 | (347) 546-5688 | Incoming | 8 Min | T-Mobile to T-Mobile |
| 10/17/2023 14:13 | (347) 546-5688 | Incoming | 4 Min | T-Mobile to T-Mobile |
| 10/17/2023 15:53 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 10/17/2023 15:53 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 10/17/2023 15:53 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 10/22/2023 11:15 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 10/22/2023 11:15 | (347) 546-5688 | Incoming | 5 Min | T-Mobile to T-Mobile |
| 10/25/2023 11:48 | (347) 546-5688 | to Bklyn Nyc/NY | 6 Min | T-Mobile to T-Mobile |
| 10/29/2023 10:01 | (347) 546-5688 | to Bronx Nyc/NY | 6 Min | T-Mobile to T-Mobile |

The date and time for call usage corresponds with the time zone you are in when beginning a call.

Usage for:                    9173306611

LOCAL AIRTIME          LONG DISTANCE and INTERNATIONAL CHARGES

Total use:              2675 minutes

| Date (Pacific) | Number | Destination | Minutes | Type |
|---|---|---|---|---|
| 10/31/2023 13:46 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/3/2023 14:09 | (347) 546-5688 | to Bklyn Nyc/NY | 3 Min | T-Mobile to T-Mobile |
| 11/5/2023 15:43 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 11/5/2023 16:00 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 11/5/2023 17:37 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/9/2023 18:50 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/10/2023 8:39 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/10/2023 8:40 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/10/2023 8:40 | (347) 546-5688 | Incoming | 6 Min | T-Mobile to T-Mobile |
| 11/10/2023 10:22 | (347) 546-5688 | Incoming | 4 Min | T-Mobile to T-Mobile |
| 11/10/2023 10:28 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/11/2023 17:43 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 11/15/2023 12:35 | (347) 546-5688 | to Bklyn Nyc/NY | 2 Min | T-Mobile to T-Mobile |
| 11/27/2023 20:40 | (347) 546-5688 | Incoming | 2 Min | T-Mobile to T-Mobile |
| 11/27/2023 20:44 | (347) 546-5688 | Incoming | 2 Min | T-Mobile to T-Mobile |
| 11/27/2023 20:47 | (347) 546-5688 | to Bklyn Nyc/NY | 2 Min | T-Mobile to T-Mobile |
| 11/27/2023 21:50 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 11/28/2023 11:38 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/28/2023 16:33 | (347) 546-5688 | Incoming | 4 Min | T-Mobile to T-Mobile |
| 11/28/2023 17:50 | (347) 546-5688 | to Bklyn Nyc/NY | 2 Min | T-Mobile to T-Mobile |
| 11/29/2023 11:28 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 11/29/2023 11:28 | (347) 546-5688 | Incoming | 2 Min | T-Mobile to T-Mobile |
| 11/30/2023 11:03 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |

The date and time for call usage corresponds with the time zone you are in when beginning a call.

Usage for:              9173306611

LOCAL AIRTIME          LONG DISTANCE and INTERNATIONAL CHARGES

Total use:      2379 minutes

| Date (Pacific) | Number | Destination | Minutes | Type |
|---|---|---|---|---|
| 12/7/2023 17:00 | (347) 546-5688 | Incoming | 2 Min | T-Mobile to T-Mobile |
| 12/7/2023 21:48 | (347) 546-5688 | to Bklyn Nyc/NY | 3 Min | T-Mobile to T-Mobile |
| 12/7/2023 21:59 | (347) 546-5688 | Incoming | 3 Min | Wi-Fi call |
| 12/8/2023 11:58 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 12/10/2023 14:26 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/10/2023 14:30 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 12/10/2023 14:51 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/12/2023 10:27 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 12/12/2023 16:33 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/12/2023 19:05 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/14/2023 10:18 | (347) 546-5688 | Incoming | 2 Min | T-Mobile to T-Mobile |
| 12/17/2023 11:46 | (347) 546-5688 | to Bklyn Nyc/NY | 2 Min | T-Mobile to T-Mobile |
| 12/17/2023 14:48 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 12/17/2023 14:48 | (347) 546-5688 | to Bklyn Nyc/NY | 3 Min | T-Mobile to T-Mobile |
| 12/17/2023 15:00 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/17/2023 15:02 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 12/18/2023 19:58 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/18/2023 19:59 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/18/2023 20:01 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/18/2023 20:01 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 12/18/2023 21:14 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 12/19/2023 13:08 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 12/19/2023 13:25 | (347) 546-5688 | Incoming | 2 Min | Call Waiting |
| 12/24/2023 13:55 | (347) 546-5688 | to Bklyn Nyc/NY | 3 Min | T-Mobile to T-Mobile |
| 12/24/2023 15:03 | (347) 546-5688 | Incoming | 3 Min | T-Mobile to T-Mobile |
| 12/24/2023 15:27 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |
| 12/24/2023 17:37 | (347) 546-5688 | to Bklyn Nyc/NY | 1 Min | T-Mobile to T-Mobile |
| 12/24/2023 17:44 | (347) 546-5688 | Incoming | 1 Min | T-Mobile to T-Mobile |

The date and time for call usage corresponds with the time zone you are in when beginning a call.

