UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                                        24 Civ. 4201 (LDH) (TAM)

                Plaintiffs,

        v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                Defendants.
---------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION BY 202 MARINE LLC TO DISMISS THE THIRD AMENDED COMPLAINT

Eric Hecker
Mariann Wang
Heather Gregorio
WANG HECKER LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2600

*Attorneys for Plaintiff*

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...........................................................................................................ii

PRELIMINARY STATEMENT .....................................................................................................1

FACTS AND PROCEDURAL HISTORY .....................................................................................2

LEGAL STANDARD.....................................................................................................................13

ARGUMENT .................................................................................................................................14

   I.   THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT NIAYZOV
       WAS ACTING AS 202 MARINE'S AGENT WHEN NIAYZOV UNLAWFULLY
       DISCRIMINATED AGAINST PLAINTIFF SEALE ..........................................................14

      A.  202 Marine Mischaracterizes the Law of Agency…………………………………………14

      B.  The Allegations in the Third Amended Complaint Easily Satisfy This Standard………16

      C.  The Court Should Additionally Consider the Discovery Record…………………………18

      D.  202 Marine's Statute of Frauds and Dual Agency Arguments Are Frivolous………….20

   II.  IN THE ALTERNATIVE, THE MOTION TO DISMISS SHOULF BE CONVERTED
       TO A MOTION FOR SUMMARY JUDGMENT ...............................................................22

   III. IN THE ALTERNATIVE, LEAVE TO REPLEAD SHOULD BE GRANTED…………...23

   IV. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE IT FAILS
       TO COMPLY WITH THE COURT'S INDIVIDUAL PRACTICES………………… …..25

CONCLUSION...............................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

*99 Commercial St., Inc. v. Goldberg*,
    811 F. Supp. 900 (S.D.N.Y.1993) ............................................................................ 21

*Agerbrink v. Model Service LLC*,
    155 F.Supp.3d 448 (S.D.N.Y. 2016) ....................................................................... 24

*Amerol Corp. v. American Chemie-Pharma, Inc.*,
    04 Civ. 0940, 2006 WL 721319 (E.D.N.Y. March 17, 2006) ................................. 23

*Arista Records, LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010) ...................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 14

*Bicounty Brokerage Corp. v. Burlington Ins. Co.*,
    88 A.D.3d 833 (2d Dep't 2011 ............................................................................... 16

*Cabrera v. Jakabovitz*,
    24 F.3d 372 (2d Cir. 1994)................................................................... 14, 15, 16, 20

*Clopay Plastic Prods. Co., Inc. v. Excelsior Packaging Grp., Inc.*,
    2013 WL 6388444 (S.D.N.Y. 2013) ...................................................................... 19

*Cromer Fin. Ltd. v. Berger*,
    137 F. Supp. 2d 452 (S.D.N.Y.2001) ..................................................................... 21

*Dixon v. Muchnik*,
    2011 WL 6330156, n.3 (W.D.N.Y. Dec. 19, 2011) ............................................... 17

*Fair Housing Justice Center, Inc. v. Beach Haven Apts. Assocs.*,
    2024 WL 1076110 (N.Y. Sup. Ct. Kings Cnty. Feb. 29, 2024)................... 15, 17, 18

*Gamm v. Sanderson Farms, Inc.*,
    944 F.3d 455 (2d Cir.  2019)................................................................................... 13

*Geinosky v. City of Chicago*,
    675 F.3d n.1 (7th Cir. 2012) ................................................................................... 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
    2014 WL 4966072 (E.D.N.Y. Oct. 3, 2014)........................................................... 21

*Julian J. Studley v. N.Y. News, Inc.*,
    70 N.Y.2d 628 (1987) ............................................................................................. 15

*Khodeir v. Sayyed*,
  348 F. Supp. 3d 330 (S.D.N.Y. 2018) .................................................................. 21

*Leist v. Tugendhaft*,
  64 A.D.3d (2d Dep't 2009) ................................................................................. 21

*Lugo v. City of Troy*,
  114 F.4th 80 (2d Cir. 2024) ................................................................................. 19

*Mancuso v. Douglas Elliman LLC,*
  808 F. Supp. 2d 606 (S.D.N.Y. 2011) ........................................................... 15, 16

*Meyer v. Holley*,
  537 U.S. 280 (2003) ............................................................................................ 14

*Newson v. Vivaldi Real Est. Ltd.,*
  235 A.D. 3d 147 (1st Dep't 2025) .................................................................. 15, 17

*Newson v. Vivaldi Real Estate Ltd.*,
  No. 452625/2022, 2023 WL 3778574 (Sup. Ct. N.Y. Cnty. June 2, 2023)......................... 16, 18

*Nikita Banks v. Peace of Mind Realty,*
  2019 WL 4305610 (Sup. Ct. N.Y. Cnty. 2019) .................................. 14, 15, 16, 17

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC,*
  595 F.3d 86 (2d Cir. 2010) ................................................................................... 14

*Rivkin v. Century 21 Teran Realty LLC*,
  10 N.Y.3d 344 (2008) .......................................................................................... 22

*Short v. Manhattan Apts. Inc.*,
  916 F. Supp. 2d 375 (S.D.N.Y. 2012) ................................................................. 14

Other Authorities

24 CFR § 100.20 ......................................................................................................... 14

*Fed. Prac. & Proc. Civ.* § 1224 (4th ed.) ....................................................................... 7

Plaintiffs, by and through their attorneys, Wang Hecker LLP, hereby oppose the motion by 202 Marine LLC ("202 Marine") to dismiss the Third Amended Complaint.

## PRELIMINARY STATEMENT

The Third Amended Complaint ("TAC") more than adequately alleges that 202 Marine is vicariously liable for the discriminatory conduct of real estate broker Juda Niayzov against Plaintiff Roslyn Seale. The TAC plausibly alleges an agency relationship between 202 Marine and Niayzov through detailed, non-conclusory allegations that must be accepted as true at this stage. 202 Marine's principal gave Niayzov advance notice of the unit's availability, authorized him to show the property, required him to pre-screen potential tenants, and maintained ultimate control over approval decisions – precisely the type of relationship that courts have repeatedly found sufficient to establish agency in fair housing cases.

