UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;          24 Civ. 4201 (LDH) (TAM)
FELIX; BIANCA JONES; and ROSLYN
SEALE,
                                         **DECLARATION OF ERIC HECKER**
                                         **IN OPPOSITION TO DEFENDANTS'**
                    Plaintiffs,          **MOTION TO DISMISS**

            v.


JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; AND REMAX EDGE REALTY,
LLC,

                    Defendants.
--------------------------------------------------------X

        **ERIC HECKER, ESQ.** hereby declares the following to be true under penalty of perjury

pursuant to 28 U.S.C. § 1746:

        1.      I am an attorney duly licensed to practice law in New York State and before this

Court.  I am a partner at Wang Hecker LLP, which represents the Plaintiffs in this action.  I

hereby submit this Declaration, and the exhibits appended hereto, in support of Plaintiffs'

opposition to the motion to dismiss filed by 202 Marine LLC ("202 Marine").

        2.      Attached as Exhibit 1 is a true and correct copy of Plaintiffs' original Complaint

in this action dated June 12, 2024.

        3.      Attached as Exhibit 2 is a true and correct copy of Plaintiffs' Amended Complaint

in this action dated July 23, 2024.

4.       Counsel for Niayzov appeared in July 2024.  During informal pre-answer discussions between Plaintiffs' counsel and Niayzov's counsel, Niayzov's counsel disclosed that Zhang, who is a real estate agent affiliated with Remax, served as the "intermediary" between Niayzov and the owners of 581 West Caswell with respect to Plaintiffs' application.

5.       Attached as Exhibit 3 is a true and correct copy of Plaintiffs' Second Amended Complaint in this action dated August 15, 2024.

6.       Attached as Exhibit 4 is a true and correct copy of 202 Marine's first pre-motion letter to the Court dated September 6, 2024.

7.       Attached as Exhibit 5 is a true and correct copy of Plaintiffs' Third Amended Complaint in this action dated March 10, 2025.

8.       Attached as Exhibit 6 is a true and correct copy of Plaintiff's First Set of Discovery Requests to Defendants dated January 27, 2025.

9.       Attached as Exhibit 7 is a true and correct copy of defense counsel's pre-motion letter to the Court dated April 1, 2024.

10.      Attached as Exhibit 8 is a true and correct copy of a text colloquy between Sekas, the principal of 202 Marine, and Defendant Niayzov that 202 Marine produced in this litigation.

11.      Attached as Exhibit 9 is a true and correct copy of another version of the text colloquy between Sekas, the principal of 202 Marine, and Defendant Niayzov that 202 Marine produced in this litigation.

12.      I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: New York, New York
   May 7, 2025

By:_____
   Eric Hecker, Esq.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                        Index No. 24 Civ. 4201

               Plaintiffs,

                        **COMPLAINT AND**
       v.                       **DEMAND FOR JURY TRIAL**

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
AMINA ALI; NDERIM DEMIROVIC; and
202 MARINE LLC,

               Defendants.
------------------------------------------------------------X

     Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their

Complaint against Defendants allege as follows:

## <u>INTRODUCTION</u>

    1.    This case involves shocking race discrimination by Defendants Juda (a.k.a

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various property owners in connection with residential apartment rentals in

Staten Island and Brooklyn.

    2.    In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an

available rental unit owned by Defendant Amini Ali and represented by Defendant Niayzov.

Plaintiffs Delone-Felix and Felix, who work full-time and have excellent income and credit,

sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that

Defendant Amini refused to rent to Black tenants.

3.     Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.     The results of both of the tests confirm Defendants' racial animus.

5.     During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.     Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.     More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities.  Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides in Staten Island, New York.

14.    Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.    Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.    Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.    Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18.    Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.    Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.    Defendant Amina Ali is a natural person who, upon information and belief, lives in Staten Island.  Defendant Ali is the owner if 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Amina, acting within the scope of their agency.

21.    Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

22.    Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is an owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

### Discrimination Against Plaintiffs Delone-Felix and Felix

23.    On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 518 West Caswell Avenue in Staten Island.

24.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

25.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

26.     Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

27.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

28.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

29.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

30.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

31.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

32.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

33.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

34.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

35.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

36.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

37.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

38.     Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

39.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

40.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experience renting to Black tenants in the past.

**FHJC Investigates Defendants**

41.     Plaintiff Delone-Felix reported her experience to FHJC.

42.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

43.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

44.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

45.      At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

46.     Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

47.     The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

48.     Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

49.     The tester responded that his budget was up to $3,200.00 per month.

50.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

51.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

52.     The tester was met by a woman named Nicole, who showed him the unit.

53.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

54.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

55.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

56.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

57.     When the tester left the unit, Defendant Niayzov was outside.

58.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

59.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

60.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

61.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

62.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

63.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

64.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

65.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

66.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

67.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

68.     The tester expressed interest in both units.

69.     Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

70.     Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

71.     The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

72.     The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

73.     The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

74.     The tester responded that he was renting a different apartment.

75.     Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

76.     On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

77.     Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

78.     Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

79.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

80.     Defendant Niayzov did not call Plaintiff Jones back.

81.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

82.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

83.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

84.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

85.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

86.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

87.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

88.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

89.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

90.     Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

91.     The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

92.     Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

93.     Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

94.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

95.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

96.     At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

97.     Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

98.     The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

99.     Defendant Ioffe asked the tester what she did for a living and if she had good credit.

100.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

101.    The tester asked whether there were available two-bedrooms in Brooklyn.

102.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

103.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

104.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

105.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

106.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

107.    During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

108.    The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

109.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

110.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

111.    Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

112.    During the drive, Defendant Niayzov made explicitly racist comments to the tester.

113.    Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

114.    Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

115.    Defendant Niayzov complained to the tester about "criminals" in New York City.

116.    Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

117.    Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

118.    Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

119.    Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard. They get everything on their lap. Why is that? That's like also not right."

120.    Defendant Niayzov complained to the tester that "You want health? No problem. I will give you work, we will give you a job, earn it. Don't give it on the lap for free. This is what America is doing right now. It's not right."

121.    Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

122.    Defendant Niayzov then showed the tester 202 Marine Avenue.

123.    Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

124.    When they left, Defendant Niayzov offered to show the tester other available apartments.

125.    Defendant Niayzov then drove the tester to the subway.

126.    During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

127.    Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

128.    Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

129.    Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

130.    After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

131.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

132.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

133.    Defendant Niayzov confirmed that it was and asked the tester to call him.

134.    The tester responded that she would call soon.

135.    Defendant Niayzov responded by asking the tester if she could come to his office.

136.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

137.    The tester responded by text that she would call him in a few minutes.

138.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

139.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

140.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

141.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

142.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

143.    Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

144.    The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

145.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

16

146.    Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

147.    Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

148.    On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

149.    Defendant Niayzov arrived approximately twenty minutes late.

150.    The showing lasted approximately three and a half minutes.

151.    Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

152.    Defendant Niayzov told Plaintiff Seale to call him the following day.

153.    Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

154.    The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

155.    Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

156.    In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

157.    Defendant Niayzov did not respond to any of those texts.

158.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

159.    Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

160.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

161.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

162.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

163.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

164.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

165.    As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

166.    As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

167.    Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

168.    Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

**<u>FIRST SECOND CAUSE OF ACTION</u>**
**Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.**
**(By All Plaintiffs Against All Defendants)**

169.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

170.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

171.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

172.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

173.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

174.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

175.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

176.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

177.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

178.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

179.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

180.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

181.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

182.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

183.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

184.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

185.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

186.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

187.    Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

### SECOND CAUSE OF ACTION
**Violation of 42 U.S.C. §§ 1981 and 1982**
**(By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)**

188.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

189.    42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

190.    42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

191.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with their effort to rent 518 West Caswell Avenue.

192.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

193.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

194.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

195.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

196.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

197.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

198.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

199.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

200.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

201.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

202.    Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

203.    Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Selase based on their race.

204.    Defendants acted with racial animus.

205.    Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

206.    Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

207.    Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

208.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

209.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

210.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

211.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

212.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

213.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

214.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

215.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

216.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

217.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

218.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

219.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

220.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

221.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

222.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

223.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

224.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

225.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

226.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

227.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

228.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

229.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

230.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

231.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

232.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

233.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

234.    Defendants Niayzov and Ali discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 518 West Caswell Avenue.

235.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Ali, acting within the scope of his agency.

236.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

237.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

238.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

239.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

240.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

241.    Upon information and belief, Defendant Niayzov conspired with Defendants Ali, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

242.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Ali, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

243.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

244.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

245.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

246.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

247.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

248.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

249.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

250.    Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.    An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.    An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)    refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)    discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)    coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.    An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)    ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)    make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)    train all management, agents, and employees on fair housing laws;

(iv)    display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)    allow monitoring of their rental screening and application process and decisions;

(vi)    retain records to allow for appropriate monitoring;

(vii)    develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)    undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)     establish a system so that their agents can be tested for unlawful discriminatory practices;

d.      An order and judgment awarding monetary damages to each Plaintiff;

e.      An order and judgment awarding punitive damages to each Plaintiff;

f.      An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.      Pre- and post-judgment interest on any and all such awards; and

h.      Any further relief that may be just and proper.


Dated: New York, New York
       June 12, 2024


                              By:   ___/s/ Eric Hecker___
                                    Mariann Wang
                                    Eric Hecker

                              CUTI HECKER WANG LLP
                              305 Broadway, Suite 607
                              New York, New York 10007
                              (212) 620-2604
                              mwang@chwllp.com
                              ehecker@chwllp.com

                              *Attorneys for Plaintiffs*

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                                Plaintiffs,

          v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; and YU LI WENG,

                               Defendants.
-----------------------------------------------------------X

Index No. 24 Civ. 4201

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

    Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their Complaint against Defendants allege as follows:

### INTRODUCTION

    1.    This case involves shocking race discrimination by Defendants Juda (a.k.a "Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties Realty, Inc., and various property owners in connection with residential apartment rentals in Staten Island and Brooklyn.

    2.    In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an available rental unit owned by Defendants Xueqiang Zheng and Yu Li Weng and represented by Defendant Niayzov.  Plaintiffs Delone-Felix and Felix, who work full-time and have excellent income and credit, sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that the owners of the unit refused to rent to Black tenants.

3.      Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that Defendant Niayzov had discriminated against her and her husband based on their race, FHJC conducted two tests during which pairs of testers, one white and one Black, posed as prospective tenants seeking to rent an apartment.

4.      The results of both of the tests confirm Defendants' racial animus.

5.      During the tests, Defendant Niayzov made shocking, despicable comments to the white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display. Among other racist comments, Defendant Niayzov complained that he had been robbed by "three Black guys with the ski masks," and commented that a preferred Staten Island neighborhood has "[v]ery nice people here, Italians, nice white people."

6.      Consistent with those expressions of racism, Defendant Niayzov regularly treats prospective tenants who are white substantially better than prospective tenants who are Black. During the tests, Defendant Niayzov spent more time with, showed more apartments to, and offered rent discounts to the white testers, and he declined to provide applications to and failed to follow up with the Black testers.

7.      More than 50 years after the enactment of the Fair Housing Act, rampant racial discrimination in the provision of housing persists in pockets of New York City.  There is no place for such profound bigotry – anywhere.  Defendants should be compelled to pay compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities.  Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides in Staten Island, New York.

14. Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15. Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens. At all relevant times, Plaintiff Jones worked for the FHJC as a tester. Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16. Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan. During all relevant times, Plaintiff Seale worked for the FHJC as a tester. Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17. Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey. Defendant Niayzov is licensed by the State of New York to serve as a real estate broker. Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18. Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey. Defendant Ioffe is licensed by the State of New York to serve as a real estate broker. Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19. Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York. Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage. Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.     Defendant Xueqiang Zheng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Zheng is an owner of 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Zheng, acting within the scope of their agency.

21.     Defendant Yu Li Weng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Weng is an owner of 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Weng, acting within the scope of their agency.

22.     Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

23.     Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is the owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

**Discrimination Against Plaintiffs Delone-Felix and Felix**

24.     On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell Avenue in Staten Island.

25.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

26.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

27.     Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

28.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

29.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

30.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

31.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

32.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

33.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

34.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

35.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

36.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

37.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

38.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

39.     Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

40.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

41.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experience renting to Black tenants in the past.

**FHJC Investigates Defendants**

42.     Plaintiff Delone-Felix reported her experience to FHJC.

43.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

44.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

45.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

46.      At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

47.     Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

48.     The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

49.     Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

50.     The tester responded that his budget was up to $3,200.00 per month.

51.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

52.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

53.     The tester was met by a woman named Nicole, who showed him the unit.

54.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

55.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

56.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

57.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

58.     When the tester left the unit, Defendant Niayzov was outside.

59.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

60.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

61.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

62.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

63.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

64.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

65.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

66.    Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

67.    The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

68.    At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

69.    The tester expressed interest in both units.

70.    Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

71.    Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

72.    The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

73.    The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

74.    The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

75.    The tester responded that he was renting a different apartment.

76.    Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

77.     On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

78.     Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

79.     Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

80.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

81.     Defendant Niayzov did not call Plaintiff Jones back.

82.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

83.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

84.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

85.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

86.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

87.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

88.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

89.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

90.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

91.     Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

92.     The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

93.     Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

94.     Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

95.     Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

96.     Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

97.     At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

98.     Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

99.     The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

100.    Defendant Ioffe asked the tester what she did for a living and if she had good credit.

101.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

102.    The tester asked whether there were available two-bedrooms in Brooklyn.

103.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

104.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

105.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

106.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

107.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

108.    During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

109.    The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

110.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

111.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

112.    Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

113.    During the drive, Defendant Niayzov made explicitly racist comments to the tester.

114.    Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

115.    Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

116.    Defendant Niayzov complained to the tester about "criminals" in New York City.

117.    Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

118.    Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

119.    Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

120.     Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

121.      Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

122.     Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

123.     Defendant Niayzov then showed the tester 202 Marine Avenue.

124.     Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

125.     When they left, Defendant Niayzov offered to show the tester other available apartments.

126.     Defendant Niayzov then drove the tester to the subway.

127.     During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

128.     Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

129.     Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

15

130.    Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

131.    After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

132.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

133.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

134.    Defendant Niayzov confirmed that it was and asked the tester to call him.

135.    The tester responded that she would call soon.

136.    Defendant Niayzov responded by asking the tester if she could come to his office.

137.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

138.    The tester responded by text that she would call him in a few minutes.

139.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

140.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

141.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

142.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

143.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

144. Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

145. The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

146. Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

147. Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

148. Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day. Defendant Niayzov indicated that he also could show her other units close to that location.

149. On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

150. Defendant Niayzov arrived approximately twenty minutes late.

151. The showing lasted approximately three and a half minutes.

152. Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

153. Defendant Niayzov told Plaintiff Seale to call him the following day.

154. Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

155.    The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

156.    Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

157.    In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

158.    Defendant Niayzov did not respond to any of those texts.

159.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

160.    Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

161.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

162.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

163.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

164.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

165.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

166.     As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

167.    As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

168.    Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

169.    Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

**FIRST SECOND CAUSE OF ACTION**
**Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.***
**(By All Plaintiffs Against All Defendants)**

170.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

171.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

172.    Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

173.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

174.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

175.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

176.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

177.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

178.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

179.    Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

180.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

181.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

182.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

183.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

184.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

185.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

186.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

187.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

188.    Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §§ 1981 and 1982
### (By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)

189.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

190.     42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

191.     42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

192.     Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

193.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

194.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

195.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

196.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

197.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

198.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

199. Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

200. Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

201. Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

202. Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

203. Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

204. Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Selase based on their race.

