**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- X

FAIR HOUSING JUSTICE CENTER, INC.;
PATRICIA DELONE-FELIX; STANLEY
FELIX; BIANCA JONES; and ROSLYN
SEALE,

                 *Plaintiffs,*

            -against-

JUDA NIAYZOV; ALEVTINA IOFFE;
EXCLUSIVE PROPERTIES REALTY, INC.;
NDERIM DEMIROVIC; 202 MARINE LLC;
XUEQIANG ZHENG; YU LI WENG; XIAN
JIN ZHANG; and REMAX EDGE REALTY,
LLC,

                *Defendants.*

---------------------------------------------------------------------- X

:   Case No.: 1:24-cv-04201

 

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
SANCTIONS AND FOR COSTS AND SANCTIONS AGAINST PLAINTIFFS**

 

**FURMAN KORNFELD & BRENNAN LLP**
*Attorneys for Defendants*
*Womcore LLC d/b/a Remax Edge*
*and Xian Jin Zhang*
 88 Pine St., 32nd Floor
New York, New York 10005
Tel:    (212) 867-4100
FKB File No.: 302.175

By Counsel:

Spencer A. Richards, Esq.
Asher Kest, Esq.

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................1

PROCEDURAL HISTORY

    1.   The Initial Complaint.....................................................................................4

    2.   The First Amended Complaint........................................................................5

    3.   The Second Amended Complaint ...................................................................5

    4.   Remax's Pre-Motion Conference Letter.........................................................5

    5.   Plaintiffs' Third Amended Complaint ............................................................6

    6.   Discovery ......................................................................................................6

    7.   Plaintiffs' Baseless Sanctions Threat and Remax's Responses ......................7

LEGAL ARGUMENT ...................................................................................................8

    POINT I:    PLAINTIFFS SEEK SANCTIONS FOR REFERENCES TO THEIR OWN COMPLAINT ...........................................................................9

    POINT II:   PLAINTIFFS IMPROPERLY SEEK SANCTIONS BASED ON SELF-SERVING INTERPRETATIONS OF DISCOVERY .............................13

        A.   Plaintiffs' Motion Admits that it Seeks Sanctions Based on Subjective Interpretation, Speculation, and Surmise' the Appropriate Place to Adjudicate Discovery is Before the Fact-Finder ...................................................................13

        B.   Plaintiffs' Citations Place the Frivolousness of this Motion in Stark Relief.....17

        C.   Much of the Motion Consists of Factual Assertions which are Irrelevant to the Instant Action and the Instant Motion ......................................................20

    POINT III: PLAINTIFFS' FRIVOLOUS MOTION SERVES AN IMPROPER PURPOSE; PLAINTIFFS AND THEIR COUNSEL WERE ADEQUATELY WARNED ..................................................................................21

CONCLUSION...............................................................................................................24

## TABLE OF AUTHORITIES

**CASES**                                                                                           *Page(s)*

*Aglira v. Julien & Schlesinger, P.C.*,
214 A.D.2d 178 (1st Dept. 1995)...................................................................................12

*Calloway v. Marvel Ent. Grp., a Div. of Cadence Indus. Corp.*,
854 F.2d 1452 (2d Cir. 1988).........................................................................................17

*Cooter & Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990).......................................................................................................17

*Doe v. Martucci*,
2024 WL 839258 (S.D.N.Y. Feb. 28, 2024)...................................................................16

*In re Filosa*,
976 F. Supp. 2d 460 (S.D.N.Y. 2013)............................................................................18

*Jawbone, LLC v. Donoghue,*
2002 WL 1424587 (S.D.N.Y. 2002)..............................................................................16

*Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*,
2017 WL 3671036 (S.D.N.Y. 2017)..............................................................................18

*Kamen v. Am. Tel. & Tel. Co.*,
791 F.2d 1006 (2d Cir. 1986).........................................................................................17

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*,
2004 WL 1811427 (S.D.N.Y. 2004)..............................................................................16

*Kiobel v. Millson*,
592 F.3d 78 (2d Cir. 2010)........................................................................................11, 19

*Kirsh v. Scott*,
1994 WL 132383 (S.D.N.Y. 1994)................................................................................18

*Laba v. JBO Worldwide Supply Pty Ltd*,
2023 WL 4985290 (S.D.N.Y. 2023)..............................................................................18

*Lawrence v. Richman Group of CT L.L.C.*,
620 F.3d 153 (2d Cir 2010).............................................................................................8

*Lee v. Grand Sichuan E. (N.Y.) Inc.*,
2014 WL 199512 (S.D.N.Y. 2014).............................................................................22, 23

*Moreira v. Societe Generale, S.A.*,
125 F.4th 371 (2d Cir. 2025) ...............................................................................................12

*Oliveri v. Thompson*,
803 F.2d 1265 (2d Cir.1986)................................................................................................22

*On Time Aviation, Inc. v. Bombardier Capital Inc.*,
570 F.Supp.2d 328, 331 (D.Conn.2008) *aff'd,* 354 F. App'x 448 (2d Cir.2009) ...........................23

*Patelco Credit Union v. Sahni*,
262 F.3d 897 (9th Cir.2001) .................................................................................................22

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*,
2001 WL 1154669 (S.D.N.Y. 2001), *aff'd as modified*, 317 F.3d 209 (2d Cir. 2003) .................23

*Plantation Open MRI, LLC v. Infinity Auto Ins. Co.*,
818 F. App'x 891 (11th Cir. 2020)........................................................................................16

*Rodick v. City of Schenectady*,
1 F.3d 1341 (2d Cir. 1993).....................................................................................................16

*Rossbach v. Montefiore Med. Ctr.*,
2021 WL 3421569 (S.D.N.Y. 2021)................................................................................18, 19

*Rotter v. Leahy*,
93 F.Supp.2d 487 (2d Cir.2000) ...........................................................................................19

*Safe-Strap Co. v. Koala Corp.*,
270 F. Supp. 2d 407 (S.D.N.Y. 2003)....................................................................................19

*Salu v. Miranda*,
830 F. App'x 341 (2d Cir. 2020)............................................................................................12

*Sanderson v. Leg Apparel LLC*,
2024 WL 498094 (S.D.N.Y. Feb. 8, 2024).............................................................................11

*Storey v. Cello Holdings, L.L.C.*,
347 F.3d 370 (2d Cir. 2003)....................................................................................................8

**STATUTES**

28 USC § 1927............................................................................................................................18

FRCP § 12(b)(6) ..................................................................................................................2, 12

**OTHER AUTHORITIES**

Fed.R.Civ.P. § 11 Advisory Committee's Note ..............................................................21

Fed.R.Civ.P. § 11 Advisory Committee's Note on 1993 Amendments...................................13, 16

## PRELIMINARY STATEMENT

Defendants XIAN JIN ZHANG ("Zhang") and WOMCORE LLC d/b/a REMAX EDGE ("Remax LLC") (collectively, "Remax") submit this Memorandum of Law in opposition to the motion of Plaintiffs FAIR HOUSING JUSTICE CENTER, INC. PATRICIA DELONE-FELIX, STANLEY FELIX, BIANCA JONES, and ROSLYN SEALE (collectively, "Plaintiffs") seeking sanctions against Zhang and the undersigned counsel.