# EXHIBIT 16-1

**Monday, May 5, 2025 at 15:31:46 Eastern Daylight Time**

| | |
|---|---|
| **Subject:** | Fwd: 581 West Caswell Ave |
| **Date:** | Wednesday, April 30, 2025 at 1:10:42 PM Eastern Daylight Time |
| **From:** | yuli weng |
| **To:** | akest@fkblaw.com, Eric Hecker, mharoutunian@sekaslaw.com, cpdelcioppio@saccofillas.com, gghione@sekaslaw.com, sigarashi@fkblaw.com, nsekas@sekaslaw.com, jefftoback@gmail.com, srichards@fkblaw.com |
| **CC:** | Luk & Luk, Pllc |
| **Attachments:** | Lease 581 West Caswell Ave 2Floor Staten Island NY 10314.pdf |

---------- Forwarded message ---------
发件人： **yuli weng** <wengyuli520@gmail.com>
Date: 2023年12月21日周四 23:42
Subject: Re: 581 West Caswell Ave
To: xian jin zhang <yydoinoy@hotmail.com>

在 2023年12月21日，下午8:17，xian jin zhang <yydoinoy@hotmail.com> 写道：

发自我的iPhone

Hi Weng
Please see attached sign last page of the lease and HRA LETTER TOO, and email me back.
Thank you

<Lease 581 West Caswell Ave 2Floor Staten Island NY 10314.pdf>
<Letter for check 581 West Caswell Ave 1Floor Staten Island NY.pdf>

# EXHIBIT 16-2

# Lease Agreement

**Lease Term:** 1 Year

**581 West Caswell Ave #2FL Staten Island NY 10314**  **Lease begins: January 1, 2024**

**Lease Ends: December 31, 2024**

Landlord: Xue Qiang Zheng

Tenants: Kenny Bautista, Joe Bautista, Oscar Falcon, Belen Delagdo.

**Rent: $2,700**

*The Landlord and Tenant agree to lease the apartment for the terms and at the Rent stated on these terms.*

**1. Use:** The Apartment must be used only as a private residence and should not be used for any other reason other than the primary residence of the Tenant. Only a party signing this lease may use the Apartment. This is subject to Tenant's rights under the Apartment Sharing Law and to limits on the number of people who may legally occupy an Apartment of this size.

**2. Failure to give possession:** Landlord shall not be liable for failure to give Tenant possession of the Apartment on the beginning date of the Lease Term. Rent shall be payable as of the beginning of the lease term unless Landlord is unable to give possession of the Apartment to Tenant. Rent shall then be payable as of the date possession is available. Landlord must give possession within a reasonable time, if not, Tenant may cancel and obtain a refund of money deposited. Landlord will notify Tenant as to the date possession is available.

**3. Rent, added rent:** The rent payment for each month must be paid on the **first day** of that month at the Landlord's indicated address. Landlord need not give notice to pay the rent. Rent must be paid in full without deduction. The first month's rent is to be paid when Tenant signs this Lease. **If rent is not paid in full within 5 days, a $75 late penalty will be incurred. Tenant will be charged a $50 penalty for any returned/bounced checks.** These added rent/fees will be billed  and may be payable as rent, together with the next monthly rent due or may be deducted from security deposit. If Tenant fails to pay the added rent on time, Landlord shall have the same rights against Tenant as if Tenant failed to pay rent. **If tenant defaults on paying the monthly lease, the landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action. If the tenant fails to pay rent and is one month late, the landlord retains the right to initiate legal eviction proceedings.**

**4. Notices:** Any bill, statement or notice must be in writing. If addressed to Tenant, it must be delivered or mailed to the Tenant at the Apartment. If addressed to Landlord it must be mailed to Landlord's indicated address. It will be considered delivered on the day mailed or if not mailed, when left at the proper address. A notice must be sent by certified mail. Each party must accept and claim the notice given by the other. Landlord must notify Tenant if Landlord's address is changed.

**5. Security:** Tenant has given security to Landlord in the amount stated in the last page. Tenant understands that the security will be held in a non-interest-bearing account. Therefore, deposits returned after inspecting the premises for damages will be no greater than the original amount given. Deductions will be taken from the security if the apartment was not returned at its original state.

> If Tenant does not pay rent or added rent on time, Landlord may use the security to pay for rent and added rent then due. If Tenant fails to timely perform any other term in this Lease, Landlord may use the security for payment of money Landlord may spend, or damages Landlord suffers because of Tenant's failure. If the landlord uses the security Tenant, shall, upon notice from the Landlord, send to the Landlord an amount equal to the  sum used by the Landlord. That amount is due, when billed, as rent. At all times Landlord is to have the amount of  security stated in the last page.

> If Tenant fully performs all terms of this Lease, pays rent on time and leaves the Apartment in good condition on the last day of the Term, then the Landlord will return the security being held.

> If Landlord sells or leases the Building, Landlord may give the security to the buyer or lessee. In that event Tenant will look only to the buyer or lessee for the return of the security and Landlord will be deemed released. The Landlord may use the security as stated in this section. Landlord may put the security in any place permitted by law. Tenant's security will bear interest only if required by law. Landlord will give Tenant the interest when Landlord is required to return the security to Tenant. Any interest returned to Tenant will be less the sum Landlord is allowed to keep for expenses. Landlord need not give Tenant interest on the security if Tenant is in default.