202 Marine's motion rests on two meritless arguments. First, it mischaracterizes the law by suggesting that an agency relationship requires exclusivity, signed written agreements, or knowledge of discriminatory conduct – none of which are required elements under well-established agency principles in fair housing cases. Second, it asserts frivolously that the New York statute of frauds supposedly extinguishes decades of well-established common law agency case law. That obviously is not the law.

Even more troubling, 202 Marine introduces and relies heavily on selective discovery materials to support its motion while ignoring text messages that directly contradict its false narrative. 202 Marine pretends that it merely sent a "generic" email blast to numerous brokers, including Niayzov, but that is not what happened at all. Instead, the text messages show that 202 Marine gave Niayzov special advance access to the property, instructed him to "bring the right clients," heeded his input regarding the initial photos, and screened prospective tenants based on

1

his recommendations.  These communications occurred weeks before 202 Marine sent the "generic" email blast to the other brokers.  202 Marine even offered to pay Niayzov's broker commission.  Defense counsel is well aware of all of this evidence refuting the at best misleading narrative that 202 Marine has presented to the Court.

As shown below, the allegations in the TAC are more than sufficient, and the Court can and should consider the discovery record in connection with evaluating 202 Marine's motion to dismiss; in the alternative, the motion should be converted to a summary judgment motion; or at a minimum, Plaintiff should be allowed to replead to add the additional details that have now been learned.

## FACTS AND PROCEDURAL HISTORY

FHJC's Testing and the Original Complaint

In early November 2023, Plaintiffs Delone-Felix and Felix experienced housing discrimination by Niayzov with respect to 581 West Caswell Avenue.  Plaintiffs Delone-Felix and Felix complained to the Fair Housing Justice Center, Inc. ("FHJC"), which then conducted an investigation into Niayzov's practices, including by sending paired testers to express interest in available units and gauge differential treatment.  The discrimination experienced by Plaintiffs Delone-Felix and Felix is not directly relevant to the instant motion, but it is what triggered the events that led to the discrimination by Niayzov and 202 Marine against Plaintiff Seale.

On March 1, 2024, a white FHJC tester contacted Niayzov to inquire about an available rental unit at 2647 E. 19th Street in Brooklyn.  Ex. 5, ¶¶ 120-28.[1]  Niayzov showed the white tester the unit on March 5, 2024.  During that showing, Niayzov told the white tester about the

_____

[1]  All references to "Ex. __" refer to the exhibits appended to the accompanying Declaration of Eric Hecker, Esq.

2

available unit at 202 Marine Avenue and urged her to see it.  The white tester agreed.  *Id*. ¶¶ 129-30, 140.

Niayzov then called 202 Marine's principal, Nicholas Sekas (who has the same first and last name as his cousin, attorney Nicholas G. Sekas, who represents 202 Marine in this action). Niayzov had Sekas's phone number stored on Niayzov's phone because Niayzov had previously done business with Sekas.  *Id*. ¶¶ 132-25.  Sekas asked Niayzov what kind of jobs the white tester and her husband had and what their combined income was.  Niayzov told Sekas that the white tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.  *Id*. ¶ 141.  After assessing the white tester's qualifications, Sekas approved Niayzov's request to show the white tester the unit.  *Id*. ¶ 142. Sekas arranged to have his sister show the unit to Niayzov and the white tester a half an hour later.  *Id*. I¶ 143.

After they hung up, Niayzov told the white tester approvingly that the owner of 202 Marine Avenue is Italian.  *Id*. ¶ 144.  He then drove the white tester to 202 Marine Avenue in his car, and during the ride, he made numerous racist comments and observations to her.  *Id*. ¶¶ 145-55.

Niayzov asked the white tester if she had come to the first showing by train, and when she said yes, he said "I hate trains."  He said that he hates trains because of "what is happening in America now," which he said was "crazy."  He complained to the white tester about "criminals" in New York City.  He complained to her that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."  He told her that "it's becoming very bad with this crime."  He complained that "they try to steal cars, they try to steal watches, money."  He complained that "the problem is that it's not fair that people work so hard, and they get free stuff,

free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard. They get everything on their lap. Why is that? That's like also not right." He said "You want health? No problem. I will give you work, we will give you a job, earn it. Don't give it on the lap for free. This is what America is doing right now. It's not right." He further complained to the white tester that "They rob. And the cops don't do anything. They're like okay, we can't do anything about it. It's called misdemeanor. They lock them up for one day, they come back out. That's New York." *Id.* ¶¶ 145-55.

Following his racist rant, Niayzov showed the white tester the available unit at 202 Marine Avenue. Niayzov told the white tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 because her "paperwork is good." *Id.* ¶¶ 156-58.

When they left, Niayzov offered to show the white tester other available apartments. He encouraged her to come to his office so that he could show her other properties, even offering to show her investment properties. *Id.* ¶¶ 159-63. Niayzov spent a total of one hour and twenty-six minutes with the white tester on March 5, 2024. *Id.* ¶ 166.

Two days later, Niayzov informed the white tester that 202 Marine had approved her, and he encouraged her to come to his office to put down a deposit. The white tester told Niayzov that she had concerns about the 202 Marine Avenue unit and asked if he had other similar properties available. Niayzov once again encouraged the white tester to come to his office so that he could show her different options, including a specific unit in Bensonhurst. *Id.* ¶¶ 167-75. On March 8, 2024, the white tester told Niayzov that she had decided to rent another apartment. *Id.* ¶ 179.

Meanwhile, on March 5, 2024 – the same day that Niayzov had shown 202 Marine Avenue to the white tester following his racist rant – Plaintiff Roslyn Seale, a FHJC tester who is Black, contacted Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn. *Id*. ¶ 180. Plaintiff Seale indicated that her budget was up to $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst. *Id*. ¶ 181. Niayzov did not offer to show Plaintiff Seale the available unit at 202 Marine Avenue. Instead, he showed her a unit at 2732 East 65th Street.