205. Defendants acted with racial animus.

206. Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

207. Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

208. Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

209.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

210.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

211.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

212.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

213.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

214.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

215.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

216.    Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

217.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

218.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

219.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

220.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

221.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

222.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

223.    Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

224.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

225.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

226.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

227.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

228.     As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

229.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

230.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

231.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

232.     Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### FOURTH CAUSE OF ACTION
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

233.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

234.     It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

235.     Defendants Niayzov, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

236.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendants Zheng and Weng, acting within the scope of his agency.

237.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

238.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

239.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

240.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

241.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

242.     Upon information and belief, Defendant Niayzov conspired with Defendants Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

243.     Upon information and belief, Defendant Niayzov aided and abetted Defendants Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

244.     Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

245.     Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

246.     Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

247. As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

248. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

249. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

250. Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

251. Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests the following relief:

a. An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b. An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)　　refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)　　discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)　　coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.　　An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)　　ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)　　make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)　　train all management, agents, and employees on fair housing laws;

(iv)　　display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)　　allow monitoring of their rental screening and application process and decisions;

(vi)　　retain records to allow for appropriate monitoring;

(vii)    develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)    undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)    establish a system so that their agents can be tested for unlawful discriminatory practices;

d.      An order and judgment awarding monetary damages to each Plaintiff;

e.      An order and judgment awarding punitive damages to each Plaintiff;

f.      An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.      Pre- and post-judgment interest on any and all such awards; and

h.      Any further relief that may be just and proper.

Dated: New York, New York
       July 23, 2024

By:   /s/ Eric Hecker
        Mariann Wang
        Eric Hecker

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
mwang@chwllp.com
ehecker@chwllp.com

*Attorneys for Plaintiffs*

# EXHIBIT 3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                Plaintiffs,

      v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                Defendants.
--------------------------------------------------------X

Index No. 24 Civ. 4201

**SECOND AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Cuti Hecker Wang LLP, for their

Second Amended Complaint against Defendants allege as follows:

## INTRODUCTION

1.     This case involves shocking race discrimination by Defendants Juda (a.k.a.

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various other brokers and property owners in connection with residential

apartment rentals in Staten Island and Brooklyn.

2.     In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed

an available rental unit owned by Defendants Xueqiang Zheng and Yu Li Weng and

represented by Defendant Niayzov through Defendants Xian Jin Zhang and Remax Edge

Realty, LLC. Plaintiffs Delone-Felix and Felix, who work full-time and have excellent

income and credit, sought to apply for the unit.  Astonishingly, Defendant Niayzov told

Plaintiff Delone-Felix that the owners of the unit refused to rent to Black tenants.

3.      Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights

organization dedicated to eliminating housing discrimination, promoting policies that foster

open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws

in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that

Defendant Niayzov had discriminated against her and her husband based on their race, FHJC

conducted two tests during which pairs of testers, one white and one Black, posed as prospective

tenants seeking to rent an apartment.

4.      The results of both of the tests confirm Defendants' racial animus.

5.      During the tests, Defendant Niayzov made shocking, despicable comments to the

white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display.

Among other racist comments, Defendant Niayzov complained that he had been robbed by

"three Black guys with the ski masks," and commented that a preferred Staten Island

neighborhood has "[v]ery nice people here, Italians, nice white people."

6.      Consistent with those expressions of racism, Defendant Niayzov regularly treats

prospective tenants who are white substantially better than prospective tenants who are Black.

During the tests, Defendant Niayzov spent more time with, showed more apartments to, and

offered rent discounts to the white testers, and he declined to provide applications to and failed to

follow up with the Black testers.

7.      More than 50 years after the enactment of the Fair Housing Act, rampant racial

discrimination in the provision of housing persists in pockets of New York City.  There is no

place for such profound bigotry – anywhere.  Defendants should be compelled to pay

compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.    This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiffs' related claims arising under New York State and New York City law.

10.    Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.    Plaintiffs hereby demand a trial by jury.

## PARTIES

12.    Plaintiff FHJC is a non-profit organization incorporated in the State of New York and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam, Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all people have equal access to housing opportunities in the New York region.  FHJC expended staff time and other resources to investigate and respond to Defendants' discriminatory housing policies and practices, which diverted resources from other FHJC activities.  Defendants' discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all people have equal access to housing opportunities in the New York region.

13.    Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides in Staten Island, New York.

3

14.    Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.    Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.    Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.    Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov was acting as an agent of the property owners detailed herein, acting within the scope of his agency.

18.    Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe was acting as an agent of the property owners detailed herein, acting within the scope of her agency, and/or conspiring with and/or aiding and abetting Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.    Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon

information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.     Defendant Xueqiang Zheng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Zheng is an owner of 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Zheng, acting within the scope of their agency.

21.     Defendant Yu Li Weng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Weng is an owner of 581 West Caswell Avenue in Staten Island, New York.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Weng, acting within the scope of their agency.

22.     Defendant Remax Edge Realty, LLC is New York limited liability company that is headquartered or does business at 1812 Bath Avenue in Brooklyn, New York.  Defendant Remax Edge Realty, LLC is licensed by the State of New York to serve as a real estate brokerage.  Upon information and belief, at all relevant times, Defendant Remax Edge Realty, LLC employed or was otherwise associated with Defendant Xian Jin Zhang and served as the agents of Defendants Xueqiang Zheng and Yu Li Weng with respect to 581 West Caswell Avenue, acting within the scope of their agency.

23.     Defendant Xian Jin Zhang is a natural person who upon information and belief resides in Brooklyn, New York.  Defendant Zhang is licensed by the State of New York to serve as a real estate broker and at all relevant times was employed by or associated with Defendant Remax Edge Realty, LLC acting within the scope of such employment or association.  Upon

information and belief, at all relevant times, Defendant Zhang was acting as an agent of the owners of 581 West Caswell Avenue, acting within the scope of his agency, under the auspices of Defendant Remax Edge Realty, LLC.

24.     Defendant Nderim Demirovic is a natural person who, upon information and belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant Demirovic, acting within the scope of their agency.

25.     Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is the owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. served as the agents of Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

### Discrimination Against Plaintiffs Delone-Felix and Felix

26.     On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell Avenue in Staten Island.

27.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

28.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

29.     Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

30.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

31.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

32.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

33.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

34.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

35.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

36.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

37.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

38.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which the then emailed to her.

39.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

40.     In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

41.     Defendant Niayzov told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

42.     This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

43.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why the owner had rejected the application was that the owner had had negative experiences renting to Black tenants in the past.

44.     Upon information and belief, Defendant Zhang told Defendant Niayzov, on behalf of Defendants Zheng and Weng, that the owner had rejected the application because the owner had had negative experiences renting to Black tenants in the past.

**FHJC Investigates Defendants**

45.     Plaintiff Delone-Felix reported her experience to FHJC.

46.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

47.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

48.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

49.      At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

50.      Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

51.      The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

52.      Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

53.      The tester responded that his budget was up to $3,200.00 per month.

54.      They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

55.      The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

56.      The tester was met by a woman named Nicole, who showed him the unit.

57.      Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

58.      Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

59.      Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

60.      At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

9

61.     When the tester left the unit, Defendant Niayzov was outside.

62.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

63.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

64.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

65.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

66.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

67.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

68.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

69.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

70.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

71.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

72.     The tester expressed interest in both units.

73.     Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

74.     Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

75.     The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

76.     The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

77.     The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

78.     The tester responded that he was renting a different apartment.

79.     Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

80.     On January 30, 2024 – day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

81.     Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

82.     Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

83.     On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

84.     Defendant Niayzov did not call Plaintiff Jones back.

85.     At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

86.     Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

87.     Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

88.     Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

89.     Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

90.     Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

91.     Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

92.     Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

93.     Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

94.    Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

95.    The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

96.    Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

97.    Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

98.    Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

99.    Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

100.    At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

101.    Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

102.    The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

103.    Defendant Ioffe asked the tester what she did for a living and if she had good credit.

104.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

105.    The tester asked whether there were available two-bedrooms in Brooklyn.

106.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

107.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

108.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

109.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

110.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

111.    During that showing, Defendant Niayzov also contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

112.    The owner asked what she and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

113.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

114.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

115.    Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

116.    During the drive, Defendant Niayzov made explicitly racist comments to the tester.

117.    Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

118.    Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

119.    Defendant Niayzov complained to the tester about "criminals" in New York City.

120.    Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

121.    Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

122.    Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

123.    Defendant Niayzov complained to the tester that the "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

124.    Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

125.    Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

126.    Defendant Niayzov then showed the tester 202 Marine Avenue.

127.    Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

128.    When they left, Defendant Niayzov offered to show the tester other available apartments.

129.    Defendant Niayzov then drove the tester to the subway.

130.    During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

131.    Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

132.    Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

133.    Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

134.    After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

135.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

136.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

137.    Defendant Niayzov confirmed that it was and asked the tester to call him.

138.    The tester responded that she would call soon.

139.    Defendant Niayzov responded by asking the tester if she could come to his office.

140.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

141.    The tester responded by text that she would call him in a few minutes.

142.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

143.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

144.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

145.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

146.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

147.    Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

148.    The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

149.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

150.    Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

151.    Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

152.    On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street.

153.    Defendant Niayzov arrived approximately twenty minutes late.

154.    The showing lasted approximately three and a half minutes.

155.    Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

156.    Defendant Niayzov told Plaintiff Seale to call him the following day.

157.    Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

158.    The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

159.    Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

160.    In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

161.    Defendant Niayzov did not respond to any of those texts.

162.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

163.    Defendant Niayzov did not offer Plaintiff Seale tester the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

164.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

165.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

166.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

167.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

168.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

169.     As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

170.     As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

171.     Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

172.     Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

<u>FIRST SECOND CAUSE OF ACTION</u>
**Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq*.**
**(By All Plaintiffs Against All Defendants)**

173.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

174.     It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

175.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

176.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

177.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

178.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

179.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

180.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

181.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

182.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

183.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

184.     Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

185.     Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

186.     Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

187.     As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

188.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

189.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

190.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

191.     Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
**Violation of 42 U.S.C. §§ 1981 and 1982**
**(By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)**

192.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

193.    42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

194.    42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

195.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

196.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

197.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

198.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

199.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

200.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

201.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

202.    Upon information and belief, Defendant Niayzov conspired with Defendants Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

203.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

204.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

205.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

206.    Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

207.    Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale based on their race.

208.    Defendants acted with racial animus.

209.    Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

210.     Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

211.    Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

212.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

213.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

214.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

215.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

216.    Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

217.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

218.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

219.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

220.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agent of Defendants Zheng and Weng, acting within the scope of their agency.

221.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

222.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

223.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

224.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

225.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

226.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

227.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

228.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

229.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

230.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

231.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

232.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

233.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

234.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

235.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**FOURTH CAUSE OF ACTION**
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

236.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

237.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

238.    Defendants Niayzov, Zhang, Remax Edge Realty, LLC, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

239.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax Edge Realty, LLC were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

240.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

241.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

242.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

243.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

244.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

245.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

246.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax Edge Realty, LLC, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

247.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

248.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

249.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

250.     As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

251.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

252.     As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

253.     Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

254.     Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.     An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.     An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)    refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)    discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)    coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.    An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)    ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)    make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)    train all management, agents, and employees on fair housing laws;

(iv)    display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)    allow monitoring of their rental screening and application process and decisions;

(vi)    retain records to allow for appropriate monitoring;

(vii)    develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)    undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)    establish a system so that their agents can be tested for unlawful discriminatory practices;

d.    An order and judgment awarding monetary damages to each Plaintiff;

e.    An order and judgment awarding punitive damages to each Plaintiff;

f.    An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.    Pre- and post-judgment interest on any and all such awards; and

h.    Any further relief that may be just and proper.

Dated: New York, New York
        August 15, 2024

By:    /s/ Eric Hecker
        Mariann Wang
        Eric Hecker

CUTI HECKER WANG LLP
305 Broadway, Suite 607
New York, New York 10007
(212) 620-2604
mwang@chwllp.com
ehecker@chwllp.com

*Attorneys for Plaintiffs*

# EXHIBIT 4

# SEKAS LAW GROUP, L.L.C.

## ATTORNEYS AT LAW

**Nicholas G. Sekas** *o*
Kevin Mallon o+
Dae-Ki Min *o*\*
Saverio Cereste *o*\*
Paul Faugno *o*\*×

× **Certified Civil Trial Attorney of
the Superior Court of New Jersey**

+ **Of Counsel**

_____

Retired Judge Walter F. Skrod+

530 Sylvan Avenue, Suite 201
Englewood Cliffs, NJ 07632
201.816.1333
Facsimile 201.816.1522

www.sekaslaw.com

515 Madison Avenue, 6th FL
New York, NY 10022
212.695.7577
Facsimile 212.753.386

345 Centre Street, Suite 1
Nutley, NJ 07110
973.667.3399
Facsimile 973.235.1575

*Members are admitted to:*
*#   NJ Bar*
*ᐯ  NY Bars*
*ᐯ   NY & CT Bars*
*o   NJ & NY Bars*
*ọ   NJ & PA Bars*

September 6, 2024

Justice LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201 Courtroom 4H North

> **Re:**   **Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.**
>              **Case No. 1:24-cv-04201**

Dear Judge Hall:

We write on behalf of 202 Marine LLC to request a pre-motion conference regarding 202 Marine's anticipated motion to dismiss claims made against it in Plaintiff's Second Amended Complaint.

## Summary of Allegations in Second Amended Complaint

Plaintiffs allege that on or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell Avenue in Staten Island on behalf of her and her husband Plaintiff Felix. Plaintiffs allege that at time Niayzov was not initially aware that Plaintiff and her husband were black, but only became aware of their racial identities after receiving their identification as part of the application process. Plaintiffs allege that they were qualified to rent the apartment at 581 West Caswell Avenue, but that Defendant Niayzov informed them that the landlord was rejecting them for the apartment ostensibly because they resided in Brooklyn, but confided in them that the actual reason was that the owner had negative experiences renting to black tenants in the past.

Plaintiffs reported their negative experience with Niayzov to Plaintiff Fair Housing Justice Center, who then dispatched testers posing as black and white tenants to test whether Defendant Niayzov and other Defendants were discriminating against housing applicants based on their race. Defendant Niayzov arranged to show 202 Marine Avenue to one of the white testers who was looking for a two-bedroom apartment in Brooklyn. He informed the tester that they were qualified for the apartment, but the tester rejected the apartment.

Shortly thereafter Plaintiff Seale, a black tester, contacted Defendant Niayzov seeking to rent a one or two-bedroom apartment in Brooklyn.  Mr. Niayzov showed the tester an apartment at 2732 East 65th St. but did not show Plaintiff Seale any other apartments.  Plaintiffs do not allege that the owner of 202 Marine Ave was ever aware of Plaintiff Seale's interest in renting an apartment, much less that Plaintiff Seale was black.  Plaintiffs contend that the mere failure to inform Plaintiff Seale that 202 Marine Avenue was also available to rent constitutes unlawful discrimination under the Fair Housing Act not only by Mr. Niayzov, but by the owner of 202 Marine Avenue as well.