Plaintiffs' instant motion (the "Motion") seeks sanctions on the flimsiest of pretexts, utterly unsupportable in law and fact. It is readily apparent that Plaintiffs' actual goal is to intimidate Remax into withdrawing its motion to dismiss, or to collaterally "poison the well" with so much bickering and rancor so as to give this Court the impression that there is an issue of fact—whereas the pending motion to dismiss is based on Plaintiffs' failure to state a claim altogether as against Remax. Plaintiffs' sanctions motion is so baseless that it warrants an imposition of costs and sanctions against Plaintiffs for its improper purpose, and forcing Remax to respond to it.

This action arises out of Plaintiffs' attempt to rent an apartment, and their interactions with rental agent Juda Niyazov ("Niayzov"). Plaintiff's Third Amended Complaint alleges that defendant Juda Niyazov ("Niyazov"), a real estate agent, purportedly discriminated on the basis of race in his interactions with Plaintiffs. Though every single allegation as against Remax in the Complaint is pleaded "upon information and belief," Plaintiffs straightforwardly allege that Zhang was the real estate agent for the owners' (the "Owners") purchase of a property, that the owners asked Zhang to work as the rental agent for that property, and that Zhang demurred. The Complaint continues by wildly speculating that Zhang nonetheless assisted the owners in evaluating potential tenants. Remax moved to dismiss the Complaint on the basis that Plaintiffs have failed to properly plead any factual basis for their claims, aside from impermissible speculation and conjecture.

~1~

Desperate to cloud the deficiencies in their Complaint, Plaintiffs have brough the instant motion for sanctions while also separately requesting consent to amend the Complaint yet again in response to Remax's fully briefed motion to dismiss.[1] Plaintiffs take issue with the Remax's motion to dismiss which stated that "[a]s the Complaint admits, this [the purchase] was the only professional relationship between the Owners and Remax"; that Zhang's only "formal" role was the purchase; and that Zhang did not represent the Owners in their search for renters. Plaintiffs contend that discovery produced rebuts these statements.

*First*, Plaintiffs ignore that these statements in the motion to dismiss are lifted directly from the Complaint itself. Plaintiffs themselves have characterized that Zhang's only formal professional role as, such as it was, was for the purchase. Indeed, the motion to dismiss specifically cites to those paragraphs of Plaintiffs' Complaint. It is truly bizarre for Plaintiffs to argue in the Motion that they are not responsible for their own Complaint's assertions, but if Remax cites to the Complaint in a FRCP § 12(b)(6) motion to dismiss, Remax must be sanctioned.

*Second*, Plaintiffs' contentions are predicated on self-serving, subjective impressions of discovery produced; namely, informal text messages in broken English between two immigrant ESL speakers. Plaintiffs are free to attempt to persuade the fact finder that the conclusions they draw from such discovery are correct, but instead, Plaintiffs demand that Remax accept Plaintiffs' mischaracterized view of the text messages and seek to have this Court sanction opposing counsel for arriving at a different interpretation. Plaintiffs are essentially weaponizing disagreement; their

---

[1] On June 10, 2025, Plaintiffs requested that all defendants consent to yet still another amended Complaint – even though the motion to dismiss the Third Amended Complaint has been fully briefed, and significant discovery exchanged. At the initial pre-motion conference to dismiss the Second Amended Complaint, held on March 6, 2025, Plaintiffs' counsel beseeched this Court for an opportunity to "substantively amend" the Complaint to avoid dismissal, leading to the Third Amended Complaint. On June 13, 2025, Plaintiffs filed a pre-motion conference letter seeking leave to amend a fourth time.

threats are plainly an attempt to pre-adjudicate factual disputes under the threat of sanctions against Remax's counsel, chilling advocacy.

In fact, Plaintiffs' own characterization of the discovery in question belies the ambiguity and disagreement: the Motion describes such documentation as "suggesting" of their preferred conclusions, and even caveats that it is "not conclusive." Making a Rule 11 motion for sanctions based on discovery that is non-conclusive demonstrates exactly how inappropriate this Motion is. The other discovery Plaintiff refers to is either not specified, or is generally averred that it "shows" or "appears" to lead to a conclusion convenient for Plaintiffs. Much of the rest of Plaintiffs lengthy new assertions are irrelevant to the instant Motion, and indeed to this action altogether, except to cloud the issues.

Seeking sanctions based on a party's own subjective interpretations of ambiguous discovery is particularly meritless, since it is black letter law that ambiguities must be resolved in favor of the non-movant in a sanctions motion. Even more so, Plaintiffs are engaging in conduct which the Supreme Court has specifically warned chills enthusiasm and creativity in advocacy.

*Third*, the case authority cited to in Plaintiffs' own Motion only emphasizes why the instant Motion is so misguided. In every case where courts have awarded sanctions, the attorneys in question presented or proceeded with documents which they knew to be forgery or fabrication, made grandiose and ridiculous assertions to seek relief, or hid documents in discovery. All of the case authority is in stark contrast to Plaintiffs' instant argument that disagreement over deductions from discovery, or indeed moving to dismiss based on a particularly deficient pleading, is sanctionable.

Finally, Remax seeks costs against Plaintiffs for responding to this utterly baseless Motion. It is unambiguous that a party defending a Rule 11 motion need not cross-move or notice the

movant in order to seek sanctions. It is also clear that a meritless sanctions motion is itself a sanctionable act. Courts have warned against moving for sanctions on issues of fact that should be resolved in litigation, or attempts to collaterally emphasize arguments in another motion briefing. Courts have also readily sanctioned attorneys who move for sanctions as a coercive or intimidation tactic. At the very least, Remax is entitled to its costs.