**6. Alteration:** Tenant must obtain Landlord's prior written consent to install any paneling, flooring, "built in" decorations, partitions, railings, or make alterations or to paint or wallpaper the Apartment. Tenant must not change the plumbing, ventilating, air conditioning, electric or heating systems. If consent is given, the alterations and installations shall become the property of the Landlord when completed and paid for. They shall remain with and as part of the Apartment at the end of the Term. Landlord has the right to demand that Tenant remove the alterations and installations before the end of the Term. The demand shall be by notice, given at least 15 days before the end of the Term. Tenant shall comply with the demand at Tenant's own cost. Landlord are not required to do or pay for any work unless stated in  this Lease.

> Tenant understands that the apartment is being delivered in good condition. The apartment has Wood floors that are being delivered in good condition. Therefore, tenant will be charged for any damages beyond normal wear made to floors, walls, kitchen, bathrooms etc. For example, scratches, tears, rips, stains, urination or defecation damages. Tenant is not allowed to paint or wallpaper walls and especially moldings, unless given written consent from landlord. Tenant is not allowed to paint or wallpaper walls and especially moldings. If tenant paints apartment a $1,000 fee will be charged, unless given written consent from landlord.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant **KB**    Tenant **JB**    Tenant **O.F**    Tenant **BD**                    Lease Page 1 of 5

If a lien is filed on the Apartment or Building for any reason relating to Tenant's fault, Tenant must immediately pay or bond the amount stated in the Lien. Landlord may pay or bond the lien if Tenant fails to do so within 20 days after Tenant has notice about the Lien. Landlord's costs shall be added rent.

**7. Repairs:** Tenant must take good care of the Apartment and all equipment and fixtures in it. Landlord will repair the plumbing, heating and electrical systems. Tenant must, at Tenant's cost, make all repairs and replacements whenever the need results from Tenant's act or neglect. If Tenant fails to make a needed repair or replacement, Landlord may do it. Landlord's reasonable expense will be added rent, unless agreed upon in writing.

**8. Fire, accident, defects, damage:** Tenant must give Landlord prompt notice of fire, accident, damage or dangerous or defective condition. If the Apartment cannot be used because of fire or other casualty, Tenant is not required to pay rent for the time the Apartment is unusable. If part of the Apartment cannot be used, Tenant must pay rent for the usable part. Landlord shall have the right to decide which part of the Apartment is usable. Landlord need only repair the damaged part of the Apartment. Landlord is not required to repair or replace any fixtures, furnishings or decorations but only equipment that is originally installed by Landlord. Landlord is not responsible for delay due to settling insurance claims, obtaining estimates, labor and supply problems or any other cause not fully under Landlord's control.

**9.** If the apartment cannot be used, Landlord has 30 days to decide whether to repair it. Landlord's decision to repair must be given by notice to Tenant with 30 days of the fire or casualty. Landlord shall have a reasonable time to repair. In determining what a reasonable time is, consideration shall be given to any delays in receipt of insurance settlements, labor trouble and causes not within Landlord's control. If Landlord fails to give Tenant notice of its decision within 30 days, Tenant may cancel the lease as of the date of the fire or casualty. The cancellation shall be effective only if it is given before Landlord begins to repair or before Landlord notifies Tenant of its decision to repair. If the fire or other casualty is caused by an act or neglect of Tenant or guest of Tenant all repairs will be made at Tenant's expense and Tenant must pay the full rent with no adjustment. The cost of the repairs will be added rent.

Landlord has the right to demolish, rebuild or renovate the Building if there is substantial damage by fire or another casualty. Even if the Apartment is not damaged, Landlord may cancel this lease within 30 days after the substantial fire or casualty by giving Tenant notice of Landlord's intention to demolish, rebuild or renovate. The Lease will end 30 days after Landlord's cancellation notice to Tenant. Tenant must deliver the Apartment to Landlord on or before the cancellation date in the notice and pay all rent due to the date of the fire or casualty. If the lease is canceled, Landlord is not required to repair the Apartment or Building. The cancellation does not release Tenant of liability in connection with the fire or casualty. This Section is intended to replace the terms on New York Real Property Law Section 227.

**10. Liability:** Landlord is not liable for loss, expense, or damage to any person or property, unless due to Landlord's negligence. Landlord is not liable to Tenant for permitting or refusing entry of anyone into the Building. Tenant must pay for damages suffered and reasonable expenses of Landlord relating to any claim arising from any act or neglect of Tenant. If an action is brought against Landlord arising from Tenant's act or neglect Tenant shall defend Landlord at Tenant's expense with an attorney of Landlord's choice. Tenant is responsible for all acts or neglect of Tenant's family, employees, guests or invitees. Tenant understands that he/she can purchase their own renter's insurance to cover any damage, loss, expense to any person or property.

**11. Entry by Landlord:** Landlord may enter the Apartment at reasonable hours to: repair, inspect, exterminate, install or work on master antennas or other systems or equipment and perform other work that Landlord decides is necessary or desirable. The landlord is required to provide the tenant with a 24-hour notice prior to entering the apartment for any specific purpose. At reasonable hours Landlord may show the Apartment to possible buyers, lenders, or tenants of the entire Building or land. At reasonable hours Landlord may show the Apartment to possible or new tenants during the last 4 months of the Term. Entry by Landlord must be on reasonable notice except in emergency.