Niayzov arrived to that showing 20 minutes late. The showing lasted three and a half minutes. *Id*. ¶ 189. Plaintiff Seale expressed interest in applying for the unit, and Niayzov told her to call him the next day. *Id*. ¶¶ 190-91. Niayzov did not offer to show Plaintiff Seale any other available units.

The following day, Plaintiff Seale attempted to call Niayzov at 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Niayzov did not pick up any of these calls. *Id*. ¶ 193.

Plaintiff Seale also texted Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m. Niayzov did not respond to any of those texts. *Id*. ¶ 194.

In her third text to Niayzov, Plaintiff Seale asked him if there were any available units in Bay Ridge. Niayzov did not respond. *Id*. ¶¶ 195-96. Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

Plaintiffs commenced this action on June 12, 2024 by filing a Complaint (Ex. 1) against Niayzov, his business partner and wife, his company, and 202 Marine.  Plaintiffs also named certain other Defendants relating to aspects of FHJC's testing that are not relevant to the claims against 202 Marine.

The Amended Complaint

Plaintiffs filed an Amended Complaint on July 23, 2024 (Ex. 2), the sole purpose of which was to correct Plaintiffs' inadvertent error in naming the wrong owner of a different property.  There are no substantive differences between the original Complaint and the Amended Complaint.

The Second Amended Complaint

Counsel for Niayzov appeared in July 2024.  During informal pre-answer discussions between Plaintiff's counsel and Niayzov's counsel, Niayzov's counsel disclosed information about a real estate agent who had acted as an additional "intermediary" between Niayzov and the owners of property that is not relevant to this motion.  Hecker Decl. ¶ 4.  Based on this new information, Plaintiffs filed a Second Amended Complaint on August 15, 2024 (Ex. 3) naming that intermediary and his company as additional Defendants.

The Niayzov Defendants answered on September 4, 2024 (ECF 33), and the owners of 581 West Caswell, Zheng and Weng, answered on January 6, 2025 (ECF 48).

The First Pre-Motion Letter

On September 6, 2024, attorney Sekas submitted a pre-motion letter to the Court seeking leave for 202 Marine to move to dismiss the Second Amended Complaint.  Ex. 4.  The crux of 202 Marine's argument was that the Second Amended Complaint "does not allege any facts

which would show that there was an understanding between Defendants 202 Marine Ave and

Niayzov that 202 Marine would be in control of who Niayzov would show the apartment to."  *Id*.

During the ensuing March 6, 2025 pre-motion conference, the Court indicated that it was

inclined to hold that the Second Amended Complaint was inadequately pled, but the Court

granted Plaintiffs leave to file a Third Amended Complaint.

The Third Amended Complaint

On March 10, 2025, Plaintiffs filed a Third Amended Complaint (Ex. 5).  To be clear,

this was the first time that Plaintiffs' pleading had been amended substantively (the Amended

Complaint merely corrected the identity of an incorrectly named party, and the Second Amended

Complaint merely added the newly disclosed "intermediary" and his company as Defendants).

The Third Amended Complaint – which, critically, was filed before Plaintiffs received any of the

discovery discussed below – contains the following specific, non-conclusory allegations that

Plaintiffs made in good faith upon information and belief:[2]

> "[The owner of 202 Marine Avenue had authorized Defendant Niayzov to act as one of its agents with respect to screening applicants for and finding a tenant to rent an available unit in that building."

> "[T]he owner of 202 Marine Avenue had known Defendant Niayzov for several years."

> "[T]he owner of 202 Marine Avenue had previously completed one or more rental transactions in which Defendant Niayzov had served as agent."

---

[2]  Pleading on information and belief is the proper course where, as here, so many of the facts are "peculiarly within the possession and control of the defendant" and where "the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *see also* 5 Wright & Miller, *Fed. Prac. & Proc. Civ*. § 1224 (4th ed.) (pleading on information and belief is a "practical necessity" and "a desirable and essential expedient when matters that are necessary to complete the statement of a claim are not within the knowledge of the plaintiff" because "[h]ow else can a pleader avoid the appearance of perjury when he is without direct personal knowledge regarding one or more of the allegations necessary to his claim and therefore must plead on a less certain footing?").

"[T]he owner of 202 Marine Avenue had Defendant Niayzov's mobile telephone number saved in his contacts."

"Niayzov had the mobile telephone number of the owner of 202 Marine Avenue saved in his contacts."

"[I]n or about late February or early March 2024, the owner of 202 Marine Avenue had texted Defendant Niayzov and informed him that there was a unit available for rent in that building."

"[I]n that text, the owner of 202 Marine Avenue informed Defendant Niayzov that he was authorized to advertise the availability of the unit to potential renters."

"[T]he owner of 202 Marine Avenue communicated and/or implied to Niayzov that he was authorized to screen applicants for the available unit and to bring to the owner applicants that the owner would find acceptable."; and

"[T]he owner of 202 Marine Avenue sent similar text messages to other real estate agents, in addition to Defendant Niayzov, offering each agent the opportunity to compete with one another to consummate the rental transaction and earn a fee."

*Id*. ¶¶ 131-39.  The Third Amended Complaint further alleges that:

"Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue."

"Defendant Niayzov held himself out to the public as an authorized agent of Defendant 202 Marine LLC and in fact acted as an agent with actual and/or apparent authority on behalf of Defendant 202 Marine LLC, acting within the scope of his agency."

"Defendant Niayzov was authorized by Defendant 202 Marine LLC to perform actions on its behalf regarding one or more matters related to rental of the available unit at 202 Marine Avenue."; and

"Defendant 202 Marine LLC asked Defendant Niayzov to assist it in renting the available unit at 202 Marine Avenue and to screen potential tenants on its behalf, Defendant Niayzov agreed to do so, Defendant Niayzov did in fact do so, and Defendant 202 Marine LLC maintained ultimate control over the transaction."