## Defendant 202 Marine's Grounds for Dismissal

To prove discrimination under the FHA, Plaintiffs must show that Defendant had the intent to discriminate.  "The plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination; without some evidence of knowledge of the prospective buyers' racial identity, it is impossible to infer such motivation. See, e.g., *Soules v. U.S. Dep't of Hous. & Urban Dev., 967 F.2d 817, 822 (2d Cir.1992)* (noting, as part of prima facie case, defendant's knowledge of plaintiff's familial status, the basis for the alleged housing discrimination); *Hamilton v. Svatik, 779 F.2d 383, 387 (7th Cir.1985)* (stating that defendant's awareness of plaintiff's race is necessary to establish a prima facie case under the Fair Housing Act).  *Mitchell v. Shane*, 350 F. 3d, 39, 49 (2nd Cir. 2003).  Plaintiffs Second Amended Complaint makes no allegations whatsoever that 202 Marine Ave had any intent to discriminate or even knew the race of Plaintiff Seale.  In fact, the Complaint does not allege that 202 Marine was even aware of Plaintiff Seales stated desire to rent an apartment in Brooklyn.

Defendant's sole theory of liability against 202 Marine Avenue is that "upon information and belief,"  Defendant Niayzov was acting as the agent of Marine Avenue. "In order to avoid predicating liability of Title VII [of the Civil rights Act of 1968] violations on the vagaries of state law, the questions whether an agency relationship exists for purposes of the Fair Housing Act is determined under federal law."  *Cabrera v. Jakabovitz*, 24 F.3d 372, 386 (2nd Cir. 1994). "Agency is a legal concept that depends on the existence of three elements: (1) "the manifestation by the principal that the agent shall act for him"; (2) "the agent's acceptance of the undertaking"; and (3) "the understanding of the parties that the principal is to be in control of the undertaking.:"  *Cleveland v. Caplaw Enterprises*, 448 F.3d 518, 522 (2nd Cir. 2006).

The Second Amended Complaint does not allege any facts which would show that there was an understanding between Defendants 202 Marine Ave and Niayzov that 202 Marine would be in control of who Niayzov would show the apartment to.  To the contrary, the factual allegations in the Second Amended Complaint make it more likely that Mr. Niayzov was acting as the agent for the Plaintiff here. Mr. Seale did not reach out directly to 202 Marine and be directed to work with Mr. Niayzov on obtaining the apartment.   The opposite occurred - Mr. Seale contacted Mr. Niayzov and asked him to help him locate an apartment and presumably help him negotiate the terms of a rental agreement.  In fact, the entire agency allegation against Defendant 202 Marine Ave is contained Paragraph 181: "Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within

the scope of his agency."  The mere naked allegation that Niayzov was 202 Marine's agent here is insufficient without additional factual enhancements.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. Sup. Ct 2007) .

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of `entitlement to relief.'" Id., at 557 (brackets omitted*)" Ashcroft v. Iqbal*, 556 U.S. 662, 668 (U.S. Sup Ct. 2009).

Accordingly, since Plaintiffs have presented no factual basis that Defendant Niayzov was 202 Marine Ave's agent the allegations against 202 Marine Ave must be dismissed for failure to state a claim upon which relief may be granted.  To do otherwise would be to hold that the owner of every single apartment which Defendant Niayzov was aware of and did not make Plaintiff Seale aware of is liable for discrimination under the Fair Housing Act, regardless even of their knowledge of Plaintiff Seale's existence.

**Respectfully submitted,**
**SEKAS LAW GROUP, LLC**
**Attorneys for Defendant 202 Marine Ave**


***/S/Nicholas G. Sekas***_____
Nicholas G. Sekas, Esq.
Attorneys for Defendant 202 Marine Ave

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                      Plaintiffs,

        v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                      Defendants.
----------------------------------------------------------X

Index No. 24 Civ. 4201

**THIRD AMENDED COMPLAINT
AND DEMAND FOR JURY TRIAL**

     Plaintiffs Fair Housing Justice Center, Inc., Patricia Delone-Felix, Stanley Felix, Bianca

Jones, and Roslyn Seale, by and through their attorneys, Wang Hecker LLP, for their Third

Amended Complaint against Defendants allege as follows:

## **INTRODUCTION**

    1.     This case involves shocking race discrimination by Defendants Juda (a.k.a

"Jacob") Niayzov, Alevtina (a.k.a. "Alla") Ioffe, their real estate agency, Exclusive Properties

Realty, Inc., and various other brokers and property owners in connection with residential

apartment rentals in Staten Island and Brooklyn.

    2.     In November 2023, Plaintiffs Patricia Delone-Felix and Stanley Felix viewed an

available rental unit owned by Defendants Xueqiang Zheng and Yu Li Weng and represented by

Defendant Niayzov through Defendants Xian Jin Zhang and Remax Edge Realty, LLC.

Plaintiffs Delone-Felix and Felix, who work full-time and have excellent income and credit,

sought to apply for the unit.  Astonishingly, Defendant Niayzov told Plaintiff Delone-Felix that

the owners of the unit refused to rent to Black tenants.

3.    Plaintiff Fair Housing Justice Center, Inc. ("FHJC") is a non-profit civil rights

organization dedicated to eliminating housing discrimination, promoting policies that foster

open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws

in the New York City area.  After FHJC received a complaint from Plaintiff Delone-Felix that

Defendant Niayzov had discriminated against her and her husband based on their race, FHJC

conducted two tests during which pairs of testers, one white and one Black, posed as prospective

tenants seeking to rent an apartment.

4.    The results of both of the tests confirm Defendants' racial animus.

5.    During the tests, Defendant Niayzov made shocking, despicable comments to the

white testers when he thought it was "safe" to do so, putting his racial bigotry on vivid display.

Among other racist comments, Defendant Niayzov complained that he had been robbed by

"three Black guys with the ski masks," and commented that a preferred Staten Island

neighborhood has "[v]ery nice people here, Italians, nice white people."

6.    Consistent with those expressions of racism, Defendant Niayzov regularly treats

prospective tenants who are white substantially better than prospective tenants who are Black.

During the tests, Defendant Niayzov spent more time with, showed more apartments to, and

offered rent discounts to the white testers, and he declined to provide applications to and failed to

follow up with the Black testers.

7.    More than 50 years after the enactment of the Fair Housing Act, rampant racial

discrimination in the provision of housing persists in pockets of New York City.  There is no

place for such profound bigotry – anywhere.  Defendants should be compelled to pay

compensatory and punitive damages and should be enjoined from further violating the law.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343 and

42 U.S.C § 3613 because this action involves federal questions regarding the deprivation of

Plaintiff's rights under the Fair Housing Act and 42 U.S.C. §§ 1981 and 1982.

9.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over

Plaintiffs' related claims arising under New York State and New York City law.

10.     Venue is properly lodged in this District pursuant to 28 U.S.C. § 1391(b) because

Defendants' acts of discrimination occurred in this District.

## JURY DEMAND

11.     Plaintiffs hereby demand a trial by jury.

## PARTIES

12.     Plaintiff FHJC is a non-profit organization incorporated in the State of New York

and based in Long Island City.  FHJC's mission is to support fair housing in the five boroughs of

New York City, as well as the surrounding counties of Dutchess, Nassau, Orange, Putnam,

Rockland, Suffolk, and Westchester.  It strives to eradicate housing discrimination so that all

people have equal access to housing opportunities in the New York region.  FHJC expended staff

time and other resources to investigate and respond to Defendants' discriminatory housing

policies and practices, which diverted resources from other FHJC activities.  Defendants'

discriminatory housing policies and practices also frustrated FHJC's mission to ensure that all

people have equal access to housing opportunities in the New York region.

13.     Plaintiff Patricia Delone-Felix is a Black citizen of the United States who resides

in Staten Island, New York.

14.    Plaintiff Stanley Felix is a Black citizen of the United States who resides in Staten Island, New York.

15.    Plaintiff Bianca Jones is a Black citizen of the United States who resides in Queens.  At all relevant times, Plaintiff Jones worked for the FHJC as a tester.  Plaintiff Jones was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

16.    Plaintiff Roslyn Seale is a Black citizen of the United States who resides in Manhattan.  During all relevant times, Plaintiff Seale worked for the FHJC as a tester.  Plaintiff Seale was harmed by Defendants' conduct because she was demeaned and humiliated by being treated as less than her white counterparts.

17.    Defendant Juda Niayzov is a natural person who upon information and belief resides in New Jersey.  Defendant Niayzov is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Niayzov held himself out to the public as an authorized agent on behalf of the property owners detailed herein and in fact acted as an agent with actual and/or apparent authority on behalf of the property owners detailed herein to offer for rent and to actually facilitate the rental of the relevant properties and/or apartments mentioned herein, and to screen potential tenants for the property owners, acting within the scope of his agency.

18.    Defendant Alevtina Ioffe is a natural person who upon information and belief resides in New Jersey.  Defendant Ioffe is licensed by the State of New York to serve as a real estate broker.  Upon information and belief, at all relevant times, Defendant Ioffe held herself out to the public as an authorized agent on behalf of the property owners detailed herein and in fact acted as an agent with actual and/or apparent authority on behalf of the property owners detailed

herein to offer for rent and to actually facilitate the rental of the relevant properties and/or apartments mentioned herein, and to screen potential tenants for the property owners, acting within the scope of her agency, and/or conspired with and/or aided and abetted Defendant Niayzov with respect to the unlawful conduct detailed herein.

19.     Defendant Exclusive Properties Realty, Inc. is New York corporation that is headquartered at 2376 60th Street in Brooklyn, New York.  Defendant Exclusive Properties Realty, Inc. is licensed by the State of New York to serve as a real estate brokerage.  Upon information and belief, Defendants Niayzov and Ioffe are the principals of Defendant Exclusive Properties Realty, Inc.

20.     Defendant Xueqiang Zheng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Zheng is an owner of 581 West Caswell Avenue in Staten Island, New York.

21.     Defendant Yu Li Weng is a natural person who, upon information and belief, lives in Staten Island.  Defendant Weng is an owner of 581 West Caswell Avenue in Staten Island, New York.

22.     Defendant Remax Edge Realty, LLC is New York limited liability company that is headquartered or does business at 1812 Bath Avenue in Brooklyn, New York.  Defendant Remax Edge Realty, LLC is licensed by the State of New York to serve as a real estate brokerage.  Upon information and belief, at all relevant times, Defendant Remax Edge Realty, LLC employed or was otherwise associated with Defendant Xian Jin Zhang and served as the

agents of Defendants Xueqiang Zheng and Yu Li Weng with respect to 581 West Caswell

Avenue, acting within the scope of their agency.[1]

23.     Defendant Xian Jin Zhang is a natural person who upon information and belief

resides in Brooklyn, New York.  Defendant Zhang is licensed by the State of New York to serve

as a real estate broker and at all relevant times was employed by or associated with Defendant

Remax Edge Realty, LLC acting within the scope of such employment or association.  Upon

information and belief, at all relevant times, Defendant Zhang was acting as an agent of the

owners of 581 West Caswell Avenue, acting within the scope of his agency, under the auspices

of Defendant Remax Edge Realty, LLC.

24.     Defendant Nderim Demirovic is a natural person who, upon information and

belief, lives in Brooklyn.  Defendant Demirovic is the owner of 2732 East 65th Street in

Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and

Exclusive Properties Realty, Inc. held themselves out to the public as authorized agents on behalf

of Defendant Demirovic and in fact acted as agents with actual and/or apparent authority on

behalf of Defendant Demirovic to offer for rent and to actually facilitate the rental of the relevant

---

[1] Furman Kornfeld & Brennan LLP has appeared in this action as counsel for Defendant Remax Edge Realty, LLP but has identified itself as counsel for Womcore LLC d/b/a Remax Edge.  This may reflect that Plaintiffs may have unintentionally named the wrong Remax entity based on diligent searches of the limited information that is publicly available, and that the entity through which Defendant Zhang allegedly acted as the agent for Defendants Zheng and Weng may have been Womcore LLC.  Counsel for Plaintiffs has reached out to counsel for Womcore LLC to discuss this in the hope of ensuring, on consent, that the correct Remax entity has been named.  Those discussions remain ongoing.  Plaintiffs are not naming Womcore LLC at this time because Plaintiffs do not understand the Court to have granted such leave during the March 6, 2025 conference.  Plaintiffs reserve the right to seek leave to further amend to name Womcore LLC in the future.  For ease of reference, Plaintiffs refer herein to Remax Edge Realty, LLC and Womcore LLC collectively as "Remax."

apartments mentioned herein, and to screen potential tenants for Demirovic, acting within the scope of their agency.

25.     Defendant 202 Marine LLC is a New York limited liability company headquartered in Brooklyn, New York.  Upon information and belief, Defendant 202 Marine LLC is the owner of 202 Marine Avenue in Brooklyn.  Upon information and belief, at all relevant times, Defendants Niayzov, Ioffe and Exclusive Properties Realty, Inc. held themselves out to the public as authorized agents on behalf of Defendant 202 Marine LLC and in fact acted as agents with actual and/or apparent authority on behalf of Defendant 202 Marine LLC to offer for rent and to actually facilitate the rental of the relevant apartments mentioned herein, and to screen potential tenants for Defendant 202 Marine LLC, acting within the scope of their agency.

## FACTUAL ALLEGATIONS

### Discrimination Against Plaintiffs Delone-Felix and Felix

26.     On or about November 5, 2023, Plaintiff Delone-Felix contacted Defendant Niayzov through Zillow.com about a listing for an available apartment at 581 West Caswell Avenue in Staten Island.

27.     Defendant Niayzov responded and made arrangements for Plaintiff Delone-Felix and her husband, Plaintiff Felix, to see the unit later that day.

28.     Defendant Niayzov was unable to attend the showing, so he provided Plaintiff Delone-Felix with the code to the door lock, and Plaintiffs Delone-Felix and Felix viewed the unit unescorted.

29.     Upon information and belief, Defendant Niayzov was unaware at the time that Plaintiffs Delone-Felix and Felix are Black.

30.     Plaintiff Delone-Felix informed Defendant Niayzov that she and her husband wished to apply for the unit.

31.     Defendant Niayzov texted Plaintiff Delone-Felix his email address and directed her to email him certain documentation.

32.     In response to this request, Plaintiff Delone-Felix sent Defendant Niayzov her and her husband's recent pay stubs, W-2 forms, and a credit report showing a credit score of 775.

33.     Plaintiff Delone-Felix also sent Defendant Niayzov her and her husband's employment verification letters.

34.     Defendant Niayzov asked Plaintiff Delone-Felix to send him $60.00 by Zelle so that he could independently verify their credit, which she then sent.

35.     Defendant Niayzov also reminded Plaintiff Delone-Felix that she needed to send her and her husband's identification, which she then sent.

36.     The identification that Plaintiff Delone-Felix sent Defendant Niayzov showed, for the first time, that Plaintiffs Delone-Felix and Felix are Black.