It is apparent that Plaintiffs' Motion is contrary to law and fact, and serves a manifestly improper purpose. Had Plaintiffs prepared their own pleading or read the motion to dismiss more carefully, Plaintiffs would not have proceeded with this ill-advised motion. Based on the arguments herein, it is respectfully requested that this Court deny Plaintiffs' Motion together with an award of costs, and such other relief this Court deems just and proper.

## PROCEDURAL HISTORY

### 1. The Initial Complaint

On June 12, 2024, Plaintiffs initiated an action alleging racial discrimination against prospective renters of the Property, asserting violations of the FHA, 42 U.S.C. §§ 1981 and 1982, NYSHRL § 296(5)(a)(1), and NYCHRL § 8-107(5)(a)(1) against Niayzov, Alevtina Ioffe, Exclusive Property Realty, Inc., Amina Ali, Nderim Demirovic, and 202 Marine LLC. *See* ECF Dkt No. 1, Initial Complaint. Plaintiffs' first version of the pleadings alleged that Niayzov discriminated in seeking renters for the Property, as well as for another property, owned by Demirovic and 202 Marine LLC, which Plaintiffs allege was represented by Niyazov.

The Initial Complaint detailed a series of purported interactions by Niyazov with Plaintiffs Delone-Felix and Felix, and then with undercover "testers," during which specific racially discriminatory comments were made by Niyazov, and wherein rental applicants of different races were treated differently, with specific examples. *See* Dkt No. 1, Complaint at ¶ 23-159.

~4~

### 2. The First Amended Complaint

On July 23, 2024, Plaintiffs filed their first amended Complaint. *See* ECF Dkt. No. 22, First Amended Complaint. This version of the Complaint alleged the same identical litany of facts as the first, but this time named the Owners as defendants. *Id.*, at ¶ 24-160.

### 3. The Second Amended Complaint

On August 15, 2024, Plaintiffs filed their Second Amended Complaint. *See* ECF Dkt. No. 28, Second Amended Complaint. This version now asserted claims against Remax based on a vague, formulaic assertion that Remax represented the Owners as agents for renting out the Property, as well as a single allegation that that "[u]pon information and belief, Defendant Zhang told Defendant Niayzov, on behalf of Defendants Zheng and Weng, that the owner had rejected the application because the owner had had negative experiences renting to Black tenants in the past." *Id.*, at ¶ 44.

Aside from the inclusion of this solitary allegation, the Second Amended Complaint otherwise again stated the same 136-paragraph factual recitation of discriminatory acts alleged only against Niyazov. *Id.*, at ¶ 26-172.

### 4. Remax's Pre-Motion Conference Letter

On October 23, 2024, Remax filed a pre-motion conference letter seeking dismissal, arguing that even if the sole asserted "fact" were true, it did not give rise to any of the causes of action, and that Remax merely represented the Owners for the purchase of the Property. *See* ECF Dkt. No. 42. Defendant 202 Marine also filed a pre-motion letter. *See* ECF Dkt. No. 35.

The parties appeared before the Court on March 6, 2025 for a pre-motion conference on the respective motions. At the conference, Plaintiffs beseeched this Court for an opportunity to "substantively amend" the Complaint for a third time.

### 5. **Plaintiffs' Third Amended Complaint**

Although this Court provided Plaintiffs with two weeks, to March 20, 2025, to file a third amended Complaint, Plaintiffs filed their Third Amended Complaint (the "Complaint") only two business days later, on March 10, 2025. *See* Ex. A, Complaint. The resultant pleadings—Plaintiffs' fourth bite at the apple—was somehow even more deficiently pleaded than Plaintiffs' prior attempts.

This time, finally cognizant that Remax was not the rental agent for the Owners, Plaintiffs did not plead any allegations against Remax at all, other than the addition of a series of assertions made exclusively "upon information and belief" in the middle of the usual 136-paragraph schedule of assertions against Niyazov. *See* Ex. A, Complaint, at ¶ 40-59. Noticeably, each paragraph concerning Remax is pleaded "upon information and belief" and devoid of any factual basis, amounting to nothing more than bald assertions and legal conclusion.

### 6. **Discovery**

In response to Plaintiffs' document demands, defendant Zhang initially did not have responsive text messages in his possession, custody, and control, and counsel so informed Plaintiffs. Upon further investigation by counsel, however, Zhang went above and beyond his discovery obligations and was ultimately able to obtain text messages from an old phone that he previously did not have access to. *See* Zhang Declaration, at ¶ 7.

Instead of recognizing that discovery is not always readily available, and indeed sometimes is only found belatedly, Plaintiffs shamefully mischaracterizes the sequence of Zhang making extra efforts to obtain his old phone text messages by stating that "Attorney Kest Claims Falsely that No Text Messages Exist." *See* Motion, at p. 4. This malicious accusation baselessly implies that the undersigned attorneys intentionally made a false statement, rather than a representation of what

documents were then available. This is emblematic of Plaintiffs' bad faith approach to litigation — it defies logic to suggest that Defendant or his counsel would intentionally withhold text messages only to later produce them voluntarily. Plaintiffs' mischaracterization is both reckless and misleading and should not be countenanced by the Court.[2]

### 7. **Plaintiffs' Baseless Sanctions Threat and Remax's Responses**

On May 6, 2025, Plaintiffs sent Remax a letter (the "First Sanctions Letter") threatening sanctions if Remax did not withdraw its motion to dismiss the third amended Complaint. Plaintiffs' 11-page letter consisted of a rambling slew of unorganized contentions and accusations about documents which have never been filed in this action. *See* Ex. B, First Sanctions Letter. As best as it could be understood, Plaintiffs' First Letter desperately sought to coerce Remax into withdrawing its motion to dismiss.

On May 22, 2025, Plaintiffs sent another letter threatening sanctions (the "Second Sanctions Letter"). This time, Plaintiffs sought to clarify the assertions of the First Sanctions Letter. However, the Second Sanctions Letter still made numerous misstatements of fact, mis-quoted or short-quoted Remax's filings, and ignored Plaintiffs' own filings. *See* Ex. C, Second Sanctions Letter.

On May 29, 2025, Remax responded to Plaintiffs' sanctions letters (the "Letter Response"). Remax's Letter Response pointed out that Plaintiffs' apparent basis for sanctions are statements in their own Complaint, and that in any case, subjective interpretations of ambiguous discovery is not a basis for sanctions. *See* Ex. D, Response Letter. The Response Letter warned Plaintiff that

---

[2] Plaintiffs make another misrepresentation that Remax wouldn't commit to a production date. *See* Motion, at p. 4. This statement is also utterly false. Counsel offered a production date, but Plaintiffs' counsel simply refused to accept the proposal and demanded the production immediately. Although these misrepresentations and awful falsehoods by Plaintiffs are irrelevant to the utterly frivolous Motion, they are cited here so that the record does not reflect such unrebutted calumny.

filing such a motion would be sanctionable in and of itself and encouraged Plaintiffs to focus on litigating their claims.