**12. Assignment and sublease:** The Apartment must be used only as a private Apartment to live in as the primary residence of the Tenant and for no other reason. Only the party signing this agreement may use the Apartment. **There is absolutely no subletting.** Tenant must not assign all or part of this Lease or sublet all or part of the Apartment or permit any other person to use the Apartment. If Tenant does, Landlord has the right to cancel the Lease as stated in the Tenant 's Default section. In the event that one or more of the parties on this lease decide to leave tenant may not replace them or find a roommate on their own. If landlord wishes to continue this agreement with the remaining person(s), any replacement roommate <u>must first be screened and approved by landlord or management.</u>

**13. Subordination:** This Lease and Tenant's rights, are subject and subordinate to all present and future: (a) leases for the Building or the land on which it stands, (b) mortgages on the leases or the Building or land, (c) agreements securing money paid or to be paid by a lender, and (d) terms, conditions, renewals, changes of any kind and extensions of the mortgages, leases or lender agreements. Tenant must promptly execute any certificate(s) that Landlord requests to show that this Lease is so subject and subordinate. Tenant authorizes Landlord to sign these certificate(s) for Tenant.

**14. Condemnation:** If all of the Apartment or Building is taken or condemned by a legal authority, the Term, and Tenant's rights shall end as of the date the authority takes title to the Apartment or Building. If any part of the Apartment or Building is taken, Landlord may cancel this Lease on notice to Tenant. The notice shall set a cancellation date not less than 30 days from the date of the notice. If the Lease is canceled, Tenant must deliver the Apartment to Landlord on the cancellation date together with all rent due to that date. The entire award for any taking belongs to Landlord. Tenant assigns to Landlord any interest Tenant may have to any part of the award. Tenant shall make no claim for the value of the remaining part of the Term.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant **KB**   Tenant **SB**   Tenant **OF**   Tenant **BD**.

Lease Page 2 of 5

**15. Construction or demolition:** Construction or demolition may be performed in or near the Building. Even if it interferes with Tenant's ventilation, view or enjoyment of the Apartment it shall not affect Tenant's obligations in this Lease.

**16. Tearing down the building:** If the Landlord wants to tear down the entire Building, Landlord shall have the right to end this Lease by giving 30-day notice to Tenant. If Landlord gives Tenant such notice and such notice was given to every residential tenant in the Building, then the Lease will end and Tenant must leave the Apartment at the end of the 30-day period in the notice.

**17. Liability for property left with Landlord's employees:** Landlord's employees are not permitted to drive Tenant's cars or care for Tenant's cars or personal property. Tenant must not leave a car or other personal property with any of Landlord's employees. Landlord is not responsible for (a) loss, theft or damage to the property, and (b) injury caused by the property or its use.

**18. Playground, pool, parking and recreation areas:** If there is a playground, pool, parking or recreation area, Landlord may give Tenant permission to use it. Tenant will use the area at Tenant's own risk. Landlord's permission may be canceled at any time, for good reasonable reason.

**19. Roof access:** No one is allowed on the roof, except in the event of an emergency such as a fire. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.

**20. Tenant's certificate:** Upon request by Landlord, Tenant shall sign a certificate stating the following: (1) This Lease is in full force and unchanged (or if changed, how it was changed); and (2) Landlord has fully performed all of the terms of this Lease and Tenant has no claim against Landlord; and (3) Tenant is fully performing all the terms of the Lease and will continue to do so; (4) rent and added rent have been paid to date; and (5) any other reasonable statement required by Landlord. The certificate will be addressed to the party Landlord chooses.

**21. Correcting Tenant's defaults:** If Tenant fails to timely correct a default after notice form Landlord, Landlord may correct it at Tenant's expense. Landlord's costs to correct the default shall be added rent.

**22. Tenant's duty to obey laws and regulations:** Tenant must, at Tenant's expense, promptly comply with all laws, orders, rules, requests, and directions, of all governmental authorities, Landlord's insurers, Board of Fire Underwriters, or similar groups. Notices received by Tenant from any authority or group must be promptly delivered to Landlord. Tenant may not do anything which may increase Landlord's insurance premiums. If Tenant does, Tenant must pay the increase in premium as added rent.

**23. Tenant's default:** A. Landlord must give Tenant written notice of default stating the type of default. The following are defaults and must be cured by Tenant within the time stated:
(1) Failure to pay rent or added rent on time, 3 days.
(2) Failure to move into the Apartment within 15 days after the beginning date of the Term, 10 days.
(3) Issuance of a court order under which the Apartment may be taken by another party, 10 days.
(4) Improper conduct by Tenant annoying other tenants, 10 days.
(5) Failure to comply with any other term or Rule in the Lease, 10 days.
If Tenant fails to cure the default in the time stated, Landlord may cancel the Lease by giving Tenant a cancellation notice. The cancellation notice will state the date the Term will end which may be no less than 10 days after the date of the notice. On the cancellation date in the notice the Term of this Lease shall end. Tenant must leave the Apartment and give Landlord the keys on or before the cancellation date. Tenant continues to be responsible as stated in this Lease. If the default cannot be cured in the time stated, Tenant must begin to cure within that time and continue diligently until cured.