*Id*. ¶¶ 222-25.

<u>202 Marine's Partial Productions</u>

Plaintiffs served 202 Marine with discovery demands in January 2024 (Ex. 6).  202 Marine moved for a discovery stay twice.  Magistrate Judge Merkl denied both motions (*see* Minute Entries 3/3/25, 3/11/25).  202 Marine did not serve responses to Plaintiffs' discovery demands until yesterday, months after the deadline.

202 Marine did, however, serve initial partial productions on March 14, March 19, and April 21, 2025 – importantly, *after* Plaintiffs filed the Third Amended Complaint.

Because 202 Marine's production plainly is incomplete, and because it had not served discovery responses, Plaintiffs moved to compel.  ECF 67.  Judge Merkl held a conference on April 24, 2025, during which she ordered 202 Marine to produced certain additional documents by May 16, 2025 (*see* Minute Entry 4/24/25).

<u>The Instant Motion to Dismiss</u>

On April 1, 2025, 202 Marine submitted a pre-motion letter seeking leave to move to dismiss the Third Amended Complaint (Ex. 7).  202 Marine attached to its premotion letter (i) an email blast that it sent to an undisclosed "bcc" list of brokers on March 18, 2024 advertising the availability of the unit at issue and (ii) an Apartments.com listing for the unit.

In the pre-motion letter, attorney Sekas represented that "the sole rental listing was on Apartments.com which was placed by Defendant 202 Marine [and] which make[s] no mention of Niayzov."  *Id*. at 2.  Attorney Sekas further wrote that the March 18, 2024 email blast is "[f]urther evidence that no agency agreement existed between Defendant 202 Marine and Niayzov."  *Id*.  Attorney Sekas emphasized that "[i]t is clear this email was not sent exclusively to Defendant Niayzov, but was a generic email designed to target numerous real estate agents" and that Niayzov "was included in the email sharing the listing with all over independent real

estate professionals." *Id*. The clear implication of these factual representations by attorney Sekas was that 202 Marine supposedly had no contact with Niayzov about the unit at issue prior to the March 18, 2024 email blast. As discussed below, that is false.

Attorney Sekas further represented to the Court in the pre-motion letter that 202 Marine "did not authorize [Niayzov] in writing to act on its behalf, nor did it take any action that could reasonably be construed as establishing such authority." *Id*. at 3. He further represented that there is "no evidence" of 202 Marine's "involvement or control" with or over Niayzov's searches for tenants for the unit at issue. *Id*. at 4. As discussed below, those factual representation are also false.

The Court granted 202 Marine leave to move to dismiss, and in the instant motion, attorney Sekas doubled down on the factual representations to the Court that by now he surely must know are not true. The gravamen of 202 Marine's argument is that it cannot be liable for Niayzov's discrimination as a matter of law because it "sent a non-exclusive email to multiple realtors, including Niayzov, merely advising them of an available rental unit without engaging any as agents." Def. Br. at 2; *see also id*. at 5 ("Discovery confirms that 202 Marine LLC sent a non-exclusive email to multiple realtors, including Niayzov."). That is at best misleading.

<u>The Text Messages</u>

Although 202 Marine still has not completed its production, the text messages that it produced after the filing of the Third Amended Complaint demonstrate that this motion to dismiss rests on materially misleading factual assertions.

202 Marine and its counsel are both well aware that 202 Marine's principal, Sekas, *engaged in extensive direct and apparently exclusive discussions with Niayzov about the unit for weeks before it was advertised to the bcc list of other brokers*.

The text message colloquy between Niayzov and Sekas shows that Sekas texted with Niayzov about several units owned by Sekas in 2023 and early 2024.  Then, on February 10, 2024, Sekas texted Niayzov about the availability of a second-floor unit at 202 Marine Avenue (the same building, but a different unit than the one at issue in this action).  Sekas told Niayzov that that unit was "[n]ow available to show."  Ex. 8.  Sekas further told Niayzov to bring "pre-qualified client(s)" – meaning that Niayzov was not to show the unit to anyone unless they met Sekas's criteria.  Niayzov asked if the rent was negotiable, and Sekas responded that he was "[f]lexible as always for the right people."  *Id*.

Niayzov then showed that unit to prospective tenants on February 12 and 14, 2024, including to Michael Liscio and Lucy Pittenger, who appear to be white.  Liscio and Pittenger applied for the unit, and Sekas approved their application.  It appears that Liscio and Pittenger signed a lease and moved into the unit.

Apparently pleased with this quick and smooth transaction for the first 202 Marine Avenue unit, Sekas then texted Niayzov on February 20, 2024 about the 202 Marine Avenue unit at issue in this case.  Critically, *Sekas told Niayzov about the unit at issue nearly a month before the subsequent March 18, 2024 email blast*, and during that period, Sekas and Niayzov appear to have corresponded about the unit at issue largely *exclusively* (although, as discussed below, an exclusive relationship is not an element of the common law agency test).

On February 20, Sekas texted Niayzov the floor plan for the unit at issue.  Ex. 9.  Niayzov responded by asking for photos of the unit.  *Id.*  Sekas told him that there were no photos yet.  *Id.*  Niayzov followed up on February 22, 2024, asking Sekas for photos of the unit.  *Id.*  Sekas told him that the rent had been "[d]ropped to $3,750," and Niayzov responded "I need some pics."  Sekas wrote "Next week," "For Sure," and "I promise you will love this unit."  *Id.*

Niayzov followed up again on February 28, asking "You have pics." Sekas responded "Not yet" and "You have clients?" *Id.* Niayzov responded "Yes," and Sekas asked "Who do you have?" and "Income/credit scores?" Niayzov wrote that he had a couple with good income and credit, and Sekas wrote "Excellent." *Id.* They then went back and forth several times, with Sekas repeatedly asking when he would show the unit to the prospective tenants, and Niayzov repeatedly asking for photos of the unit. *Id.*