37.     Plaintiff Delone-Felix followed up with Defendant Niayzov by text on November 7, 2023, and Defendant Niayzov informed her that he had not heard back from the owner.

38.     On November 9, 2023, Plaintiff Delone-Felix asked Defendant Niayzov to send her the credit reports he had obtained for her and her husband, which he then emailed to her.

39.      Meanwhile, Defendant Niayzov interacted with Defendant Zhang regarding the rental application submitted by Plaintiffs Delone-Felix and Felix for the unit at 581 West Caswell Avenue owned by Defendants Zheng and Weng.

40.     Upon information and belief, Defendant Zhang is a licensed real estate salesperson employed by Remax.

8

41.     Upon information and belief, Defendant Zhang is fluent in Mandarin and Cantonese.

42.     Upon information and belief, Defendants Zheng and Weng are not native English speakers.

43.     Upon information and belief, Defendants Zheng and Weng speak primarily Mandarin and/or Cantonese.

44.     Upon information and belief, Defendants Zhang and Remax acted as agents of Defendants Zheng and Weng in connection with the purchase of 581 West Caswell Avenue by Defendants Zheng and Weng in 2022.

45.     Upon information and belief, when Defendants Zheng and Weng subsequently sought to rent the unit at issue at 581 West Caswell Avenue in 2023, they asked Defendant Zhang to serve as the listing agent for that rental transaction.

46.     Upon information and belief, Defendant Zhang informed Defendants Zheng and Weng that he does not formally serve as the listing agent for rental transactions.

47.     Upon information and belief, Defendants Zheng and Weng nevertheless asked Defendant Zhang to provide assistance to them in connection with the rental transaction, and Defendant Zhang agreed to provide them such assistance.

48.     Upon information and belief, Defendant Zhang had a pecuniary motive to provide assistance to Defendants Zheng and Weng in connection with the rental transaction and to hold himself out as an agent with authority on their behalf and to act as an agent with actual and/or apparent authority on their behalf, even though he was not formally listing it, because he hoped that Defendants Zheng and Weng would list 581 West Caswell Avenue with him in the future if

they chose to sell it and because he hoped that Defendants Zheng and Weng would recommend him to other potential buyers and sellers in the community.

49.    Upon information and belief, Defendants Zheng and Weng were not educated about the market for the available unit at 581 West Caswell Avenue.

50.    Defendant Zhang was very educated about the market for the available unit at 581 West Caswell Avenue.

51.    Upon information and belief, Defendant Zhang provided Defendants Zheng and Weng with advice regarding renting the available unit at 581 West Caswell Avenue, including advice about the appropriate listing price and advice about how to advertise its availability.

52.    Upon information and belief, Defendant Zhang helped Defendants Zheng and Weng evaluate the rental applications that were submitted for the available unit at 581 West Caswell Avenue, including the application that was submitted by Plaintiffs Delone-Felix and Felix.

53.    Upon information and belief, Defendant Zhang acted within the scope of his actual and/or apparent authority when he took actions to screen and/or to help screen applications.

54.    Upon information and belief, Defendant Zhang was aware that Plaintiffs Delone-Felix and Felix were the first applicants for the available unit at 581 West Caswell Avenue and that they were well qualified.

55.    Upon information and belief, Defendants Zheng and Weng informed Defendant Zhang that they did not want to rent to Plaintiffs Delone-Felix and Felix because they had had negative experiences renting to Black tenants in the past.

56.    Upon information and belief, Defendant Zhang knew that this reason for rejecting the application submitted by Plaintiffs Delone-Felix and Felix violated federal, state, and local law.

57.    Upon information and belief, Defendant Zhang nevertheless agreed to assist Defendants Zheng and Weng in unlawfully rejecting the application submitted by Plaintiffs Delone-Felix and Felix.

58.    Upon information and belief, in or about November 2023, Defendant Zhang participated in a telephone call among himself, Defendant Zheng and/or Defendant Weng, and Defendant Niayzov.

59.    Upon information and belief, during that telephone call, Defendant Zhang informed Defendant Niayzov that Defendant Zheng and Weng had rejected the application submitted by Plaintiffs Delone-Felix and Felix because Defendant Zheng and Weng had had negative experiences renting to Black tenants in the past.

60.    Meanwhile, Plaintiff Delone-Felix followed up with Defendant Niayzov by text again on November 20, 2023.

61.    In response to her text, Defendant Niayzov telephoned Plaintiff Delone-Felix and told her that the owner had rejected the application.

62.    Defendant Niayzov initially told Plaintiff Delone-Felix that the reason why the owner had rejected the application was that Plaintiffs Delone-Felix and Felix supposedly lived in Brooklyn.

63.    This explanation made no sense for two reasons:  first, that it should not have mattered whether they lived in Brooklyn or Staten Island; and second, that they actually lived in Staten Island, not Brooklyn.

64.     Defendant Niayzov then told Plaintiff Delone-Felix that the real reason why Defendants Zheng and Weng had rejected the application was that they had had negative experiences renting to Black tenants in the past.

**FHJC Investigates Defendants**

65.     Plaintiff Delone-Felix reported her experience to FHJC.

66.     FHJC is a non-profit organization dedicated to eliminating housing discrimination, promoting policies that foster open, accessible, and inclusive communities, and strengthening enforcement of fair housing laws.

67.     In response to that complaint, FHJC designed and implemented an investigation that involved dispatching multiple pairs of trained testers posing as prospective white and Black tenants, respectively, to test whether Defendant Niayzov and the property owners and/or managers who engaged him discriminate against prospective tenants based on their race.

68.     All calls placed by and all visits made by FHJC's testers were recorded.

**The First Test**

69.      At approximately 11:08 a.m. on January 22, 2024, a white FHJC tester posing as a prospective tenant texted Defendant Niayzov inquiring about available apartments for rent.

70.     Defendant Niayzov was on vacation at the time.  He confirmed that he had an available rental unit in Staten Island for $3,000.00 per month, and he said that he could show it on January 29, 2024.

71.     The tester followed up with Defendant Niayzov by text on the morning of January 29, 2024.

72.     Defendant Niayzov responded that he had a few available units to show the tester, including a house for $3,500.00 per month.

12

73.     The tester responded that his budget was up to $3,200.00 per month.

74.     They agreed to meet at 1:00 p.m. at 21 Blueberry Lane in Staten Island.

75.     The tester arrived at 21 Blueberry Lane shortly before 1:00 p.m. on January 29, 2024.

76.     The tester was met by a woman named Nicole, who showed him the unit.

77.     Nicole informed the tester that the rent for the unit was $2,800.00 per month, including a $200.00 per month electricity surcharge.

78.     Nicole informed the tester that the owner required a credit score of at least 680 and income of at least $100,000.00 per year.

79.     Nicole informed that tester that the unit had just come onto the market and that there were no applicants.

80.     At the end of the showing, Nicole told the tester that the owner would reduce the rent by $100.00 per month because he had good credit and income.

81.     When the tester left the unit, Defendant Niayzov was outside.

82.     Defendant Niayzov offered to show the tester another available unit at 67 Beresford Avenue in Staten Island.

83.     The tester agreed to see that unit, and he and Defendant Niayzov drove there together in Defendant Niayzov's car.

84.     The tester informed Defendant Niayzov that he and his wife had a combined income of $132,000.00 per year.

85.     Defendant Niayzov told the tester that the area he was taking him to is "nicer, more high end."

86.     Defendant Niayzov told the tester that the owner of 67 Beresford Avenue likewise required a credit score of at least 680 and income of at least $100,000.00 per year.

87.     Defendant Niayzov told the tester that 67 Beresford Avenue was a new listing, and that a $500.00 deposit would take the unit off the market.

88.     As they got closer to 67 Beresford Avenue, Defendant Niayzov told the tester that there were "very nice people here, Italians, nice white people."

89.     Defendant Niayzov showed the tester the unit at 67 Beresford Avenue, which was $3,500.00 per month.

90.     The tester told Defendant Niayzov that that was at the top of their budget and that he would have to speak with his wife.

91.     At approximately 2:21 p.m. on February 7, 2024, the tester called Defendant Niayzov and spoke to him by telephone.

92.     The tester expressed interest in both units.

93.     Defendant Niayzov informed the tester that 67 Beresford Avenue had been rented but that 21 Blueberry Lane was still available.

94.     Defendant Niayzov informed the tester that the owner of 21 Blueberry Lane was willing to reduce the asking rent of $2,800.00 per month by $100.00 per month.

95.     The tester provided Defendant Niayzov with his email address, and Defendant Niayzov emailed the tester the application for 21 Blueberry Lane.

96.     The following morning, at approximately 8:11 a.m. on February 8, 2024, Defendant Niayzov followed up with the tester by text, asking him to let him know when he would be sending the application.

97.     The following morning, at approximately 7:38 a.m. on February 9, 2024, Defendant Niayzov followed up with the tester by text for a second time.

98.     The tester responded that he was renting a different apartment.

99.     Meanwhile, Plaintiff Bianca Jones, who is Black, posed as a prospective tenant interested in renting the same two units.

100.    On January 30, 2024 – the day after Defendant Niayzov showed 21 Blueberry Lane and 67 Beresford Avenue to the white tester – Plaintiff Jones reached Defendant Niayzov by telephone and inquired about available one- or two-bedroom units.

101.    Defendant Niayzov asked her what her budget was, and Plaintiff Jones said $3,200.00 per month, flexible.

102.    Defendant Niayzov and Plaintiff Jones agreed that he would show her available units two days later, on February 1, 2024.

103.    On February 1, 2024, Plaintiff Jones tried to reach Defendant Niayzov by telephone and text but, she was only able to reach him briefly, and he told her that he would call her back.

104.    Defendant Niayzov did not call Plaintiff Jones back.

105.    At approximately 10:26 a.m. on February 5, 2024, Plaintiff Jones called Defendant Niayzov and spoke to him by telephone.

106.    Plaintiff Jones reminded Defendant Niayzov that she was looking for a one- or two-bedroom unit and had a budget of $3,200.00 per month.

107.    Defendant Niayzov asked her what she and her husband did for a living, and she told them that she was in dentistry and that he was in sports medicine, and that they had great credit.

108. Defendant Niayzov told her to meet him at 7:30 p.m. that evening at 21 Blueberry Lane and that he would show her a few places.

109. Defendant Niayzov told her to bring tax documents, paystubs, photo identification, and a credit report.

110. Plaintiff Jones arrived at 21 Blueberry Lane at approximately 7:30 p.m.

111. Defendant Niayzov showed Plaintiff Jones the unit, together with two other families who also were seeing the unit at the same time.

112. Following the showing, Defendant Niayzov showed Ms. Jones and the other families two units that were available at 219 Wiman Avenue in Staten Island.

113. Following the showing, Plaintiff Jones told Defendant Niayzov that she was interested in applying for 21 Blueberry Lane.

114. Defendant Niayzov provided Plaintiff Jones with his email address and sent her a Zelle link to pay the credit report fee.

115. The following afternoon, at approximately 12:59 p.m. on February 6, 2024, Plaintiff Jones followed up with Defendant Niayzov by text, asking him to send her the application for 21 Blueberry Lane.

116. Defendant Niayzov responded that he would not send her the application for 21 Blueberry Lane until she first provided tax documents, paystubs, photo identification, a credit report, and an employer letter.

117. Defendant Niayzov refused to provide Plaintiff Jones with an application for 21 Blueberry Lane even though he had provided the white tester with an application for 21 Blueberry Lane without first requiring the white tester to submit any pre-application materials.

118.    Defendant Niayzov did not offer Plaintiff Jones the $100.00 per month rent discount that he had offered the white tester, even though Defendant Niayzov had no basis to believe that the white tester had a higher income or better credit than Plaintiff Jones.

119.    Defendant Niayzov never followed up with Plaintiff Jones after February 6, 2024, even though he followed up with the white tester repeatedly on February 8 and February 9, 2024.

**The Second Test**

120.    At approximately 4:07 p.m. on March 1, 2024, a white FHJC tester posing as a prospective tenant attempted to call Defendant Niayzov to inquire about available apartments for rent.

121.    Defendant Niayzov's wife, Defendant Alevtine Ioffe, answered the phone.

122.    The tester told Defendant Ioffe that she was looking for a one- or two-bedroom apartment.

123.    Defendant Ioffe asked the tester what she did for a living and if she had good credit.

124.    The tester responded that she had good credit and that she was an office manager and that her husband was an account executive.

125.    The tester asked whether there were available two-bedrooms in Brooklyn.

126.    At that point, Defendant Ioffe put Defendant Niayzov on the phone.

127.    Defendant Niayzov asked the tester what her budget was, and she told him $3,800.00 per month.

128.    Defendant Niayzov told the tester that he had a four-bedroom in the Sheepshead Bay area for $3,700.00 per month.

129.    Defendant Niayzov and the tester agreed to view that and other available units on March 5, 2024.

130.    In the early afternoon on March 5, 2024, Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn.

131.    Meanwhile, upon information and belief, the owner of 202 Marine Avenue had authorized Defendant Niayzov to act as one of its agents with respect to screening applicants for and finding a tenant to rent an available unit in that building.

132.    Upon information and belief, the owner of 202 Marine Avenue had known Defendant Niayzov for several years.

133.    Upon information and belief, the owner of 202 Marine Avenue had previously completed one or more rental transactions in which Defendant Niayzov had served as agent.

134.    Upon information and belief, the owner of 202 Marine Avenue had Defendant Niayzov's mobile telephone number saved in his contacts.

135.    Upon information and belief, Defendant Niayzov had the mobile telephone number of the owner of 202 Marine Avenue saved in his contacts.

136.    Upon information and belief, in or about late February or early March 2024, the owner of 202 Marine Avenue had texted Defendant Niayzov and informed him that there was a unit available for rent in that building.

137.    Upon information and belief, in that text, the owner of 202 Marine Avenue informed Defendant Niayzov that he was authorized to advertise the availability of the unit to potential renters.

138.    Upon information and belief, the owner of 202 Marine Avenue communicated and/or implied to Niayzov that he was authorized to screen applicants for the available unit and to bring to the owner applicants that the owner would find acceptable.

139.    Upon information and belief, the owner of 202 Marine Avenue sent similar text messages to other real estate agents, in addition to Defendant Niayzov, offering each agent the opportunity to compete with one another to consummate the rental transaction and earn a fee.

140.    When Defendant Niayzov showed the tester 2647 E. 19th Street in Brooklyn on March 5, 2024, he contacted the owner of 202 Marine Avenue in Brooklyn to arrange to show the tester that unit as well.

141.    The owner of 202 Marine asked Defendant Niayzov what the tester and her husband did and what the combined income was, and Defendant Niayzov told the owner that the tester worked at Presbyterian Hospital, that her husband worked at Xerox, and that they had a combined income of $156,000.00 per year.

142.    After assessing the tester's qualifications, the owner of 202 Marine approved Defendant Niayzov's request to show the tester the available unit at 202 Marine Avenue on the owner's behalf.

143.    Defendant Niayzov arranged with the owner of 202 Marine Avenue to show the tester that unit a half an hour later.