This warning fell on deaf ears, and on June 3, 2025, Plaintiffs filed the instant Motion, containing the exact same baseless arguments and misleading citations.

## **LEGAL ARGUMENT**

Under Rule 11, an attorney who presents "a pleading, written motion, or other paper" to the court "certifies" that to the best of their knowledge, information, and belief formed after a reasonable inquiry, the filing is (1) not presented for any "improper purpose, 'such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation'; (2) 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law'; and (3) supported in facts known or likely to be discovered on further investigation." L*awrence v. Richman Group of CT L.L.C.*, 620 F.3d 153, 156 (2d Cir 2010). Rule 11, however, does not authorize sanctions for "merely frustrating conduct." *Id*. at 158.

The standard for triggering sanctions under Rule 11 is "objective unreasonableness," but where the record demonstrates that representations are factually supported, the representation does not violate Rule 11. *See Storey v. Cello Holdings, L.L.C*., 347 F.3d 370, 387-388 (2d Cir. 2003). The representations instead must be "utterly lacking in support." *Id*. at 388. As a consequence of the improper imposition of sanctions, the Second Circuit has emphasized that "we nevertheless need to ensure that any [sanctions] decision is made with restraint." *Id*. at 387.

Here, the representations made by Remax, and on behalf of Remax by counsel, are factually supported by the record. Not only are the representations supported by Plaintiffs' own pleadings but also by affidavits and other inquiry. Plaintiffs have merely filed the Motion because Plaintiffs are frustrate that they must overcome Remax's motion to dismiss.

## POINT I
## PLAINTIFFS SEEK SANCTIONS FOR REFERENCES TO THEIR OWN COMPLAINT

Plaintiffs' Motion contends that sanctions should be imposed because of the following:

- Remax's "pre-motion letter states that Zhang's 'only formal role was representing the Owners during the original purchase of the Property in 2021, which closed in 2022 prior to the allegations herein.'"

- Remax's pre-motion letter stating "that after the purchase, Zhang 'did not represent the Owners in their search for renters.'"

- Remax's motion to dismiss which "asserts that the 2022 sale was 'the only professional relationship" between Zhang and the owners, that Zhang's 'only formal role was representing the Owners during the original purchase of the Property in 2021, which closed in 2022, prior to the allegations herein regarding any prospective renters,' and that after the purchase closed, Zhang 'did not represent the Owners' as a rental agent."

*See* Motion, at p. 15-16. Plaintiffs contend that these are misrepresentations but fail to identify any specific inaccuracies.

As an initial matter, Plaintiffs' contentions are misguided, since each of the above statements is referring to—and directly cites from—Plaintiffs' own Complaint. The Complaint specifically alleges that: "Upon information and belief, Defendants Zhang and Remax acted as agents of Defendants Zheng and Weng in connection with the purchase of 581 West Caswell Avenue by Defendants Zheng and Weng in 2022" (¶ 44); "Upon information and belief, when Defendants Zheng and Weng subsequently sought to rent the unit at issue at 581 West Caswell Avenue in 2023, they asked Defendant Zhang to serve as the listing agent for that rental transaction" (¶ 45); "Upon information and belief, Defendant Zhang informed Defendants Zheng and Weng that he does not formally serve as the listing agent for rental transactions" (¶ 46); "Upon information and belief, Defendants Zheng and Weng nevertheless asked Defendant Zhang to provide assistance to them in connection with the rental transaction, and Defendant Zhang agreed to provide them such assistance" (¶ 47).

As the Complaint itself asserts, Zhang refused to "formally serve as the listing agent[.]" *Id*. at ¶ 46. In other words, Zhang did not have a formal role as a rental agent. As the Complaint itself asserts, Zhang acted as a real estate agent for the Owners' purchase, and then declined to act as a rental agent. *Id*. at ¶¶ 46-47. It is preposterous for Plaintiffs to argue that the statements in Remax's filings "are not even purportedly connected to any allegations in the TAC." *See* Motion, at p. 16. It is quite literally taken almost verbatim from the Complaint, which specifically pleads that Zhang was not the Owners' rental agent. Complaint, at ¶¶ 45-46. See Dkt. No. at 82.

Indeed, Plaintiffs appear to have purposely elided, or at the least failed to simply read, Remax's motion to dismiss, since the full representation in the motion to dismiss, with citation to the Complaint, is that:

> As the Complaint admits, this was the only professional relationship between the Owners and Remax. *See* Ex. A, Complaint at ¶ 45-46.

*See* Dkt. No. 82, Motion to Dismiss, at p. 4 (emphasis added).

Incredibly, after first ignoring their own pleading, Plaintiffs' Motion then begins to make excuses for the very paragraphs it now denies, and admits that "[t]o be sure Paragraph 46 of the TAC alleges, upon information and belief, that Zhang told the owners that he does not formally serve as the listing agent for rental transactions" and that "Zhang may not have 'formally' served as listing agent." *See* Motion, at p. 16-17. This outright admission in Plaintiffs' very own Motion undermines exactly what Plaintiffs are complaining about in the first place. It is difficult to understand why Plaintiffs proceeded with the Motion after writing those sentences; perhaps Plaintiffs' failure to closely read their own Complaint has now bled over into a failure to read their own filings, which belie their own arguments here.

The Motion then contends that "[t]he TAC does not even arguably admit that the 2022 sale was "the only professional relationship" between Zhang and the owners or that after the

purchase closed, Zhang "did not represent the Owners" as a rental agent. *See* Motion, at p. 17. But that is exactly what the Complaint asserts; it admits that Zhang's only formal, professional, contracted for role was for the purchase of the Property, and that he was not the rental agent for the Property. *See* Complaint at ¶ 46. It seems now that Plaintiffs are aware of what they pleaded, "upon information and belief," in retrospect they do not like how it can be characterized. Be that as it may, disagreement between opposing parties in interpreting a pleading is not a basis for such inflammatory actions as a motion for sanctions.[3] "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Kiobel v. Millson*, 592 F.3d 78, 83 (2d Cir. 2010).