**A.** If Tenant's application for the Apartment contains any material misstatement of fact, Landlord may cancel this Lease. Cancellation shall be by cancellation notice as stated in Section 23.A.

**B.** If **(1)** the Lease is canceled; or **(2)** rent or added rent is not paid on time; or **(3)** Tenant vacates the Apartment, Landlord may, in addition to other remedies, take any of the following steps: **(a)** peacefully enter the Apartment and remove Tenant and any person or property, and **(b)** use eviction or other lawsuit method to take back the Apartment.

**C.** If this Lease is canceled, or Landlord takes back the Apartment, the following takes place: **(1)** Rent and added rent for the unexpired Term becomes due and payable.

**(2)** Landlord may re-let the Apartment and anything in it. The re-letting may be for any term. Landlord may charge any rent or no rent and five allowances to the new tenant. Landlord may, at Tenant's expense, do any work Landlord reasonably feels needed to put the Apartment in good repair and prepare it for renting. Tenant stays liable and is not released except as provided by law.

**(3)** Any rent received by Landlord for the re-renting shall be used first to pay Landlord's expenses and second to pay any amounts Tenant owes under this Lease. Landlord's expenses include the costs of getting possession and re-renting the Apartment, including, but not only reasonable legal fees, broker fees, cleaning and repairing costs, decorating costs and advertising costs.

**(4)** From time to time Landlord may bring actions for damages. Delay or failure to bring an action shall not be a waiver of Landlord's rights. Tenant is not entitled to any excess of rents collected over the rent paid by Tenant to Landlord under this Lease.

**(5)** If Landlord re-lets the Apartment combined with other space an adjustment will be made based on square footage. Money received by Landlord from the next tenant other than the monthly rent, shall not be considered as part of the rent paid to Landlord. Landlord is entitled to all of it. If Landlord re-lets the Apartment the fact that all or part of the next tenant's rent is not collected does not affect Tenant's liability. Landlord has no duty to collect the next tenant's rent. Tenant must continue to pay rent, damages, losses and expenses without offset.

**D.** If Landlord takes possession of the Apartment by Court order, or under the Lease, Tenant has no right to return to the Apartment.

I, Tenant(s), have read and understood all of the terms above
Tenant ⟨KB⟩   Tenant ⟨JB⟩   Tenant ⟨OF⟩   Tenant ⟨BD⟩

Lease Page 3 of 5

**24. Jury trial and counterclaims:** Landlord and Tenant agree not to use their right to a Trial by Jury in any action or proceeding brought by either, against the other, for any matter concerning this Lease or the Apartment. This does not include actions for personal injury or property damage.

**25. No waiver, illegality:** Landlord's acceptance of rent or failure to enforce any term in this Lease is not a waiver of any of Landlord's rights. If a term in this Lease is illegal, the rest of this lease remains in full force.

**26. Insolvency:** If (1) Tenant assigns property for the benefit of creditors, or (2) a non-bankruptcy trustee or receiver of Tenant or Tenant's property is appointed. Landlord may give Tenant 30 days notice of cancellation of the Term of this Lease. If any of the above is not full dismissed within the 30 days, the Term shall end as of the date stated in the notice. Tenant must continue to pay rent, damages, losses and expenses without offset. If Tenant files a voluntary petition in bankruptcy or an involuntary petition in bankruptcy is filed against Tenant, Landlord may not terminate this Lease.

**27. Rules:** Tenant must comply with these Rules. Notice of new Rules will be given to Tenant. Landlord need not enforce Rules against other Tenants. Landlord is not liable to Tenant if another tenant violates these Rules. Tenant receives no rights under these Rules.
**(1)** The comfort or rights of other Tenants must not be interfered with. This means that annoying sounds, smells and lights are not allowed.  Tenants are expected to be considerate and courteous to both fellow tenants and neighbors.
**(2)** No one is allowed on the roof. Nothing may be placed on or attached to fire escapes, sills, windows or exterior wall of the Apartment or in the hallways or public areas.
**(3) No Smoking cigarettes/vaping  in apartment or in building.**
**(4)** Bicycles are not allowed in hallways.
**(5)** Tenant must give to Landlord key to all locks. Doors must be locked at all times. Windows must be locked when Tenant is out.
**(6)** No water beds allowed in Apartments.
**(7)** Garbage disposal rules must be followed. Wash lines, vents and plumbing fixtures must be used for their intended purpose.
**(8) Washer and Dryer have hookup in the apartment.**
**(9)** Improperly parked cars may be removed without notice at Tenant's cost.
**(10)** Second hand furniture must be vermin free. If there is any type of infestation, Tenant is responsible for all incurred fees from cleaning and exterminating.
**(11)** Tenant is responsible for taking out the garbage to the street curb side on required days.
**(12)** Pets/Animals are NOT allowed in the apartment
**(13) Possession or use of illegal drugs is strictly prohibited in or around the property; such action will be a violation of the lease.**
**(14)** Tenants are expressly prohibited from subleasing the property, and any such action will be considered a violation of the lease agreement.
**(15)** Heating system must be kept at 65F in the fall and winter months to prevent heating system damage. If damage, its tenant's responsibility to fix.

**28. Representations, changes in Lease:** Tenant has read this Lease. All promises made by the Landlord are in this  Lease. There are no others. This Lease may be changed only by an agreement in writing signed by delivered to each  party.