In early March, Niayzov showed the unit to two sets of prospective tenants, but each of them decided not to apply for it. Niayzov kept asking for photos of the unit. *Id.*

On March 14, 2024, Sekas finally emailed photos of the unit to Niayzov. *Id.* It appears that Sekas did not send those photos to any other broker. After reviewing the photos, Niayzov asked whether they had been taken professionally, commenting that they were "terrible" and "horrible." *Id.* Sekas agreed, writing that "They stink" and that "They all will be retaken." *Id.*

Then, Sekas instructed Niayzov to "Just bring the right clients." *Id.*

Heeding Niayzov's criticism of the initial photos, Sekas had the photos retaken, and on March 18, 2024, Sekas sent the bcc blast to the other brokers upon which 202 Marine relies so heavily. The next day, Sekas texted Niayzov privately to confirm that he had received the new photos, and Niayzov confirmed that he had. *Id.*

Later that month, Niayzov told Sekas that he had a "doctor couple" that was interested in the unit. *Id.* Sekas both called and texted Niayzov on March 27, 2025 to follow up about these prospective tenants. *Id.* Sekas also informed Niayzov that a different broker had listed the unit on Renthop.com, reassuring Niayzov that Sekas had asked that broker to take the listing down. Niayzov told Sekas that the broker actually worked with Niayzov. *Id.*

On April 6, 2024, Sekas texted Niayzov that as part of what he called an "April signing bonus," 202 Marine was offering prospective tenants "One free month or commission on us!" *Id.* In other words, *Sekas was offering to pay Niayzov's broker fee if he filled the unit* (although, as discussed below, the owner paying the fee is not an element of the common law agency test).

On April 9, 2024, Niayzov texted Sekas that he had other prospective tenants for the unit, but that did not pan out either. *Id.*

On May 3, 2024, Sekas texted Niayzov that he was dropping the asking rent to $3,500 per month. *Id.*

On May 6, 2024, Niayzov texted Sekas that he had additional prospective tenants for the unit, and they made arrangements to show it the following day. *Id.* That did not pan out.

On May 9, 2024, Niayzov texted Sekas that he had two sets of additional prospective tenants for the unit. *Id.* Niayzov obtained the keys from Sekas's sister and then on May 12 returned them directly to Sekas in person. *Id.*

Later that month, Sekas rented the unit for $3,500/month to Tracie Chellis, who appears to be a white woman, beginning on June 1, 2024. *Id.*

Plaintiff Seale had expressed interest in seeing Bay Ridge rental units up to $4,000 in early March, nearly three months earlier.

## LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the court "accepts as true 'all well-pleaded factual allegations in the complaint,' [and] draws 'all reasonable inferences in favor of the nonmoving party,'" *Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 462 (2d Cir. 2019). While a complaint "must allege a plausible set of facts sufficient to raise a right to relief above the speculative level," *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt.*

13

*LLC*, 595 F.3d 86, 91 (2d Cir. 2010), this standard "does not require 'detailed factual allegations.'"  *Gamm*, 944 F.3d at 462 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

I. **THE THIRD AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT NIAYZOV WAS ACTING AS 202 MARINE'S AGENT WHEN NIAYZOV UNLAWFULLY DISCRIMINATED AGAINST PLAINTIFF SEALE**

A. **202 Marine Mischaracterizes the Law of Agency**

A housing discrimination action "is, in effect, a tort action, and ordinary tort-related vicarious liability rules apply," under which "[l]iability generally flows from the agent to the principal."  *Nikita Banks v. Peace of Mind Realty et al.,* No. 160829/2014, 2019 WL 4305610, at *8 (Sup. Ct. N.Y. Cnty. 2019) (quoting *Short v. Manhattan Apts. Inc.*, 916 F. Supp. 2d 375, 399 (S.D.N.Y. 2012)); *see also Meyer v. Holley*, 537 U.S. 280, 285 (2003) ("traditional vicarious liability rules" applied in action brought by victim of housing discrimination).  HUD additionally has defined a broker or agent broadly to include "any person authorized to perform an action on behalf of another person regarding any matter related to the sale or rental of dwellings, including offers, solicitations, or contracts and the administration of matters regarding such offers, solicitations or contracts or any residential real estate-related transaction."  24 CFR § 100.20(b).

Under these principles and definitions, landlords routinely are held vicariously liable in federal and state courts in New York for discrimination by real estate brokers who help find tenants for their properties, even when the landlords take no part in the discrimination or even have no knowledge of it.  *See, e.g.*, *Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (upholding verdict holding landlord liable for real estate broker's discrimination where landlord provided listings and criteria to brokers); *Mancuso v. Douglas Elliman LLC,* 808 F. Supp. 2d 606, 630 (S.D.N.Y. 2011) (landlord could be vicariously liable for discrimination by real estate agent even

when it did not authorize his actions); *Newson v. Vivaldi Real Est. Ltd.,* 235 A.D. 3d 147, 150-58 (1st Dep't 2025) (because brokers generally list apartments on landlords' behalf, vicarious liability is necessary, or else "landlords would evade liability under the City HRL except when they directly interact with a prospective tenant"); *Fair Housing Justice Center, Inc. v. Beach Haven Apts. Assocs. et al.*, Index No. 525173/2022, 2024 WL 1076110, at *5 (N.Y. Sup. Ct. Kings Cnty. Feb. 29, 2024) (defendant's "argument about agency, that it cannot be vicariously liable because it did not make or authorize (the real estate agents to discriminate) . . . has no basis in law") (quoting *Mancuso*, 808 F. Supp. 2d at 630); *Banks,*, 2019 WL 4305610, at *8-10 ("The questions of whether [the landlord] was aware of [the broker's] discriminatory practices or whether it specifically authorized, or even rejected them, are irrelevant.").