144.    After they hung up, Defendant Niayzov told the tester approvingly that the owner of 202 Marine Avenue is Italian.

145.    Following the showing of 2647 E. 19th Street, Defendant Niayzov drove the tester to 202 Marine Avenue in his car.

146.     During the drive, Defendant Niayzov made explicitly racist comments to the tester.

147.     Defendant Niayzov asked the tester if she had come by train, and when she said yes, he said "I hate trains."

148.     Defendant Niayzov said that he hates trains because of "what is happening in America now," which he said was "crazy."

149.     Defendant Niayzov complained to the tester about "criminals" in New York City.

150.     Defendant Niayzov complained to the tester that he had been robbed at his home in New Jersey by "three Black guys with the ski masks."

151.     Defendant Niayzov complained to the tester that "it's becoming very bad with this crime."

152.     Defendant Niayzov complained to the tester that "they try to steal cars, they try to steal watches, money."

153.     Defendant Niayzov complained to the tester that "the problem is that it's not fair that people work so hard, and they get free stuff, free, and why should we suffer if they are getting free stuff, like they are getting free health, like, you know, with the government let's say. We have to work hard.  They get everything on their lap.  Why is that?  That's like also not right."

154.     Defendant Niayzov complained to the tester that "You want health?  No problem.  I will give you work, we will give you a job, earn it.  Don't give it on the lap for free. This is what America is doing right now.  It's not right."

155.     Defendant Niayzov complained to the tester that "They rob.  And the cops don't do anything.  They're like okay, we can't do anything about it.  It's called misdemeanor.  They lock them up for one day, they come back out.  That's New York."

156.     Defendant Niayzov then showed the tester 202 Marine Avenue.

157.     The owner of 202 Marine Avenue was aware that Defendant Niayzov was showing the unit, and the owner of 202 Marine Avenue had authorized and approved of Defendant Niayzov showing the unit on his behalf.

158.     Defendant Niayzov told the tester that the rent was $3,800.00 per month, but that she could have it for $3,700.00 "because the paperwork is good."

159.     When they left, Defendant Niayzov offered to show the tester other available apartments.

160.     Defendant Niayzov then drove the tester to the subway.

161.     During the ride, Defendant Niayzov encouraged the tester to come to his office so that he could show her other properties.

162.     Defendant Niayzov also offered to show the tester investment properties in Staten Island and New Jersey.

163.     Defendant Niayzov then once again encouraged the tester to come to his office so that he could show her other properties.

164.     Defendant Niayzov then took a call on speaker phone from a man who spoke with an accent.

165.     After the call ended, Defendant Niayzov commented to the tester "they talk like they are in sleepy mode.  Come on, talk normally."

166.    Defendant Niayzov spend a total of around one hour and twenty-six minutes with the white tester.

167.    Two days later, the tester followed up with Defendant Niayzov by text, asking if 202 Marine Avenue was still available.

168.    Defendant Niayzov confirmed that it was and asked the tester to call him.

169.    The tester responded that she would call soon.

170.    Defendant Niayzov responded by asking the tester if she could come to his office.

171.    At 2:47 p.m., Defendant Niayzov followed up with the tester again, asking her by text if she was available.

172.    The tester responded by text that she would call him in a few minutes.

173.    Defendant Niayzov responded immediately by asking her by text if she wanted to put down a deposit on 202 Marine Avenue.

174.    At approximately 2:55 p.m., the tester called Defendant Niayzov.

175.    Defendant Niayzov told the tester that the owner had approved her, and he encouraged her to go to his office to put down a deposit.

176.    The tester told Defendant Niayzov that she had concerns about 202 Marine Avenue and asked if he had other similar properties available.

177.    Defendant Niayzov once again encouraged the tester to go to his office so that he could show her different options.

178.    Defendant Niayzov also offered to show the tester a three-bedroom in Bensonhurst for $2,850.00 per month.

179.    The next day, at 1:00 p.m. on March 8, 2024, the tester told Defendant Niayzov by text that she had decided to rent another apartment.

180.    Meanwhile, at approximately 3:45 p.m. on March 5, 2024, Plaintiff Seale, who is Black, contacted Defendant Niayzov by telephone, posing as a prospective tenant interested in one- or two-bedroom units in Brooklyn.

181.    Plaintiff Seale told Defendant Niayzov that her budget was under $4,000.00 per month, that she and her husband had a combined income of $156,000.00 per year, that they had good credit, and that she was a human resources manager and her husband was a senior computer systems analyst.

182.    Defendant Niayzov offered to show Plaintiff Seale a unit at 2732 East 65th Street in Brooklyn the following day.  Defendant Niayzov indicated that he also could show her other units close to that location.

183.    Upon information and belief, Defendant Demirovic had informed Defendant Niayzov that there was a unit available for rent at 2732 East 65th Street.

184.    Upon information and belief, Defendant Demirovic had informed Defendant Niayzov that he was authorized to advertise the availability of the unit to potential renters.

185.    Upon information and belief, Defendant Demirovic communicated and/or implied to Niayzov that he was authorized to screen applicants for the available unit and to bring him applicants that he would find acceptable.

186.    Upon information and belief, Defendant Demirovic was aware that Defendant Niayzov was showing the unit on his behalf, and Defendant Demirovic had authorized and approved of Defendant Niayzov showing the unit on his behalf.

187.    On March 6, 2024, Defendant Niayzov showed Plaintiff Seale the unit at 2732 East 65th Street on behalf of Defendant Demirovic.

188.    Defendant Niayzov arrived approximately twenty minutes late.

189.    The showing lasted approximately three and a half minutes.

190.    Plaintiff Seale expressed interest in applying for the unit, and she asked Defendant Niayzov questions about the application process.

191.    Defendant Niayzov told Plaintiff Seale to call him the following day.

192.    Defendant Niayzov did not offer to show Plaintiff Seale other units that day as he has indicated he would.

193.    The following day, Plaintiff Seale attempted to call Defendant Niayzov at approximately 11:43 a.m., 11:52 a.m., 12:15 p.m., 12:29 p.m., 12:37 p.m., and 12:53 p.m. Defendant Niayzov did not pick up any of these calls.

194.    Plaintiff Seale also texted Defendant Niayzov that day at 12:26 p.m., 12:37 p.m., and 1:01 p.m.

195.    In the third text, Plaintiff Seale asked Defendant Niayzov if there were any available units in Bay Ridge.

196.    Defendant Niayzov did not respond to any of those texts.

197.    Defendant Niayzov did not offer to show Plaintiff Seale 202 Marine Avenue, even though it is in Bay Ridge, and even though Plaintiff Seale had just inquired about Bay Ridge, and even though Defendant Niayzov was, at the very same time, actively encouraging the white tester to apply for the unit at 202 Marine Avenue.

198.    Defendant Niayzov did not offer Plaintiff Seale the opportunity to apply for the unit at 2732 East 65th Street.

**The Harm Caused by Defendants' Discrimination**

199.    Defendants' discrimination caused Plaintiffs Delone-Felix and Felix to suffer substantial emotional harm.

200.    By informing Plaintiffs Delone-Felix and Felix that their rental application was denied because of the color of their skin, Defendants caused them to feel demeaned, debased, denigrated, and humiliated.

201.    By denying their rental application, Defendants also caused Plaintiffs Delone-Felix and Felix to endure a prolonged housing search and forced them to spend substantially more rent for a comparable unit.

202.    Defendants' discrimination caused FHJC to suffer substantial injuries, including the frustration of its mission, the diversion of its resources, and increased demand for its services.

203.    Defendants' discriminatory policies and practices frustrated and impeded FHJC's ability to carry out its mission to ensure that all New Yorkers have fair and equal access to housing.  As a result of Defendants' policies and practices, many or all of the rental units that they own, manage, and/or represent as agents have been unavailable to the New Yorkers who are not white.

204.    As a result of Defendants' conduct, FHJC must focus substantial attention, time, and resources on Defendants' conduct, including to ensure that the rental units that Defendants own, manage, and/or represent as agents are available to all regardless of skin color.

205.    As a result of needing to address and combat the discrimination that Defendants have engaged in, FHJC is less able to devote as much time, resources, or attention to its other activities, including conducting trainings, educating the wider public about their rights, and investigating whether other brokers and property owners are complying with fair housing laws. Defendants' conduct thus reduced the efficiency and success of FHJC's efforts to ensure access to housing for all New Yorkers.

206.     Defendants' discriminatory policies and practices also caused FHJC to expend substantial amounts of resources, including many hours of staff time and substantial sums of money to conduct tests concerning Defendants' conduct and practices, reviewing the results of such tests, and conducting other investigative steps.

207.     Defendants' discrimination injured Plaintiffs Jones and Seale by causing them to feel demeaned, debased, denigrated, and humiliated when they learned that they were treated worse than their white counterparts because of the color of their skin.

## FIRST CAUSE OF ACTION
### Violation of the Fair Housing Act, 42 U.S.C. § 3601 *et seq.*
### (By All Plaintiffs Against All Defendants)

208.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

209.     It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

210.     Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with their application to rent 581 West Caswell Avenue.

211.     Additionally, upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agents of Defendants Zheng and Weng, acting with actual and/or apparent authority and within the scope of their agency.

212.     Upon information and belief, Defendant Zhang held the power to alter the legal relations between, on the one hand, Defendants Zheng and Weng and, on the other hand, applicants for the available unit at 581 West Caswell Avenue, including by advising Defendants Zheng and Weng about pricing and advertising strategies, by assisting Defendants Zheng and

Weng in evaluating and screening applications, and by informing Defendants Zheng and Weng that it is unlawful to discriminate on the basis of race.

213.    Upon information and belief, Defendants Zheng and Weng nevertheless retained ultimate control over the rental of the available unit at 581 West Caswell Avenue, including by retaining the ultimate ability to accept or reject applications.

214.    Upon information and belief, Defendant Zhang was authorized by Defendants Zheng and Weng to perform actions on their behalf regarding one or more matters related to rental of the available unit at 581 Caswell Avenue.

215.    Upon information and belief, Defendants Zheng and Weng asked Defendant Zhang to assist them in renting the available unit at 581 Caswell Avenue and to screen potential tenants on their behalf, Defendant Zhang agreed to do so, Defendant Zhang did in fact do so, and Defendants Zheng and Weng maintained ultimate control over the transaction.

216.    Additionally, Defendants Zhang and Niayzov are both directly liable for their own violations of federal law.

217.    The Fair Housing Act makes it unlawful for any person to make any statement with respect to the rental of a dwelling that indicates any preference, limitation, or discrimination based on race or color.  *See* 42 U.S.C. § 3604(c); 24 C.F.R. § 100.50(b)(4).

218.    Defendants Zhang and Niayzov violated the Fair Housing Act by telling Plaintiffs Delone-Felix and Felix that their application for 581 Caswell Avenue had been rejected because of their race.

219.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

220.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

221.    Upon information and belief, at all relevant times, Defendant Niayzov held himself out to the public as an authorized agent on behalf of Defendant Demirovic and in fact acted as an agent with actual and/or apparent authority on behalf of Defendant Demirovic, acting within the scope of his agency.

222.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

223.    Upon information and belief, at all relevant times, Defendant Niayzov held himself out to the public as an authorized agent of Defendant 202 Marine LLC and in fact acted as an agent with actual and/or apparent authority on behalf of Defendant 202 Marine LLC, acting within the scope of his agency.

224.    Upon information and belief, Defendant Niayzov was authorized by Defendant 202 Marine LLC to perform actions on its behalf regarding one or more matters related to rental of the available unit at 202 Marine Avenue.

225.    Upon information and belief, Defendant 202 Marine LLC asked Defendant Niayzov to assist it in renting the available unit at 202 Marine Avenue and to screen potential tenants on its behalf, Defendant Niayzov agreed to do so, Defendant Niayzov did in fact do so, and Defendant 202 Marine LLC maintained ultimate control over the transaction.

226.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against prospective tenants because of their race or color.

227.    Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

228.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

229.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

230.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

231.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

232.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

233.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

234.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

235.    Pursuant to 42 U.S.C. §§ 3613, Plaintiffs are entitled to an award of actual damages, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
### Violation of 42 U.S.C. §§ 1981 and 1982
### (By Plaintiffs Delone-Felix, Felix, Jones, and Seale Against All Defendants)

236.     Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

237.     42 U.S.C. § 1981 provides in relevant part that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens."

238.     42 U.S.C. § 1982 provides in relevant part that "[a]ll citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

239.     Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

240.     Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

241.     Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

242.     Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

243.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

244.     Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

245.     Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

246.     Upon information and belief, Defendant Niayzov conspired with Defendants Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

247.     Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

248.     Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

249.     Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

250.     Plaintiffs Delone-Felix, Felix, Jones, and Seale are Black.

251.     Defendants intentionally discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale based on their race.

252.     Defendants acted with racial animus.

253.     Defendants prevented Plaintiffs Delone-Felix, Felix, Jones, and Seale from entering into contracts because of their race.

254.      Defendants discriminated against Plaintiffs Delone-Felix, Felix, Jones, and Seale in connection with the making and performance of contracts and deprived them of the enjoyment of the benefits, privileges, terms, and conditions of contractual relationships.

255. Defendants deprived Plaintiffs Delone-Felix, Felix, Jones, and Seale of property rights because of their race.

256. Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

257. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

258. As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

259. Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

260. Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
**Violation of N.Y. Exec. Law § 296(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

261. Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

262. It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

263. Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

264. Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agent of Defendants Zheng and Weng, acting within the scope of their agency.

265. Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

266. Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

267. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

268. Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

269. Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

270. Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

271. Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

272. Upon information and belief, Defendants Zhang and Remax aided and abetted Defendants Zheng and Weng in their discrimination against Plaintiffs Delone-Felix and Felix by actually participating in the discrimination.

273.    Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

274.    Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

275.    Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

276.    As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

277.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

278.    As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

279.    Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

280.    Pursuant to New York Executive Law § 297, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

<u>FOURTH CAUSE OF ACTION</u>
**Violation of New York City Human Rights Law § 8-107(5)(a)(1)**
**(By All Plaintiffs Against All Defendants)**

281.    Plaintiffs hereby incorporates each of the foregoing paragraphs as if fully set forth herein.

282.    It is unlawful to refuse to rent, or to refuse to negotiate for the rental of, a dwelling to any person because of race or color.

283.    Defendants Niayzov, Zhang, Remax, Zheng, and Weng discriminated against Plaintiffs Delone-Felix and Felix because of their race or color in connection with 581 West Caswell Avenue.

284.    Upon information and belief, at all relevant times, Defendants Niayzov, Zhang, and Remax were the agents of Defendants Zheng and Weng, acting within the scope of their agency.

285.    Defendant Niayzov discriminated against Plaintiff Jones because of her race or color in connection with 21 Blueberry Lane.

286.    Defendants Niayzov and Demirovic discriminated against Plaintiff Seale because of her race or color in connection with 2732 East 65th Street.

287.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant Demirovic, acting within the scope of his agency.

288.    Defendants Niayzov and 202 Marine LLC discriminated against Plaintiff Seale because of her race or color in connection with 202 Marine Avenue.