Moreover, both Zhang and the Owners understood clearly that Zhang was not a rental agent for the Owners, did not work for the Owners, and did not have a professional relationship with the Owners after the purchase of the property. *See* Zhang Aff., at ¶ 3-6. Indeed, the Owners' attorney has confirmed outright that "We have confirmed that your client [Zhang] was the broker on the purchase of their house and did not engage him into renting because your client only did sales. He was merely acting as a "translator" to engage an English speaking broker. My clients did not pay any Fees." *See* Ex. E, Email from Owners' Attorney. "The record demonstrates that this representation was factually supported and therefore does not violate Rule 11." *Sanderson v. Leg Apparel LLC*, 2024 WL 498094 *4 (S.D.N.Y. 2024) (determining that defendant "has provided factual support for this allegation throughout this litigation, attesting to it in affidavit presented at summary judgment and testifying to it at trial.").

---

[3] Plaintiffs attempt to appear prescient by stating that "We expect defense counsel to argue that in making these false statements, they supposedly were just repeating allegations that Plaintiffs made in the TAC." *See* Motion, at p. 16. It does not take a crystal ball to make such a prediction, Plaintiffs need only have read Remax's Response Letter which demonstrated exactly why the instant Motion is frivolous. Plaintiffs did not respond to that letter and proceeded anyway, which is why they reiterate nonsensical arguments in the instant motion which wastes the court's time as well as that of counsel.

Plaintiffs' bad faith arguments continue, with a self-serving assertion that "Plaintiffs made that allegation in good faith reliance on defense counsel's unqualified representations." *See* Motion, at p. 16-17. It is certainly a convenient new wrinkle to claim that Plaintiffs are somehow not responsible for their own Complaint, and it is also a novel argument to aver that defendants may not rely on and cite to the assertions in a Complaint for an FRCP § 12(b)(6) motion to dismiss because Plaintiffs do not even know if it's true[4]; it is thin cover to belatedly feign that Plaintiffs relied on opposing counsel to draft their own Complaint, as if Plaintiffs are somehow not responsible for their own sworn pleading. Needless to say, Plaintiffs provide no authority in statute or precedent for such novel arguments.[5]

The rest of Plaintiffs' argument is a non-sequitur at best. The Motion argues that despite the fact that Plaintiffs' own Complaint is the source of the contended statements, "the rest of the relevant paragraphs of the TAC allege that even though Zhang may not have 'formally' served as listing agent, Zhang 'acted as [the] agent[] of the owners and 'provide[d] assistance to them in connection with the rental transaction,' including by providing them 'with advice." *See* Motion, at p. 17. Plaintiffs have finally admitted that their Complaint is total speculation, but even if these other "information and belief" pleadings were accurate, it is irrelevant to the statements that the Motion claims are sanctionable. Tellingly, it does not pertain at all to Zhang's lack of "formal role," if any, nor does it allege Zhang "searched" for renters.

---

[4] The one honest part of this frivolous motion for sanctions is Plaintiffs' tacit admission that the Complaint, pleaded entirely "upon information and belief," is entirely speculative and is not based on any factual basis whatsoever. As discussed in Remax's motion to dismiss, the Second Circuit has held time and again that wholly information and belief pleadings are highly improper for just such reasons and must be dismissed. *See, e.g.*, *Moreira v. Societe Generale, S.A.*, 125 F.4th 371, 395 (2d Cir. 2025); *Salu v. Miranda*, 830 F. App'x 341 (2d Cir. 2020)

[5] Even if it were true, Plaintiffs' assertion that they relied on opposing counsel to draft their Complaint is not just an admission of failure to conduct due diligence for the Complaint – itself sanctionable – it is professionally irresponsible, and contrary to law. *See, e.g.*, *Aglira v. Julien & Schlesinger, P.C.*, 214 A.D.2d 178 (1st Dept. 1995) ("As far as reliance is concerned, it is a well-settled principle that neither a party nor his attorney may justifiably rely on the legal opinion or conclusions of his or her adversary' s counsel").

Similarly, Plaintiffs complain about Remax's Rule 11 letter which was sent to Plaintiffs on or about October 9, 2024, in connection with the then-operative Second Amended Complaint. Plaintiffs have failed to read the statute, since Rule 11 specifically applies "only to assertions contained in papers filed with or submitted to the court." FRCP § 11 Advisory Committee Note on 1993 Amendments. In any case, adjustment from a previously un-filed prior position is not a basis for sanctions under the statute itself. Plaintiffs' Motion is truly unique; it is an astonishing abdication of responsibility for Plaintiffs to now claim they are not responsible for their own Complaint, and it is more inappropriate yet still to contend that Defendants who cite to the Complaint in a motion to dismiss the pleadings should be sanctioned. Plaintiffs' attempts to hurl accusations of falsity because Plaintiffs do not like what their own words in their own pleadings say—which the Motion itself admits are in the Complaint—have descended beyond frivolity.

## POINT II
## PLAINTIFFS' IMPROPERLY SEEK SANCTIONS BASED ON SELF-SERVING INTERPRETATIONS OF DISCOVERY

**A. Plaintiffs' Motion Admits that it Seeks Sanctions Based on Subjective Interpretation, Speculation, and Surmise; the Appropriate Place to Adjudicate Discovery is Before the Fact-Finder**

Leaving aside the peculiar irony of Plaintiffs' attempt to seek sanctions for citations to their own Complaint, Plaintiffs are unable to even provide a basis for the supposed falsity of any statement to begin with, aside from self-serving interpretations of ambiguous discovery.

Over twelve rambling pages, Plaintiffs hurl all manner of new assertions of fact as if they are crystal clear, undisputed documentary evidence. However, even a cursory review of Plaintiffs' own supposed "proof" demonstrates how poorly Plaintiffs' contentions about particularly ambiguous documents fare. Most of Plaintiffs' contentions are the subject of disagreement, and indeed Plaintiffs' Motion itself admits to ambiguity outright. It appears that Plaintiffs are

attempting to pre-adjudicate discovery in the place of the fact-finder. Rather than make the case that evidence proves their claims, Plaintiffs collaterally attack Remax's counsel for the apparent sin of daring to disagree with Plaintiff's subjective, self-serving assessment. The number of astounding, self-refuting arguments and hedging language in Plaintiffs' Motion begs the question if Plaintiffs have even read what they have filed.