**29. Landlord unable to perform:** If due to labor trouble, government order, lack of supply, Tenant's act or neglect, or any other cause not fully within Landlord's reasonable control, Landlord is delayed or unable to (a) carry out any of Landlord's promises or agreements, (b) supply any service required to be supplied, (c) make any required repair or change in the Apartment or Building, or (d) supply any equipment or appliances Landlord is required to supply, this Lease shall not be ended or Tenant's obligations affected.

**30. End of term:** At the end of the Term, Tenant must: leave the Apartment clean and in good condition, subject to ordinary wear and tear; remove all of Tenant's property and all Tenant's installations and decorations; repair all  damages to the Apartment and Building caused by moving; and restore the Apartment to its condition at the beginning of the Term. Items such as bathroom fixtures, toilet, shower, sink, kitchen cabinets, ceiling fans, refrigerators must be left  clean. If the tenant fails to do so, a $200 clean up fee shall be deducted from security deposit. If the last day of the Term is on  a Saturday, Sunday or State or Federal holiday the Term shall end on the prior business day. The security deposit will be refunded if the apartment is left in its original condition. However, if the apartment is significantly damaged or destroyed, the security deposit will not be refunded and will be applied to cover the costs of repairs or restoration.

**31. Space "as is":** Tenant has inspected the Apartment and Building. Tenant states they are in good order and repair and takes the Apartment as is except for latent defects.

**32. Landlord's warranty of habitability:** Landlord states that the Apartment and Building are fit for human living and there is no condition dangerous to health, life or safety.

**33. Landlord's consent:** If Tenant requires Landlord's consent to any act and such consent is not given, Tenant's only right is to ask the Court for a declaratory judgment to force Landlord to give consent. Tenant agrees not to make any claim against Landlord for money or subtract any sum from the rent because such consent was not given.

**34. Limit of recovery against Landlord:** Tenant is limited to Landlord's interest in the Building for payment of a judgment or other court remedy against Landlord.

**35. Lease binding on:** This Lease is binding on Landlord and Tenant and their heirs, distributes, executors, administrators, successors and lawful assigns.

**36. Landlord:** Landlord means the owner (Building or Apartment), or the lessee of the Building, or a lender in possession. Landlord's obligations end when Landlord's interest in the (Building or Apartment) is transferred. Any acts Landlord may do may be performed by Landlord's agents or employees.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant **KB**    Tenant **JB**    Tenant **OF**    Tenant **BD**                                    Lease Page 4 of 5

**37. Paragraph headings:** The paragraph headings are for convenience only.

**38. Furnishings:** If the Apartment is furnished, the furniture and other furnishings are accepted as is. If an inventory is supplied each party shall have a signed copy. At the end of the Term, Tenant shall return the furniture and other furnishings clean and in good order and repair.

**39. Services Landlord will supply:**
Landlord is not required to install air-conditioning. Stopping or reducing of service(s) this will not be a reason for Tenant to stop paying rent, to make a money claim or to claim eviction. Tenant may enforce its rights under the warranty of habitability. Damage to the equipment or appliances supplied by Landlord, caused by Tenant's acts may be repaired by Landlord at Tenant's expense. The repair cost will be added rent.

> Tenant must not use a dishwasher, washing machine, dryer, freezer, heater, ventilator, air cooling equipment or other appliance unless installed by Landlord or with Landlord's written consent. Tenant must not use more electric than the wiring or feeders to the Building can safely carry.

Landlord may stop service of the plumbing, heating, elevator, air cooling or electrical systems, because of accident, emergency, repairs, or changes until the work is complete.

> **Signatures, effective date** Tenant have signed this Lease as of the below date. It is effective when Landlord delivers to Tenant a copy signed by all parties.

*I, Tenant(s), have read and understood all of the terms above.*

Tenant KB    Tenant JB    Tenant OF    Tenant BD.

**40.** Additional occupants, other than the tenants stated on this lease are not permitted to live in the apartment. Any other persons interested in living in the apartment must be fully screened and approved by the landlord.

**41. Utilities:** Landlord Pays: Cold water Tenant pays: Gas and Electric
**42. Rent** Shall be paid on the first of every month
**43.** Any renovations to the apartment are the tenant's responsibility and must be approved by the landlord in advance of work being started
**44. Tenants** are not entitled to use of backyard.
**45.** Pets are NOT allowed in the apartment
**46. Tenants** are not entitled use of parking space and garage.
**47.** Washer and dryer have hookup in the apartment.
**48.** Tenants are responsible to observe garbage and recycling rules of the city of NY and for taking out the garbage to the street on garbage pickup days. If they fail to do so and that results in a fine by the city tenants will be responsible to pay the fine.
**49.** Tenants are responsible for maintaining sidewalk cleaning and snow removal around their property.
**50.** Tenant must give landlord a 30 days' notice when they decide to vacate the apartment after the completion of the lease term. Tenant agrees to allow the landlord and landlord's agents to show the apartment to potential tenants after giving the 30 days' notice.
**51.** Subleasing by tenant of any space in the apartment, parking or back yard is prohibited.
**52. If tenant defaults on paying the monthly lease, landlord has the right to pursue legal action and hold the tenants as well as the guarantor responsible for any legal fees associated with the legal action.**
**53. The house is confined to 4 people, if additional residents will occupy the apartment, the landlord has a right to increase the monthly rent by $150 per additional person.**
**54. Tenants are prohibited from creating excessive wall damage by drilling multiple holes, and a fee of $25 will be applied for each hole that causes damage.**
**55. Tenants are responsible for replacing their own light bulbs.**

**Property Address: 581 West Caswell Ave #2FL Staten Island NY 10314**
**Term: 1 Year**
**Beginning: January 1, 2024**
**Ending: December 31, 2024**

**Monthly Rent: $2,700**
**First Rent Payment: $2,700**
**Security Deposit: $2,700**
**Next Payment due: February 1, 2024**

X *Xue Qiang Zheng*
Landlord:    King Bautista (347-465-0164).