Although Niayzov may not have had exclusive authority to list or show the apartment, vicarious liability can attach without an exclusive landlord-broker arrangement.  *See, e.g.*, *Banks*, 2019 WL 4305610, at *9 (denying defendants' motion for summary judgment where broker was one of several on an email blast that received information about available units).  Moreover, "[t]he fact that the tenants [as opposed to the landlord] paid the broker does not preclude a finding that the broker acted as the owner's agent in renting the apartment."  *Cabrera*, 24 F.3d at 388.  Here, however, there is strong evidence both that Sekas was working with Niayzov exclusively during the relevant period and that he offered to pay Niayzov's fee.

The case 202 Marine relies upon, *Julian J. Studley v. N.Y. News, Inc.*, 70 N.Y.2d 628, 629 (1987), arose in a totally different context.  In that case, a broker with a contract to act as a buyer's agent in a real estate sale sued for a commission from defendant sellers when they ultimately sold to someone else; the question at issue was whether there was an implied contract with defendants.  The case was not about liability for discrimination, where the law is clear that a

broker can be liable for a landlord's discrimination even where the tenant is paying the commission. *See, e.g.*, *Cabrera*, 24 F.3d at 388.

202 Marine asserts self-servingly that Sekas did not act with discriminatory intent. Leaving aside that such a factual assertion by a Defendant is at best premature when considering a motion to dismiss, as noted above, whether the landlord had discriminatory intent or even knew about the discrimination is irrelevant. Under applicable agency law, principals may be held liable for their agents' torts when the agent acts "within the general or apparent scope of the agent's authority," even if the "acts or statements exceeded the agent's actual authority" or even "*disobeyed* the principal's general or express instructions to the agent." *Bicounty Brokerage Corp. v. Burlington Ins. Co.*, 88 A.D.3d 833, 835 (2d Dep't 2011) (emphasis added; quotation marks omitted). "[Q]uestions of whether [a landlord] was aware of [a broker's] discriminatory practices or whether it specifically authorized, or even rejected them, are irrelevant." *Banks*, at *10 (citation omitted)); *see also Mancuso*, 808 F. Supp. 2d at 630 (landlord could be vicariously liability for broker's discrimination even though landlord had trained him not to violate discrimination laws).

### B.    The Allegations in the Third Amended Complaint Easily Satisfy This Standard

The bar for establishing a landlord-broker agency relationship for purposes of surviving a motion to dismiss is low. In *Newson v. Vivaldi Real Estate Ltd. et al.*, No. 452625/2022, 2023 WL 3778574, at *5 (Sup. Ct. N.Y. Cnty. June 2, 2023), the trial court denied a landlord defendant's motion to dismiss where the complaint alleged that a real estate company managed a listing for the landlord's apartment and one of its brokers "responded to a question about the listing posted through a third-party website, indicating some authority to act on the Unit Owners' behalf." *Id.* The First Department affirmed. *Newson,* 235 A.D.3d at 158. Likewise, in *Beach*

*Haven*, the Court denied a landlord's motion to dismiss because the amended complaint alleged that a real estate broker managed the listing for the apartment on StreetEasy and responded to inquiries from five individuals about the listing, "thus indicating apparent authority to act on . . . [defendants'] behalf." *Beach Haven*, 2024 WL 1076110, at *6; *see also Dixon v. Muchnik*, 11 Civ. 30S, 2011 WL 6330156, at *6 n.3 (W.D.N.Y. Dec. 19, 2011) (broker acted as landlords' agent where landlords asked real estate agent "to assist them in renting or selling the property"; agent "agreed to do so;" and landlords "as the principals, retained the ultimate authority to rent or sell the property and directed [broker] to make offers on their behalf").

Exclusively managing a listing simply is not a necessary element of an agency relationship.  In *Banks*, the Court denied defendants summary judgment where deposition testimony showed the broker who discriminated was on an email blast that included "any broker who wants to deal with the rentals" and that any such broker was thereafter allowed to advertise the available units.  *Banks*, 2019 WL 4305610, at *3.

The detailed allegations in the TAC are more than sufficient to defeat this motion to dismiss.  The TAC alleges that Niayzov showed the white tester the unit in 202 Marine Avenue, told the tester that the rent was $3,800 per month but that she could have it for $3,700 because her "paperwork [wa]s good," told her two days later that it was still available, asked the tester if she wanted to put down a deposit on the unit, and told the tester that the owner had approved her. TAC at ¶¶ 156, 158, 167-75.  These allegations alone are more than sufficient to "indicat[e]" that Niayzov had "some authority to act on the . . . Owners' behalf."  *Newson*, 2023 WL 3778574, at *5; *Beach Haven*, 2024 WL 1076110, at *6.  The TAC further alleges on well-grounded information and belief that the owner of 202 Marine Avenue had previously informed Niayzov by text that he was authorized to advertise the available unit in 202 Marine Avenue to potential

17

renters, and that he was moreover authorized to screen applicants for the unit and to bring applicants to the owner that the owner would find acceptable. TAC at ¶¶ 136-38. It further alleges that when Niayzov contacted the owner of 202 Marine on March 5, 2024 to arrange to show the unit to the white tester, the owner of 202 Marine asked Defendant Niayzov screening questions about the white testers and then permitted Niayzov to show them the unit; and Niayzov did so. *Id.* at ¶¶ 140-160. These additional allegations, while not necessary, further bolster the well-pled agency relationship.

### C.    The Court Should Additionally Consider the Discovery Record

This case is in a somewhat unusual (but not unique) posture because many of the Defendants have answered, Judge Merkl has twice declined to stay discovery, some Defendants have partially complied with their discovery obligations, and the documents that have been produced strongly support Plaintiffs' allegations; and yet Defendants are moving against a pleading that was filed before they belatedly and begrudgingly produced the documents that further bolster Plaintiffs' claims. Under these circumstances the Court can and should consider not just the allegations in the TAC – which themselves are plainly sufficient – but also the discovery record discussed above. *See supra* at 10-13.