289.    Upon information and belief, at all relevant times, Defendant Niayzov was the agent of Defendant 202 Marine LLC, acting within the scope of his agency.

290.    Upon information and belief, Defendant Niayzov conspired with Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC to discriminate against minority prospective tenants because of their race or color.

291.   Upon information and belief, Defendant Niayzov aided and abetted Defendants Zhang, Remax, Zheng, Weng, Demirovic, and 202 Marine LLC, and vice versa, in discriminating against minority prospective tenants because of their race or color.

292.   Upon information and belief, Defendants Zhang and Remax aided and abetted Defendants Zheng and Weng in their discrimination against Plaintiffs Delone-Felix and Felix by actually participating in the discrimination.

293.   Upon information and belief, Defendant Ioffe conspired with Defendant Niayzov to discriminate against minority prospective tenants because of their race or color.

294.   Upon information and belief, Defendant Ioffe aided and abetted Defendant Niayzov, and vice versa, in discriminating against minority prospective tenants because of their race or color.

295.   Defendants have engaged in a pattern and practice of discriminating against minority prospective tenants because of their race or color.

296.   As a direct and proximate result of Defendants' unlawful behavior, FHJC has been injured and continues to suffer damages, including the diversion of its resources and frustration of its mission.

297.   As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Delone-Felix and Felix suffered pecuniary loss and emotional harm.

298.   As a direct and proximate result of Defendants' unlawful behavior, Plaintiffs Jones and Seale suffered emotional harm.

299.   Defendants' unlawful conduct was intentional, willful, and made in reckless disregard for the rights of others.

300.    Pursuant to § 8-502 of the New York City Human Rights Law, Plaintiffs are entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE**,** Plaintiffs respectfully requests the following relief:

a.    An order and judgment declaring that Defendants' discriminatory practices violate the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law;

b.    An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them, from discriminating against minority prospective tenants based on their race or color, and/or from conspiring, aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by applicable federal, state, or local laws, including without limitation:

(i)    refusing to rent or lease, or refusing to negotiate for the rental or lease of, or otherwise making unavailable or denying a dwelling or housing accommodation to any person because of race or color;

(ii)    discriminating against any person in the terms, conditions, or privileges of the rental or lease of a dwelling or housing accommodation, or in the provision of services or facilities in connection therewith, because of race or color; and/or

(iii)    coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act, as amended;

c.    An order and judgment enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation with them to:

(i)      ensure that available pertinent apartments are shown to inquiring applicants without regard to color, race, or ethnicity;

(ii)      make all necessary modifications to their policies, practices, and procedures of offering rentals or leases of dwellings or housing accommodations to the public;

(iii)      train all management, agents, and employees on fair housing laws;

(iv)      display an Equal Opportunity logo (or statement to that effect) on all advertisements for dwellings and rental property and display in all offices HUD, state, and local fair housing posters;

(v)      allow monitoring of their rental screening and application process and decisions;

(vi)      retain records to allow for appropriate monitoring;

(vii)      develop written procedures on rental and lease processes and fair housing policy to be distributed to all staff and all rental applicants;

(viii)      undertake active efforts and steps to ensure that Black prospective tenants seek out and obtain assistance from Defendants and are assisted in meaningful ways to rent and lease apartments; and

(ix)      establish a system so that their agents can be tested for unlawful discriminatory practices;

d.      An order and judgment awarding monetary damages to each Plaintiff;

e.      An order and judgment awarding punitive damages to each Plaintiff;

f.      An order and judgment awarding Plaintiffs attorneys' fees, costs, interest and expenses incurred in prosecuting this action;

g.    Pre- and post-judgment interest on any and all such awards; and

h.    Any further relief that may be just and proper.

Dated: New York, New York
       March 10, 2025

                            By:    /s/ Eric Hecker    
                                   Mariann Wang
                                   Eric Hecker

                            WANG HECKER LLP
                            305 Broadway, Suite 607
                            New York, New York 10007
                            (212) 620-2604
                            mwang@wanghecker.com
                            ehecker@wanghecker.com

                            *Attorneys for Plaintiffs*

# EXHIBIT 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY;            24 Civ. 4201 (LDH) (TAM)
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                Plaintiffs,

        v.

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                Defendants.
---------------------------------------------------------------x

## PLAINTIFFS' FIRST SET OF COMBINED DISCOVERY
## REQUESTS TO DEFENDANT 202 MARINE LLC

PLEASE TAKE NOTICE that pursuant to Federal Rule of Civil Procedure 34 and Rule

26 of the Local Rules of the United States District Court for the Eastern District of New York

(the "Local Rules"), Plaintiffs, by and through their attorneys, Wang Hecker LLP, hereby

demand that Defendant 202 MARINE LLC produce for inspection and copying at the offices of

Wang Hecker LLP, located at 305 Broadway, New York, New York 10007, by March 3, 2025,

all documents which are responsive to the requests that are contained herein.

PLEASE TAKE FURTHER NOTICE that Plaintiffs further demand, pursuant to Rule 33

of the Federal Rules of Civil Procedure and Local Rule 33.3, that Defendant 202 MARINE LLC

answer under oath, by March 3, 2025, the interrogatories set forth herein.

## DEFINITIONS

The Uniform Definitions set forth in Local Rule 26.3 of the Local Rules of the U.S. District Courts for the Southern and Eastern Districts of New York shall be used to interpret these document demands and interrogatories and are hereby incorporated by reference.  In addition, as used in these document demands:

1.      Complaint:  The term "Complaint" means the Second Amended Complaint filed in this action on August 15, 2024.

2.      FHJC:  The term "FHJC" means the Fair Housing Justice Center, Inc.

3.      Defendant, you, your, or yours:  The terms "Defendant," "you," "your" or "yours" mean 202 Marine LLC.

4.      202 Marine Avenue:  The term "202 Marine Avenue" refers to the property located at 202 Marine Avenue in Brooklyn.

5.       Second Test:  The term "Second Test" means the FHJC test relating to 2647 E. 19th Street, 202 Marine Avenue, and 2732 East 65th Street as alleged in Paragraphs 100-163 of the Complaint.

6.      Concerning:  The term "concerning" means related to, relating to, consisting of, referring to, pertaining to, constituting, describing, evidencing, substantiating, reflecting, supporting, prepared in connection with, used in preparation for, or being in any way legally or logically connected to the matter described or discussed.

7.      Communication:  The term "communication" refers to any transfer of information, ideas, opinions, or thoughts by any means, at any time or place, under any circumstances, and is not limited to written or oral transfers between natural persons, but includes all other transfers, including electronic or digital transfers, transfers of information

stored on computer disk or in computer memory, and memoranda to file.

8.    Document:  The term "document" means, without limitation, any written, recorded, or graphic material, whether prepared by you or any other person, that is in your possession, custody, or control, including memoranda, reports, letters, telegrams, electronic mail, other electronic correspondence, and any other communications or information recorded in any form or medium; notes, minutes, and transcripts of conferences, meetings, and telephone or other communications; transparencies, slides, handouts, and multimedia presentations; contracts and other agreements; statements, ledgers, and other records of financial matters or commercial transactions; notebooks and diaries; plans and specifications; blueprints, diagrams, graphs, charts, and other drawings; work orders; punch lists; publications; photographs; photocopies, microfilm, and other copies or reproductions; audio and video recordings; tape, disk (including all forms of magnetic, magneto-optical, and optical disks), and other electronic recordings; financial models; statistical models and other data compilations; and computer printouts. The term includes all drafts of a document; the original document (or a copy thereof if the original is not available); and all copies that differ in any way from the original (including as to any notations, underlining, highlighting, or other markings).  The term also includes information stored in, or accessible through, computer or other information retrieval systems, together with instructions and all other materials necessary to use or interpret such data compilations, including material or information stored on the cloud or internet or at or on a computer not owned but controlled and/or accessible by you, and includes without limitation any and all emails, social media postings, blog postings, and or any other means of communication, whether texting, posting, or otherwise communicating, even if the communication is meant to be temporary or not fixed or stored but can still be captured.

9.      All/Any/Each:  The terms "all," "any," and "each" shall each be construed as encompassing any and all.

10.     And/Or:  The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this discovery request all responses that might otherwise be construed to be outside of its scope.

11.     Number:  The use of the singular form of any words includes the plural and vice versa.

12.     Email(s):  The use of the term "Email" or "Emails" shall mean any form of communication or possible communication that is stored, maintained or transmitted in electronic or digital form.

## **INSTRUCTIONS**

1.      In answering the following interrogatories and responding to the following document requests, (collectively the "request"), you shall furnish all information that is available to you, including information or materials in the possession, custody, or control of your attorneys, investigators, experts, representatives, contractors, employees, or other agents.

2.      If, in answering the following, you are unable to answer fully, after exercising due diligence to obtain the information to do so, you shall answer said interrogatory to the fullest extent possible, specifying your inability to answer the remainder, describing the efforts taken by you to obtain the information to fully answer said interrogatory, and stating whatever information or knowledge you have concerning the unanswered portion thereof.

3.      If, in answering the following interrogatories, you state in whole or in part that "I do not know" or "unknown" or otherwise indicate any similar lack of knowledge, you shall state in detail all efforts made to obtain the information requested, the nature of any continuing efforts in that regard, and by whom any such efforts were and are being made.

4.      If any document responsive to the requests has been lost, destroyed, or is otherwise unavailable, describe and identify each such document by stating in writing: (i) the name(s) of the authors(s), the name(s) of the person(s) who received the original and all copies and the date and subject matter, (ii) the last known custodian of the document, (iii) the incident, event, or occurrence during which such document was lost, destroyed, or otherwise became unavailable, (iv) the nature or subject matter of such document, (v) each person having knowledge of the circumstances of it being lost, discarded or destroyed, and (vi) your efforts to locate each such document.

5.      If a claim of privilege is asserted with respect to any document, or you refuse to disclose any document requested herein on any other ground, state the basis for your claim that such document need not be disclosed with such specificity as will permit the Court to determine the legal sufficiency of your objection or position, and, for each such document, identify:

(a) whether the document contains a request for legal advice and, if so, identify the person who requested the legal advice;

(b) whether the document contains advice as to the meaning or application of particular laws or rules in response to such request;

(c) any further information to explain and support the claim of privilege and to permit the adjudication of the propriety of that claim;

(d) the nature of the privilege (including work product) that is being claimed, and, if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked;

(e) the type of document, e.g., letter or memorandum; the general subject matter of the document; and such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author, addressee, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, and other recipient to each other.

6.    If, in answering these requests you claim any ambiguity in interpreting either the request or a definition instruction applicable thereto, such claim shall not be utilized by you as a basis for refusing to respond; rather, you shall set forth in a part of your response to such a request the language deemed to be ambiguous and the interpretation chosen or used in responding to the request.

7.    Respond separately and completely to each document request or subdivision thereof and each interrogatory or subdivision thereof, setting forth the question in full followed by each answer.

8.    With respect to the documents requested, this request seeks production of all documents described, in their entirety, along with any attachments, drafts and non-identical copies.

9.    Questions regarding the interpretation of this request should be resolved in favor of the broadest possible construction.

10.    The documents produced in response to this request shall be: (i) organized and designated to correspond to the categories in the request, or (ii) produced in a form that accurately reflects how they are maintained by you in the normal course of business, including, but not limited to the following:

(a) that all associated file labels, file headings, and file folders be produced with the responsive documents from each file and that each file be identified as to its owner(s) or custodian(s);

(b) that all pages now stapled or fastened together be produced stapled or fastened together; and

(c) that all documents which cannot legibly be copied be produced in their original form.

11.    This request is to be considered as continuing and Defendant is requested to provide, by way of supplementary responses hereto, such additional information as it or any persons acting on its behalf may hereafter obtain that will augment, clarify, or otherwise modify the responses now given to this request.  Such supplementary responses are to be served upon counsel for Plaintiffs as soon as practicable after receipt of such information or documents.

12.    Unless otherwise specified, the time frame for the requests below is from January 1, 2020 through the present.

## INTERROGATORIES

1.    Identify each person with knowledge or information concerning any of the allegations in the Complaint.

2.    Identify each person with knowledge or information that supports any of your defenses to the allegations in the Complaint.

3.    Identify each person from whom you or your counsel have obtained or requested a statement or information regarding the allegations in the Complaint and/or your defenses.

4.    Idenitfy any testifying or consulting expert with whom you or your counsel have consulted in connection with this action.

5.    Identify any and all document custodians with knowledge or information about the existence and/or location of documents relevant to the subject matter of this action.

6.    Identify each person with knowledge or information concerning your policies and practices in effect at any time from January 1, 2020 to the present with respect to discrimination

and/or compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination.

7.      Identify the person primarily responsible for managing the building located at 202 Marine Avenue.

8.      Identify all persons who acted as a real estate agent for any unit located at 202 Marine Avenue at any time since January 1, 2020.

9.      Identify all persons who acted as a real estate agent for the unit located at 202 Marine Avenue that was shown to the FHJC tester on March 5, 2024.

10.     Identify the person affiliated with 202 Marine LLC who spoke to Juda Niayzov on March 5, 2024 as alleged in Paragraphs 111-113 of the Complaint.

11.     Identify each of the members and the managing member of 202 Marine LLC.

12.     Identify each person or entity who has made a complaint or charge of alleged discrimination against you, whether formal or informal, written or oral, with respect to any real estate services provided by you at any time since January 1, 2020.

13.     Identify any liability insurer insuring you that may provide coverage concerning this action.

## **DOCUMENTS TO BE PRODUCED**

1.      All documents concerning FHJC.

2.      All documents concerning any of the allegations in the Complaint.

3.      All documents concerning any defense to any claim in this action.

4.      All documents concerning the Second Test.

5.      All documents reflecting any effort to rent any unit at 202 Marine Avenue in February or March of 2024, including all agreements and communications with any real estate broker or agent.

6.      All documents regarding Juda Niayzov, including all documents relating to or reflecting any communications between any person affiliated with 202 Marine LLC and Juda Niayzov from January 1, 2020 to present.

7.      All documents regarding Alventina Ioffe, including all documents relating to or reflecting any communications between any person affiliated with 202 Marine LLC and Juda Niayzov from January 1, 2020 to present.

8.      Documents sufficient to show the corporate ownership, organizational, and decision-making structures of 202 MARINE LLC., including without limitation all articles of incorporation, shareholders' agreements, bylaws, partnership agreements, and operating agreements.

9.      All documents relating to or reflecting any of your policies, rules, or practices, whether formal or informal, concerning compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination.

10.     All documents concerning steps taken by you at any time since January 1, 2020 to ensure that it does not discriminate against prospective renters.

11.     All documents concerning or evidencing any training that was provided by or to you regarding compliance with the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination at any time since January 1, 2020.

12.     All documents concerning any investigation conducted by you or any of your attorneys, agents, employees, or contractors, or anyone else, concerning the allegations in the Complaint, 202 Marine LLC, the Second Test, and/or any alleged non-compliance with any the provisions of the federal Fair Housing Act, the New York State Human Rights Law, the New York City Human Rights Law, and/or any other applicable laws or regulations prohibiting housing discrimination at any time since January 1, 2020.