For example, Plaintiffs contend that "contrary to defense counsel's false representation to the Court that Zhang does not broker rentals, Zhang in fact regularly brokers rental units." *See* Motion, at p. 5. There is no citation for any such representation, and indeed it does not appear at all in any of Remax's filings. This invention by Plaintiffs appears to be a result of their own confusion; to the extent it is even relevant, Remax's first pre-motion conference letter to dismiss the previous version of the Complaint stated "Zhang specifically informed the Owners that he did not broker rentals." *See* Dkt. No. 42. This statement appears in Plaintiffs' own Complaint, yet again. *See* Complaint at ¶ 46. In any case, Plaintiffs' proof that this supposed claim is false is that "texts show that in 2022 and 2023 alone, Zhang made Niayzov aware of at least 18 properties that Zhang had been authorized by owners to advertise as available for rent." *See* Motion at p. 5. Plaintiff does not point to a single text, nor any other evidence, which states that Zhang was "authorized" by any owners to advertise anything at all. It is unclear how Plaintiff can make such claims, nor is it comprehensible how being "made aware" of an available rental constitutes a professional broker role.

Plaintiffs next argue that "[t]he texts further make clear that Zhang and Niayzov worked together as partners." *See* Motion, at p. 5. Again, other than ambiguous text messages where Zhang makes Niyazov "aware" of available rentals, there is not any cited evidence that Zhang and Niyazov "worked together as partners" aside from Plaintiffs' subjective assertion. The Motion

comically contends that discovery "suggest[s] that Zhang and Niayzov split the broker fees that flowed from their partnership." *Id*. The Motion even admits outright that "the texts themselves are not conclusive on this point." *Id*., at p. 6. One would hope for a stronger basis for an inflammatory sanctions motion than documents which "suggest" and which are "not conclusive"; for example a signed contract, or unambiguous record of a written agreement. Instead, Plaintiffs have decided to move forward on the basis of what Plaintiffs believe discovery "suggests," and which are "not conclusive."[6]

Continuing with this method of speculation, Plaintiffs next claim that "texts further make clear that when Zhang told Niayzov about a new listing, they would meet at the property, typically the next day. It appears that Niayzov would take photographs of the property and advertise it…The texts show that together they successfully filled many and apparently most of the rental listings that Zhang brought to Niayzov." *See* Motion, at p. 6. Again, not a single text message is cited to support this subjective evaluation of how the discovery "appears" to Plaintiffs. Not a single page of discovery is cited to contravene the complained of statements that Zhang's "only formal role was representing the Owners during the original purchase of the Property in 2021" and that Zhang "did not represent the Owners in their search for renters." Again, one would expect something concrete in a sanctions motion which calls opposing counsel liars; instead Plaintiffs present what amounts to a flimsy, subjective interpretation about out-of-context text messages.

Plaintiffs again invent statements to complain about, this time concerning "defense counsel's false representations to the Court that Zhang had nothing to do with renting 581 West

---

[6] It is noteworthy that Plaintiffs attempt to parse through informal text messages in between two English as Second language ("ESL") immigrant speakers as if it were a carefully crafted contract by attorneys. Plaintiffs seem to believe that text message communications in broken English between two part time workers in a very competitive industry discussing available rental listings constitutes some sort of contractual agreement, making the instant Motion all the more enriched in speculation and surmise.

Caswell." *See* Motion, at p. 6.  There is no citation to this supposed "representation" by Remax's counsel, and it does not appear in any of Remax's filings in this action.

Plaintiffs' argument based on ambiguous evidence is illogical on its face, but even more so, courts must "resolve all doubts in favor of" the party against whom sanctions are sought. *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993). Plaintiffs appear to have rushed headlong into a sanctions motion which is utterly unsupported by document, fact, or law.

The correct time and place for a party to argue for its interpretation of evidence is before the fact finder.  Plaintiffs seem to believe that proceeding with litigation is beneath them, and appear frustrated that they must overcome a motion to dismiss and prove their claims to a fact-finder. "Rule 11 motions should not be employed...to test the legal sufficiency or efficacy of allegations in the pleadings...Nor should Rule 11 motions be prepared to emphasize the merits of a party's position." *Jawbone, LLC v. Donoghue,* 2002 WL 1424587, at *6 (S.D.N.Y. 2002) (quoting FRCP § 11 Advisory Committee Note on 1993 Amendments); *see also Kara Holding Corp. v. Getty Petroleum Mktg.*, *Inc.*, 2004 WL 1811427 (S.D.N.Y. 2004) (disregarding arguments in a Rule 11 motion that pertained to the merits of a summary judgment motion). That is exactly what Plaintiffs seek to do with this Motion, and it is a demonstrably "improper purpose" pursuant to FRCP § 11. Plaintiffs seek a backdoor around Remax's pending motion to dismiss and have therefore improperly copied their opposition almost in its entirety in the instant Motion to have the court adjudicate the issues twice. *See Doe v. Martucci*, 2024 WL 839258 *10 (S.D.N.Y. Feb. 28, 2024)("if the bases for Plaintiff's sanctions motions are identical to the arguments made in the summary judgment motions, why ask the Court to adjudicate those issues twice?").

By Plaintiffs' logic, attorneys must be sanctioned in every single litigation which does not settle, since the fact finder can only agree with one side's interpretation of the facts. Moreover, in

~16~

effect, Plaintiffs are trying to take two bites at the apple of summary judgment. Plaintiffs are free to draw their own conclusions and attempt to prove them, but Plaintiffs' unfounded belief that defendants must agree with Plaintiffs' subjective interpretation of discovery, or else be subject to sanctions, is meritless. Plaintiffs' improper slander of falsity is not based on any definitive documents or evidence nor any written agreement, business record, or contract. It is instead based on particularly ambiguous discovery, some of which Plaintiffs themselves admit is "not conclusive." *See* Motion, at p. 6. Plaintiffs have shamelessly weaponized factual disagreement between opposing parties for the improper purpose of intimidation. Plaintiffs' sorely misguided Motion is merely an attempt to improperly "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1014 (2d Cir. 1986); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384 (1990).

**B.  Plaintiffs' Citations Place the Frivolousness of this Motion in Stark Relief**

Plaintiffs' instant Motion is predicated entirely on statements in a motion to dismiss which Plaintiffs tacitly admit refers to their own Complaint; Plaintiffs assert that these references are false based on their subjective interpretation of discovery. But the only citations in Plaintiffs' Motion reference cases where sanctions were awarded because an attorney knowingly and egregiously presented false documents to the court. *See* Motion, at p. 18-20. These citations sharply contrast with the instant claims of sanctions which are predicated on disagreement of disputed, ambiguous facts; the citations actually demonstrate exactly why Plaintiffs' motion for sanctions is utterly frivolous.