X _____    X _____ (Oscar F.)
Tenant:    Joe. Bautista    Tenant:

X _____    X _____ (Belen M.D).
Tenant:    Tenant

Tenant KB    Tenant JB    Tenant OF    Tenant BD    Lease Page 5 of 5

# EXHIBIT 17

**FKB**  **Furman Kornfeld & Brennan** LLP

Wall Street Plaza
88 Pine Street, 32nd Floor, New York, NY 10005
Tel: 212-867-4100 Fax: 212-867-4118
www.fkblaw.com

April 1, 2024

**VIA ECF**
Hon. LaShann DeArcy Hall, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East, Court Room 4H-N
Brooklyn, New York 11201

Re:     *Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.*
         Docket No.: 1:24-cv-04201
         FKB File No.: 302.175

Dear Judge Hall:

We represent defendants Womcore LLC d/b/a Remax Edge and Xian Jin Zhang (collectively, "Remax") in the above referenced action. Defendants respectfully request a pre-motion conference for leave to file a motion to dismiss the Third Amended Complaint (ECF Dkt. No. 63) of Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca Jones, and Roslyn Seale (collectively, "Plaintiffs") pursuant to Fed. R. Civ. P. § 12(b)(6).

## I.     **Factual and Procedural Background**

The instant claims arise from defendants Xueqiang Zheng and Yu Li Weng (collectively, the "Owners") and their contracted rental agent, defendant Juda Niayzov's ("Niayzov") purported racial discrimination against rental applicants for a property at 581 West Caswell Avenue, Staten Island, NY 10314 (the "Property"). The Complaint alleges serious claims that the Owners and Niyazov discriminated against prospective renters on the basis of race, and asserts causes of action for violations of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), violations of 42 U.S.C. §§ 1981 and 1982, violations of New York State Human Rights Law ("NYSHRL") § 296(5)(a)(1), and violations of New York City Human Rights Law ("NYCHRL") § 8-107(5)(a)(1).

By contrast, Remax's only formal role was representing the Owners during the original purchase of the Property in 2021, which closed in 2022 prior to the allegations herein. After the purchase, Remax did not represent the Owners in their search for renters, as the Complaint itself admits. Plaintiff's prior Second Amended Complaint asserted one single alleged fact concerning Remax, which even if true, did not give rise to any of Plaintiffs' causes of action. After beseeching the Court for an opportunity to amend their pleadings yet again, Plaintiffs' Third Amended Complaint (the "Complaint") now merely speculates for all allegations against Remax.

## II.     **Plaintiffs' Deficient Complaint Fails to Plead a Single Fact against Remax**

This Third Amended Complaint is now 39 pages long, at 300 paragraphs. While most of the Complaint alleges highly specific acts, interactions, and utterances by other defendants, every single assertion concerning Remax – and very noticeably <u>only</u> those paragraphs – are pleaded

"upon information and belief." *See* Complaint, ¶ 40-59. "A plaintiff may plead facts upon information and belief only in limited circumstances. Such pleading is permitted only where "[1] the facts are peculiarly within the possession and control of the defendant or [2] where the belief is based on factual information that makes the inference of culpability plausible." *Citizens United v. Schneiderman*, 882 F.3d 374, 384-85 (2d Cir. 2018).

Thus, the Second Circuit memorably held that Plaintiffs "cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Id.*, at 384. Allegations made on information and belief "must be accompanied by a statement of the facts upon which the belief is founded." *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016) *aff'd*, 759 F. Appx. 42 (2d Cir. 2019); *see also Munoz-Nagel v. Guess, Inc.*, 2013 WL 1809772 (S.D.N.Y. 2013) (dismissing discrimination claim since "facts alleged upon information and belief…must be accompanied by a statement of the facts upon which the belief is founded."). Here, Plaintiffs' claims against Remax do not contain any such statement[1] of facts upon which their "information and belief" is predicated, since that qualifier is "plopped" in front of every single assertion concerning Remax. *See* Complaint, ¶ 40-59.