As the Second Circuit recently explained, whereas the Rule 12(b)(6) standard "acts as a screening mechanism in the early stages of the litigation" by "clos[ing] the doors of discovery" unless the complaint "allege[s] sufficient facts to raise a reasonable expectation that discovery will reveal evidence of the defendant's wrongdoing," "*once the parties have already incurred the expense of discovery, that objective becomes inapposite*." *Lugo v. City of Troy*, 114 F.4th 80, 89 (2d Cir. 2024) (emphasis added) (citation omitted). In this somewhat unusual but not unique posture, the appropriate course is for the Court to afford Plaintiffs "flexibility in opposing a Rule

12(b)(6) motion" by allowing Plaintiffs to "elaborate on [their] factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *see also Clopay Plastic Prods. Co., Inc. v. Excelsior Packaging Grp., Inc.*, 12 Civ. 5262, 2013 WL 6388444, at *5 (S.D.N.Y. Dec. 6, 2013) (where plaintiff is the party offering the documents for consideration "there is no concern of lack of notice to the plaintiff," the typical basis for excluding documents outside the pleadings).

To be clear, as shown above, the detailed allegations in the TAC themselves are plainly sufficient to withstand this motion. When the actual facts proven by the discovery record are considered, as they should be here, 202 Marine's motion is even weaker.

While, as noted above, a landlord can be vicariously liable for discrimination by a real estate agent even without an exclusive listing or showing arrangement, the text colloquy reveals that Sekas and Niayzov texted extensively about the 202 Marine units, and it appears that Niayzov was the only broker originally given information about them. The texts show that Sekas told Niayzov about the unit nearly a month before Sekas emailed other brokers about it, and that they engaged cooperatively in finding a tenant, including Sekas heeding Niayzov's advice about taking better photographs of the unit after Sekas sent the initial photos apparently only to Niayzov. The texts also show that when Sekas thought another unrelated broker was listing the unit, he assured Niayzov that he had asked that broker to take the listing down.

Moreover, the texts show that Sekas *explicitly told Niayzov to screen potential tenants*, writing "Just bring the right clients," thus clearly delegating authority to Niayzov to exercise judgment regarding who to bring and therefore arguably entitling *Plaintiffs* to summary judgment. *See Banks*, 2019 WL 4305610, at *10 (noting the only remaining question at trial would be whether the scope of the agency included "setting limitations and conditions on

19

prospective tenants").  At the same time, Sekas maintained ultimate control, telling Niayzov to bring only "pre-qualified" applications, and engaging in further scrutiny of their credentials when necessary.

And finally, while the fact that a landlord will pay a broker's fee is not necessary to establish an agency relationship, *see Cabrera*, 24 F.3d at 388, the texts show that Sekas offered to pay Niayzov's fee if he filled the unit.

### D.    202 Marine's Statute of Frauds and Dual Agency Arguments Are Frivolous

202 Marine argues that "Even if the TAC's agency allegations were sufficiently pleaded, any purported agency relationship between 202 Marine LLC and Niayzov is invalid under New York's Statute of Frauds and the prohibition on dual agency."  Def. Br. at 8-9.  Both of those arguments are frivolous.

202 Marine's statute of frauds argument is based on N.Y. Gen. Oblig. Law § 5-701(a)(10), which requires a contract to pay compensation for services rendered in connection with leasing a property to be in writing.  This statute obviously is limited to *regulating the relationship of the property owner and real estate agent* and does not displace the law of agency with respect to vicarious liability to third parties.  Thus, if Niayzov had rented one of 202 Marine's units and claimed that 202 Marine owed him a fee, and if there were not a writing between Niayzov and 202 Marine with respect to his right to compensation, then 202 Marine could assert § 5-701(a)(10) as a defense to Niayzov's breach of contract claim.  But the plain language of the statute makes clear that it does no more than render "void" any "agreement, promise or undertaking" to pay compensation between a property owner and real estate agent, and no court has ever held that this statute displaces the well-established common law test that, if satisfied, renders a property owner vicariously liable *to third parties* for its agent's misconduct.

The only case 202 Marine cites, *Leist v. Tugendhaft*, 64 A.D.3d 687 (2d Dep't 2009), is plainly irrelevant. That case involved a claim for the "specific performance of a purported contract for the sale of real property." *Id*. at 687-88. A seller emailed a contract for the sale of real property to defendant, the defendant never signed it, the plaintiff tried to force the sale, and the Court held that without a signed purchase contract, the statute of frauds prohibited enforcing the unsigned alleged contract.

In this case, nobody is trying to force 202 Marine to convey title to its building or to pay Niayzov a commission. The issue is whether 202 Marine is vicariously liable for Niayzov's discrimination against Plaintiff Seale, and courts have repeatedly held and reaffirmed there does not need to be a signed writing between an owner and agent for the common law agency test to be satisfied. *See Khodeir v. Sayyed*, 348 F. Supp. 3d 330, 343 (S.D.N.Y. 2018) (holding that "the law of agency does not require an explicit agreement; rather the agreement may be merely informal, implicit, and nonspecific" and "need not be through written or spoken words but instead may be by means of other conduct" (quotation omitted); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 05-MD-1720, 2014 WL 4966072, at *27 (E.D.N.Y. Oct. 3, 2014); *Cromer Fin. Ltd. v. Berger*, 137 F. Supp. 2d 452, 486 (S.D.N.Y.2001); *99 Commercial St., Inc. v. Goldberg*, 811 F. Supp. 900, 906 (S.D.N.Y.1993).

202 Marine's dual agency argument is similarly meritless. It relies on N.Y. Real Prop. Law § 443, which requires real estate agents to make certain disclosures to clients about who they represent. 202 Marine relies on subsection 3(e), which requires a real estate agent to maintain certain records if a client refuses to sign a required disclosure. This statute obviously has nothing to do with this case. The claim here is that Niayzov was acting as 202 Marine's agent under the applicable common law test when he discriminated against Plaintiff Seale, not

that 202 Marine or Niayzov breached any disclosure or record-keeping duty with respect to Niayzov's relationship with applicants.