13.     All documents concerning any and all actions taken by any of the Defendants in connection with the Complaint, the Second Test, and/or any other allegation, whether formal or informal, of housing discrimination.

14.     Documents sufficient to show the assets, liabilities, and gross and net revenues of 202 MARINE LLC. at all times since January 1, 2020, including without limitation financial statements, balance sheets, profit and loss statements, and federal, state, and local tax returns.

15.     All documents concerning the responses, allegations, defenses, and/or crossclaims to the Complaint, including all documents supporting or rebutting those responses, allegations, defenses, and/or crossclaims and all documents referenced, reviewed, or otherwise used in providing those responses, allegations, and/or defenses.

16.     All documents (including drafts, draft reports, letters, notes, and e-mails) sent to, reviewed by, or prepared by any expert retained by you or any of you attorneys or agents in connection with this action.

17.     All documents that any of you intends to introduce into evidence at the trial in this action.

DATED:   New York, New York
          January 27, 2025

                                    WANG HECKER LLP

                                    By: _____
                                      Eric Hecker
                                      Mariann Meier Wang
                                      305 Broadway, Suite 607
                                      New York, New York 10007
                                      (212) 620-2600

                                    *Attorneys for Plaintiffs*

To (by U.S. Mail):

Christopher P. DelCioppio, Esq.
SACCO & FILLAS, LLP
31-19 Newtown Avenue, Third Floor
Astoria, New York 11102
cpdelcioppio@saccofillas.com

Jeffrey Toback
Jeffrey W. Toback, P.C.
48 Dalton Street
Long Beach, NY 11561
jefftoback@gmail.com

Nicholas G. Sekas, Esq.
SEKAS LAW GROUP, LLC
515 MADISON AVE FL 6
NEW YORK, NY 10022-5403
NSEKAS@SEKASLAW.COM

Asher Kest, Esq.
Furman Kornfeld & Brennan LLP
Wall Street Plaza
88 Pine Street, 32nd Floor
New York, NY 10005
akest@fkblaw.com

Leon K. Luk, Esq.
Luk & Luk, PLLC
254 Canal Street, Suite 2001
New York, N.Y. 10013
lukspc@aol.com

11

# EXHIBIT 7

# SEKAS LAW GROUP, L.L.C.

### ATTORNEYS AT LAW

**Nicholas G. Sekas** *°*
Giancarlo Ghione #
Michael T. Halkias o+
Janet C. Navarro *°*
Dae-Ki Min *°+*
Saverio Cereste *°+*
Paul Faugno *°+×*

× **Certified Civil Trial Attorney of
the Superior Court of New Jersey**
+ **Of Counsel**
_____

Retired Judge Walter F. Skrod+

530 Sylvan Avenue, Suite 201
Englewood Cliffs, NJ 07632
201.816.1333
Facsimile 201.816.1522

www.sekaslaw.com

515 Madison Avenue, 6th FL
New York, NY 10022
212.695.7577
Facsimile 212.753.386

345 Centre Street, Suite 1
Nutley, NJ 07110
973.667.3399
Facsimile 973.235.1575

*Members are admitted to:*
# *NJ Bar*
* *NY Bars*
♦ *NY & CT Bars*
o *NJ & NY Bars*
ø *NJ & PA Bars*

April 1, 2025

**VIA ECF**
Justice LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201 Courtroom 4H North

Re:   **Fair Housing Justice Center, Inc. et al. v. Juda Niayzov et al.
Case No. 1:24-cv-04201**

Dear Judge Hall:

We write on behalf of 202 Marine LLC to request a pre-motion conference to respectfully request a conference for leave to file a motion to dismiss claims made against it in Plaintiff's Third Amended Complaint. This 202 Marine's 3rd letter and request to permit the filing of a motion, if necessary, to dismiss the Plaintiff' Third Amended Complaint.

## FACTUAL BACKGROUND

The Third Amended Complaint falsely alleges that Defendant 202 Marine LLC engaged in racial discrimination under the Fair Housing Act (FHA) and related laws. Defendant 202 Marine LLC is a New York limited liability company that owns the premises located at 202 Marine Avenue in Brooklyn, New York. Plaintiffs bring this action under the Fair Housing Act, 42 U.S.C. § 3601 et seq., 42 U.S.C. §§ 1981 and 1982, and corresponding New York State and New York City anti-discrimination laws. They allege widespread race discrimination by various real estate brokers and property owners, including Defendant 202 Marine LLC, in connection with residential rentals in New York City.

According to the Complaint, Defendant 202 Marine LLC is alleged to have engaged in unlawful discriminatory conduct solely through the actions of Defendant Juda Niayzov. Plaintiffs claim that, in or around early March 2024, Defendant Niayzov showed a white tester, working on

1

behalf of Plaintiff Fair Housing Justice Center, an available unit at 202 Marine Avenue, which he had allegedly been authorized to show by the owner of the premises. (¶¶ 130–157.)

Plaintiffs allege that Defendant Niayzov showed preferential treatment to this white tester, including offering her a reduced rent price, making racially charged comments during the showing, and encouraging her to place a deposit. (¶¶ 144–175.)

Plaintiffs also allege that around the same time, a Black tester, (Plaintiff Roslyn Seale), contacted Defendant Niayzov about apartment listings. Although Defendant Niayzov initially showed her a unit at a different location (2732 East 65th Street), Plaintiffs assert that he failed to follow up or offer her the same opportunity to view the unit at 202 Marine Avenue, despite her expressed interest in the Bay Ridge area. (¶¶ 180–197.)

Plaintiffs assert that Defendant Niayzov was acting as an agent of Defendant 202 Marine LLC, with both actual and/or apparent authority, and that the owner of 202 Marine Avenue had knowledge of and authorized Defendant Niayzov's conduct. (¶¶ 131–139, 157, 223–225.)

On this basis, Plaintiffs allege that 202 Marine LLC is liable for discrimination under federal, state, and city laws as a principal for the acts of its purported agent. This is alleged despite the black tester never even being shown his apartment unit. (¶197). Clearly, there could not have been any racial bias in rejecting an application when the tester did not even see the apartment.

Defendant 202 Marine LLC denies liability and now moves to dismiss all claims against it on the grounds that Plaintiffs have failed to plausibly allege: (1) that Defendant Niayzov acted with necessary authority or agency on behalf of 202 Marine LLC; (2) any direct discriminatory conduct by 202 Marine LLC; and (3) any actionable injury traceable to this Defendant under applicable law. Additionally, there is no written agency agreement between 202 Marine and Defendant Niayzov and the sole rental listing was on Apartments.com which was placed by Defendant 202 Marine which make no mention of Niayzov. (See **Exhibit A**). Further evidence that no agency agreement existed between Defendant 202 Marine and Niayzov is an email sent by 202 Marine to numerous real estate agents advising of the unit's availability. (See **Exhibit B**). It is clear this email was not sent exclusively to Defendant Niayzov, but was a generic email designed to target numerous real estate agents. Defendant Niayzov was introduced to 202 Marine as "Jacob" and is therefore listed in 202 Marine's contact as such, and he was included in the email sharing the listing with all over independent real estate professionals.

## <u>DEFENDANT 202 MARINE'S GROUNDS FOR DISMISSAL</u>

To prove discrimination under the FHA, Plaintiffs must show that Defendant had the intent to discriminate.  "The plaintiff bears the ultimate burden of proving, by a preponderance of the evidence, that the defendants' challenged actions were motivated by discrimination; without some evidence of knowledge of the prospective buyers' racial identity, it is impossible to infer such motivation. See, e.g., *Soules v. U.S. Dep't of Hous. & Urban Dev.*, 967 F.2d 817, 822 (2d Cir.1992) (noting, as part of prima facie case, defendant's knowledge of plaintiff's familial status, the basis for the alleged housing discrimination); *Hamilton v. Svatik*, 779 F.2d 383, 387 (7th Cir.1985) (stating that defendant's awareness of plaintiff's race is necessary to establish a prima facie case

under the Fair Housing Act). *Mitchell v. Shane*, 350 F. 3d, 39, 49 (2nd Cir. 2003). Plaintiffs Third Amended Complaint makes no allegations whatsoever that 202 Marine Ave had any intent to discriminate or even knew the race of Plaintiff Seale. In fact, the Complaint does not allege that 202 Marine was even aware of Plaintiff Seales stated desire to rent an apartment in Brooklyn. The facts, moreover, indicate Plaintiff Seales was not even shown the apartment unit. (¶197).

It is clear 202 Marine did not have the requisite discriminatory intent required to prove any FHA violation. Courts have consistently held that without evidence of defendant's knowledge of the prospective tenant's racial identity, liability cannot be inferred. Here, plaintiffs fail to allege defendant 202 Marine LLC knew Plaintiff's race or even of her desire to rent the apartment. Without this knowledge there can be no inference of discriminatory intent.

There was never any contact or communication made by any of the testers to 202 Marine LLC. This, compounded by the fact that 202 Marine LLC and the agent showing the home never had any sort of agency agreement, are grounds for dismissal. This absence of a written agency relationship is dispositive.

The Appellate Division, Second Department, addressed this issue squarely in *Leist v. Tugendhaft*, 64 A.D.3d 687 (2d Dept. 2009). There, the court held that an agent may only bind a party to a real estate transaction if authorized to do so in writing. Specifically, the court stated: "An agent may only bind a party to a real estate contract if authorized to do so in writing... The unwritten apparent authority of an agent is insufficient to satisfy the statute of frauds" (*id.* at 688). The court rejected the argument that an agent's email communication—absent written authorization from the property owner—was sufficient to establish a binding agreement or relationship. It further found that "the fact that the listing agent was identified as the sender in the e-mail… does not satisfy the subscription requirement," and emphasized that there was "no evidence that the listing agent even had apparent authority" (*id.*).

The same conclusion must follow here. The real estate agent who showed the unit did so without a written agency agreement with 202 Marine. Further, if defendant Niayzov was showing apartments to others as alleged in the Complaint, he was the prospective tenant's agent and would be paid by the Tenant. Plaintiff's claim is alleging a "dual agency," which unequivocally must be in writing and consented to by all parties. This requirement is to establish the payment of fees, avoidance of conflicts inherent with dual agencies, provide full written disclosure to all parties, address issues of fiduciary loyalty to one party vs. another, and advise the parties of neutrality amongst them. This can only occur in writing pursuant to N.Y. real estate disclosure laws and real estate licensing laws, See LI12, which appears on the N.Y. State's website, annexed hereto as **Exhibit C**, citing <u>DOS v. Moore</u>, 2 DOS 99, p. 7 (1999).

The property owner did not authorize the agent in writing to act on its behalf, nor did it take any action that could reasonably be construed as establishing such authority on behalf of 202 Marine. As in *Leist*, any conduct by the agent cannot be imputed to the property owner in the absence of written authorization.

In New York, "A listing agent shall provide the disclosure form set forth in subdivision four of this section to a seller or landlord prior to entering into a listing agreement with the seller

or landlord and shall obtain a signed acknowledgment from the seller or landlord..."  N.Y. Real Prop. Law § 443. This required document does not exist because 202 Marine and Niayzov did not have an agency relationship.  202 Marine listed and advertised the apartment on Apartment.com.

Accordingly, the legal principles articulated in Leist and applicable New York Real Property laws bar the imposition of liability on 202 Marine for the actions of a third party who lacked any formal agency relationship with the company. Here, if anything, Defendant Niayzov was the **plaintiffs'** agent, not 202 Marine.

As detailed above, plaintiffs fail to allege sufficient agency allegations. Plaintiffs' theory of liability hinges on the assertion that Niayzov acted as an agent of 202 Marine. However, federal law defines agency as requiring: (1) a manifestation by the principal that the agent will act on its behalf, (2) the agent's acceptance of this undertaking, and (3) the principal's control over the agent. *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 522 (2d Cir. 2006).

The Third Amended Complaint offers no factual allegations to support these elements. It merely asserts, "upon information and belief," that Niayzov acted as 202 Marine LLC's agent. Such conclusory allegations fail to meet the pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The absence of factual enhancements renders Plaintiffs' claim speculative. Nonetheless, there was never any agency agreement between 202 Marine and the agent showing the home.

The allegations contained against Marine 202 are speculative and overbroad. Plaintiffs seek to hold 202 Marine liable for Niayzov's alleged conduct despite providing no evidence of the company's involvement or control. To allow such a claim to proceed would set a dangerous precedent, potentially subjecting property owners to liability for any discriminatory conduct by brokers or agents, irrespective of the owner's knowledge or participation. Such an outcome contradicts the principles of the FHA and due process.

The facts alleged indicated Niayzov was acting as the agent to plaintiffs and not defendant 202 Marine. The agent was contacted to show the unit to plaintiffs without ever entering into an agency agreement with defendant 202 Marine. At no point did plaintiffs ever reach out to 202 Marine. Instead, they contacted Niayzov who went forward with allegedly showing the unit in a discriminatory manner without any sort of authority on behalf of 202 Marine.

The entire agency allegation against Defendant 202 Marine Ave is based upon "information and belief."  The mere naked allegation that Niayzov was 202 Marine's agent here is insufficient without additional factual enhancements.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ibid., a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (U.S. Sup. Ct 2007).

## **CONCLUSION**

For all the reasons set forth above, Defendant 202 Marine LLC respectfully submits that the claims against it in the Third Amended Complaint are factually unsupported and legally insufficient. Plaintiffs fail to plead any plausible theory of liability under the Fair Housing Act or related statutes. There is no factual basis to support the existence of an agency relationship between 202 Marine LLC and Defendant Niayzov, nor is there any allegation of discriminatory intent or knowledge attributable to 202 Marine LLC. Plaintiffs' reliance on conclusory assertions "upon information and belief" is insufficient under established pleading standards.

Accordingly, 202 Marine LLC respectfully requests that the Court schedule a pre-motion conference to address its anticipated motion to dismiss all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

/s/ *Nicholas G. Sekas*
NICHOLAS G. SEKAS, Esq.

cc: Client (Via email)

# EXHIBIT 8

New iMessage                    Cancel

To: Jacob

iMessage
Aug 8, 2023 at 12:19 PM



3 BR Duplex House -
apts/housing for rent
- apartment rent

newyork.craigslist.org

3 BR Duplex House

 iMessage

202 MARINE 0081

**New iMessage** Cancel

To: Jacob

3 BR Duplex House 337 99th Street. Jake - Let me know when you are going. Someone is working there. Thanks - Nick

Jan 2, 2024 at 4:25 PM

Check out this place in Brooklyn on Apartments



iMessage

New iMessage    Cancel

To: **Jacob**



COMPASS

**116 97th St Unit 1, Brooklyn, NY 11209 - Apartment for Rent in Brooklyn, NY**

apartments.com

iMessage

**New iMessage**                     Cancel

To: Jacob

> Jake - What school is she working for if I may ask - Nick

I will let u know

Jan 4, 2024 at 11:48 AM

> Jake  - Good morning. Just confirming the appointment with the teacher client of yours tonight at 7:30 PM?

7 pm

iMessage

202 MARINE 0084

**New iMessage**                                    Cancel

To: **Jacob**

Coming from the city. Can't predict traffic. Maybe 7:30 is safer.