For example, in *Laba v. JBO Worldwide Supply Pty Ltd*, 2023 WL 4985290 (S.D.N.Y. 2023), the court imposed sanctions under 28 USC § 1927 because "Liebenberg's signature on the Agreement submitted to the Court by Laba through his counsel was fraudulent and fabricated. The

Court also finds that there is clear and convincing evidence that Laba and his counsel knew that the signature was fraudulent and fabricated."

In *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2017 WL 3671036, at *32 (S.D.N.Y. 2017), the court sanctioned attorneys who hid documents demonstrating that defendant had sufficient contact for jurisdiction in the United States and then subsequently argued a lack of jurisdiction on such basis in an FRCP § 12(b)(2) motion.

In *Kirsh v. Scott*, 1994 WL 132383 (S.D.N.Y. 1994), an attorney filed a declaration seeking release of an inmate because the prisoner "suffered a 'major heart attack' a fact that, according to Mr. Washburn, was 'undisputed' and a 'matter of medical record at the Metropolitan Correction Center and [FCI] Otisville.'" No such event had been recorded by any medical professional, and the court sanctioned the attorney, Washburn, for "extreme laziness or a poorly hatched plot to deceive." *Id.*, at *5.

In *In re Filosa*, 976 F. Supp. 2d 460 (S.D.N.Y. 2013), a grievance committee found that an attorney used an "expert report, estimating [Plaintiff's] economic damages as between $350,000 and $1 million" which was based "on the assumption that plaintiff Violet Fryer would remain unemployed through the end of the 2010 calendar year and also calculated future lost earnings for a period of one to six years into the future." The Committee found that it "is undisputed that Respondent knew the report was inaccurate, because he was admittedly aware that Fryer had accepted a higher-paying position with Kraft on September 17, 2010." *Id.*, at 466. The attorney there also knowingly permitted his client to give false testimony at deposition. *Id.*, at 467.

In *Rossbach v. Montefiore Med. Ctr.*, 2021 WL 3421569 (S.D.N.Y. 2021), plaintiff literally "fabricated the image" of the perverse, prurient text messages at issue "and engaged in perjury and spoliation to prevent discovery of that fabrication." *Id.*, at *5. Plaintiff's attorney was sanctioned

because even when presented with evidence of the blatant, obvious fabrication, he failed to investigate further, and indeed proceeded to file his client's "false March 19 Declaration with the Court and then elicit[] more false testimony from Rossbach at the evidentiary hearing." *Id.*, at \*9. Plaintiffs' Motion argues that *Rossbach* is somehow "instructive," (Motion, at p. 20) but it is preposterous to claim a connection between the knowingly fabricated evidence there and competing views of ambiguous discovery in the instant action, which must be construed in favor of the non-movant here.

In *Calloway v. Marvel Ent. Grp., a Div. of Cadence Indus. Corp.*, 854 F.2d 1452 (2d Cir. 1988), plaintiff accused defendants of forging facsimile contracts which were fatal to his copyright and related claims; the attorney was sanctioned because of the "considerable evidence" that it was the attorney himself, and not plaintiff, who "was solely responsible for pursuit of the facsimile claim." *Id.*, at 1456.

All of the authority in the Motion where sanctions were awarded demonstrate quite clearly the overt, intentional deceit, fabrication, and inventions that are required for the imposition of sanctions not present here. Had Plaintiffs' counsel actually read the decisions the Motion cited, Plaintiffs likely would have dispensed with this ridiculous exercise because sanctions under Rule 11 require an "utter lack of support." *See Kiobel v. Millson*, 592 F.3d 78, 82 (2d Cir. 2010) (overturning sanctions order since "[t]he flaw in the Magistrate Judge's analysis is that defense counsel need not prove the truth of their accusation, only that it was not 'utterly lacking in support'"). A "reasonable belief that a colorable claim" existed at the time of the complaint allows parties and counsel to avoid sanctions regardless of the claim's success. *Rotter v. Leahy*, 93 F.Supp.2d 487, 503 (2d Cir.2000). Indeed, finding later that a claim lacked evidentiary support is "not a sufficient basis on which to impose sanctions." *Id*.

However, obtaining sanctions is not actually Plaintiffs' goal here; Plaintiffs seek to chill advocacy for Remax and put Remax's counsel on the back foot in expending time and efforts opposing this frivolous motion, all in the hope that Plaintiffs may self-servingly pre-judge discovery, and intimidate the undersigned to throw the undersigned's clients under the bus. Just like Plaintiffs' continued threats to run up legal fees in this action, Plaintiffs hope to intimidate Remax to settle so that Plaintiffs do not actually have to prove their claims.

### C. Much of the Motion Consists of Factual Assertions which are Irrelevant to the Instant Action and the Instant Motion

Many of Plaintiffs' self-serving interpretations of discovery are not only speculative, but utterly irrelevant to the arguments in the Motion[7] and to the instant action entirely.

For example, the Motion claims that Zhang assisted the Owners as an intermediary in communicating with an unrelated tenant, Rick Lialli, who was behind on rent, and describes Zhang performing acts unrelated to Niayzov's status as rental agent for the Property. *See* Motion, at p. 8. Plaintiffs further contend that "there is even more. On at least two occasions, Zhang went so far as to draft letters from the owners to the New York City Human Resources Administration to help the owners collect agency rent subsidies." *Id*. Even if these assertions are true, it is irrelevant to whether Zhang was the rental agent for the Property, and it is unrelated to this baseless Motion.

Plaintiffs try to tar Zhang as a bigot because in various text messages, he identifies individuals in discussion with Niyazov by their nationality, e.g., "Spanish," "Russian," "Mexican," etc. *See* Motion, at p. 9. Despite Plaintiffs' breathless accusations that this constituted discrimination, the Motion cannot and does not cite to any message where Zhang disparages any ethnicity or national origin. Nor does the Complaint point to a single instance where any

---

[7] They were similarly irrelevant in Plaintiffs' opposition to the motion to dismiss.

prospective tenant's application was denied by Zhang – and nor could it, since Zhang could not possibly make rental decisions for properties he does not own, operate, nor represent as an agent.

Regardless, discussions about unrelated tenants and/or applicants for unrelated properties is irrelevant to these claims involving these Plaintiffs, do not give rise to discrimination claims, and have nothing to do with this Motion altogether.

Ironically, in every instance where a prospective renter's ethnicity was mentioned in the text messages in question, the prospective renter is described as a "good" tenant or "good people". *See* Motion, at p. 9 In any case, by describing individuals unrelated to the instant action, unrelated to Plaintiffs, unrelated to the property, and unrelated to the pending motion to dismiss, Plaintiffs underscore the frivolity of the Motion.