Indeed, it is uncontroversial in this jurisdiction that without more, wholly "information and belief" pleadings must be dismissed. *See, e.g.*, *May Flower Int'l, Inc. v. Tristar Food Wholesale Co. Inc.*, 2022 WL 4539577 (E.D.N.Y. 2022)("Plaintiff's claims against Wu are dismissed because plaintiff has not adequately pleaded them…The complaint's allegations…are made entirely upon information and belief.") The Second Circuit is unambiguous and unerringly consistent on this point. *See Moreira v. Societe Generale, S.A.*, 125 F.4th 371 (2d Cir. 2025) (Dismissing claims where "plaintiffs rely entirely on 'information and belief' pleading to link SocGen's ongoing conduct to" Cuban banks); *New Yorkers for Religious Liberty, Inc. v. New York*, 125 F.4th 319 (2d Cir. 2024)(denying city employees' establishment clause claim against COVID-19 vaccination mandates which alleged legal conclusions and assertions based upon information and belief regarding religious accommodation denials); *Yamashita v. Scholastic, Inc.*, 936 F.3d 98 (2d Cir. 2019) (allegations premised on "information and belief" must be supported by specific facts and cannot be accepted at face-value); *Pyskaty v. Wide World of Cars, LLC*, 856 F.3d 216 (2d Cir. 2017) (rejecting plaintiff's allegation "upon information and belief" as "entirely speculative" when the complaint pleaded no further facts).

This well-established pleading requirement is explicitly applicable to civil rights cases alleging discrimination. In *Salu v. Miranda*, 830 F. App'x 341 (2d Cir. 2020), Plaintiff alleged that "[defendant] Davis, as the Director of Nursing, harbored racial animus and was responsible for Diamond's decision to terminate him." *Id.*, at 345. The Second Circuit found that "Plaintiff's 'critical allegation regarding Davis's purported decision-making role…which is necessary to render his race discrimination claim plausible…has no factual basis to support it, but rather is simply stated in a conclusory fashion based upon 'information and belief.'" *Id.*, at 345–46. The Court therefore found that "[a]s the district court correctly held, these conclusory assertions

---

[1] Instances where a sufficient statement was provided contain easily identified specifics. *See, e.g.*, *SUEZ Water New York Inc. v. E.I. du Pont de Nemours & Co.*, 2023 WL 2601161 (S.D.N.Y. 2023)(information and belief allegations were "both supported by specific factual allegations (e.g., that Defendants were selling at least one other of their products, Teflon, to industrial manufacturers in SUEZ's watershed) and reflect facts uniquely within the control of Defendants (i.e., their sales patterns)").

repeatedly made "upon information and belief" are insufficient to provide a basis to conclude that the race discrimination claim is plausible." *Id. See also D'Cunha v. Northwell Health Sys.*, 2023 WL 2266520 (S.D.N.Y. 2023), *aff'd*, 2023 WL 7986441 (2d Cir. 2023).

Moreover, it is well established that pleadings which engage in "box-checking" the elements of a claim and conclusory statements alleging discrimination cannot meet the pleading standard. *See Williams v. Calderoni*, 2012 WL 691832 (S.D.N.Y. Mar. 1, 2012*), aff'd sub nom. Williams v. Schwartz*, 529 F. App'x 89 (2d Cir. 2013)(Plaintiff's discrimination claims "repeatedly alleges 'on information and belief'…These are not statements of fact; they are conclusory…These 'allegations, do no more than recite the elements of the relevant claims"). Indeed, as is well-known, "entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009)("threadbare recitals of a cause of action's elements, supported by mere conclusory statements" are insufficient… we are not bound to accept as true a legal conclusion couched as a factual allegation"); *Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010)(giving "no effect to legal conclusions couched as factual allegations")

Here, the Complaint engages exclusively in fact-free, legally conclusory assertions which have been rejected as insufficient time and again. For example, the complaint baldly asserts that "Upon information and belief, Defendant Zhang nevertheless agreed to assist Defendants Zheng and Weng in unlawfully rejecting the application submitted by Plaintiffs Delone-Felix and Felix." *See* Complaint, at ¶ 57. This underwhelming "label and conclusion" does nothing more than posit a "threadbare recital" of elements. It is also emphatically denied by Zhang.

The few other paragraphs in the Complaint which attempt to allege discriminatory acts by Remax are similarly formulaic and conclusory: "Upon information and belief, Defendant Zhang acted within the scope of his actual and/or apparent authority when he took actions to screen and/or to help screen applications" (¶ 53); "Upon information and belief, Defendants Zheng and Weng informed Defendant Zhang that they did not want to rent to Plaintiffs Delone-Felix and Felix because they had had negative experiences renting to Black tenants in the past" (¶ 55); "Upon information and belief, Defendant Zhang knew that this reason for rejecting the application submitted by Plaintiffs Delone-Felix and Felix violated federal, state, and local law" (¶ 56). Indeed, these assertions echo precisely the kind of racial discrimination claims which the Second Circuit has readily dismissed.[2]

"[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006). As is readily apparent, unfounded legal conclusions are all Plaintiffs have offered in support of the misguided claims against Remax. For the reasons stated above, Remax and Zhang respectfully request that the Court schedule a pre-motion conference for leave to file a motion to dismiss the Complaint at the Court's convenience.

---

[2] For example, in *Salu*, the Second Circuit directly held that conclusory claims such as "[u]pon information and belief, the racially biased decision-maker was the WMC Director of Nursing, Denise Davis, RN" and "[u]pon information and belief, Director Davis, as a WMC policy-maker and decision-maker, informed Diamond that she did not want [Plaintiff] Salu to continue working at WMC" were insufficient. *Salu*, 830 F. App'x at 346.

Respectfully submitted,

FURMAN KORNFELD & BRENNAN LLP

Spencer A. Richards
Asher Kest

CC:    All Counsel of Record (via ECF)