Once again, the only case 202 Marine cites, *Rivkin v. Century 21 Teran Realty LLC*, 10 N.Y.3d 344 (2008), is plainly irrelevant. It involved the scope of a real estate agency's fiduciary duty to a client when other clients of the agency are bidding on the same property. *Id*. at 246. Notably, Rivkin observed that subsection (6) of § 443 expressly provides that "[n]othing in this section shall be construed to limit or alter the application of the common law of agency." *Id*. at 354.

## II.  IN THE ALTERNATIVE, THE MOTION TO DISMISS SHOULD BE CONVERTED TO A MOTION FOR SUMMARY JUDGMENT

As shown above, whether or not the Court formally converts 202 Marine's motion to dismiss to a motion for summary judgment, the discovery record should be considered. If the Court disagrees, then the Court should convert the motion to a motion for summary judgment pursuant to Rule 12(d) and allow the evidence that has been adduced during discovery to be presented and considered.

Rule 12(d) provides that where a defendant presents "matters outside the pleadings" that are "not excluded by the court," the motion "must be treated as one for summary judgment under Rule 56." Here, 202 Marine has presented and relies upon (i) the March 18, 2024 email blast and (ii) the undated Apartments.com listing in ostensible support of its false assertions that 202 Marine "did not authorize [Niayzov] in writing to act on its behalf, nor did it take any action that could reasonably be construed as establishing such authority" (even though Sekas gave Niayzov an apparently exclusive preview of the unit and instructed him in writing to "Just bring the right clients") and that there supposedly is "no evidence" of 202 Marine's "involvement or control" with or over Niayzov's searches for tenants for the unit at issue (even though the texts show that

22

Sekas told Niayzov to bring on only "pre-qualified client(s)" and actively questioned Niayzov about his prospects' qualifications).  Indeed, 202 Marine's motion repeatedly refers to and expressly asks this Court to consider the "discovery materials" that have been "exchanged."  Def. Br. at 2, 4, 5, 9, 11.  By presenting, relying on, and urging the Court to consider the "discovery materials" it has submitted, 202 Marine plainly has opened the door to the Court's consideration of the discovery materials that refute its strained false narrative.  *See, e.g.*, *Amerol Corp. v. American Chemie-Pharma, Inc.*, 04 Civ. 0940, 2006 WL 721319, at *12 (E.D.N.Y. March 17, 2006) (where party relied on evidence outside of the pleadings, it "opened the door for [the court] to convert" the motion into one for summary judgment).

To be clear, this is an alternative argument.  As shown in Point I, *supra*, the motion should be denied based on the allegations in the TAC alone.  But if the Court has any doubts about the sufficiency of those allegations or its ability to consider the discovery record in a Rule 12 posture, the Court can and should exercise its authority under Rule 12(d) to provide the parties with notice that it is converting the motion to a summary judgment motion, and affording each side the opportunity to make their respective cases under the standard that applies to Rule 56 motions.

## III.    IN THE ALTERNATIVE, LEAVE TO REPLEAD SHOULD BE GRANTED

If the Court is inclined to conclude (i) that the allegations in the TAC are insufficient, (ii) that it cannot consider the discovery record in a Rule 12 posture, and (iii) that it would be inappropriate to convert the motion to a summary judgment motion pursuant to Rule 12(d), then the Court should permit Plaintiffs to amend the TAC to add all of the additional allegations (indeed, facts) discussed at pages 10-13, *supra*.

It is true that Plaintiffs already have amended twice, but as discussed above, the first amendment was to correct an inadvertent mistake in naming the wrong owner of the property at issue, and the second amendment was to add new parties based on new information. There has been only one amendment amplifying the allegations substantively, and the amendment deadline set by Judge Merkl is not until July 14, 2025 (Minute Order 3/3/25).

It is axiomatic that leave to amend should be freely granted when justice so requires. *See* Fed. R. Civ. P. 15(a)(2); *Agerbrink v. Model Service LLC*, 155 F.Supp.3d 448, 452 (S.D.N.Y. 2016) ("Under this liberal standard, a motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave is granted, or the proposed amendment is futile.").

Indeed, the amendment standard is so forgiving that Rule 15(b)(1) instructs courts to "freely allow" an amendment of a complaint *during a trial* to conform to the evidence presented at trial "when doing so will aid in presenting the merits" and there is no prejudice. We are a long way from trial, Defendants cannot point to any prejudice, and it therefore plainly would be appropriate to allow amendment if the Court rejects all of Plaintiffs other arguments.

It is notable that 202 Marine's discovery production was due in late February. Ex. 6. Had 202 Marine met the deadline prescribed by Rule 30, then Plaintiffs would have been able to include the facts shown in the Sekas-Niayzov texts when Plaintiffs filed the TAC on March 10. Under these circumstances, it would be particularly unfair for the Court to allow 202 Marine to leverage its non-compliance with its Rule 30 obligations to prevent Plaintiffs from having a fair opportunity to plead the facts.

## IV.     THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE IT FAILS TO COMPLY WITH THE COURT'S INDIVIDUAL PRACTICES

The Court's April 10, 2025 Order directed 202 Marine to follow the Court's preference for bundling motion papers, requesting that 202 Marine "file the motions once fully briefed." 202 Marine ignored that request.

Rules III.C.5 and III.C.7 of this Court's Individual Practices provides that "letter briefs are not permitted" and that briefs "must contain a table of contents and a table of authorities." 202 Marine submitted a letter brief that does not contain a table of contents or a table of authorities.  202 Marine's violation of the Court's Individual Practices provide an independent basis for denying its meritless motion.

## **CONCLUSION**

For the foregoing reasons, the motion to dismiss should be denied.

Dated: New York, New York
        May 7, 2025

                                    WANG HECKER LLP


                                    By:_____
                                        Eric Hecker
                                        Mariann Wang
                                        Heather Gregorio

                                    305 Broadway, Suite 607
                                    New York, New York 10007
                                    (212) 620-2600

                                    *Attorneys for Plaintiffs*

25