Ok

👍 See you then.

Jan 4, 2024 at 3:43 PM

My client want to reschedule for Sunday

Sure. Noon  work?

iMessage

**New iMessage**                    Cancel

To: **Jacob**

12 pm or 1

OK. Please confirm Sunday morning.

Ok

Jan 7, 2024 at 11:14 AM

Good morning Jake. Are we still on for today's viewing?

My client wants for tomorrow

iMessage

12:31

**New iMessage**          Cancel

To: Jacob

tomorrow

Bad weather

Tomorrow is not good. Will be home late unless you want to do at 8 PM.

Barely raining. I would ask again if easier to come to-day.

Let me ask

+ iMessage



**202 MARINE 0087**

**New iMessage**                    Cancel

To: Jacob

Jan 8, 2024 at 1:41 PM

> Jake - Is your client still interested in viewing the apartment?

Yes

> When? Tonight at 8 PM or tomorrow at 7 PM?

I think tomorow 7 pm m

iMessage

202 MARINE 0088

New iMessage    Cancel

To: Jacob

Please confirm to-morrow

👍

I confirm with her tomorrow

Jan 9, 2024 at 5:31PM

Bad weather. Assuming canceling for tonight. Not sure she is serious anyway.

Yes

iMessage

202 MARINE 0089

**New iMessage**                    Cancel

To: Jacob

Jan 10, 2024 at 3:33 PM

I'm here

Text me ur wife number

Oh sorry. I will call her
Athina
917-921-0567

I went the wrong exit

I'll be there few minutes

iMessage

**New iMessage**                          Cancel

To: Jacob

Jan 15, 2024 at 8:56 AM

Good morning

Can you call me please

Just tried.

Call me when you can.

Call u back few min

Need 10-15 minutes. Call after 10 AM.

iMessage

**New iMessage**   Cancel

To: **Jacob**

Ok

Free now

Jan 31, 2024 at 2:18 PM

Sunday 11 am

Confirmed



Feb 4, 2024 at 9:09 AM

See u 11:15 am

+ iMessage 

**New iMessage**                    Cancel

To: Jacob

Feb 4, 2024 at 10:25 AM

Yes

Ok

I'm here

Waiting on her

I'll be ready in 5-10 minutes. Let me know if she is close or when she gets here.

She's here

iMessage

New iMessage                    Cancel

To: Jacob

OK. Coming

Lexusjake1@gmail.-
com

rentalapp.doc
Word Document ·
22 KB

Ok

We would like to re-
quest the aunt for
the guarantor as
well if possible.

Ok

iMessage

New iMessage                    Cancel

To: Jacob

Feb 4, 2024 at 4:21 PM

Send all documentation for Megan including proof of employment, 2023 1099, last years tax return, credit scores including guarantors, bank statements, application to nsekas@gmail.com. I pushed appointments to Wednesday. Try to get everything to

 iMessage

**202 MARINE 0095**

New iMessage                    Cancel

To: Jacob

me by Monday-
Tuesday.

Ok

Feb 5, 2024 at 10:50 AM



iMessage



12:37

**New iMessage**                    Cancel

To: **Jacob**





  iMessage  

**202 MARINE 0097**

## New iMessage                    Cancel

To: Jacob









iMessage

New iMessage                    Cancel

To: Jacob



**FILE_7865.pdf**
pdf    PDF Document ·
87 KB

**Send credit reports**

Feb 5, 2024 at 3:45 PM

**804-651-9090** her
father number

**FILE_5113.pdf**
pdf    PDF Document ·
295 KB

iMessage    

**New iMessage**                    Cancel

To: **Jacob**



MEGAN L MARTINE                    Print report

# 565

Calculated using VantageScore 3.0
Provided by TransUnion

**Personal Information**

NAMES REPORTED

MEGAN L MARTINE

EMPLOYMENT INFO

SELFEMPLOYED

DEL MATIND

ADDRESSES REP

Here's every account on your TransUnion report.
Click on the account name for more details.

**See an error?**

You can submit a dispute without leaving Credit
Karma. Look for Direct Dispute™ in the details of
the account.

AUTO LOANS

AMERICAN HONDA        $27,587.00    +
FINANCE               in good
Reported: Jan. 31, 2024    standing

**Show closed (1)**

CREDIT CARDS

COMENITYCAPITALBANK/ULTA    $239.00
Reported: Jan. 11, 2024    in good
                          standing

# Don't send me

iMessage

**202 MARINE 0100**

New iMessage                    Cancel

To: Jacob

Don't send me snapshots.

Send the full report

📄 **FILE_8647.pdf**
PDF Document ·
183 KB

Feb 5, 2024 at 6:17 PM

Do you have time for a quick call?

Call u few min

K

+    iMessage    🎤

**202 MARINE 0101**

**New iMessage**                    Cancel

To: Jacob

Feb 6, 2024 at 10:45 AM



500.00 USD refunded to megan martin

Refund details have been emailed to the buyer.

Ok

Let me know when you want to set up an appointment for the other client.

Hopefully tomorrow

iMessage

**New iMessage**                    Cancel

To: **Jacob**

Feb 6, 2024 at 10:45 AM



500.00 USD refunded to megan martin

Refund details have been emailed to the buyer.

Ok

Let me know when you want to set up an appointment for the other client.

Hopefully tomorrow

iMessage

New iMessage                    Cancel

To: Jacob

Evening at 6 PM or later.

Ill let her know

Feb 7, 2024 at 11:23 AM

See
U today 7:30 pm

Athina
917-921-0567

Feb 8, 2024 at 1:01 PM

I just send you the

+    iMessage                    🎤



New iMessage                    Cancel

To: Jacob

credit report

And his paperwork

You got it

Got it



Feb 10, 2024 at 2:08 PM



iMessage

12:41

New iMessage                    Cancel

To: Jacob



**202 Marine Ave Unit C2, Brooklyn, NY 11209 - Apartments in Brooklyn, NY**

apartments.com

Now available to show.
Updates include SS refrigerator and new lighting in kitchen and bathroom.

 iMessage 

**202 MARINE 0106**

**New iMessage**     Cancel

To: Jacob

Call to schedule a viewing appoint-ment with prequali-fied client(s).

Flexible as always for the right people especially 1-2 occu-pants vs 2-3.

Feb 10, 2024 at 6:40 PM

It's the price nego-tiable

Read bottom para-

iMessage

New iMessage                    Cancel

To: Jacob

> graph

Ok

Feb 12, 2024 at 3:55 PM

Can we show the apartment 5:15 pm

202 marine ave

202 marine ave 5:15 pm

Confirmed

My sister can make

iMessage

**202 MARINE 0108**



**New iMessage**                        Cancel

To: Jacob

it 5:45 - 6. She has a 4:45 doctors appointment as well.

1 pm Wednesday confirmed

Feb 12, 2024 at 6:30 PM

My sister Antonia

1 (917) 535-9243

Feb 14, 2024 at 5:19 PM

Forward

 iMessage

12:43

**New iMessage**          Cancel

To: Jacob

Forward application / documents from Lucy & Michael for C2 to 202marinellc@gmail.com tonight. I will try to have a decision by Friday, maybe sooner.

Okay

I send you the paperwork

You got it

iMessage



**202 MARINE 0110**



**New iMessage**                                    Cancel

To: Jacob

Got it. Thanks

I am at Doctors now but will forward to my sister later.

Great 👍

Feb 15, 2024 at 11:38 AM

Okay her dad number is 401-280-5910 his name is Sol

You can call him

+    iMessage                           🎤

**202 MARINE 0111**

New iMessage                    Cancel

To: Jacob

You can call him now he is available

Feb 15, 2024 at 2:34 PM

You spoke to her father

Yes

Ok

Feb 16, 2024 at 11:28 AM

Done.

iMessage

New iMessage                    Cancel

To: Jacob

Just informed Lucy & Michael that they were picked.

Feb 20, 2024 at 11:11 AM



**FLOOR PLAN 1LL.pdf**
PDF Document · 35 KB

New Duplex

Pic

Not yet

iMessage

# EXHIBIT 9



Ok

Hi
I need the key

Wed, May 22 at 12:19 PM

Wed, May 22 at 4:42 PM

Did you show?
Make sure you put the keys back

Ok

Mon, Jun 10 at 9:54 AM

Good morning
It's available

What is?
No vacancies
Need a parking spot near 202 Marine Ave

It's rented ?

Yes

Pl
Ok

Parking?

Thu, Jul 11 at 9:12 AM

Good morning.
Please call me.

Fri, Jul 12 at 10:33 AM

Good morning.
So what did your attorney say?

No response yet

Send an email or text again and let me know so I know what I have to do. Thanks

**202 MARINE 0001**



Tue, Jan 2 at 4:25 PM

Check out this place in Brooklyn on Apartments

116 97th St Unit 1, Brooklyn, NY 11209 - Apartment for Rent in Brooklyn, NY
apartments.com

Jake - What school is she working for if I may ask - Nick

I will let u know

Thu, Jan 4 at 11:48 AM

Jake  - Good morning. Just confirming the appointment with the teacher client of yours tonight at 7:30 PM?

7 pm

Coming from the city. Can't predict traffic.  Maybe 7:30 is safer.

Ok

👍 See you then.

Thu, Jan 4 at 3:43 PM

My client want to reschedule for Sunday

Sure.  Noon  work?

12 pm or 1

**202 MARINE 0002**



12 pm or 1

Ok

OK. Please confirm Sunday morning.

Sun, Jan 7 at 11:14 AM

Good morning Jake. Are we still on for today's viewing?

My client wants for tomorrow

Bad weather

Tomorrow is not good. Will be home late unless you want to do at 8 PM.

Barely raining. I would ask again if easier to come today.

Mon, Jan 8 at 1:41 PM

Jake – is your client still interested in viewing the apartment?

Let me ask

When? Tonight at 8 PM or tomorrow at 7 PM?

Yes

Please confirm tomorrow

I think tomorow 7 pm m

I confirm with her tomorrow

Tue, Jan 9 at 5:31 PM

Bad weather. Assuming canceling for tonight. Not sure she is serious anyway.

Yes

Wed, Jan 10 at 3:33 PM

I'm here

Text me ur wife number

Oh sorry. I will call her Athina 917-921-0567

**202 MARINE 0003**





Ok

We would like to request the aunt for the guarantor as well if possible.

Ok

Sun, Feb 4 at 4:21 PM

Send all documentation for Megan including proof of employment,  2023 1099, last years tax return, credit scores including guarantors, bank statements, application to nsekas@gmail.com. I pushed appointments to Wednesday. Try to get everything to me by Monday-Tuesday.

Ok

Mon, Feb 5 at 10:50 AM

**202 MARINE 0006**



**202 MARINE 0007**







Refund details have been emailed to the buyer.

Ok

Let me know when you want to set up an appointment for the other client.

Hopefully tomorrow

Evening at 6 PM or later.

Ill let her know

Wed, Feb 7 at 11:23 AM

See
U today 7:30 pm

Athina
917-921-0567

Thu, Feb 8 at 1:01 PM

I just send you the credit report

And his paperwork

You got it

Got it

👍

Sat, Feb 10 at 2:08 PM

**202 MARINE 0010**



**202 MARINE 0011**



**202 MARINE 0012**



**202 MARINE 0013**



My sister is showing this Friday from 11-2. You want to bring them when we confirm the other appointment?

Let me ask

Thu, Feb 29 at 1:00 PM

Hi Jacob - Any confirmation for tomorrow's appointment?

Sunday

Alright

What time?

What for the price again

$3750

Ok

Do u have pics

Sat, Mar 2 at 3:04 PM

Jacob - Just checking to see if appointment is confirmed for tomorrow.

Sat, Mar 2 at 6:34 PM

You have pics ??

Not yet.

Soon

I thought you had clients for tomorrow

I am showing at 11 AM. Come at 11:15

Let me confirm

Let me ask

Sun, Mar 3 at 10:15 AM

Good morning. Just checking in to see if you were able to confirm with your clients?

Not today they said

**202 MARINE 0014**





Tomorrow

She said

Ok

Ok

Send me the pics

Lexusjake1@gmail.com

I'll check

I did not get it

It's not there

Lexusjake1@gmail.com

Jacob - Didn't get a confirmation from you so not sure if meeting later today.

Alright. Let my sister know directly.

Tue, Mar 12 at 1:10 PM

Morning works best.
10-12 work? Contact my sister directly to confirm. Thanks

Thu, Mar 14 at 2:12 PM

Give me your email address. I have only basic pics. They will be retaken. Angles are wrong on most of them.

Thu, Mar 14 at 3:19 PM

Sent

Thu, Mar 14 at 10:53 PM

DID YOU CHECK YOUR SPAM OR JUNK FOLDER?

Sorry I had caps on by mistake

**202 MARINE 0017**



This is professional pictures

?

**202 MARINE 0019**



It's horrible

They stink. They all will be retaken.

Yes

Do you want a few more?

Send me what u have

**202 MARINE 0021**



That's most of it. Reshooting Saturday. Just bring the right clients. Highlight the new amenities including efficient HVAC with individual controls in the bedrooms and downstairs bonus room.

Okay

Tue, Mar 19 at 5:02 PM

Hi Jacob - Hope all is well. Just confirming received email yesterday with info & photos of newly renovated 2BR Duplex in Bay Ridge?

Yes

Wed, Mar 27 at 11:33 AM

Hello, I'm sorry I missed your call. Please text me and I will reply shortly. Thanks

Good morning. Just following up on doctor couple. Did they want to see the unit?

2 Bedrooms at Marine Avenue and 98th Street for $3,750 by Daniel Abramov
renthop.com

Was asked to take down

He works with me

Fri, Mar 29 at 11:41 AM

Can we see it today

3:30 pm

Sat, Apr 6 at 1:39 PM

**202 MARINE 0023**



April signing bonus! One free month or commission on us!

Sat, Apr 6 at 8:09 PM

Okay 👍

Tue, Apr 9 at 3:05 PM

Hi

Are u available

Tomorrow

Clients for 202 Marine?

Wed, Apr 10 at 10:32 AM

Yes

It's available

Yes.

Call me

Few min

Wed, Apr 10 at 2:25 PM

No one available tomorrow after 10:30 AM or Friday to show. I can show Sunday.

Fri, May 3 at 3:05 PM

New May Special!
Price drop on 202 Marine Ave 2 BR Duplex - $3500

What's included

No utilities. We pay for water and maintenance.

Ok

Mon, May 6 at 3:07 PM

Hi

**202 MARINE 0025**



**202 MARINE 0027**

Wed, May 8 at 3:08 PM

Sorry, I can't talk right now.

Call. W

Me

Wed, May 8 at 6:48 PM



Wed, May 8 at 9:05 PM

$3500 starting June 1st?

Thu, May 9 at 2:56 PM

Hi

Are u available Sunday 1 pm

I have another client

**202 MARINE 0028**



**202 MARINE 0029**



**202 MARINE 0030**



**202 MARINE 0031**



**202 MARINE 0032**



**202 MARINE 0033**



**202 MARINE 0034**