Also utterly irrelevant to this motion for sanctions is Plaintiffs' repetition of utterly unfounded claims which first appear in opposition to Remax's motion to dismiss, and which are not even in the Complaint. Without conducting a single deposition, Plaintiffs repeat the baseless assertion that Niyazov emailed Plaintiffs' application materials to Zhang, and "Zhang never forwarded Plaintiffs' application materials" to the owners. *See* Motion, at p. 10. Plaintiffs provide no citation or basis whatsoever for this new assertion because it is seemingly pulled from thin air. As noted in the motion to dismiss, it also contradicts the assertions in the Complaint. In any case, it is utterly irrelevant here.

**POINT III**
**PLAINTIFFS' FRIVOLOUS MOTION SERVES AN IMPROPER PURPOSE;**
**PLAINTIFFS AND THEIR COUNSEL WERE ADEQUATELY WARNED**

"[T]he filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." *See* Fed.R.Civ.P. § 11 Advisory Committee's Note. It does not require a cross-motion for sanctions, since a court is authorized to award fees to a party that successfully

~21~

opposes a Rule 11 sanctions motion. "A party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions." *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir.2001). "A motion for Rule 11 sanctions comes with some risk…a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." *Plantation Open MRI, LLC v. Infinity Auto Ins. Co.*, 818 F. App'x 891, 893 (11th Cir. 2020). "[W]hen a party files a Rule 11 motion for an improper purpose, the court may award fees to the target of the motion." *Id.* Indeed, "a Rule 11 motion that itself does not comply with Rule 11 can warrant sanctions against the moving party. Thus, where a party's motion for Rule 11 sanctions is not well grounded in fact or law, or is filed for an improper purpose, a court my find itself in the position of imposing Rule 11 sanctions on the moving party and/or her attorney.*" Lee v. Grand Sichuan E. (N.Y.) Inc.*, 2014 WL 199512, at *1 (S.D.N.Y. 2014). Sanctions are "proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir.1986)).

Rule 11 provides examples of improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." As outlined in Points I and II, *supra*, Plaintiffs have failed to demonstrate any basis for this improper Motion; even more so, the utter pointlessness of the instant ploy seems designed to "poison the well" and create irrelevant, petty controversy, in the hope that this Court will throw up its hands rather than dismiss the highly deficient Complaint. This collateral intent to support Plaintiffs' opposition to Remax's motion to dismiss is itself directly sanctionable. "It is improper for a party to file a Rule 11 motion for the purpose of emphasizing the merits of the party's position." *Lee*, 2014 WL 199512, at *1 (awarding sanctions

against the Rule 11 movant)(citing *On Time Aviation, Inc. v. Bombardier Capital Inc.,* 570 F.Supp.2d 328, 331 (D.Conn.2008) *aff'd,* 354 F. App'x 448 (2d Cir.2009)).[8]

At best, Plaintiffs are seeking to distract the Court from the pertinent issues of law, gain improper advantage in discovery by pre-judging disputed evidence, and unprofessionally attempt to intimidate opposing counsel with personal threats to coerce a settlement. Plaintiffs appear willing to do almost anything to prosecute their claims – except, to simply litigate them.

Courts have not been hesitant to find sanctions for improper purpose against attorneys who have frivolously moved for sanctions themselves. *See Patsy's Brand, Inc. v. I.O.B. Realty, Inc.,* 2001 WL 1154669 (S.D.N.Y. 2001), *aff'd as modified,* 317 F.3d 209 (2d Cir. 2003)("The court is persuaded that Mr. Spinnell, the attorney of the I.O.B. defendants, brought a sanction motion against opposing counsel that he knew to be without merit in order to prove to his client how tough he could be. For similar reasons, he continued to litigate the motions for sanctions against Plaintiff after it became apparent that there was no good faith basis for it. Since he multiplied the proceedings in [this] case unreasonably and vexatiously, sanctions are appropriate").

Such is the case here. Plaintiffs have brought the instant Motion which is utterly without merit, for what can only be construed as an improper purpose. Plaintiffs' counsel's "tough guy" conduct demonstrates an attempt to pre-adjudicate discovery, to threaten and silence opposing counsel from properly defending the claims, and to penalize opposing counsel for daring to disagree with Plaintiff's interpretation of ambiguous discovery. Most absurdly, Plaintiffs argue for sanctions for statements which cite to their own Complaint. The instant Motion is not only an ill-advised attempt at intimidation but appears to be an attempt to increase Plaintiffs' counsel's legal

---

[8] In *Lee*, the court further found "[t]hat Lee improperly filed his Rule 11 motion to bolster his summary judgment opposition is clear from each filing's repeated references to the other. *Id.*, at *3. Plaintiffs here have demonstrated the same indicia of improper purpose, but even more egregiously; Plaintiffs sanctions Motion repeats verbatim a significant number of pages from their opposition to Remax's pending motion to dismiss.

~23~

fees; due to the fee-shifting statute at issue, Plaintiffs' counsel has directly and unambiguously threatened to run up legal fees if Remax filed a motion to dismiss.

The Motion sanctimoniously announces "Rule 11 matters." *See* Motion, at p. 18. Plaintiffs should have taken heed, as the instant Motion constitutes a textbook example of an improper purpose and justifies sanctions against Plaintiffs themselves. "Rule 11 is not a toy…the filing of a motion for sanctions is itself subject to the requirements of [Rule 11] and can lead to sanctions." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003).

Sanctions are also appropriate under 28 U.S.C. § 1927, where, as here, Plaintiffs have vexatiously multiplied the proceedings with unnecessary and improper filings.

At the very least, Plaintiffs' Motion serves an improper purpose in an attempt to gain outside advantage through inappropriate threats. Remax's Response Letter sought to avoid wasting the Court's time on Plaintiffs' vexatious threats and unprofessional conduct, and warned that a frivolous sanctions motion by Plaintiffs would be met with stiff opposition and request for costs in return. *See* Ex. D, Response Letter.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that Plaintiffs' motion for sanctions be denied, that the Court order costs against Plaintiffs, and such other and further relief as this Court deems just and proper.

Dated: New York, New York
      June 13, 2025

FURMAN KORNFELD & BRENNAN LLP

By:    /s/ Spencer A. Richards
        Spencer A. Richards, Esq.
        Asher Kest, Esq.
        *Attorneys for Defendants*

~24~

*Womcore LLC d/b/a Remax Edge*
*and Xian Jin Zhang*
88 Pine St., 32nd Floor
New York, New York 10005
Tel:     (212) 867-4100
FKB File No.: 302.175